**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
steven.serajeddini@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Rachael M. Bentley (*pro hac vice* pending)
Peter A. Candel (*pro hac vice* pending)
Ashley L. Surinak (*pro hac vice* pending)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
rachael.bentley@kirkland.com
peter.candel@kirkland.com
ashley.surinak@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| MULTI-COLOR CORPORATION, *et al.*, | Case No. 26-10910 (MBK) |
| Debtors.[1] | (Joint Administration Requested) |

---

[1] The last four digits of Debtor Multi-Color Corporation's tax identification number are 5853. A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.veritaglobal.net/MCC. The location of the Debtors' service address for purposes of these chapter 11 cases is: 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327.

**DEBTORS' APPLICATION
FOR ENTRY OF AN ORDER (I) AUTHORIZING
THE DEBTORS TO EMPLOY AND RETAIN KURTZMAN CARSON
CONSULTANTS, LLC DBA VERITA GLOBAL AS CLAIMS AND NOTICING AGENT
EFFECTIVE AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

as follows in support of this application (the "Application"):[2]

**Relief Requested**

1.     The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"): (a) authorizing the Debtors to employ and retain Kurtzman Carson

Consultants, LLC dba Verita Global ("Verita") as the claims and noticing agent (the "Claims and

Noticing Agent") in the Debtors' chapter 11 cases effective as of the Petition Date (as defined

herein) and (b) granting related relief.  In support of this Application, the Debtors rely upon and

incorporate by reference the *Declaration of Evan Gershbein in Support of Debtors' Application

for Entry of an Order (I) Authorizing the Debtors to Employ and Retain Kurtzman Carson

Consultants, LLC dba Verita Global as Claims and Noticing Agent Effective as of the Petition

Date and (II) Granting Related Relief* (the "Gershbein Declaration"), attached hereto as

**Exhibit B**, and the *Declaration of Garrett Gabel in Support of Debtors' Application for Entry of

an Order (I) Authorizing the Debtors to Employ and Retain Kurtzman Carson Consultants, LLC

dba Verita Global as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting

Related Relief* (the "Gabel Declaration"), attached hereto as **Exhibit C**.

---

[2]     A detailed description of the Debtors, their business, and the facts and circumstances giving rise to the Debtors'
chapter 11 cases is set forth in the *Declaration of Garrett Gabel, Chief Restructuring Officer of Multi-Color
Corporation and Certain of Its Affiliates, in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings*
(the "First Day Declaration"), filed contemporaneously herewith and incorporated by reference herein.
Capitalized terms used but not otherwise defined in this Application shall have the meanings ascribed to them in
the First Day Declaration.

**Jurisdiction and Venue**

2.  The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.).  The Debtors confirm their consent to the Court entering a final order in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.  The bases for the relief requested herein are section 156(c) of title 28 of the United States Code, sections 105(a) and 503(b)(1)(A) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rule 2002(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Court's *General Order Governing Protocol for the Retention of Claims and Noticing Agents Under 28 U.S.C. § 156(c) Pending Adoption of Local Rule* (the "Claims and Noticing Agent Retention Protocol"), and rule 9013 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

**Background**

5.  The Debtors, together with their non-Debtor affiliates (collectively, "MCC" or the "Company") are a leading global provider of prime label solutions, supporting prominent brands across end categories, including food and beverage, wine and spirits, home and personal care, and healthcare, among others.  Since its inception in 1916 as the Franklin Development Company, MCC has remained a consistent pioneer of label printing.  Over the years, the Company has continuously added new print technologies—including pressure sensitive, cut and stack,

3

roll-fed, in-mold, shrink sleeve, and radio frequency identification (RFID)—and innovations to its arsenal to provide customers with the right label solution coupled with value-additive service. Headquartered in Atlanta, Georgia, MCC currently employs approximately 12,800 employees and has exponentially grown its global footprint for over a century, with current operations in over 90 facilities across the globe.

6.      On January 29, 2026 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have also filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

7.      As described in the Gabel Declaration, the Debtors' selection of Verita to act as the Claims and Noticing Agent has satisfied the Claims and Noticing Agent Retention Protocol in that the Debtors have obtained and reviewed engagement proposals from at least two other court-approved claims and noticing agents to ensure selection through a competitive process. Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that Verita's rates are competitive and reasonable given Verita's quality of services and expertise. The terms of Verita's proposed retention are set forth in the that certain Agreement for Services, effective as of January 14, 2026, by and between the Debtors and Verita and attached as Exhibit 1 to the Order (the "Services Agreement").  Notwithstanding the terms of the Services Agreement, the Debtors are seeking to retain Verita solely on the terms set forth in this Application and the proposed Order.

8.      By separate application, the Debtors will seek authorization to retain and employ Verita as administrative advisor in these chapter 11 cases, pursuant to section 327(a) of the Bankruptcy Code, as the administration of these chapter 11 cases may require Verita to perform duties outside the scope of 28 U.S.C. § 156(c).

**Verita's Qualifications**

9.      Verita is one of the country's leading chapter 11 administrators, with experience in both the legal and administrative aspects of large, complex chapter 11 cases.   Verita's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.   Indeed, Verita has acted as the official claims and noticing agent in many large bankruptcy cases in this district and other districts nationwide, including:  *In re United Site Servs., Inc.*, No. 25-23630 (MBK) (Bankr. D.N.J. Dec. 30, 2025); *In re Marelli Auto. Lighting USA LLC*, No. 25-11034 (CTG) (Bankr. D. Del. Aug. 4, 2025); *In re Powin, LLC*, No. 25-16137 (MBK) (Bankr. D.N.J. June 13, 2025); *In re CTN Holdings, Inc.*, No. 25-10603 (TMH) (Bankr. D. Del. Apr. 3, 2025); *In re Leisure Invs., Holdings LLC*, No. 25-10606 (LSS) (Bankr. D. Del. Apr. 2, 2025); *In re F21 OpCo, LLC*, No. 25-10469 (MFW) (Bankr. D. Del. Mar. 18, 2025); *In re Village Roadshow Ent. Grp. USA Inc.*, No. 25-10475 (TMH) (Bankr. D. Del. Mar. 18, 2025); *In re Dynamic Aerostructure LLC*, No. 25-10292 (LSS) (Bankr. D. Del. Feb. 2, 2025); *In re Gritstone Bio, Inc.*, No. 24-12305 (KBO) (Bankr. D. Del. Oct. 16, 2024); *In re Fulcrum Bioenergy, Inc.*, No. 24-12008 (TMH) (Bankr. D. Del. Sept. 12, 2024); *In re QLess Inc.*, No. 24-11395 (BLS) (Bankr. D. Del. June 21, 2024); *In re Fisker Inc.*, No. 24-11390 (TMH) (Bankr. D. Del. June 19, 2024); *In re Supply Source Enters., Inc.*, No. 24-11054 (BLS) (Bankr. D. Del. June 13, 2024); *In re ProSomnus, Inc.*, No. 24-10972 (JTD) (Bankr. D. Del. May 9, 2024);

5

*In re Sticky's Holding LLC*, No. 24-10856 (JKS) (Bankr. D. Del. Apr. 26, 2024); *In re SC Healthcare Holding, LLC*, No. 24-10443 (TMH) (Bankr. D. Del. Mar. 22, 2024); *In re Invitae Corp.*, No. 24-11362 (MBK) (Bankr. D.N.J. Feb. 16, 2024); *In re Cano Health, Inc.*, No. 24-10164 (KBO) (Bankr. D. Del. Feb. 6, 2024); *In re InVivo Therapeutics Corp.*, No. 24-10137 (MFW) (Bankr. D. Del. Feb. 6, 2024); *In re AN Glob., LLC,* No. 23-11294 (JKS) (Bankr. D. Del. Aug. 29, 2023); *In re Proterra Inc*, No. 23-11120 (BLS) (Bankr. D. Del. Aug. 7, 2023); *In re Cyxtera Techs., Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J. June 6, 2023); *In re PGX Holdings, Inc.*, No. 23-10718 (CTG) (Bankr. D. Del. June 6, 2023); *In re Plastiq Inc.*, No. 23-10671 (BLS) (Bankr. D. Del. May 25, 2023); *In re Christmas Tree Shops, LLC*, No. 23-10576 (TMH) (Bankr. D. Del. May 9, 2023); *In re Structurlam Mass Timber U.S., Inc.,* No. 23-10497 (CTG) (Bankr. D. Del. Apr. 26, 2023); *In re CBC Restaurant Corp*, No. 23-10245 (KBO) (Bankr. D. Del. Mar. 3, 2023); *In re Starry Grp. Holdings, Inc.*, No. 23-10219 (KBO) (Bankr. D. Del. Feb. 22, 2023); *In re Stanadayne LLC*, No. 23-10207 (JTD) (Bankr. D. Del. Feb. 22, 2023); *In re Tricida, Inc.*, No. 23-10024 (JTD) (Bankr. D. Del. Jan. 13, 2023).[3]

10.     The appointment of Verita as the Claims and Noticing Agent in these chapter 11 cases will expedite the distribution of notices and the processing of claims, facilitate other administrative aspects of these chapter 11 cases, and relieve the Clerk of the Bankruptcy Court of the District of New Jersey (the "Clerk") of these administrative burdens.  Given the nature of these chapter 11 cases, the Debtors believe that the appointment of Verita as the Claims and Noticing Agent will serve to maximize the value of the Debtors' estates for all stakeholders.

---

[3]     Because of the voluminous nature of the orders cited herein, they are not attached to the Application.  Copies of these orders, however, are available on request of the Debtors' proposed counsel.

**Services to Be Provided by Verita**

11.     This Application pertains only to the work to be performed by Verita under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and the Claims and Noticing Agent Retention Protocol.  Any work to be performed by Verita outside of this scope is not covered by this Application or by any order granting approval hereof.  The Debtors, however, reserve the right to seek authority to retain Verita to perform additional services pursuant to section 327 of the Bankruptcy Code.

12.     Subject to the Court's approval, at the request of the Debtors, and to the extent necessary, Verita will perform the following tasks in its role as the Claims and Noticing Agent in these chapter 11 cases (such tasks, the "Claims and Noticing Services"), as well as all quality control relating thereto:

    (a)     Prepare and serve required notices and documents in these chapter 11 cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including, without limitation:  (i) notice of the commencement of these chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code; (ii) notice of any claims bar date; (iii) notices of transfers of claims; (iv) notices of objections to claims and objections to transfers of claims; (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d); (vi) notice of the effective date of any plan; and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtors or the Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

    (b)     Maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules and Statements"), listing the Debtors' known creditors and the amounts owed thereto;

    (c)     Maintain (i) a list of all potential creditors, equity holders, and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k), and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update and make said lists available upon request by a party-in-interest or the Clerk;

7

(d)     Furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount, and classification of their respective claims, as set forth in the Schedules and Statements, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules and Statements indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)     Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)     For all notices, applications, motions, orders, or other pleadings or documents served, prepare and file, or cause to be filed with the Clerk, an affidavit or certificate of service within seven (7) business days of service, which includes:  (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served; (ii) a list of persons to whom it was mailed (in alphabetical order) with their mailing or email addresses, as applicable; (iii) the manner of service; and (iv) the date served;

(g)     Maintain an electronic platform for purposes of filing proofs of claim;

(h)     Process all proofs of claim received, including those received by the Clerk's office, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(i)     Maintain the official claims register for each Debtor (collectively, the "Claims Registers") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed:  (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.); (vi) the applicable Debtor; and (vii) any disposition of the claim;

(j)     Provide public access to the Claims Registers, including complete proofs of claim with attachments, if any, without charge;

(k)     Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original proofs of claim;

(l)     Record all transfers of claims and update the creditor matrix after the related objection periods have expired, record all orders entered by the Court that may affect such claims by making a notation on the claims register, and

monitor the Court's docket for any claims-related pleading filed and make necessary notations on the claims register;

(m)    File a quarterly updated claims register with the Court in alphabetical and numerical order or, if there has been no claims activity, file a certification to that effect;

(n)    Relocate, by messenger or overnight delivery, all of the court filed proofs of claim to the offices of Verita, not less than weekly;

(o)    Upon completion of the docketing process for all proofs of claim received to date for each case, turn over to the Clerk copies of the claims registers for the Clerk's review (upon the Clerk's request);

(p)    Monitor the Court's docket for all notices of appearance, address changes, claims related pleadings, and orders filed and make necessary notations on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(q)    Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

(r)    Assist in the dissemination of information to the public and respond to requests for administrative information regarding these chapter 11 cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

(s)    Thirty (30) days prior to the close of these cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing Verita and terminating the services of such Claims and Noticing Agent upon the completion of its duties and responsibility and upon the closing of these cases;

(t)    Within seven (7) days of notice to Verita of entry of an order closing the chapter 11 cases, provide to the Court the final version of the claims register, a digital version of all claims, and the creditor mailing matrix as of the date immediately before the close of the cases;

(u)    Docket a final claims register and creditor mailing matrix in any jointly administered case containing the claims and creditor mailing matrix parties, respectively, of only that specific case; and

(v)    Upon conversion of a chapter 11 case to a chapter 7 case, contact the Clerk's office within three (3) days of Verita receiving notice of entry of the order converting the cases.

9

13.    The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Verita.

### Verita's Compensation

14.    The Debtors are proposing to compensate Verita for the Claims and Noticing Services set forth above in accordance with the Services Agreement and the rate structure attached thereto.  The Debtors request that the undisputed fees and expenses incurred by Verita in the performance of the Claims and Noticing Services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.

15.    Verita agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred and to serve monthly invoices on (a) the Debtors, (b) the Office of the United States Trustee for the District of New Jersey (the "U.S. Trustee"), (c) counsel for the Debtors, (d) counsel for any official committee appointed in these chapter 11 cases, and (e) any party-in-interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Services Agreement or Verita's monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; *provided* that if resolution is not achieved, the parties may seek resolution of the matter from the Court.

16.    Prior to the Petition Date, the Debtors provided Verita a retainer in the amount of $40,000, which was received by Verita on January 23, 2026.  Verita seeks to first apply the retainer to all prepetition invoices, and thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Services Agreement during these chapter 11

cases as security for the payment of fees and expenses incurred pursuant to the Services Agreement.

17.     Additionally, under the terms of the Services Agreement, the Debtors have agreed to indemnify, defend, and hold harmless Verita and its members, officers, employees, representatives, and agents under certain circumstances specified in the Services Agreement, except in circumstances resulting solely from Verita's gross negligence or willful misconduct or as otherwise provided in the Services Agreement or any order of the Court.  The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a claims and noticing agent in these chapter 11 cases.

### Verita's Disinterestedness

18.     Although the Debtors do not propose to employ Verita under section 327 of the Bankruptcy Code pursuant to this Application, Verita has nonetheless reviewed its conflicts system to determine whether it has any relationships with the creditors and initial parties-in-interest identified by the Debtors.  Verita has represented to the Debtors that to the best of its knowledge, and except as set forth in the Gershbein Declaration, neither Verita nor any of its professionals have any relationship with the Debtors that would impair Verita's ability to serve as Claims and Noticing Agent.  To the extent that Verita or its personnel have, or may have had, relationships with certain of the Debtors' creditors as described in the Gershbein Declaration, Verita has represented to the Debtors that those matters are wholly unrelated to these chapter 11 cases.

19.     In connection with its retention as claims and noticing agent, the Claims and Noticing Agent represents in the Gershbein Declaration, among other things, that:

(a)     Verita is not a creditor, equity security holder, or insider of the Debtors;

(b)     Verita will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent;

11

(c)     by accepting employment in these chapter 11 cases, Verita waives any right to receive compensation from the United States government in connection with these chapter 11 cases;

(d)     in its capacity as the Claims and Noticing Agent, Verita will not be an agent of the United States and will not act on behalf of the United States;

(e)     Verita will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent;

(f)     Verita is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)     in its capacity as the Claims and Noticing Agent in these chapter 11 cases, Verita will not intentionally misrepresent any fact to any person;

(h)     Verita shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)     Verita will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. §156(c); and

(j)     none of the services provided by Verita as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk's office.

20.     Verita will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

**Compliance with Claims and Noticing Agent Retention Protocol**

21.     This Application complies with the Claims and Noticing Agent Retention Protocol, in that the Debtors have obtained and reviewed engagement proposals from at least two other Court-approved claims and noticing agents to ensure selection through a competitive process. The Debtors and their counsel submit that Verita was selected as the Claims and Noticing Agent after the review and competitive comparison of three proposals. Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that Verita's rates are competitive and reasonable given Verita's quality of services and expertise.

**Basis for Relief Requested**

**I.      Retention and Employment of Verita as Claims and Noticing Agent Is Permitted.**

22.      The Debtors submit that the requested relief is appropriate pursuant to 28 U.S.C.

§ 156(c), section 105 of the Bankruptcy Code, Bankruptcy Rule 2002, and the Claims and Noticing

Agent Retention Protocol.  The Court is permitted to appoint Verita as Claims and Noticing Agent

in these chapter 11 cases.  Pursuant to 28 U.S.C. § 156(c), this Court is authorized to utilize agents

and facilities other than the Clerk for the administration of bankruptcy cases.  Specifically,

28 U.S.C. § 156(c) provides, in relevant part, as follows:

> Any court may utilize facilities or services, either on or off the court's premises,
> which pertain to the provision of notices, dockets, calendars and other
> administrative information to parties in cases filed under the provisions of title 11,
> United States Code, where the costs of such facilities or services are paid for out of
> the assets of the estate and are not charged to the United States.

28 U.S.C. § 156(c).

23.      Further, section 105(a) of the Bankruptcy Code provides, in pertinent part, as

follows:

> The court may issue any order, process, or judgment that is necessary or appropriate
> to carry out the provisions of this title.  No provision of this title providing for the
> raising of an issue by a party in interest shall be construed to preclude the court
> from, sua sponte, taking any action or making any determination necessary or
> appropriate to enforce or implement court orders or rules, or to prevent an abuse of
> process.

11 U.S.C. § 105(a).

24.      Moreover, Bankruptcy Rule 2002, which regulates the notices that must be

provided to creditors and other parties-in-interest in a bankruptcy case, provides that the Court

may direct that a person other than the Clerk give notice of the various matters described therein.

*See* Fed. R. Bankr. P. 2002.

25.     In view of the substantial number of parties receiving notice in these chapter 11 cases and the significant number of anticipated claimants, the Debtors submit that the appointment of Verita as the Claims and Noticing Agent is in the best interests of the Debtors and their estates and will serve to maximize the value of the Debtors' estates for all stakeholders.

**II.      Relief Effective as of the Petition Date Is Appropriate.**

26.     Pursuant to the Debtors' request, Verita has agreed to serve as the Claims and Noticing Agent on and after the Petition Date with assurances that the Debtors would seek approval of its employment and retention effective as of the Petition Date, so that Verita may be compensated for its services prior to the approval of this Application.  Such relief is appropriate in light of 28 U.S.C. § 156(c) and the Claims and Noticing Agent Retention Protocol and in order to relieve the Court and the Clerk of the heavy administrative burdens these chapter 11 cases stand to impose.  The Debtors believe that no party-in-interest will be prejudiced by granting the employment effective as of the Petition Date, as provided in this Application, because Verita has provided and continues to provide valuable services to the Debtors' estates in the interim period. In light of the number of anticipated claimants and the complexity of these chapter 11 cases, the Debtors submit that the appointment of a Claims and Noticing Agent is in the best interests of the Debtors' estates, their creditors, and all parties-in-interest.

<u>**The Requirements of Bankruptcy Rule 6003(a) Are Satisfied**</u>

27.     Bankruptcy Rule 6003(a) empowers a court to grant certain relief within the first twenty-one (21) days after the Petition Date to the extent that such "relief is needed to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003(a).  As set forth in this Motion, an immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations.  Failure to receive the requested relief during the first twenty-one (21) days of these

14

chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and cause immediate and irreparable harm.  The requested relief is necessary for the Debtors to operate their business in the ordinary course, preserve the ongoing value of their operations, and maximize value of their estates for the benefit of all stakeholders.  The Debtors have demonstrated that the requested relief is "needed to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003(a), and the Court should grant the requested relief.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

28.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h) for the reasons set forth herein.

### No Prior Request

29.     No prior request for the relief sought in this Application has been made to this Court or any other court.

### Notice

30.     The Debtors will provide notice of this Application to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) the holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (c) co-counsel to the Sponsor and the Plan Sponsor; (d) each of the Agent/Trustees; (e) counsel to the ABL Agent; (f) counsel to the Secured Ad Hoc Group; (g) the office of the attorney general for each of the states in which the Debtors operate; (h) the United States Attorney's Office for the District of New Jersey; (i) the Internal Revenue Service; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**WHEREFORE**, the Debtors request that the Court enter the Order, in substantially the form submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: January 29, 2026

| | |
|---|---|
| /s/ *Michael D. Sirota* | |
| **COLE SCHOTZ P.C.** | **KIRKLAND & ELLIS LLP** |
| Michael D. Sirota, Esq. | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Warren A. Usatine, Esq. | Steven N. Serajeddini, P.C. (*pro hac vice* pending) |
| Felice R. Yudkin, Esq. | 601 Lexington Avenue |
| Court Plaza North, 25 Main Street | New York, New York 10022 |
| Hackensack, New Jersey 07601 | Telephone: (212) 446-4800 |
| Telephone: (201) 489-3000 | Facsimile: (212) 446-4900 |
| Email: msirota@coleschotz.com | Email: steven.serajeddini@kirkland.com |
| wusatine@coleschotz.com | |
| fyudkin@coleschotz.com | -and- |
| | |
| *Proposed Co-Counsel to the Debtors and* | **KIRKLAND & ELLIS LLP** |
| *Debtors in Possession* | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| | Rachael M. Bentley (*pro hac vice* pending) |
| | Peter A. Candel (*pro hac vice* pending) |
| | Ashley L. Surinak (*pro hac vice* pending) |
| | 333 West Wolf Point Plaza |
| | Chicago, Illinois 60654 |
| | Telephone: (312) 862-2000 |
| | Facsimile: (312) 862-2200 |
| | Email: rachael.bentley@kirkland.com |
| | peter.candel@kirkland.com |
| | ashley.surinak@kirkland.com |
| | |
| | *Proposed Co-Counsel to the Debtors and* |
| | *Debtors in Possession* |

**Exhibit A**

**Proposed Order**

| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
|---|---|
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| In re:<br><br>MULTI-COLOR CORPORATION, *et al.*<br><br>     Debtors.[1] | Chapter 11<br><br>Case No. 26-10910 (MBK)<br><br>(Joint Administration Requested) |

### ORDER (I) AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN KURTZMAN CARSON CONSULTANTS, LLC DBA VERITA GLOBAL AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered three (3) through eleven (11), is

**ORDERED**.

---

[1]   The last four digits of Debtor Multi-Color Corporation's tax identification number are 5853.  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.veritaglobal.net/MCC.  The location of the Debtors' service address for purposes of these chapter 11 cases is:  3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
steven.serajeddini@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Rachael M. Bentley (*pro hac vice* pending)
Peter A. Candel (*pro hac vice* pending)
Ashley L. Surinak (*pro hac vice* pending)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
rachael.bentley@kirkland.com
peter.candel@kirkland.com
ashley.surinak@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

(Page | 3)

Debtors:            MULTI-COLOR CORPORATION, *et al*.
Case No.           26-10910 (MBK)
Caption of Order:  Order (I) Authorizing the Debtors to Employ and Retain Kurtzman Carson
                   Consultants, LLC DBA Verita Global as Claims and Noticing Agent
                   Effective as of the Petition Date and (II) Granting Related Relief

Upon the *Debtors' Application for Entry of an Order (I) Authorizing the Debtors to Employ and Retain Kurtzman Carson Consultants, LLC dba Verita Global as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief* (the "Application"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") (a) authorizing the Debtors to employ and retain Kurtzman Carson Consultants, LLC dba Verita Global ("Verita") as claims and noticing agent (the "Claims and Noticing Agent") in the Debtors' chapter 11 cases effective as of the Petition Date, pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2002(f), and the Court's *General Order Governing Protocol for the Retention of Claims and Noticing Agents Under 28 U.S.C. § 156(c) Pending Adoption of Local Rule* (the "Claims and Noticing Agent Retention Protocol"), and (b) granting related relief, all as more fully set forth in the Application; and upon the First Day Declaration, the Gershbein Declaration, and the Gabel Declaration; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.); and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that the Debtors' notice of the Application was

---

[2]   Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Application.

(Page | 4)

| | |
|---|---|
| Debtors: | MULTI-COLOR CORPORATION, *et al*. |
| Case No. | 26-10910 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Employ and Retain Kurtzman Carson Consultants, LLC DBA Verita Global as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief |

appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.      The Application is GRANTED as set forth herein.

2.      Any objections to the entry of this Order, to the extent not withdrawn or settled, are overruled.

3.      Notwithstanding the terms of the Services Agreement attached hereto as **Exhibit 1**, the Application is approved solely as set forth in this Order.

4.      The Debtors are authorized pursuant to 28 U.S.C. § 156(c) to retain Verita as Claims and Noticing Agent, effective as of the Petition Date under the terms of the Services Agreement, and Verita is authorized and directed to perform noticing services and to receive, maintain, record, and otherwise administer the proofs of claim filed in these chapter 11 cases, and all related tasks, all as described in the Application.

5.      Any services Verita will provide relating to the Debtors' Schedules and Statements shall be limited to administrative and ministerial services.  The Debtors shall remain responsible for the content and accuracy of their Schedules and Statements.

6.      Verita shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these chapter 11 cases and is authorized and

(Page | 5)
Debtors:           MULTI-COLOR CORPORATION, *et al*.
Case No.           26-10910 (MBK)
Caption of Order:  Order (I) Authorizing the Debtors to Employ and Retain Kurtzman Carson
                   Consultants, LLC DBA Verita Global as Claims and Noticing Agent
                   Effective as of the Petition Date and (II) Granting Related Relief

directed to maintain official claims registers for each of the Debtors, to provide public access to every proof of claim unless otherwise ordered by the Court and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

7.      Verita is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim.

8.      Verita is authorized to take such other action to comply with all duties set forth in the Application and this Order.

9.      Verita shall comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

10.     Without further order of this Court, the Debtors are authorized to compensate Verita in accordance with the terms and conditions of the Services Agreement upon receipt of reasonably detailed monthly invoices setting forth the services provided by Verita and the rates charged for each, and to reimburse Verita for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Verita to file fee applications or otherwise seek Court approval for the payment of compensation of its services and reimbursement of its expenses.

11.     Verita shall maintain records of all services performed, showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtors, the U.S. Trustee, counsel for the Debtors, counsel for any statutory committee appointed in these chapter 11 cases, and any party-in-interest that specifically requests service of the monthly invoices.

(Page | 6)

| | |
|---|---|
| Debtors: | MULTI-COLOR CORPORATION, *et al*. |
| Case No. | 26-10910 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Employ and Retain Kurtzman Carson Consultants, LLC DBA Verita Global as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief |

12.     The parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Services Agreement or monthly invoices, provided that parties may seek resolution of the matter from the Court if resolution is not achieved.

13.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, Verita's fees and expenses incurred in connection with the Claims and Noticing Services shall be an administrative expense of the Debtors' chapter 11 estates.

14.     Verita may first apply its retainer to all prepetition invoices and, thereafter, have the retainer replenished to the original retainer amount and, thereafter, to hold the retainer under the Services Agreement during the chapter 11 cases as security for the payment of fees and expenses incurred under the Services Agreement.

15.     The Debtors are authorized to indemnify Verita under the terms of the Services Agreement, as modified by this Order.

16.     Verita shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Services Agreement unless such services and the indemnification, contribution, or reimbursement therefore is approved by this Court.

17.     Notwithstanding anything to the contrary in the Services Agreement, the Debtors shall have no obligation to indemnify Verita, or provide contribution or reimbursement to Verita, for any losses, claims, damages, judgments, liabilities, or expense that are either:  (a) judicially determined (the determination having become final) to have arisen from Verita's gross negligence, willful misconduct, bad faith, self-dealing, or fraud; (b) for a contractual dispute in which the Debtors allege the breach of Verita's contractual obligations, if this Court determines that

(Page | 7)

| | |
|---|---|
| Debtors: | MULTI-COLOR CORPORATION, *et al.* |
| Case No. | 26-10910 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Employ and Retain Kurtzman Carson Consultants, LLC DBA Verita Global as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief |

indemnification, contribution, or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (c) settled prior to a judicial determination under subsection (a) or (b), but determined by this Court, after notice and a hearing, to be a claim or expense for which Verita should not receive indemnity, contribution, or reimbursement under the terms of the Services Agreement, as modified by this Order.

18.     If, before the earlier of the entry of an order (a) confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal) or (b) closing these chapter 11 cases, Verita believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, or reimbursement obligations under the Services Agreement (as modified by this Order), including, without limitation, the advancement of defense costs, Verita must file an application in this Court, and the Debtors may not pay any such amounts to Verita before the entry of an order by this Court approving such application and the payment requested therein.  This paragraph is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by Verita for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Verita.  All parties-in-interest shall retain the right to object to any demand by Verita for indemnification, contribution, or reimbursement.

19.     In the event Verita is unable to provide the Claims and Noticing Services, Verita shall immediately notify the Clerk and Debtors' counsel and, upon approval of this Court, cause

(Page | 8)

Debtors:          MULTI-COLOR CORPORATION, *et al*.

Case No.          26-10910 (MBK)

Caption of Order:   Order (I) Authorizing the Debtors to Employ and Retain Kurtzman Carson
                    Consultants, LLC DBA Verita Global as Claims and Noticing Agent
                    Effective as of the Petition Date and (II) Granting Related Relief

---

all original proofs of claim and computer information to be turned over to another claims and

noticing agent with the advice and consent of the Clerk and Debtors' counsel.

20.     Verita shall not cease providing claims processing services during these chapter 11

cases for any reason, including nonpayment, without an order of the Court authorizing Verita to

do so.

21.     The Debtors may submit a separate retention application, pursuant to section 327(a)

of the Bankruptcy Code or any applicable law, for work that is to be performed by Verita but is

not specifically authorized by this Order.

22.     Notwithstanding anything to the contrary in the Application, Gershbein

Declaration, or Services Agreement, in the event that any of these chapter 11 cases convert to a

case under chapter 7 of the Bankruptcy Code, the chapter 7 trustee appointed to such case or cases

shall have no obligation to continue the engagement of Verita.

23.     Verita declares that it does not now have, nor has it ever had any contract or

agreement with XClaim Inc. or with any other party under which Verita provides, provided, or

will provide exclusive access to claims data and/or under which Verita would be compensated for

claims data made available by Verita.

24.     Notwithstanding the Application, the Gershbein Declaration, the Gabel

Declaration, or any term in the Services Agreement to the contrary, during the chapter 11 cases,

any limitation of liability including, but not limited to, paragraph VIII of the Services Agreement

shall be of no force or effect.

(Page | 9)

| | |
|---|---|
| Debtors: | MULTI-COLOR CORPORATION, *et al*. |
| Case No. | 26-10910 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Employ and Retain Kurtzman Carson Consultants, LLC DBA Verita Global as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief |

25.  Notwithstanding the Application, the Gershbein Declaration, the Gabel Declaration, or any term in the Services Agreement to the contrary, including paragraph II(A) thereto, Verita shall provide at least thirty (30) days' notice of any increases in its billing rates, subject to any party-in-interest's right to object to any such increases.

26.  Notwithstanding the Application, the Gershbein Declaration, the Gabel Declaration, or any term in the Services Agreement to the contrary, the payment of invoices upon receipt in paragraph II(E) of the Services Agreement shall not be applicable during the pendency of these chapter 11 cases and the requirement for the Debtors to provide twenty (20) business days' written notice if an invoice is disputed in paragraph II(E) of the Services Agreement shall not be applicable.

27.  Notwithstanding the Application, the Gershbein Declaration, the Gabel Declaration, or any term in the Services Agreement to the contrary, solely during the pendency of these chapter 11 cases, if any advance payment of an invoice is reasonably expected to exceed $10,000 in any single month as set forth in paragraph II(E) of the Services Agreement, at the time Verita requests advance payment from the Debtors, Verita shall also provide notice to the U.S. Trustee and any official committees appointed in these cases.

28.  Notwithstanding the Application, the Gershbein Declaration, the Gabel Declaration, or any term in the Services Agreement to the contrary, solely during the pendency of these chapter 11 cases, prior to any prepayment of fees and expenses for print notice and media publication as set forth in paragraph II(E) of the Services Agreement, Verita shall provide three (3) business days' notice to the U.S. Trustee and any statutory committees appointed in these cases.

(Page | 10)

Debtors:           MULTI-COLOR CORPORATION, *et al*.
Case No.           26-10910 (MBK)
Caption of Order:  Order (I) Authorizing the Debtors to Employ and Retain Kurtzman Carson
                   Consultants, LLC DBA Verita Global as Claims and Noticing Agent
                   Effective as of the Petition Date and (II) Granting Related Relief

29.     Notwithstanding the Application, the Gershbein Declaration, the Gabel Declaration, or any term in the Services Agreement to the contrary, including paragraph VI thereof, termination of Verita's retention shall only commence upon entry of an order by this Court terminating Verita's retention.

30.     In the event of any inconsistency between the Services Agreement, the Gershbein Declaration, the Gabel Declaration, or the Application and this Order, this Order shall govern.

31.     The requirements set forth in Bankruptcy Rule 6003(a) are satisfied by the contents of the Motion or otherwise deemed waived.

32.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

33.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, the terms and conditions of this Order shall be effective and enforceable immediately upon entry hereof.

34.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application, and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

35.     The Debtors shall serve by email (if available) or by first class mail, a copy of this Order and the Application on all parties required to receive such service pursuant to Local Rule 9013-5(f).

36.     Any party may move for modification of this Order in accordance with Local Rule 9013-5(e).

(Page | 11)

| | |
|---|---|
| Debtors: | MULTI-COLOR CORPORATION, *et al*. |
| Case No. | 26-10910 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Employ and Retain Kurtzman Carson Consultants, LLC DBA Verita Global as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief |

37.     Notwithstanding the Application, the Gershbein Declaration, the Gabel Declaration, or any term in the Services Agreement to the contrary, this Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**Exhibit 1**

**Services Agreement**

Docusign Envelope ID: D66F9B3D-F71F-49F1-A7A2-A506AEBEB8FB

**VERITA AGREEMENT FOR SERVICES**

This Agreement is entered into as of the 14th day of January 2026, between Labels Buyer, LLC (together with its affiliates and subsidiaries, the "Company"),[1] and Kurtzman Carson Consultants, LLC dba Verita Global (together with its affiliates and subcontractors, "Verita"). In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**Terms and Conditions**

I.    SERVICES

A.    Verita agrees to provide the Company with consulting services regarding noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and any other services agreed upon by the parties or otherwise required by applicable law, government regulations or court rules or orders.

B.    Verita further agrees to provide (i) computer software support and training in the use of the support software, (ii) Verita's standard reports as well as consulting and programming support for the Company requested reports, (iii) program modifications, (iv) data base modifications, and/or (v) other features and services in accordance with the fees outlined in a pricing schedule provided to the Company (the "Verita Fee Structure").

C.    Without limiting the generality of the foregoing, Verita may, upon request by the Company, (i) provide a communications plan including, but not limited to, preparation of communications materials, dissemination of information and a call center staffed by Verita and/or (ii) provide confidential on-line workspaces or virtual data rooms and publish documents to such workspaces or data rooms (which publication shall not be deemed to violate the confidentiality provisions of this Agreement).

D.    The price listed for each service in the Verita Fee Structure represents a bona fide proposal for such services, which may be accepted in whole or in part.  Services will be provided when requested by the Company or required by applicable law, government regulations or court rules or orders.  Services are mutually exclusive and are deemed delivered and accepted by the Company when provided by Verita.

E.    The Company acknowledges and agrees that Verita will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to the services being provided under this Agreement.  The parties agree that Verita may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.  The Company agrees and understands that Verita shall not provide the Company or any other party with any legal advice.

II.    PRICES, CHARGES AND PAYMENT

A.    Verita agrees to charge and the Company agrees to pay Verita for its services at the rates and prices set by Verita that are in effect as of the date of this Agreement and in accordance with the Verita Fee Structure.  Verita's prices are generally adjusted periodically to reflect changes in the business and economic environment and are inclusive of all charges.  Verita reserves the right to reasonably increase its

---

[1]    The term Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.

Docusign Envelope ID: D66F9B3D-F71F-49F1-A7A2-A506AEBEB8FB

**VERITA AGREEMENT FOR SERVICES**

prices, charges and rates; provided, however, any such increase shall not exceed 10% during the term of this Agreement.

B.        In addition to fees and charges for services, the Company agrees to pay Verita's reasonable and documented transportation, lodging, and meal expenses incurred in connection with services provided under this Agreement.

C.        In addition to all fees for services and expenses hereunder, the Company shall pay to Verita (i) any fees and charges related to, arising out of, or as a result of any error or omission made by the Company or the Company Parties, as mutually determined by Verita and the Company, and (ii) all taxes that are applicable to this Agreement or that are measured by payments made under this Agreement and are required to be collected by Verita or paid by Verita to a taxing authority.

D.        Where the Company requires services that are unusual or beyond the normal business practices of Verita, or are otherwise not provided for in the Verita Fee Structure, the cost of such services shall be charged to the Company at a competitive rate.

E.        Verita agrees to submit its invoices to the Company monthly and the Company agrees that the amount invoiced is due and payable upon the Company's receipt of the invoice. Verita's invoices will contain reasonably detailed descriptions of charges for both hourly (fees) and non-hourly (expenses) case specific charges. Where total invoice amounts are expected to exceed $10,000 in any single month and Verita reasonably believes it will not be paid, Verita may require advance payment from the Company due and payable upon demand and prior to the performance of services hereunder.  In the case of a dispute in the invoice amount, the Company shall give written notice to Verita within twenty (20) business days of receipt of the invoice by the Company.  The undisputed portion of the invoice will remain due and payable immediately upon receipt of the invoice.  Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) must be paid at least three (3) days in advance of those fees and expenses being incurred.

F.        In the event that the Company files for protection pursuant to chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Filing"), the parties intend that Verita shall be employed pursuant to 28 U.S.C. § 156(c) to the extent possible and otherwise in accordance with applicable Bankruptcy law and that all amounts due under this Agreement shall, to the extent possible, be paid as administrative expenses of the Company's chapter 11 estate.  As soon as practicable following a Chapter 11 Filing (and otherwise in accordance with applicable law and rules and orders of the Bankruptcy Court), the Company shall cause pleadings to be filed with the Bankruptcy Court seeking entry of an order or orders approving this Agreement (the "Retention Order").  The form and substance of the pleadings and the Retention Order shall be reasonably acceptable to Verita and the Company.  If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Verita will continue to be paid for its services in accordance with the terms of this Agreement.  The parties recognize and agree that if there is a conflict between the terms of this Agreement and the terms of the Retention Order, the terms of the Retention Order shall govern during the chapter 11 or other proceeding.

G.        To the extent permitted by applicable law, Verita shall receive a retainer in the amount of $40,000 (the "Retainer") that may be held by Verita as security for the Company's payment obligations under the Agreement.  The Retainer is due upon execution of this Agreement.  In the event of a Chapter 11 Filing, Verita will first apply the Retainer to all pre-petition invoices, and thereafter, will have the Retainer replenished to the original amount.  Verita shall be entitled to hold the Retainer until the termination of the

**VERITA AGREEMENT FOR SERVICES**

Agreement.  Following termination of the Agreement, Verita shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

III.    RIGHTS OF OWNERSHIP

A.    The parties understand that the software programs and other materials furnished by Verita pursuant to this Agreement and/or developed during the course of this Agreement by Verita are the sole property of Verita.  The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation.  The Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.    The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or Verita's performance of its services developed or utilized during the term of this Agreement by Verita shall be the exclusive property of Verita.  Fees and expenses paid by the Company do not vest in the Company any rights in such property, it being understood that such property is only being made available for the Company's use during and in connection with the services provided by Verita under this Agreement.

IV.    NON-SOLICITATION

The Company agrees that neither it nor its subsidiaries shall directly or indirectly solicit for employment, employ or otherwise retain employees of Verita with whom the Company has had contact with during the term of this Agreement and for a period of twelve (12) months after termination of this Agreement unless Verita provides prior written consent to such solicitation or retention; *provided*, *however*, that the Company shall not be prohibited from soliciting or employing any such person through any recruiting firm that has not been directed to target the Company's employees or as a result of general advertisements for employment.

V.    CONFIDENTIALITY

Each of Verita and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.

VI.    SUSPENSION OF SERVICE AND TERMINATION

A.    This Agreement shall remain in force until terminated or suspended by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined herein).  As used herein, the term "Cause" means (i) gross negligence or willful misconduct of Verita that causes serious and material harm to the Company's reorganization under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Verita invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of invoices or unpaid services in excess of the retainer held by Verita where Verita reasonably believes it will not be paid.

**VERITA AGREEMENT FOR SERVICES**

B.      In the event that this contract is terminated, regardless of the reason for such termination, Verita shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions and Verita shall provide all necessary staff, services and assistance required for an orderly transfer.  The Company agrees to pay for such services in accordance with Verita's then existing prices for such services.  If such termination occurs following entry of the Retention Order, the Company shall immediately seek entry of an order (in form and substance reasonably acceptable to Verita) that discharges Verita from service and responsibility in the Company's bankruptcy case.

C.      Subject to the confidentiality provisions herein, any data, programs, storage media or other materials furnished by the Company to Verita or received by Verita in connection with the services provided under the terms of this Agreement may be retained by Verita until the services provided are paid for, or until this Agreement is terminated with the services paid in full.  The Company shall remain liable for fees and expenses in a commercially reasonable amount determined by the parties in good faith imposed under this Agreement as a result of data or physical media maintained or stored by Verita.  Verita shall dispose of the data and media in the manner requested by the Company.  The Company agrees to pay Verita for reasonable expenses incurred as a result of the disposition of data or media.  If the Company has not utilized Verita's services under this Agreement for a period of at least ninety (90) days, Verita may dispose of the data or media, and be reimbursed by the Company for the expense of such disposition, after giving the Company thirty (30) days' written notice (email to suffice).  Notwithstanding any term herein to the contrary, following entry of the Retention Order, the disposition of any data or media by Verita shall be in accordance with any applicable instructions from the clerk of the Bankruptcy Court, local Bankruptcy Court rules and orders of the Bankruptcy Court.

VII.    SYSTEM IMPROVEMENTS

Verita strives to provide continuous improvements in the quality of service to its clients.  Verita, therefore, reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the Verita data center serving the Company, so long as any such changes do not materially interfere with ongoing services provided to the Company in connection with the Company's chapter 11 case.

VIII.   LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.      The Company shall indemnify and hold Verita, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to Verita's performance under this Agreement. Such indemnification shall exclude Losses resulting from Verita's gross negligence or willful misconduct.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Indemnified Party.  The Company shall notify Verita in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that the Company becomes aware of with respect to the services provided by Verita under this Agreement.  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

B.      Except as provided herein, Verita's liability to the Company or any person making a claim through or under the Company for any Losses of any kind, even if Verita has been advised of the possibility of such

**VERITA AGREEMENT FOR SERVICES**

Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of Verita, shall be limited to the total amount billed or billable to the Company for the portion of the particular work which gave rise to the alleged Loss.  In no event shall either party be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.

C.    The Company is responsible for the accuracy of the programs, data and information it or any Company Party submits for processing to Verita and for the output of such information.  Verita does not verify information provided by the Company and, with respect to the preparation of schedules and statements, all decisions are at the sole discretion and direction of the Company.  The Company reviews and approves all schedules and statements filed on behalf of, or by, the Company; Verita bears no responsibility for the accuracy or contents therein.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs and data submitted by the Company to Verita.

D.    The Company agrees that except as expressly set forth herein, Verita makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

IX.    FORCE MAJEURE

Verita will not be liable for any delay or failure in performance when such delay or failure arises from circumstances beyond its reasonable control, including without limitation acts of God, acts of government in its sovereign or contractual capacity, acts of public enemy or terrorists, acts of civil or military authority, war, riots, civil strife, terrorism, blockades, sabotage, rationing, embargoes, epidemics, pandemics, outbreaks of infectious diseases or any other public health crises, earthquakes, fire, flood, other natural disaster, quarantine or any other employee restrictions, power shortages or failures, utility or communication failure or delays, labor disputes, strikes, or shortages, supply shortages, equipment failures, or software malfunctions.

X.    INDEPENDENT CONTRACTORS

The Company and Verita are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

XI.    NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or electronic mail or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

| | |
|---|---|
| KCC/Verita Global, LLC | Labels Buyer, LLC |
| 222 N. Pacific Coast Highway, 3rd Floor | 3284 Northside Parkway NW, Suite 400 |
| El Segundo, CA  90245 | Atlanta, Georgia 30327 |
| Attn:  Drake D. Foster | Attn:  Linn Harson |
| Tel: (310) 823-9000 | Tel: (513) 317-6232 |
| Fax: (310) 823-9133 | Email: linn.harson@mcclabel.com |
| Email: dfoster@veritaglobal.com | |

Docusign Envelope ID: D66F0B3D-F71F-49F1-A7A2-A506AEBEB8FB

## VERITA AGREEMENT FOR SERVICES

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

### XII.    APPLICABLE LAW

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

### XIII.    ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, other agreements, and communications oral and written between the parties relating to the subject matter of this Agreement.  The Company represents that it has the authority to enter into this Agreement, and the Agreement is non-dischargeable under any applicable statute or law.  If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.  This Agreement may be modified only by a written instrument duly executed by an authorized representative of the Company and an officer of Verita.

### XIV.    COUNTERPARTS; EFFECTIVENESS

This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties, which delivery may be made by exchange of copies of the signature page by facsimile or electronic mail.

### XV.    ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, such consent not to be unreasonably withheld or delayed, with the exception that this Agreement can be assigned without written consent by Verita to a wholly-owned subsidiary or affiliate of Verita.

**VERITA AGREEMENT FOR SERVICES**

XVI.    ATTORNEYS' FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants, LLC dba Verita Global

*Evan J. Gershbein*
—41878F97BE7747D...

BY: Evan Gershbein                    DATE:    14-Jan-2026 | 1:18:23 PM EST
TITLE: EVP, Corporate Restructuring Services

Labels Buyer, LLC

—AFA5A2696F36419...                    1/14/2026

BY: Linn Harson                    DATE:
TITLE: Chief Legal Officer

**Exhibit B**

**Gershbein Declaration**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
steven.serajeddini@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Rachael M. Bentley (*pro hac vice* pending)
Peter A. Candel (*pro hac vice* pending)
Ashley L. Surinak (*pro hac vice* pending)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
rachael.bentley@kirkland.com
peter.candel@kirkland.com
ashley.surinak@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

---

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| MULTI-COLOR CORPORATION, *et al.*, | Case No. 26-10910 (MBK) |
| Debtors.[1] | (Joint Administration Requested) |

---

[1]   The last four digits of Debtor Multi-Color Corporation's tax identification number are 5853.  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.veritaglobal.net/MCC.  The location of the Debtors' service address for purposes of these chapter 11 cases is:  3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327.

**DECLARATION OF
EVAN GERSHBEIN IN SUPPORT OF DEBTORS'
APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING
THE DEBTORS TO EMPLOY AND RETAIN KURTZMAN CARSON
CONSULTANTS, LLC DBA VERITA GLOBAL AS CLAIMS AND NOTICING AGENT
EFFECTIVE AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF**

I, Evan Gershbein, being duly sworn, state the following under penalty of perjury and that the following is true to the best of my knowledge, information and belief:

1.      I am an Executive Vice President for Kurtzman Carson Consultants, LLC dba Verita Global ("Verita"), whose offices are located at 222 N. Pacific Coast Highway, 3rd Floor, El Segundo, CA 90245.  Except as otherwise noted, the matters set forth herein are made of my own personal knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2.      I submit this declaration (this "Declaration") in support of the *Debtors' Application for Entry of an Order (I) Authorizing the Debtors to Employ and Retain Kurtzman Carson Consultants, LLC dba Verita Global as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief*, which was filed contemporaneously herewith (the "Application").[2]

3.      I am not being specifically compensated for this testimony other than through payments received by Verita as a professional retained by the Debtors.  I am over the age of 18 years and authorized to submit this Declaration on behalf of Verita.

**Verita's Qualifications as Noticing and Claims Agent**

4.      Verita comprises leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Verita's professionals

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases. Verita has acted as official claims and noticing agent in many large bankruptcy cases in this district and in other districts nationwide, including: *In re United Site Servs., Inc.*, No. 25-23630 (MBK) (Bankr. D.N.J. Dec. 30, 2025); *In re Marelli Auto. Lighting USA LLC*, No. 25-11034 (CTG) (Bankr. D. Del. Aug. 4, 2025); *In re Powin, LLC*, No. 25-16137 (MBK) (Bankr. D.N.J. June 13, 2025); *In re CTN Holdings, Inc.*, No. 25-10603 (TMH) (Bankr. D. Del. Apr. 3, 2025); *In re Leisure Invs., Holdings LLC*, No. 25-10606 (LSS) (Bankr. D. Del. Apr. 2, 2025); *In re F21 OpCo, LLC*, No. 25-10469 (MFW) (Bankr. D. Del. Mar. 18, 2025); *In re Village Roadshow Ent. Grp. USA Inc.*, No. 25-10475 (TMH) (Bankr. D. Del. Mar. 18, 2025); *In re Dynamic Aerostructure LLC*, No. 25-10292 (LSS) (Bankr. D. Del. Feb. 2, 2025); *In re Gritstone Bio, Inc.*, No. 24-12305 (KBO) (Bankr. D. Del. Oct. 16, 2024); *In re Fulcrum Bioenergy, Inc.*, No. 24-12008 (TMH) (Bankr. D. Del. Sept. 12, 2024); *In re QLess Inc.*, No. 24-11395 (BLS) (Bankr. D. Del. June 21, 2024); *In re Fisker Inc.*, No. 24-11390 (TMH) (Bankr. D. Del. June 19, 2024); *In re Supply Source Enters., Inc.*, No. 24-11054 (BLS) (Bankr. D. Del. June 13, 2024); *In re ProSomnus, Inc.*, No. 24-10972 (JTD) (Bankr. D. Del. May 9, 2024); *In re Sticky's Holding LLC*, No. 24-10856 (JKS) (Bankr. D. Del. Apr. 26, 2024); *In re SC Healthcare Holding, LLC*, No. 24-10443 (TMH) (Bankr. D. Del. Mar. 22, 2024); *In re Invitae Corp.*, No. 24-11362 (MBK) (Bankr. D.N.J. Feb. 16, 2024); *In re Cano Health, Inc.*, No. 24-10164 (KBO) (Bankr. D. Del. Feb. 6, 2024); *In re InVivo Therapeutics Corp.*, No. 24-10137 (MFW) (Bankr. D. Del. Feb. 6, 2024); *In re AN Glob., LLC*, No. 23-11294 (JKS) (Bankr. D. Del. Aug. 29, 2023); *In re Proterra Inc*, No. 23-11120 (BLS) (Bankr. D. Del. Aug. 7, 2023); *In re Cyxtera Techs., Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J. June 6, 2023); *In re PGX Holdings, Inc.*, No. 23-10718 (CTG) (Bankr. D. Del. June 6, 2023); *In re Plastiq Inc.*, No. 23-10671 (BLS)

3

(Bankr. D. Del. May 25, 2023); *In re Christmas Tree Shops, LLC*, No. 23-10576 (TMH) (Bankr. D. Del. May 9, 2023); *In re Structurlam Mass Timber U.S., Inc.,* No. 23-10497 (CTG) (Bankr. D. Del. Apr. 26, 2023); *In re CBC Restaurant Corp*, No. 23-10245 (KBO) (Bankr. D. Del. Mar. 3, 2023); *In re Starry Grp. Holdings, Inc.*, No. 23-10219 (KBO) (Bankr. D. Del. Feb. 22, 2023); *In re Stanadayne LLC*, No. 23-10207 (JTD) (Bankr. D. Del. Feb. 22, 2023); *In re Tricida, Inc.*, No. 23-10024 (JTD) (Bankr. D. Del. Jan. 13, 2023).[3]

5.      As agent and custodian of the Court records pursuant to 28 U.S.C. § 156(c), Verita will perform, at the request of the Clerk, the noticing and claims related services specified in the Application and the Services Agreement, and at the Debtors' request, such other noticing, claims, administrative, technical, and support services specified in the Application and the Services Agreement attached as Exhibit 1 to the Order.

6.      Prior to the Petition Date, the Debtors provided Verita a retainer in the amount of $40,000.  Verita seeks to first apply the retainer to all prepetition invoices and, thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Services Agreement during the chapter 11 cases as security for the payment of fees and expenses incurred under the Services Agreement.

7.      In connection with its retention as Claims and Noticing Agent, Verita represents, among other things, the following:

(a)     Verita is not a creditor, equity security holder, or insider of the Debtors;

(b)     Verita will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent;

---

[3]    Because of the voluminous nature of the orders cited herein, they are not attached to the Application.  Copies of these orders, however, are available on request of the Debtors' proposed counsel.

(c)    by accepting employment in these chapter 11 cases, Verita waives any right to receive compensation from the United States government in connection with these chapter 11 cases;

(d)    in its capacity as the Claims and Noticing Agent, Verita will not be an agent of the United States and will not act on behalf of the United States;

(e)    Verita will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent;

(f)    Verita is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)    in its capacity as the Claims and Noticing Agent in these chapter 11 cases, Verita will not intentionally misrepresent any fact to any person;

(h)    Verita shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)    Verita will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)    none of the services provided by Verita as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk's office.

8.    Although the Debtors do not propose to retain Verita under section 327 of the Bankruptcy Code (such retention will be sought by separate application), I caused to be submitted for review by our conflicts system the names of all the potential parties-in-interest (the "Potential Parties-in-Interest") in these chapter 11 cases. The list of Potential Parties-in-Interest was provided by the Debtors, and the results of the conflict check were compiled and reviewed by Verita professionals under my supervision. At this time, and as set forth in further detail herein, Verita is not aware of any relationship that would present a disqualifying conflict of interest.

9.    To the best of my knowledge, none of Verita's employees are related to bankruptcy judges in the District of New Jersey, the Office of the U.S. Trustee for Region 3, any attorney known by Verita to be employed in the Office of the U.S. Trustee serving the District of New Jersey, or are equity security holders of the Debtors.

5

10.     To the best of my knowledge and based solely upon information provided to me by the Debtors, and except as provided herein, neither Verita, nor any of its professionals, has any materially adverse connection to the Debtors, their creditors or other relevant parties. Verita may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Verita serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for another chapter 11 debtor.

11.     On May 1, 2023, funds affiliated with GCP Capital Partners LLC ("GCP") indirectly acquired a controlling equity interest in Verita (the "Acquisition"). Pursuant to the Acquisition, an indirect, non-controlling, beneficial minority interest in Verita was acquired by funds affiliated with J.P. Morgan Investment Management Inc. ("JPMIM"). GCP is a middle-market private equity investment firm based in New York. GCP has made investments in a number of industries, including tech-enabled business services, payments, and select financials. JPMIM is a U.S. registered investment adviser. Designees of GCP are members of the Board of Managers (the "Board") of Verita's ultimate parent company, KCC Parent LLC ("Parent"). Parent wholly owns Verita Intermediate, LLC, which in turn wholly owns Verita Global, LLC, which in turn wholly owns Verita Global Services, LLC, which in turn wholly owns Verita. One representative of JPMIM is entitled to attend and observe (but not vote) at all meetings of the Board, but no designee of JPMIM is a member of the Board.

12.     Verita searched all entities listed in the list of Potential Parties-in-Interest against an internal database that includes (i) Verita's parent entities, affiliates, and subsidiaries and (ii) GCP, GCP's funds, and each such fund's respective portfolio companies and investments as set forth in the list most recently provided to Verita by GCP. Based solely on the foregoing search, Verita has determined, to the best of its knowledge, that there are no material connections. JPMIM

6

is listed as a secured creditor on the list of Potential Parties-In-Interest. Funds managed by JPMIM who are secured creditors of the Debtors are not the same funds that invest in Verita.

13. To the extent Verita learns of any other material connections between the funds or investments included in the above-described conflicts search and the Debtor, Verita will promptly file a supplemental disclosure. In addition, Verita may have had, may currently have, or may in the future have business relationships unrelated to the Debtors with one or more GCP or JPMIM entities including, among others, portfolio companies of GCP.

14. Verita is party to a credit agreement under which the private debt investment business of PGIM, Inc. ("PGIM") is a party and under which certain funds and subsidiaries of Prudential Financial, Inc. act as lenders. PGIM is an investment adviser registered with the U.S. Securities and Exchange Commission.

15. Verita has and will continue to represent clients in matters unrelated to these chapter 11 cases. In addition, Verita and its personnel have and will continue to have relationships in the ordinary course of its business with certain vendors, professionals and other parties-in-interest that may be involved in the Debtors' chapter 11 cases. Verita may also provide professional services to entities or persons that may be creditors or parties-in-interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

16. Verita may have relationships with other professionals to be retained by the Debtors. Certain former partners and associates of Kirkland & Ellis LLP ("K&E"), proposed counsel to the Debtors, currently are employed by Verita. Albert Kass, Verita's Senior Executive Vice President of Corporate Restructuring Services, is a former K&E associate. Beth Friedman, a Senior Director with Verita's Corporate Restructuring Services, is a former K&E Restructuring

7

Department Coordinator. Adam Gorman, a Director with Verita's Corporate Restructuring Services, is a former K&E project assistant. None of these employees' work at K&E was related to the Debtors or these chapter 11 cases.

17. Based on the foregoing, I believe that Verita is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged. Moreover, to the best of my knowledge and belief, neither Verita nor any of its employees hold or represent any interest materially adverse to the Debtors' estates with respect to any matter upon which Verita is to be engaged.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on January 29, 2026

/s/ *Evan Gershbein*
Evan Gershbein
Executive Vice President
Kurtzman Carson Consultants LLC dba Verita Global
222 N. Pacific Coast Highway, 3rd Floor
El Segundo, California 90245

*Proposed Claims and Noticing Agent of the Debtors and Debtors in Possession*

## Exhibit C

**Gabel Declaration**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
steven.serajeddini@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Rachael M. Bentley (*pro hac vice* pending)
Peter A. Candel (*pro hac vice* pending)
Ashley L. Surinak (*pro hac vice* pending)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
rachael.bentley@kirkland.com
peter.candel@kirkland.com
ashley.surinak@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| MULTI-COLOR CORPORATION, *et al.*, | Case No. 26-10910 (MBK) |
| Debtors.[1] | (Joint Administration Requested) |

---

[1]   The last four digits of Debtor Multi-Color Corporation's tax identification number are 5853.  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.veritaglobal.net/MCC.  The location of the Debtors' service address for purposes of these chapter 11 cases is:  3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327.

**DECLARATION OF GARRETT GABEL
IN SUPPORT OF DEBTORS' APPLICATION
FOR ENTRY OF AN ORDER (I) AUTHORIZING THE
DEBTORS TO EMPLOY AND RETAIN KURTZMAN CARSON
CONSULTANTS, LLC DBA VERITA GLOBAL AS CLAIMS AND NOTICING AGENT
EFFECTIVE AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF**

I, Garrett Gabel, being duly sworn, state the following under penalty of perjury:

1.    I am the Chief Restructuring Officer of Multi-Color Corporation (together with the other above-captioned debtors and debtors in possession, the "Debtors"), whose headquarters is located at 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327. I am authorized to submit this declaration (this "Declaration") in support of the *Debtors' Application for Entry of an Order (I) Authorizing the Debtors to Employ and Retain Kurtzman Carson Consultants, LLC dba Verita Global as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief*, which was filed contemporaneously herewith (the "Application").[1]    Except as otherwise noted, all facts in this Declaration are based on my personal knowledge of the matters set forth herein, information gathered from my review of relevant documents, and information supplied to me by members of the Debtors' senior management and advisors.

2.    The Debtors have obtained and reviewed engagement proposals from at least two other Court-approved claims and noticing agents to ensure selection through a competitive process. Kurtzman Carson Consultants, LLC dba Verita Global ("Verita") was selected as the Claims and Noticing Agent after the review and competitive comparison of three proposals. Moreover, the Debtors believe, based on all engagement proposals obtained and reviewed, that Verita's rates are competitive and reasonable given Verita's quality of services and expertise.

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

3.      Based on the foregoing, I am of the opinion that it is necessary for the Debtors to employ Verita as the Claims and Noticing Agent in these chapter 11 cases and that such employment is in the best interests of the Debtors' estates.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Respectfully submitted,

Dated: January 29, 2026

/s/ Garrett Gabel
Garrett Gabel
Chief Restructuring Officer
Multi-Color Corporation