| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
|---|---|
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| In re:<br><br>MULTI-COLOR CORPORATION, *et al*<br><br>   Debtors.[1] | Chapter 11<br><br>Case No. 26-10910 (MBK)<br><br>(Jointly Administered) |

**Order Filed on February 2, 2026
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

# ORDER (I) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING, (II) CONDITIONALLY APPROVING THE DISCLOSURE STATEMENT AS CONTAINING ADEQUATE INFORMATION, (III) APPROVING RELATED DATES, DEADLINES, NOTICES, AND PROCEDURES, (IV) APPROVING THE SOLICITATION PROCEDURES AND RELATED DATES, DEADLINES, AND NOTICES, (V) CONDITIONALLY WAIVING THE REQUIREMENT THAT (A) THE US TRUSTEE CONVENE A MEETING OF CREDITORS AND (B) THE DEBTORS FILE SCHEDULES OF ASSETS AND LIABILITIES, STATEMENTS OF FINANCIAL AFFAIRS, AND RULE 2015.3 FINANCIAL REPORTS, AND (VI) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered three (3) through seventeen (17), is

**ORDERED**.

**DATED: February 2, 2026**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

---

[1] The last four digits of Debtor Multi-Color Corporation's tax identification number are 5853. A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.veritaglobal.net/MCC. The location of the Debtors' service address for purposes of these chapter 11 cases is: 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
steven.serajeddini@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Rachael M. Bentley (*pro hac vice* pending)
Peter A. Candel (*pro hac vice* pending)
Ashley L. Surinak (*pro hac vice* pending)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
rachael.bentley@kirkland.com
peter.candel@kirkland.com
ashley.surinak@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

(Page | 3)

| | |
|---|---|
| Debtors: | MULTI-COLOR CORPORATION, *et al.* |
| Case No. | 26-10910 (MBK) |
| Caption of Order: | Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Disclosure Statement as Containing Adequate Information,(III) Approving Related Dates, Deadlines, Notices, and Procedures, (IV) Approving the Solicitation Procedures and Related Dates, Deadlines, and Notices, (V) Conditionally Waiving the Requirement that (A) The U.S. Trustee Convene a Meeting of Creditors and (B) The Debtors File Schedules of Assets and Liabilities, Statements of Financial Affairs, and Rule 2015.3 Financial Reports, and (VI) Granting Related Relief |

Upon the *Debtors' Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Disclosure Statement as Containing Adequate Information, (III) Approving Related Dates, Deadlines, Notices, and Procedures, (IV) Approving the Solicitation Procedures and Related Dates, Deadlines, and Notices, (V) Conditionally Waiving the Requirements that (a) the U.S. Trustee Convene a Meeting of Creditors and (b) the Debtors File Schedules of Assets and Liabilities, Statements of Financial Affairs, and Rule 2015.3 Financial Reports, and (VI) Granting Related Relief* (the "Motion")[1] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) scheduling the Combined Hearing on the adequacy of the Disclosure Statement and confirmation of the Plan, (b) conditionally approving the Disclosure Statement as containing adequate information, (c) establishing related dates and deadlines, including the Objection Deadline, and approving related procedures, (d) approving the Solicitation Procedures, (e) approving the Solicitation Packages, (f) approving the form and manner of the Combined Hearing Notice and the Publication Notice, (g) approving the form and manner of the Ballots; (h) directing that the U.S. Trustee not convene a Creditors' Meeting under section 341(e) of the Bankruptcy Code and conditionally waiving the requirement that the Debtors

---

[1]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | MULTI-COLOR CORPORATION, *et al.* |
| Case No. | 26-10910 (MBK) |
| Caption of Order: | Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Disclosure Statement as Containing Adequate Information,(III) Approving Related Dates, Deadlines, Notices, and Procedures, (IV) Approving the Solicitation Procedures and Related Dates, Deadlines, and Notices, (V) Conditionally Waiving the Requirement that (A) The U.S. Trustee Convene a Meeting of Creditors and (B) The Debtors File Schedules of Assets and Liabilities, Statements of Financial Affairs, and Rule 2015.3 Financial Reports, and (VI) Granting Related Relief |

file Schedules, SOFAs, and 2015.3 Reports, (i) allowing the notice period for the Combined Hearing to run simultaneously, (j) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.    The Motion is granted as set forth herein.

2.    The Disclosure Statement is conditionally approved as providing Holders of Claims entitled to vote on the Plan with adequate information to make an informed judgment as to whether

4

(Page | 5)

| | |
|---|---|
| Debtors: | MULTI-COLOR CORPORATION, *et al*. |
| Case No. | 26-10910 (MBK) |
| Caption of Order: | Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Disclosure Statement as Containing Adequate Information,(III) Approving Related Dates, Deadlines, Notices, and Procedures, (IV) Approving the Solicitation Procedures and Related Dates, Deadlines, and Notices, (V) Conditionally Waiving the Requirement that (A) The U.S. Trustee Convene a Meeting of Creditors and (B) The Debtors File Schedules of Assets and Liabilities, Statements of Financial Affairs, and Rule 2015.3 Financial Reports, and (VI) Granting Related Relief |

to vote to accept or reject the Plan in accordance with section 1125(a)(1) of the Bankruptcy Code and its use in the Debtors' solicitation of acceptances of the Plan is approved, without prejudice to any objections that may be raised by any party with standing at the Combined Hearing.

3.      The Disclosure Statement (including all applicable exhibits thereto) provides Holders of Claims, Holders of Interests, and other parties in interest with sufficient notice of the injunction, exculpation, and release provisions contained in Article VIII of the Plan, in satisfaction of the requirements of Bankruptcy Rules 2002(c)(3) and 3016(b)–(c).

4.      The following Confirmation Schedule is hereby approved in its entirety (subject to modification as necessary):

| Proposed Confirmation Schedule | |
|---|---|
| **Event** | **Date / Timing** |
| Voting Record Date[2] | January 15, 2026 |
| Solicitation Commencement Date[3] | January 27, 2026, prior to the commencement of the Chapter 11 Cases |
| Petition Date | January 29, 2026 |

---

[2]     The "Voting Record Date" is the date as of which a Holder of a Claim in Class 4 and Class 5 (collectively, the "Voting Classes") must have held such Claim to cast a vote to accept or reject the Plan.

[3]     The "Solicitation Commencement Date" refers to January 27, 2026, the date on which the Debtors served and noticed the Solicitation Packages.

(Page | 6)

Debtors:         MULTI-COLOR CORPORATION, *et al*.

Case No.         26-10910 (MBK)

Caption of Order:  Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Disclosure Statement as Containing Adequate Information,(III) Approving Related Dates, Deadlines, Notices, and Procedures, (IV) Approving the Solicitation Procedures and Related Dates, Deadlines, and Notices, (V) Conditionally Waiving the Requirement that (A) The U.S. Trustee Convene a Meeting of Creditors and (B) The Debtors File Schedules of Assets and Liabilities, Statements of Financial Affairs, and Rule 2015.3 Financial Reports, and (VI) Granting Related Relief

| Proposed Confirmation Schedule | |
|---|---|
| **Event** | **Date / Timing** |
| Service of the Combined Hearing Notice and Service of the Notice of Non-Voting Status and Opt-Out Form | Three (3) calendar days after entry of the Order (on or about February 2, 2026) |
| Initial Plan Supplement Deadline | Seven (7) calendar days prior to the Objection Deadline (on or about February 24, 2026) |
| Voting Deadline and Objection Deadline | March 3, 2026, at 5:00 p.m., prevailing Eastern Time[4] |
| Deadline to File Confirmation Brief and Reply | No less than four (4) calendar days prior to the Combined Hearing pursuant to Local Rule 9013-2, at 5:00 p.m., prevailing Eastern Time |
| Deadline to File Voting Report | Three (3) calendar days prior to the Combined Hearing pursuant to Local Rule 3018-1 |
| Combined Hearing | March 17, 2026, subject to Court availability |

5.      The following New Preferred Equity Investment Schedule is hereby approved in its entirety (subject to modification as necessary):

---

4    Local Rule 3018-1(a) is hereby modified pursuant to Local Rule 1001-1(b).

6

(Page | 7)

| | |
|---|---|
| Debtors: | MULTI-COLOR CORPORATION, *et al.* |
| Case No. | 26-10910 (MBK) |
| Caption of Order: | Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Disclosure Statement as Containing Adequate Information,(III) Approving Related Dates, Deadlines, Notices, and Procedures, (IV) Approving the Solicitation Procedures and Related Dates, Deadlines, and Notices, (V) Conditionally Waiving the Requirement that (A) The U.S. Trustee Convene a Meeting of Creditors and (B) The Debtors File Schedules of Assets and Liabilities, Statements of Financial Affairs, and Rule 2015.3 Financial Reports, and (VI) Granting Related Relief |

| Proposed New Preferred Equity Investment Schedule | |
|---|---|
| **Event** | **Date / Timing** |
| Subscription Commencement Date[5] | March 2, 2026 |
| Subscription Expiration and Election Deadline[6] | March 20, 2026 at 5:00 p.m., prevailing Eastern Time |

6.      The Combined Hearing, at which time this Court will consider, among other things, final approval of the adequacy of the information contained in the Disclosure Statement and confirmation of the Plan, shall be held on **March 17, 2026, at 1:00 pm (EST)**.  The Combined Hearing may be adjourned or continued from time to time without further notice other than an announcement of the adjourned or continued date or dates in open court, at the Combined Hearing, or through the filing of a notice of adjournment, with notice of such adjourned date(s) available on the electronic case filing docket and on the website maintained by Kurtzman Carson Consultants, LLC (d/b/a Verita Global) ("Verita" or the "Solicitation Agent"), at https://www.veritaglobal.net/MCC, provided that the Debtors shall also serve such notice on the

---

[5]   The "Subscription Commencement Date" refers to March 2, 2026, the date on which the Debtors served and noticed the New Preferred Equity Investment and Claims Election Procedures.

[6]   The "Subscription Expiration and Election Deadline" is the deadline by which (i) Holders of Allowed First Lien Secured Claims can exercise their New Preferred Equity Subscription Rights and make their New Term Loan Cash Out Election and their New Common Equity Debt Election, (ii) Holders of First Lien Deficiency Claims can make their New Common Equity Debt Election, and (iii) Holders of an Unsecured Notes Claim can make their New Common Equity Debt Election, for such election to be valid.

(Page | 8)

| | |
|---|---|
| Debtors: | MULTI-COLOR CORPORATION, *et al*. |
| Case No. | 26-10910 (MBK) |
| Caption of Order: | Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Disclosure Statement as Containing Adequate Information,(III) Approving Related Dates, Deadlines, Notices, and Procedures, (IV) Approving the Solicitation Procedures and Related Dates, Deadlines, and Notices, (V) Conditionally Waiving the Requirement that (A) The U.S. Trustee Convene a Meeting of Creditors and (B) The Debtors File Schedules of Assets and Liabilities, Statements of Financial Affairs, and Rule 2015.3 Financial Reports, and (VI) Granting Related Relief |

parties required to be notified under Bankruptcy Rule 2002 and any applicable local bankruptcy rules.

7.     Any objections to the adequacy of the Disclosure Statement or confirmation of the Plan must be filed on or before **March 3, 2026, at 5:00 p.m., prevailing Eastern Time** (the "Objection Deadline").

8.     Any objections to the adequacy of the Disclosure Statement or confirmation of the Plan must:  (a) be in writing; (b) comply with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Complex Case Procedures; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity; (d) state the legal or factual basis for such objections, and, if practicable and applicable, a proposed modification to the Plan that would resolve such objections; (e) be filed with the Clerk of the United States Bankruptcy Court for the District of New Jersey by the Objection Deadline with proof of service thereof; and (f) be served by personal service, overnight delivery, or electronic mail, so as to be *actually received* no later than 5:00 p.m. (prevailing Eastern Time) on the Objection Deadline, by:  (i) proposed co-counsel to the Debtors, (a) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Steven N. Serajeddini, P.C. (steven.serajeddini@kirkland.com), and Kirkland & Ellis LLP, 333 West Wolf Point Plaza, Chicago, Illinois 60654, Attn.: Rachael M. Bentley (rachael.bentley@kirkland.com), Peter A.

(Page | 9)

| | |
|---|---|
| Debtors: | MULTI-COLOR CORPORATION, *et al*. |
| Case No. | 26-10910 (MBK) |
| Caption of Order: | Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Disclosure Statement as Containing Adequate Information,(III) Approving Related Dates, Deadlines, Notices, and Procedures, (IV) Approving the Solicitation Procedures and Related Dates, Deadlines, and Notices, (V) Conditionally Waiving the Requirement that (A) The U.S. Trustee Convene a Meeting of Creditors and (B) The Debtors File Schedules of Assets and Liabilities, Statements of Financial Affairs, and Rule 2015.3 Financial Reports, and (VI) Granting Related Relief |

Candel (peter.candel@kirkland.com), and Ashley L. Surinak (ashley.surinak@kirkland.com) and (b) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn.: Michael D. Sirota (msirota@coleschotz.com), Warren A. Usatine (wusatine@coleschotz.com), and Felice R. Yudkin (fyudkin@coleschotz.com); (ii) the Office of the United States Trustee for the District of New Jersey, One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, New Jersey 07102, Attn.: Jeffrey M. Sponder (jeffrey.m.sponder@usdoj.gov) and Jane M. Leamy (jane.m.leamy@usdoj.gov); (iii) counsel to the Secured Ad Hoc Group, Milbank LLP, 55 Hudson Yards, New York, New York 1001, Attn.: Evan Fleck (efleck@milbank.com) and Matt Brod (mbrod@milbank.com); (iv) co-counsel to the Sponsor and the Plan Sponsor, (a) Debevoise & Plimpton LLP, 66 Hudson Boulevard, New York, New York 10001, Attn.: Scott B. Selinger (sbselinger@debevoise.com) and Brett Novick (bmnovick@debevoise.com) and (b) Latham & Watkins LLP, 1271 Avenue of the Americas, New York, New York 10020, Attn.: Ray C. Schrock (ray.schrock@lw.com), Ryan P. Dahl (ryan.dahl@lw.com), and Candace M. Arthur (candace.arthur@lw.com); and (v) if any statutory committee has been appointed in these chapter 11 cases, counsel to such committee. Any objections not satisfying the requirements of this Order shall not be considered and shall be overruled with prejudice unless authorized by the Court.

(Page | 10)

| | |
|---|---|
| Debtors: | MULTI-COLOR CORPORATION, *et al*. |
| Case No. | 26-10910 (MBK) |
| Caption of Order: | Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Disclosure Statement as Containing Adequate Information,(III) Approving Related Dates, Deadlines, Notices, and Procedures, (IV) Approving the Solicitation Procedures and Related Dates, Deadlines, and Notices, (V) Conditionally Waiving the Requirement that (A) The U.S. Trustee Convene a Meeting of Creditors and (B) The Debtors File Schedules of Assets and Liabilities, Statements of Financial Affairs, and Rule 2015.3 Financial Reports, and (VI) Granting Related Relief |

9.      Any brief in support of confirmation of the Plan and final approval of the adequacy of the information contained in the Disclosure Statement (including any reply to any objections) shall be filed no later than no less than four (4) days prior to the Combined Hearing pursuant to Local Rule 9013-2.

10.      The Voting Record Date (**January 15, 2026**) and the Voting Deadline (**March 3, 2026, at 5:00 p.m., prevailing Eastern Time**) are approved.  The Voting Deadline provides sufficient time for Holders of Claims entitled to vote on the Plan to make an informed judgment as to whether to vote to accept or reject the Plan.

11.      The Solicitation Commencement Date (**January 27, 2026**) is approved.

12.      The Subscription Commencement Date (on or about **March 2, 2026**) is approved.

13.      The Subscription Expiration and Election Deadline (on or about **March 20, 2026 at 5:00 p.m., prevailing Eastern Time**) is approved.

14.      The Debtors shall file an initial Plan Supplement seven (7) calendar days prior to the Objection Deadline, **February 24, 2026**.  The Debtors may file supplemental Plan Supplements from time to time thereafter upon parties in interest.

15.      The form and service of each of (a) the Combined Hearing Notice, substantially in the form attached hereto as **Exhibit 1**, (b) the Publication Notice, substantially in the form attached hereto as **Exhibit 2**, (c) the Solicitation Cover Letter, substantially in the form attached hereto as

(Page | 11)

| | |
|---|---|
| Debtors: | MULTI-COLOR CORPORATION, *et al*. |
| Case No. | 26-10910 (MBK) |
| Caption of Order: | Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Disclosure Statement as Containing Adequate Information,(III) Approving Related Dates, Deadlines, Notices, and Procedures, (IV) Approving the Solicitation Procedures and Related Dates, Deadlines, and Notices, (V) Conditionally Waiving the Requirement that (A) The U.S. Trustee Convene a Meeting of Creditors and (B) The Debtors File Schedules of Assets and Liabilities, Statements of Financial Affairs, and Rule 2015.3 Financial Reports, and (VI) Granting Related Relief |

**Exhibit 3**, (d) the Ballots, substantially in the forms attached hereto as **Exhibits 4A**, **4B**, **5**, **6A**, and **6B** (e) the Notice of Non-Voting Status and Opt-Out Form, substantially in the form attached hereto as **Exhibit 7**; (f) the New Preferred Equity Investment and Claims Election Procedures, including the accompanying Subscription Forms, substantially in the form attached hereto as **Exhibit 8**; (g) the Election Form, substantially in the form attached hereto as **Exhibit 9**, each comply with the applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and are approved in all respects.

16. The Debtors are authorized, but not directed, to combine the notice of the Combined Hearing and the Objection Deadline (and related procedures) with the notice of commencement of the Chapter 11 Cases.

17. The notice provided by the Combined Hearing Notice and the Publication Notice of the matters set forth therein constitutes good and sufficient notice of such matters for all purposes and no other or further notice shall be necessary. The notice procedures set forth herein constitute good and sufficient notice of the commencement of these Chapter 11 Cases and the Combined Hearing and the deadline and procedures for objecting to final approval of the adequacy of the information contained in the Disclosure Statement and/or confirmation of the Plan.

18. On a conditional basis, the Solicitation Packages provide the Holders of Claims entitled to vote on the Plan with adequate information to make informed decisions with respect to

(Page | 12)

| | |
|---|---|
| Debtors: | MULTI-COLOR CORPORATION, *et al.* |
| Case No. | 26-10910 (MBK) |
| Caption of Order: | Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Disclosure Statement as Containing Adequate Information,(III) Approving Related Dates, Deadlines, Notices, and Procedures, (IV) Approving the Solicitation Procedures and Related Dates, Deadlines, and Notices, (V) Conditionally Waiving the Requirement that (A) The U.S. Trustee Convene a Meeting of Creditors and (B) The Debtors File Schedules of Assets and Liabilities, Statements of Financial Affairs, and Rule 2015.3 Financial Reports, and (VI) Granting Related Relief |

voting on the Plan in accordance with Bankruptcy Rules 2002(b) and 3017(d), the Bankruptcy Code, and the Local Rules.  Service of the Solicitation Packages shall satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

19.    The Debtors shall forward the Publication Notice within three (3) calendar days following entry of this Order to be published as soon as practicable in *The New York Times* (national edition), the *Financial Times* (global edition), or another nationally and/or internationally circulated newspaper.

20.    The procedures used for tabulations of votes to accept or reject the Plan as set forth in the Motion and as provided in the Ballots and Disclosure Statement satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws, and regulations, and are approved in all respects.  The Debtors are not required to mail Solicitation Packages or other solicitation materials to Holders of Claims or Interests that are either (a) unimpaired under, and conclusively presumed to accept, the Plan under section 1126(f) of the Bankruptcy Code or (b) do not receive or retain any property under, and are deemed to reject, the Plan under section 1126(g) of the Bankruptcy Code; *provided* that the Debtors will provide Solicitation Packages to the foregoing Holders (other than in Classes 7 and 8) (i) via email, if available upon a review of the Debtors' books and records, and (ii) via mail if, as applicable, the

(Page | 13)

| | |
|---|---|
| Debtors: | MULTI-COLOR CORPORATION, *et al*. |
| Case No. | 26-10910 (MBK) |
| Caption of Order: | Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Disclosure Statement as Containing Adequate Information,(III) Approving Related Dates, Deadlines, Notices, and Procedures, (IV) Approving the Solicitation Procedures and Related Dates, Deadlines, and Notices, (V) Conditionally Waiving the Requirement that (A) The U.S. Trustee Convene a Meeting of Creditors and (B) The Debtors File Schedules of Assets and Liabilities, Statements of Financial Affairs, and Rule 2015.3 Financial Reports, and (VI) Granting Related Relief |

foregoing Holders' email information is unavailable, and if the Holder of Claims or Interests requested service via mail.

21.     The Debtors are not required to mail Solicitation Packages, other solicitation materials, or a Notice of Non-Voting Status and Opt-Out Form to Holders of Class 7 Intercompany Claims or Class 8 Intercompany Interests; *provided* that a hard copy of the Disclosure Statement and Plan will be provided upon request.

22.     Because the Debtors commenced solicitation prior to the filing of these Chapter 11 Cases, the requirement to convene a meeting of creditors pursuant to section 341(e) of the Bankruptcy Code (the "Section 341(a) Meeting") shall be waived if the Plan is confirmed and the Effective Date occurs within seventy-five (75) days following the Petition Date (the "Waiver Deadline"); *provided* that if the Plan is not confirmed and the Effective Date does not occur by the Waiver Deadline, the U.S. Trustee shall schedule the Section 341(a) Meeting to occur after the Schedules and SOFAs are filed, without prejudice to the Debtors' right to request further extensions thereof.

23.     The Debtors shall file the Schedules, SOFAs, and 2015.3 Reports by the later of (i) the date that is fifteen (15) days after the Court entered an order denying confirmation of the Plan or (ii) April 28, 2026, without prejudice to the Debtors' rights to request further extensions thereof; *provided*, however, that, to the extent the Plan is confirmed but does not become effective,

(Page | 14)

| | |
|---|---|
| Debtors: | MULTI-COLOR CORPORATION, *et al.* |
| Case No. | 26-10910 (MBK) |
| Caption of Order: | Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Disclosure Statement as Containing Adequate Information,(III) Approving Related Dates, Deadlines, Notices, and Procedures, (IV) Approving the Solicitation Procedures and Related Dates, Deadlines, and Notices, (V) Conditionally Waiving the Requirement that (A) The U.S. Trustee Convene a Meeting of Creditors and (B) The Debtors File Schedules of Assets and Liabilities, Statements of Financial Affairs, and Rule 2015.3 Financial Reports, and (VI) Granting Related Relief |

the Debtors shall file the Schedules, SOFAs, and 2015.3 Reports no later than May 18, 2026, and the U.S. Trustee shall schedule the Section 341(a) Meeting to occur after the Schedules, SOFAs, and 2015.3 Reports are filed; *provided, further*, however that the requirement that the Debtors file the Schedules, SOFAs and 2015.3 Reports shall be waived without further order of this Court if the Plan is confirmed and the Effective Date occurs by the Waiver Deadline.

24.     The Debtors are authorized to cause this Order and Notices to be posted on the Case Website within one (1) business day after entry of this Order.

25.     The Debtors are authorized, subject to any consent rights set forth in the Restructuring Support Agreement, to make non-substantive changes to the Disclosure Statement, the Plan, the Solicitation Packages, the Combined Hearing Notice, the Publication Notice, the Notice of Non-Voting Status and Opt-Out Forms, the Ballots, the New Preferred Equity Investment and Claims Election Procedures, and any related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any materials in the Solicitation Packages before distribution; *provided, however*, that the U.S. Trustee and counsel to any statutory committee appointed in these Chapter 11 Cases shall be provided notice of any non-typographical and grammatical changes.

(Page | 15)

| | |
|---|---|
| Debtors: | MULTI-COLOR CORPORATION, *et al*. |
| Case No. | 26-10910 (MBK) |
| Caption of Order: | Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Disclosure Statement as Containing Adequate Information,(III) Approving Related Dates, Deadlines, Notices, and Procedures, (IV) Approving the Solicitation Procedures and Related Dates, Deadlines, and Notices, (V) Conditionally Waiving the Requirement that (A) The U.S. Trustee Convene a Meeting of Creditors and (B) The Debtors File Schedules of Assets and Liabilities, Statements of Financial Affairs, and Rule 2015.3 Financial Reports, and (VI) Granting Related Relief |

26. In accordance with, and subject to the consent rights set forth in the Restructuring Support Agreement, for the avoidance of doubt, all questions concerning the timeliness, viability, form, and eligibility of any exercise of the New Preferred Equity Subscription Rights shall be determined by the Debtors in accordance with the New Preferred Equity Investment and Claims Election Procedures. Pursuant to the New Preferred Equity Investment and Claims Election Procedures, the Debtors are authorized, but not directed, to waive any defect or irregularity, or permit a defect or irregularity to be corrected within such time frames as they may determine, or to reject the purported exercise of rights, subject to providing notice to the U.S. Trustee and any statutory committees appointed in these Chapter 11 Cases of any material waiver of a defect or irregularity.

27. The Debtors reserve the right to modify the Plan in accordance with the terms thereof and the consent rights set forth in the Restructuring Support Agreement in accordance with Article X of the Plan.

28. Nothing in this Order shall be construed as a waiver of the right of the Debtors or any other party in interest, as applicable, to object to a proof of claim after the Voting Record Date.

29. Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or

15

(Page | 16)

| | |
|---|---|
| Debtors: | MULTI-COLOR CORPORATION, *et al*. |
| Case No. | 26-10910 (MBK) |
| Caption of Order: | Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Disclosure Statement as Containing Adequate Information,(III) Approving Related Dates, Deadlines, Notices, and Procedures, (IV) Approving the Solicitation Procedures and Related Dates, Deadlines, and Notices, (V) Conditionally Waiving the Requirement that (A) The U.S. Trustee Convene a Meeting of Creditors and (B) The Debtors File Schedules of Assets and Liabilities, Statements of Financial Affairs, and Rule 2015.3 Financial Reports, and (VI) Granting Related Relief |

other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Order or the Motion or any order granting the relief requested by the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission by the Debtors as to the validity, priority, enforceability, or perfection of any lien (contractual, common law, statutory, or otherwise) on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; or (h) a waiver of the obligation of any party in interest to file a proof of claim. Any payment made pursuant to this Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

30.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

(Page | 17)

| | |
|---|---|
| Debtors: | MULTI-COLOR CORPORATION, *et al.* |
| Case No. | 26-10910 (MBK) |
| Caption of Order: | Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Disclosure Statement as Containing Adequate Information,(III) Approving Related Dates, Deadlines, Notices, and Procedures, (IV) Approving the Solicitation Procedures and Related Dates, Deadlines, and Notices, (V) Conditionally Waiving the Requirement that (A) The U.S. Trustee Convene a Meeting of Creditors and (B) The Debtors File Schedules of Assets and Liabilities, Statements of Financial Affairs, and Rule 2015.3 Financial Reports, and (VI) Granting Related Relief |

31.     Notwithstanding any Bankruptcy Rule or Local Rule to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

32.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

33.     The Debtors shall serve this Order by first class mail or email on the parties entitled to receive service pursuant to Local Rule 9013-5(f).

34.     Any party may move for modification of this Order in accordance with Local Rule 9013-5(e).

35.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

36.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**<u>Exhibit 1</u>**

**Combined Hearing Notice**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
steven.serajeddini@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Rachael M. Bentley (*pro hac vice* pending)
Peter A. Candel (*pro hac vice* pending)
Ashley L. Surinak (*pro hac vice* pending)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
rachael.bentley@kirkland.com
peter.candel@kirkland.com
ashley.surinak@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
fyudkin@coleschotz.com
wusatine@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

<br>

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| MULTI-COLOR CORPORATION, *et al.*, | Case No. 26-10910 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF (I) COMMENCEMENT OF PREPACKAGED CHAPTER 11
BANKRUPTCY CASES, (II) COMBINED HEARING ON THE DISCLOSURE
STATEMENT, CONFIRMATION OF THE JOINT PREPACKAGED CHAPTER 11 PLAN,
AND RELATED MATTERS, AND (III) RELATED OBJECTION AND BRIEFING DEADLINES**

---

[1]   The last four digits of Debtor Multi-Color Corporation's tax identification number are 5853.  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://veritaglobal.net/MCC.  The location of the Debtors' service address for purposes of these chapter 11 cases is:  3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327.

**NOTICE IS HEREBY GIVEN** as follows:

On January 29, 2026, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of New Jersey (the "Court").   Contemporaneously therewith, the Debtors filed the *Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 17] (as may be altered, amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan") and the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 18] (as may be altered, amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Disclosure Statement").[2]  A complete list of each of the Debtors in these chapter 11 cases is attached hereto as **Exhibit A**.

YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE THIRD-PARTY RELEASE, EXCULPATION, DISCHARGE, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.

**Copies of the Plan, the Disclosure Statement, and the other documents filed in these Chapter 11 Cases are accessible, free of charge, on the Debtors' restructuring website maintained by Kurtzman Carson Consultants, LLC (d/b/a Verita Global) (the "Solicitation Agent") at http://www.veritaglobal.net/MCC.  Printed copies of the Plan, the Disclosure Statement, and the other documents filed in these Chapter 11 Cases may be obtained free of charge by calling the Solicitation Agent at (866) 967-1788 (Toll-free US / Canada) or (310) 751-2688 (International).**  In addition, such documents are available for inspection for a fee on the Court's website at https://ecf.njb.uscourts.gov.

The Plan is a "prepackaged" plan of reorganization.  The Plan provides for, among other things, (i) a $3.9 billion reduction of net debt of the business, (ii) an injection of approximately $889 million in new equity capital consisting of $400 million in Cash to be provided by the Plan Sponsor in exchange for 64.0 percent of the New Common Equity at Plan Equity Value on a Fully Diluted Basis and subject to dilution as set forth in the Plan, and $489 million in Cash to be provided by the Plan Sponsor and the members of the Secured Ad Hoc Group in exchange for a corresponding aggregate amount of New Preferred Equity, and (iii) a $657.5 million DIP Facility, consisting of (a) $250 million of new money commitments to adequately capitalize the Debtors' business through the chapter 11 process, (b) a 1:1 "roll-up" of First Lien Secured Claims with respect to the funding in clause (a), (c) a $7.5 million DIP Backstop Premium, and (d) up to $150 million in incremental new money loans with no related economics (except for principal) or "roll up."  Crucially, the Plan provides for all Allowed General Unsecured Claims to be Unimpaired.

---

[2]   A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Garrett Gabel, Chief Restructuring Officer of Multi-Color Corporation, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 23] (the "First Day Declaration").  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration, the Plan, or the Disclosure Statement, as applicable.  The statements contained herein are summaries of certain provisions contained in the Plan and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein.  To the extent there is a discrepancy between the terms herein and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall govern and control.  For a more detailed description of the Plan, please refer to the Disclosure Statement.

2

## Hearing on Confirmation of the Plan and
## the Adequacy of the Information Contained in the Disclosure Statement

The hearing to consider the adequacy of information contained in the Disclosure Statement, any objections thereto, confirmation of the Plan, any objections thereto, and any other matter that may properly come before the Court related to approval of the Disclosure Statement and confirmation of the Plan (the "Combined Hearing") will be held before the Honorable Michael B. Kaplan, United States Bankruptcy Judge, in Courtroom #8 of the United States Bankruptcy Court, Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Second Floor, Courtroom #8, Trenton, New Jersey 08608, on **March 17, 2026** subject to Court availability.  Please be advised that the Combined Hearing may be continued from time to time by the Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Court and served on other parties entitled to receive notice.

## Information Regarding the Plan and Disclosure Statement

**Voting Record Date**.  The voting record date was January 15, 2026 (the "Voting Record Date"), which was the date for determining which certain Holders of Claims are entitled to vote on the Plan.

**Objections to the Plan and Disclosure Statement**.  The deadline for filing objections (each, an "Objection") to confirmation of the Plan or the adequacy of the information contained in the Disclosure Statement is **March 3, 2026, at 5:00 p.m., prevailing Eastern Time** (the "Objection Deadline").  Any such Objections must: (a) be in writing; (b) state with particularity the basis of the objection; and (c) be filed with the Clerk of the Bankruptcy Court electronically by (i) attorneys who regularly practice before the Bankruptcy Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "General Order") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary") (the General Order, the Supplemental Commentary and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, (ii) by all other parties in interest, if not otherwise filed with the Clerk of the Bankruptcy Court electronically, via hard copy, and shall be served in accordance with the General Order and the Supplemental Commentary upon the following parties so as to be actually received on or before the Objection Deadline.

Objections must be filed with the Court and served so as to be **actually received** no later than **March 3, 2026, at 5:00 p.m., prevailing Eastern Time**, by those parties who have filed a notice of appearance in the Debtors' Chapter 11 Cases and the following parties (the "Notice Parties"): (a) **Proposed Co-Counsel to the Debtors**, (i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.:  Steven N. Serajeddini, P.C. (steven.serajeddini@kirkland.com), and 333 West Wolf Point Plaza, Chicago, Illinois 60654, Attn.: Rachael M. Bentley (rachael.bentley@kirkland.com), Peter A. Candel (peter.candel@kirkland.com), and Ashley L. Surinak (ashley.surinak@kirkland.com); and (ii) Cole Schotz, P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn.: Michael D. Sirota (msirota@coleschotz.com), Warren A. Usatine (wusatine@coleschotz.com), and Felice R. Yudkin (fyudkin@coleschotz.com); (b) **Co-Counsel to the Plan Sponsor and the Sponsor**, (i) Debevoise & Plimpton LLP, 66 Hudson Boulevard, New York, New York 10001, Attn.:  Scott B. Selinger (sbselinger@debevoise.com) and Brett Novick (bmnovick@debevoise.com) and (ii) Latham & Watkins LLP, 1271 Avenue of the Americas, New York, New York 10020, Attn.: Ray C. Schrock (ray.schrock@lw.com); Ryan Preston Dahl (ryan.dahl@lw.com), and Candace M. Arthur (candace.arthur@lw.com); (c) **Counsel to the Secured Ad Hoc Group**, Milbank LLP, 55 Hudson Yards, New York, New York 10001, Attn.:  Evan Fleck (efleck@milbank.com) and Matt Brod (mbrod@milbank.com); (d) **Counsel to the ABL Agent**, Cahill, Gordon & Reindell LLP, 32 Old Slip,

3

New York, New York 10005, Attn.: Timothy B. Howell (thowell@cahill.com); (e) **the Office of the United States Trustee, Region 3**, One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, New Jersey 07102, Attn.: Jeffrey M. Sponder (Jeffrey.M.Sponder@usdoj.gov) and Jane M. Leamy (jane.m.leamy@usdoj.gov); and (f) counsel to any statutory committee appointed in these Chapter 11 Cases, if any.

Any brief in support of confirmation of the Plan and reply to any objections shall be filed by **March 13, 2026**, or such other date as the Court may direct.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE COURT.**

## Summary of Plan Treatment

The following chart summarizes the treatment provided by the Plan to each Class of Claims against and Interests in the Debtors and indicates the voting status of each Class.

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | ABL Facility Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 4 | First Lien Secured Claims | Impaired | Entitled to Vote |
| Class 5 | Junior Funded Debt Claims | Impaired | Entitled to Vote |
| Class 6 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 7 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 9 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 10 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

## Discharge, Injunctions, Exculpation, and Releases

Please be advised that the Plan contains certain release, exculpation, discharge, and injunction provisions as follows:

## Relevant Definitions

Under the Plan, "**Exculpated Parties**" means, collectively, and in each case in its capacity as such, (a) the Debtors; (b) the Reorganized Debtors; and (c) with respect to each of the foregoing entities in clauses (a) and (b), each such Entity's current control persons, directors, members of any committees of any Entity's board of directors or managers, equity holders (regardless of whether

4

such interests are held directly or indirectly), principals, members, employees, agents, advisory board members, financial advisors, attorneys (including any attorneys or other professionals retained by any current director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals, each in its capacity as such.

Under the Plan, "Related Party" means, collectively, with respect to any Person or Entity each, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any Governing Body, shareholders, unitholders, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, assignors, participants, successors, assigns (whether by operation of law or otherwise), subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, fiduciaries, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

Under the Plan, "Released Parties" means, collectively, and in each case in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Holder of an ABL Facility Claim; (e) each Company Party; (f) the Plan Sponsor; (g) the Sponsor; (h) each Holder of a DIP Claim; (i) each Agent/Trustee; (j) each DIP Backstop Party; (k) each New Preferred Equity Investment Backstop Party; (l) each New Term Loan Facility Lender; (m) each New Noteholder; (n) each New ABL Facility Lender; (o) each current and former Affiliate of each Entity in clause (a) through the following clause (p); and (p) each Related Party of each Entity in clause (a) through this clause (p); *provided* that, in each case, an Entity shall not be a Released Party if it:  (x) elects to opt out of the releases described in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved prior to Confirmation.

Under the Plan, "Releasing Parties" means, collectively, and in each case in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Holder of an ABL Facility Claim; (e) each Company Party; (f) the Plan Sponsor; (g) the Sponsor; (h) each Holder of a DIP Claim; (i) each Agent/Trustee; (j) each DIP Backstop Party; (k) each New Preferred Equity Investment Backstop Party; (l) each New Term Loan Facility Lender; (m) each New Noteholder; (n) each New ABL Facility Lender, (o) all Holders of Claims or Interests that vote to accept the Plan and do not affirmatively opt out of the releases provided for in the Plan; (p) all Holders of Claims or Interests who are deemed to accept the Plan and do not affirmatively opt out of the releases provided for in the Plan; (q) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided for in the Plan; (r) all Holders of Claims or Interests who vote to reject the Plan and who do not affirmatively opt out of the releases provided for in the Plan; (s) all Holders of Claims or Interests who are deemed to reject the Plan and who do not affirmatively opt out of the releases provided for in the Plan; (t) each current and former Affiliate of each Entity in clause (a) through the following clause (u); and (u) each Related Party of each Entity in clause (a) through this clause (u); provided that each Holder of Claims or Interests that is party to the Restructuring Support Agreement shall be a Releasing Party; provided, further, that, in each case, an Entity shall not be a Releasing Party if it timely objects to

5

the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation.[3]

## RELEASES BY THE DEBTORS

Except as otherwise specifically provided in the Plan or the Confirmation Order, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged by and on behalf of each and all of the Debtors, their Estates, and if applicable, the Reorganized Debtors, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action whatsoever (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates), whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or herein-after arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their Estates, Affiliates, heirs, executory, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, the Debtors, the Reorganized Debtors, and their Estates, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or their Estates (including the capital structure, management, direct or indirect ownership, or operation thereof), the solicitation and provision of Solicitation Materials to Holders of Claims prior to the Chapter 11 Cases, the Chapter 11 Cases, the Restructuring Transactions, the Reorganized Debtors (including the capital structure, management, direct or indirect ownership, or operation thereof), the New Common Equity Debt Election, the purchase, sale, or rescission of any Security of the Debtors, the Reorganized Debtors, and their Estates, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the assertion of enforcement of rights or remedies against the Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, any Avoidance Actions, any related adversary proceedings, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Restructuring Support Agreement, the Definitive

---

[3] Notwithstanding anything contrary herein, with respect to funds and accounts managed by BlackRock, Inc. or its Affiliates that are Consenting Stakeholders under the Restructuring Support Agreement (the "BlackRock Consenting Creditors"), the defined terms "Releasing Parties" and "Released Parties" shall be limited to (i) the BlackRock Consenting Creditors, (ii) any trading desk(s), fund(s), account, branch, unit, and/or business group(s) of the BlackRock Consenting Creditors that have a beneficial interest in the Company Claims/Interests held by BlackRock Consenting Creditors, or are otherwise acting for the benefit of or at the direction of the BlackRock Consenting Creditors, and (iii) any Affiliates and Related Parties of BlackRock Consenting Creditors for which the BlackRock Consenting Creditors are legally entitled to bind under applicable law.

Documents, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Definitive Documents, the Plan Supplement, the New Debt, the New ABL Facility, the New Preferred Equity Investment, the Plan Sponsor Equity Investment, the DIP Facility, the DIP Orders, the DIP Documents, the New Debt Documents, the New ABL Facility Documents, or the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before, in respect of the foregoing clause the Effective Date.

Notwithstanding anything herein to the contrary, the Debtors do not, pursuant to the releases set forth above, release (i) any Causes of Action identified in the Schedule of Retained Causes of Action; or (ii) any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan and, further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims released by the Debtor Release; (iii) in the best interests of the Debtors and all Holders of Claim, Interests, and Intercompany Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a bar to any of the Debtors, the Debtors' Estates, or, if applicable, the Reorganized Debtors, asserting any claim or Cause of Action released pursuant to the Debtor Release.

## RELEASES BY THE RELEASING PARTIES

Except as otherwise specifically provided in the Plan or the Confirmation Order, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates), whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or herein after arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their estates, Affiliates, heirs, executory, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, the Debtors, their Estates, and the Reorganized Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or

7

their Estates (including the capital structure, management, direct or indirect ownership, or operation thereof), the solicitation and provision of Solicitation Materials to Holders of Claims prior to the Chapter 11 Cases, the Chapter 11 Cases, the Restructuring Transactions, the Reorganized Debtors (including the management, direct or indirect ownership, or operation thereof), the New Common Equity Debt Election, the purchase, sale, or rescission of any Security of the Debtors, their Estates, and the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the assertion of enforcement of rights or remedies against the Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases including all prior recapitalizations, restructurings, or refinancing efforts and transactions, any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the decision to file the Chapter 11 Cases, any related adversary proceedings, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Restructuring Support Agreement, the Definitive Documents, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Definitive Documents, the Plan Supplement, the New Debt, the New ABL Facility, the New Preferred Equity Investment, the Plan Sponsor Equity Investment, the DIP Facility, the DIP Orders, the DIP Documents, the New Debt Documents, the New ABL Facility Documents, or the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before, in respect of the foregoing clause the Effective Date.

Notwithstanding anything to the contrary herein, the Releasing Parties do not, pursuant to the releases set forth above, release:  (i) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, and Restructuring Transactions, or any documents, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions; (ii) the rights of any Holder of Allowed Claims to receive distributions under the Plan; or (iii) any claims or Causes of Action arising from such Released Party's willful misconduct or actual fraud, in each case as determined by a final, non-appealable order entered by a court of competent jurisdiction.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (i) consensual; (ii) essential to the Confirmation of the Plan; (iii) given in exchange for good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable, and reasonable; (vii) given and made after due notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

Without limiting the foregoing, from and after the Effective Date, any Entity that is given the opportunity to opt out of the releases contained in Article VIII.D of the Plan and does not exercise such opt out may not assert any claim or other Cause of Action against any Released Party based on or relating to, or in any manner arising from, in whole or in part, the Debtors.  From and

8

after the Effective Date, any Entity that opted out of the releases contained in Article VIII.D of the Plan may not assert any claim or other Cause of Action against any Released Party for which it is asserted or implied that such claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan and (b) specifically authorizing such Person or Entity to bring such claim or Cause of Action against any such Released Party.  The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in Article XI of the Plan, the Bankruptcy Court shall have jurisdiction to adjudicate the underlying claim or Cause of Action.

## EXCULPATION

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be exculpated from, any Claim or Cause of Action related to any act or omission occurring between the Petition Date and prior to or on the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the Restructuring Support Agreement, the Definitive Documents, the Plan Supplement, the New Debt, the New ABL Facility, the New Preferred Equity Investment, the Plan Sponsor Equity Investment, the New Common Equity Debt Election, the DIP Facility, the DIP Orders, the DIP Documents, the New Debt Documents, the New ABL Facility Documents, or the filing of the Chapter 11 Cases, the solicitation of votes for, or Confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of Securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, if applicable, in connection with the Plan and the Restructuring Transactions, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action in each case arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes actual fraud, willful misconduct, or gross negligence as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan; provided that, and without limiting the foregoing in any respect, no Exculpated Party will have or incur, and each Exculpated Party will exculpated from, any claim or Cause of Action arising prior to the Petition Date in connection with, relating to, or arising out of the solicitation contemplated by section 1125(g) of the Bankruptcy Code.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable Law or rules protecting such Exculpated Parties from liability.

## INJUNCTION

Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations or distributions issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action, suit, or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to

9

any such Claims, Interests, Causes of Action, or liabilities; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (4) asserting any right of setoff, or subrogation of any kind against any obligation due from such Entities or against the property of such Entities or the Estates on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, or filed a Proof of Claim or Interest indicating that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.

10

Dated: January 30, 2026

/s/

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:  msirota@coleschotz.com
         wusatine@coleschotz.com
         fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          steven.serajeddini@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Rachael M. Bentley (*pro hac vice* pending)
Peter A. Candel (*pro hac vice* pending)
Ashley L. Surinak (*pro hac vice* pending)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          rachael.bentley@kirkland.com
                peter.candel@kirkland.com
                ashley.surinak@kirkland.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

11

**Exhibit A**

**List of Chapter 11 Debtors**

| NO. | DEBTOR | ADDRESS | EIN # |
|---|---|---|---|
| 1. | Multi-Color Corporation | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 31-1125853 |
| 2. | Collotype International Holdings Pty Ltd | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 91599185 |
| 3. | Cunamara Investments Pty Limited. | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 852440797 |
| 4. | Exportaciones IM -Promocion, S.A. de C.V. | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | EIP971118EE0 |
| 5. | Grafo Regia S. de R.L. de C.V. | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | GRE011210H81 |
| 6. | Hally Group Pty Ltd | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 813753723 |
| 7. | Hally Labels Pty Limited | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 83648684 |
| 8. | Hexagon Holdings Limited | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 114326003 |
| 9. | Kiwi Labels Limited | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 114326275 |
| 10. | Labels Buyer, LLC | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 87-1374645 |
| 11. | LABL Acquisition Corporation | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 82-4038111 |
| 12. | LABL Holding Corporation | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 82-4037830 |
| 13. | LABL, Inc. | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 20-3832447 |
| 14. | LABL Intermediate Holding Corporation | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 82-4037969 |
| 15. | MCC Ablis France SAS | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 40093025100022 |
| 16. | MCC Adelaide Pty Ltd | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 91511894 |
| 17. | MCC Albany Limited | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 109335711 |
| 18. | MCC Auckland Limited | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 044426021 |
| 19. | MCC Cardiff Ltd. | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 01858357 |
| 20. | MCC Christchurch Limited | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 081623724 |
| 21. | MCC France EST SAS | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 494077118 |
| 22. | MCC France Ouest SAS | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 595950023 |
| 23. | MCC Griffith Pty Ltd | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 836401375 |
| 24. | MCC Label Sydney Pty Ltd | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 675802025 |
| 25. | MCC Labels Australia Holdings Pty Ltd | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 973232350 |
| 26. | MCC Labels Australia Pty Ltd | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 973232945 |
| 27. | MCC Manufacturing, Inc. | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 20-5017397 |
| 28. | MCC Melbourne Pty Ltd | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 88247619 |
| 29. | MCC Nantes France SAS | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 86980003700036 |
| 30. | MCC Perth Pty Ltd | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 88211234 |
| 31. | MCC Poznań Sp. z o.o. | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | PL 7811601783 |
| 32. | MCC Smart Packaging Solutions, LLC | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 93-4404714 |
| 33. | MCC Verstraete Australia Pty Ltd | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 930772524 |
| 34. | MCC Verstraete In Mold Labels USA Inc. | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 81-5474902 |
| 35. | MCC Verstraete N.V. | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | BE 0416.549.969 |
| 36. | MCC-Norwood, LLC | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 46-4658851 |
| 37. | Multi-Color (New Zealand) Holdings Pty Limited | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 134369434 |
| 38. | Multi-Color (New Zealand) Pty. Limited | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 122985776 |
| 39. | Multi-Color (QLD) Pty Ltd | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 85925221 |
| 40. | Multi-Color Australia Acquisition Pty. Limited | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 895578850 |
| 41. | Multi-Color Australia Holdings Pty. Limited | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 895558090 |
| 42. | Multi-Color Bingen Germany GmbH | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 08/656/50606 |
| 43. | Multi-Color Canada, Inc. | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 848947198 |

2

| NO. | DEBTOR | ADDRESS | EIN # |
|---|---|---|---|
| 44. | **Multi-Color Clydebank Scotland Limited** | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 8254822003189 |
| 45. | **Multi-Color Cwmbran UK Limited** | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 8274127806 |
| 46. | **Multi-Color Daventry England Ltd** | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 5294525010989 |
| 47. | **Multi-Color Hann. Muenden Germany GmbH** | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 20/200/10504 |
| 48. | **Multi-Color Heiligenstadt Germany GmbH** | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 20/200/29612 |
| 49. | **Multi-Color Label Corporation-Mexico, S.A. de C.V.** | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | FPR9410054X5 |
| 50. | **Multi-Color Labels Castlebar Ireland Limited** | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 2216383P |
| 51. | **Multi-Color Labels Ireland Limited** | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 1830435B |
| 52. | **Multi-Color Montreal Canada Corporation** | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 100742477 |
| 53. | **Multi-Color UK Holdings 2 Limited** | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 5036902255 |
| 54. | **Multi-Color Warsaw Poland Sp. Z.o.o.** | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 1130085030 |
| 55. | **Spear Group Holdings Limited** | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 6615704517 |
| 56. | **W/S Packaging Group, LLC** | 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327 | 39-2007493 |

**<u>Exhibit 2</u>**

**Publication Notice**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>MULTI-COLOR CORPORATION, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-10910 (MBK)<br><br>(Jointly Administered) |

**NOTICE OF (I) COMMENCEMENT OF PREPACKAGED CHAPTER 11
BANKRUPTCY CASES, (II) COMBINED HEARING ON THE DISCLOSURE
STATEMENT, CONFIRMATION OF THE JOINT PREPACKAGED CHAPTER 11
PLAN, AND RELATED MATTERS, AND (III) RELATED OBJECTION AND BRIEFING DEADLINES**

TO:   ALL HOLDERS OF CLAIMS, HOLDERS OF INTERESTS, AND PARTIES IN
      INTEREST IN THE ABOVE-CAPTIONED CHAPTER 11 CASES

PLEASE TAKE NOTICE THAT on January 29, 2026, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of New Jersey (the "Court"). Contemporaneously therewith, the Debtors filed the *Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 17] (as may be altered, amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan") and the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 18] (as may be altered, amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Disclosure Statement").[2]

PLEASE TAKE FURTHER NOTICE THAT copies of the Plan, the Disclosure Statement, and the other documents filed in these Chapter 11 Cases are accessible, free of charge, on the

---

[1]   The last four digits of Debtor Multi-Color Corporation's tax identification number are 5853. A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://veritaglobal.net/MCC. The location of the Debtors' service address for purposes of these chapter 11 cases is: 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327.

[2]   A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' Chapter 11 Cases, is set forth in the *Declaration of Garrett Gabel, Chief Restructuring Officer of Multi-Color Corporation, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 23] (the "First Day Declaration"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration, the Plan, or the Disclosure Statement, as applicable. The statements contained herein are summaries of certain provisions contained in the Plan and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein. To the extent there is a discrepancy between the terms herein and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall govern and control. For a more detailed description of the Plan, please refer to the Disclosure Statement.

**Debtors' restructuring website maintained by Kurtzman Carson Consultants, LLC (d/b/a Verita Global) (the "Solicitation Agent") at https://www.veritaglobal.net/MCC.  Printed copies of the Plan, the Disclosure Statement, and the other documents filed in these chapter 11 cases may be obtained free of charge by calling the Solicitation Agent at (866) 967-1788 (Toll-free US / Canada) or (310) 751-2688 (International).**  In addition, such documents are available for inspection for a fee on the Court's website at https://ecf.njb.uscourts.gov.

PLEASE TAKE FURTHER NOTICE THAT a hearing to consider the adequacy of the information contained in the Disclosure Statement, any objections thereto, confirmation of the Plan, any objections thereto, and any other matter that may properly come before the Court (the "Combined Hearing") will be held before the Honorable Michael B. Kaplan, United States Bankruptcy Judge, in Courtroom #8 of the United States Bankruptcy Court, Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Second Floor, Courtroom #8, Trenton, New Jersey 08608, on **March 17, 2026** subject to Court availability.  Please be advised that the Combined Hearing may be continued from time to time by the Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Court and served on other parties entitled to receive notice.

PLEASE TAKE FURTHER NOTICE THAT objections (each, an "Objection") to the adequacy of the information contained in the Disclosure Statement or the confirmation of the Plan or must:  Any such Objections must:  (a) be in writing; (b) state with particularity the basis of the objection; and (c) be filed with the Clerk of the Bankruptcy Court electronically by (i) attorneys who regularly practice before the Bankruptcy Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "General Order") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary") (the General Order, the Supplemental Commentary and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, (ii) by all other parties in interest, if not otherwise filed with the Clerk of the Bankruptcy Court electronically, via hard copy, and shall be served in accordance with the General Order and the Supplemental Commentary upon the following parties so as to be actually received on or before the Objection Deadline (as defined herein).

PLEASE TAKE FURTHER NOTICE THAT objections must be filed with the Court and served so as to be **actually received** no later than **March 3, 2026, at 5:00 p.m., prevailing Eastern Time**, by those parties who have filed a notice of appearance in the Debtors' chapter 11 cases and the following parties (the "Notice Parties"):   (a) **Proposed Co-Counsel to the Debtors**, (i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Steven N. Serajeddini, P.C. (steven.serajeddini@kirkland.com), and 333 West Wolf Point Plaza, Chicago, Illinois 60654, Attn.: Rachael M. Bentley (rachael.bentley@kirkland.com), Peter A. Candel (peter.candel@kirkland.com), and Ashley L. Surinak (ashley.surinak@kirkland.com); and (ii) Cole Schotz, P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn.:  Michael D. Sirota (msirota@coleschotz.com), Warren A. Usatine (wusatine@coleschotz.com), and Felice R. Yudkin (fyudkin@coleschotz.com); (b) **Co-Counsel to the Plan Sponsor and the Sponsor**, (i) Debevoise & Plimpton LLP, 66 Hudson Boulevard, New York, New York 10001, Attn.:  Scott B. Selinger (sbselinger@debevoise.com) and Brett Novick (bmnovick@debevoise.com) and (ii) Latham & Watkins LLP, 1271 Avenue of the Americas, New York, New York 10020, Attn.: Ray C. Schrock (ray.schrock@lw.com);  Ryan Preston Dahl (ryan.dahl@lw.com), and Candace M. Arthur (candace.arthur@lw.com); (c) **Counsel to the Secured Ad Hoc Group**, Milbank LLP, 55 Hudson Yards, New York, New York 10001, Attn.:  Evan Fleck (efleck@milbank.com) and Matt Brod (mbrod@milbank.com); (d) **Counsel to the ABL Agent**, Cahill, Gordon & Reindell LLP, 32 Old Slip, New York, New York 10005, Attn.:  Timothy B. Howell (thowell@cahill.com); (e) **the Office of the**

5

**United States Trustee, Region 3**, One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, New Jersey 07102, Attn.: Jeffrey M. Sponder (jeffrey.m.sponder@usdoj.gov) and Jane M. Leamy (jane.m.leamy@usdoj.gov); and (f) counsel any statutory committee appointed in these Chapter 11 Cases, if any.

Any brief in support of confirmation of the Plan and reply to any objections shall be filed by **March 13, 2026, at 5:00 p.m., prevailing Eastern Time**, or such other date as the Court may direct.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE COURT.**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE THIRD-PARTY RELEASE, EXCULPATION, DISCHARGE, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

6

**Exhibit 3**

**Solicitation Cover Letter**



January 27, 2026

To:   HOLDERS OF (A) FIRST LIEN SECURED CLAIMS AND (B) JUNIOR FUNDED DEBT CLAIMS

Reference is made to the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be altered, amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Disclosure Statement"), a copy of which is attached hereto.[1]  As explained in further detail in the Disclosure Statement, on January 25, 2026, after engaging in extensive, arm's-length, good-faith negotiations, Multi-Color Corporation and certain of its direct and indirect subsidiaries affiliates (collectively, the "Debtors")[2] entered into a restructuring support agreement (as amended, modified, or supplemented from time to time, and including all exhibits and supplements thereto, the "Restructuring Support Agreement" and, the transactions contemplated thereby, the "Restructuring Transactions") with certain of the Debtors' key economic stakeholders, including the Secured Ad Hoc Group, which holds over two-thirds of the First Lien Claims, the Plan Sponsor, and the Sponsor.

**The Restructuring Transactions provide for, among other things, (i) a $3.9 billion reduction of net debt of the business, (ii) an injection of approximately $889 million in new equity capital consisting of $400 million in Cash to be provided by the Plan Sponsor in exchange for 64.0 percent of the New Common Equity at Plan Equity Value on a Fully Diluted Basis and subject to dilution as set forth in the Plan, and $489 million in Cash to be provided by the Plan Sponsor and the members of the Secured Ad Hoc Group in exchange for a corresponding aggregate amount of New Preferred Equity, and (iii) a $657.5 million DIP Facility, consisting of (a) $250 million of new money commitments to adequately capitalize the Debtors' business through the chapter 11 process, (b) a 1:1 "roll-up" of First Lien Secured Claims with respect to the funding in clause (a), (c) a $7.5 million DIP Backstop Premium, and (d) up to $150 million in incremental new money loans with no related economics (except for principal) or "roll up."  Crucially, the Restructuring Transactions to be effectuated by the Plan provides for all Allowed General Unsecured Claims to be Unimpaired.**

In accordance with the Restructuring Support Agreement, the Debtors intend to implement the Restructuring Transactions by commencing voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the

---

[1]   Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Disclosure Statement, the Plan, or the Restructuring Support Agreement (each as defined herein), as applicable.

[2]   The last four digits of anticipated Debtor Multi-Color Corporation's tax identification number are 5853.  A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.veritaglobal.net/MCC.  The location of the Debtors' service address for purposes of these Chapter 11 Cases is: 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327.

District of New Jersey (the "Bankruptcy Court") and seeking Confirmation of the *Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be altered, amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan"), a copy of which is included in these Solicitation Materials. Utilizing a "prepackaged" chapter 11 plan of reorganization will enable the Debtors to continue their day-to-day business operations in the ordinary course with limited disruption and spend significantly less time and resources operating in chapter 11.

The enclosed documents include information regarding how (i) First Lien Secured Claims, or Junior Funded Debt Claims may vote to accept or reject the Plan and consider whether to opt out of the releases provided for in Article VIII of the Plan, (ii) Holders of First Lien Secured Claims may elect to participate in the New Preferred Equity Investment consistent with their New Preferred Equity Subscription Rights, (iii) Holders of First Lien Secured Claims may exercise the New Term Loan Cash Out Election and/or New Common Equity Debt Election, and (iv) Holders of Junior Funded Debt Claims may exercise the New Common Equity Debt Election.

**No Chapter 11 Cases have yet been commenced**. Following the commencement of the Chapter 11 Cases, the Debtors will seek an order from the Bankruptcy Court conditionally approving the Disclosure Statement (which may be the Confirmation Order) as containing adequate information for a hypothetical investor to vote to accept or reject the Plan, approving the solicitation of votes on the Plan, and confirming the Plan.

**The Debtors believe that the Plan represents the best restructuring proposal available to the Debtors and their stakeholders. Accordingly, the Debtors recommend that you vote to accept the Plan and support Confirmation of the Plan.**

To facilitate your decision regarding your vote to accept or reject the Plan, the Debtors are delivering this letter and these Solicitation Materials to each Holder (or known potential Holder) of a First Lien Secured Claim or Junior Funded Debt Claim as of January 15, 2026 (the "Voting Record Date").

Each Holder of a First Lien Secured Claim is entitled to participate in the New Preferred Equity Investment consistent with their New Preferred Equity Subscription Rights in accordance with the Plan. If you are a Holder of a First Lien Secured Claim, you must return the applicable subscription form (the "Subscription Form") once distributed following entry of the Final DIP Order, on or before March 2, 2026, in accordance with the instructions set forth therein to exercise your New Preferred Equity Subscription Rights and/or make the New Term Loan Cash Out Election and/or New Common Equity Debt Election. **The Subscription Form must be returned to the Solicitation Agent by March 20, 2026, at 5:00 p.m., prevailing Eastern Time (as may be extended) (the "Subscription Expiration and Election Deadline").**

Copies of the following key documents are provided herewith for your review:

1) the Disclosure Statement;

   a. the Plan, attached as Exhibit A to the Disclosure Statement;

   b. the Restructuring Support Agreement, attached as Exhibit B to the Disclosure Statement; and

2) a Ballot.

Following entry of the Final DIP Order, on or before March 2, 2026, you will also receive:

1) the New Preferred Equity Investment and Claim Election Procedures and related Subscription Forms regarding (i) New Preferred Equity Subscription Rights, (ii) New Term Loan Cash Out Election, and (iii) New Common Equity Debt Election (with respect to your Allowed First Lien Secured Claims and First Lien Deficiency Claims only), if applicable; and

2) an Election Form regarding your New Common Equity Debt Election (with respect to your Unsecured Notes Claims only, if applicable).

The Debtors request that (a) each Holder of a First Lien Claim carefully review these Solicitation Materials, including the instructions provided therein, and return its duly executed Ballot so as to be actually received by the Voting Deadline, by voting to accept or reject the Plan and, if applicable and at the appropriate time, exercise your New Preferred Equity Subscription Rights and/or make the New Term Loan Cash Out Election, and New Common Equity Debt Election, and return its duly executed Subscription Form by the Subscription Expiration and Election Deadline, (b) each Holder of a First Lien Deficiency Claim carefully review these Solicitation Materials, including the instructions provided therein, and return its duly executed Ballot so as to be actually received by the Voting Deadline, by voting to accept or reject the Plan, and, if applicable at the appropriate time, make the New Common Equity Debt Election (with respect to the First Lien Deficiency Claim), and return its duly executed Subscription Form by the Subscription Expiration and Election Deadline and (c) each Holder of an Unsecured Notes Claim carefully review these Solicitation Materials, including the instructions provided therein, and return its duly executed Ballot so as to be actually received by the Voting Deadline, by voting to accept or reject the Plan and return its duly executed Election Form to make the New Common Equity Debt Election (with respect to the Unsecured Notes Claims), which Election Form will be distributed following entry of the Final DIP Order and no later than March 2, 2026. Each Holder of a First Lien Secured Claim or Junior Funded Debt Claim is encouraged to consult with its own legal counsel regarding the Restructuring Transactions and its decision with respect to the Plan.

Should you have any questions or require copies of the Solicitation Materials, you may contact the Solicitation Agent, Kurtzman Carson Consultants, LLC (d/b/a Verita Global), by email (with "Multi-Color Corporation" referenced in the subject line) at mccinfo@veritaglobal.com. The Voting Deadline is **March 3, 2026, at 5:00 p.m. (prevailing Eastern Time)**. All Ballots must be **actually received** in accordance with the instructions contained therein by the Voting Deadline.

Similarly, and solely with respect to Holders of First Lien Secured Claims, the Subscription Expiration and Election Deadline is **March 20 2026, at 5:00 p.m. (prevailing Eastern Time)**. All Subscription Forms must be **actually received** by the Subscription Expiration and Election Deadline.

The hearing to consider the adequacy of the information contained in the Disclosure Statement, any objections thereto, Confirmation of the Plan, any objections thereto, and any other matter that may properly come before the Bankruptcy Court related to approval of the Disclosure Statement and Confirmation of the Plan (the "Combined Hearing") will be held before the Bankruptcy Court on **March 17, 2026**, subject to Court availability.

Dated: January 27, 2026                    Sincerely,

                                           Multi-Color Corporation
                                           on behalf of itself and each of the anticipated Debtors

                                           By:       */s/ Garrett Gabel*
                                           Name:     Garrett Gabel
                                           Title:    Chief Restructuring Officer

**Exhibit 4A**

**Secured Notes Claims (Class 4) and First Lien
Deficiency Claims (Class 5) Beneficial Holders Ballot**

**IMPORTANT**:  NO CHAPTER 11 CASES HAVE BEEN COMMENCED AS OF THE DATE OF THE DISTRIBUTION OF THIS BENEFICIAL HOLDER BALLOT (THIS "BALLOT").  THE DEBTORS (AS DEFINED BELOW) INTEND TO COMMENCE VOLUNTARY CHAPTER 11 CASES IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY (THE "BANKRUPTCY COURT") TO SEEK CONFIRMATION OF THE PLAN (AS DEFINED BELOW) BY THE BANKRUPTCY COURT, AS DESCRIBED IN GREATER DETAIL IN THE DISCLOSURE STATEMENT (AS DEFINED BELOW).[1]  ONLY ELIGIBLE HOLDERS (OR THEIR AUTHORIZED SIGNATORIES) ARE ENTITLED TO VOTE ON THE DEBTORS' PREPACKAGED PLAN PRIOR TO THE DEBTORS' CHAPTER 11 PETITIONS AND THE BANKRUPTCY COURT'S CONDITIONAL APPROVAL OF THE DISCLOSURE STATEMENT.  IF YOU ARE NOT AN ELIGIBLE HOLDER, YOU SHOULD NOT SUBMIT THIS PREPETITION BALLOT OR CAUSE YOUR NOMINEE TO SUBMIT A PREPETITION MASTER BALLOT ON YOUR BEHALF.  ANY PREPETITION BALLOT RECEIVED BY A NON-ELIGIBLE HOLDER WILL NOT BE COUNTED.

**BENEFICIAL HOLDER BALLOT FOR**
**HOLDERS OF SECURED NOTES CLAIMS AND FIRST LIEN DEFICIENCY CLAIMS TO**
**(I) VOTE TO ACCEPT OR REJECT THE JOINT PREPACKAGED PLAN OF**
**REORGANIZATION OF MULTI-COLOR CORPORATION AND ITS DEBTOR AFFILIATES**
**PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) OPT OUT OF THE PLAN**
**RELEASES**

---

**PLEASE READ AND FOLLOW THE ENCLOSED**
**INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**THE DEADLINE FOR THE RECEIPT OF BALLOTS AND MASTER BALLOTS IS MARCH 3, 2026,**
**AT 5:00 P.M., PREVAILING EASTERN TIME (THE "VOTING DEADLINE").**

***IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE*, PLEASE**
**COMPLETE SIGN, AND DATE THE BENEFICIAL HOLDER BALLOT AND RETURN IT**
**PROMPTLY IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.**
**PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER**
**BALLOT COMPLETED BY YOUR NOMINEE.  THE MASTER BALLOT MUST BE ACTUALLY**
**RECEIVED BY KURTZMAN CARSON CONSULTANTS, LLC (D/B/A VERITA GLOBAL)**
**("VERITA" OR THE "SOLICITATION AGENT") ON OR BEFORE THE VOTING DEADLINE.**

***IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO VERITA*, PLEASE COMPLETE THE**
**BALLOT AND RETURN IT PROMPTLY IN THE ENVELOPE PROVIDED SO THAT IT IS**
**ACTUALLY RECEIVED BY VERITA BY THE VOTING DEADLINE.**

---

On January 27, 2026, Multi-Color Corporation and certain of its affiliates (collectively, the "Debtors")[2] commenced solicitation of votes on the *Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be

---

[1]   Capitalized terms used but not defined herein have the meanings set forth in the Plan, the Restructuring Support Agreement, or the Disclosure Statement (each as defined below), as applicable.

[2]   The last four digits of Debtor Multi-Color Corporation's tax identification number are 5853.  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.veritaglobal.net/MCC.  The location of the Debtors' service address for purposes of these chapter 11 cases is: 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327.

altered, amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan").

In connection with the solicitation process, the Debtors distributed the Plan and the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be altered, amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Disclosure Statement") to: (i) Holders of Cash Flow Revolving Facility Claims, Cash Flow Term Loan Facilities Claims, and Secured Notes Claims (together, Class 4 under the Plan) (collectively, the "First Lien Secured Claims") and (ii) Holders of First Lien Deficiency Claims and Unsecured Notes Claims (together, Class 5 under the Plan) (collectively, the "Junior Funded Debt Claims"), in each case, as of January 15, 2026 (the "Voting Record Date"). As explained in further detail in the Disclosure Statement, on January 25, 2026, after engaging in extensive, arm's-length, good-faith negotiations, the Debtors entered into a restructuring support agreement (as amended, modified, or supplemented from time to time, and including all exhibits and supplements thereto, the "Restructuring Support Agreement" and, the transactions contemplated thereby, the "Restructuring Transactions") with certain of the Debtors' key economic stakeholders, including the (i) Secured Ad Hoc Group, which holds over two-thirds of the First Lien Secured Claims, (ii) Plan Sponsor, and (iii) Sponsor. As used herein, the term "Nominee" means the nominee, broker, or other Depository Trust Company ("DTC") participant for the Holder of a First Lien Secured Claim or Junior Funded Debt Claim.

The Debtors are soliciting prepetition votes on the Plan from Eligible Holders of Class 4 First Lien Secured Claims and Eligible Holders of Class 5 Junior Funded Debt Claims (each, a "Voting Class" and collectively, the "Voting Classes").

**You are receiving this Ballot because your Nominee has identified you as a Beneficial Holder[3] and an Eligible Holder[4] of a Secured Notes Claim (Class 4 First Lien Secured Claim) and a First Lien Deficiency Claim (Class 5 Junior Funded Debt Claim) as of the Voting Record Date. Accordingly, you have the right to vote to accept or reject the Plan.**

Holders of Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) as of the Voting Record Date are entitled to: (i) vote to accept or reject the Plan and (ii) elect to opt out of the Plan Releases (as defined below). The treatment of Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) under the Plan is described in the Disclosure Statement, which is included (along with the Plan) in the package (the "Solicitation Package") you are receiving with this Ballot.

The Debtors intend to implement the Restructuring Transactions by commencing voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in

---

[3]  "Beneficial Holder" is a beneficial owner of a Secured Notes Claim (Class 4 First Lien Secured Claims) and/or First Lien Deficiency Claim (Class 5 Junior Funded Debt Claims) whose Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by the Nominees holding through the DTC and/or the applicable indenture trustee, as of the Voting Record Date.

[4]  "Eligible Holder" is a Beneficial Holder of a Secured Notes Claim (Class 4 First Lien Secured Claims) and/or First Lien Deficiency Claim (Class 5 Junior Funded Debt Claims) who is (A) (i) a "qualified institutional buyer" (as defined in Rule 144A of the Securities Act of 1933, 15 U.S.C §§ 77a-77aa (as amended, the "Securities Act")) or (ii) an institutional "accredited investor" within the meaning of Rule 501(a) (1), (2), (3), (7), (8), (9), (12), or (13) of Regulation D under the Securities Act, in each case, having (or is a, direct or indirect, wholly-owned subsidiary of any entity having) total assets in excess of $10 million, or (B) not a "U.S. person" (as defined in Regulation S of the Securities Act).

3

the Bankruptcy Court and seeking confirmation and consummation of the Plan. The Debtors anticipate that such Chapter 11 Cases will commence in the Bankruptcy Court on or about January 28, 2026. The deadline to (i) vote to accept the Plan or reject the Plan and (ii) opt out of the Plan Releases is March 3, 2026, at 5:00 p.m., prevailing Eastern Time.

**Please *carefully review* each of the Plan, the Restructuring Support Agreement, and the Disclosure Statement and each of its exhibits to understand the treatment that Holders of Allowed First Secured Lien Claims are entitled to under Plan.**

**You may (with respect to each of your Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) set forth at <u>Item 1</u> below) (i) vote to accept or reject the Plan and (ii) elect to opt out of the releases provided under the Plan in any such case by completing, signing, and submitting this Ballot in accordance with the instructions set forth below. Your Ballot will be counted <u>only</u> if it or a Master Ballot cast on your behalf is properly completed and signed and *actually received* by the Solicitation Agent no later than the Voting Deadline, which is March 3, 2026, at 5:00 p.m., prevailing Eastern Time.**

**If the Plan is confirmed and consummated through the Chapter 11 Cases, the releases set forth in <u>Article VIII</u> of the Plan (the "<u>Plan Releases</u>") shall apply. THE PLAN RELEASES INCLUDE A THIRD-PARTY RELEASE (THE "<u>THIRD-PARTY RELEASE</u>"), WHICH IS SET FORTH IN <u>ARTICLE VIII.D</u> OF THE PLAN AND AT <u>ITEM 4</u> OF THIS BALLOT (TOGETHER WITH CERTAIN RELEVANT DEFINED TERMS FROM THE PLAN).**

**<u>YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE UNLESS YOU CHECK THE OPT-OUT BOX IN ITEM 4 OF THIS BALLOT AND PROPERLY COMPLETE AND TIMELY SUBMIT THIS BALLOT IN ACCORDANCE WITH THE INSTRUCTIONS SET FORTH HEREIN.</u>**

If you received this Ballot or other materials in electronic format and desire paper copies, or if you need to obtain additional materials, you may obtain them free of charge: (1) by emailing the Solicitation Agent at mccinfo@veritaglobal.com (reference "Multi-Color Corporation" in subject line); or (2) by writing to the Solicitation Agent at MCC Ballot Processing Center c/o KCC dba Verita Global, 222 N Pacific Coast Highway, Suite 300, El Segundo, CA 90245. Following the commencement of the Chapter 11 Cases, you may also obtain copies of any documents filed in the Chapter 11 Cases free of charge on the Debtors' restructuring website at https://www.veritaglobal.net/MCC or for a fee through the Bankruptcy Court's website at https://ecf.njb.uscourts.gov.

---

4

**Item 1. Amount of Claim.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of a Secured Notes Claim (Class 4 First Lien Secured Claim) and a First Lien Deficiency Claim (Class 5 Junior Funded Debt Claim) as the Beneficial Holder in the following amount:[5]

Only Eligible Holders (or their authorized signatories) are entitled to vote. If you are an Eligible Holder, please confirm by checking the applicable box below.

| Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) |
|---|
| **(Principal Amount of Secured Notes Held, if applicable)** |
| $_____ |

| Eligibility | |
|---|---|
| The undersigned certifies that it is either (A) (i) a "qualified institutional buyer" (as defined in Rule 144A of the Securities Act of 1933, (as amended, the "Securities Act")), (ii) an institutional "accredited investor" within the meaning of Rule 501(a) (1), (2), (3), (7), (8), (9), (12), or (13) of Regulation D under the Securities Act, in each case, having (or is a direct or indirect, wholly-owned subsidiary of any entity having) total assets in excess of $10 million or (B) not a "U.S. person" (as defined in Regulation S of the Securities Act). | ☐ **By checking this box, the Holder of the Claims identified in Item 1 certifies that it is an Eligible Holder** |

If a Nominee holds your Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) on your behalf and you do not know the principal amount, please contact your Nominee immediately.

**Item 2. Vote on Plan – Secured Notes Claims (Class 4 First Lien Secured Claims).**[6]

The undersigned votes, with respect to its **Secured Notes Claim (Class 4 First Lien Secured Claim)**, to (please check **one box**):

| ☐ **ACCEPT** (vote FOR) the Plan | ☐ **REJECT** (vote AGAINST) the Plan |
|---|---|

---

[5]  The Solicitation Agent shall tabulate a Holder's Class 5 First Lien Deficiency Claim by using the Claim amount of such Holder's Secured Notes Claim when calculating the voting results, which findings shall be included in the Voting Report.

[6]  By submitting this Beneficial Holder Ballot, the Beneficial Holder is deemed to have consented to, and expressly authorizes, the Nominee to disclose the Beneficial Holder's name and contact information to the Solicitation Agent upon request.

5

**Item 3**. **Vote on Plan – First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims)**.

The undersigned votes, with respect to its **First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims)**, to (please check **one box**):

| | |
|---|---|
| ☐   **ACCEPT** (vote FOR) the Plan | ☐   **REJECT** (vote AGAINST) the Plan |

**Item 4**. **Third-Party Release.**

The Third-Party Release set forth in Article VIII.D of the Plan is copied below, along with certain relevant definitions:[7]

**Except as otherwise specifically provided in the Plan or the Confirmation Order, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates), whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or herein after arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their estates, Affiliates, heirs, executory, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, the Debtors, their Estates, and the Reorganized Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or their Estates (including the capital structure, management, direct or indirect ownership, or operation thereof), the solicitation and provision of Solicitation Materials to Holders of Claims prior to the Chapter 11 Cases, the Chapter 11 Cases, the Restructuring Transactions, the Reorganized Debtors (including the management, direct or indirect ownership, or operation thereof), the New Common Equity Debt Election, the purchase, sale, or rescission of any Security of the Debtors, their Estates, and the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the assertion of enforcement of rights or remedies against the Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases including all prior recapitalizations, restructurings, or refinancing efforts and transactions, any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the decision to file the Chapter 11 Cases, any related adversary proceedings, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or**

---

[7]   The Plan also contains Debtor releases, exculpation, and injunction provisions set forth in Articles VIII.C, VIII.E, and VIII.F of the Plan, respectively.  Unless you otherwise are included in the definition of Released Parties, you must be a Releasing Party (*i.e.*, a Holder of a Claim or Interest that does not opt out of the Third-Party Release) to receive the Debtor releases set forth in Article VIII.C.

filing of the Restructuring Support Agreement, the Definitive Documents, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Definitive Documents, the Plan Supplement, the New Debt, the New ABL Facility, the New Preferred Equity Investment, the Plan Sponsor Equity Investment, the DIP Facility, the DIP Orders, the DIP Documents, the New Debt Documents, the New ABL Facility Documents, or the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before, in respect of the foregoing clause the Effective Date.

Notwithstanding anything to the contrary herein, the Releasing Parties do not, pursuant to the releases set forth above, release:  (i) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, and Restructuring Transactions, or any documents, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions; (ii) the rights of any Holder of Allowed Claims to receive distributions under the Plan; or (iii) any claims or Causes of Action arising from such Released Party's willful misconduct or actual fraud, in each case as determined by a final, non-appealable order entered by a court of competent jurisdiction.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (i) consensual; (ii) essential to the Confirmation of the Plan; (iii) given in exchange for good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable, and reasonable; (vii) given and made after due notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

Without limiting the foregoing, from and after the Effective Date, any Entity that is given the opportunity to opt out of the releases contained in Article VIII.D of the Plan and does not exercise such opt out may not assert any claim or other Cause of Action against any Released Party based on or relating to, or in any manner arising from, in whole or in part, the Debtors.  From and after the Effective Date, any Entity that opted out of the releases contained in Article VIII.D of the Plan may not assert any claim or other Cause of Action against any Released Party for which it is asserted or implied that such claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan and (b) specifically authorizing such Person or Entity to bring such claim or Cause of Action against any such Released Party.  The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in Article XI of the Plan, the Bankruptcy Court shall have jurisdiction to adjudicate the underlying claim or Cause of Action.

<u>Certain Definitions Related to the Third-Party Release</u>

Under the Plan, "<u>Releasing Parties</u>" means, collectively, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Holder of an ABL Facility Claim; (e) each Company Party; (f) the Plan Sponsor; (g) the Sponsor; (h) each Holder of

7

a DIP Claim; (i) each Agent/Trustee; (j) each DIP Backstop Party; (k) each New Preferred Equity Investment Backstop Party; (l) each New Term Loan Facility Lender; (m) each New Noteholder; (n) each New ABL Facility Lender, (o) all Holders of Claims or Interests that vote to accept the Plan and do not affirmatively opt out of the releases provided for in the Plan; (p) all Holders of Claims or Interests who are deemed to accept the Plan and do not affirmatively opt out of the releases provided for in the Plan; (q) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided for in the Plan; (r) all Holders of Claims or Interests who vote to reject the Plan and who do not affirmatively opt out of the releases provided for in the Plan; (s) all Holders of Claims or Interests who are deemed to reject the Plan and who do not affirmatively opt out of the releases provided for in the Plan; (t) each current and former Affiliate of each Entity in clause (a) through the following clause (u); and (u) each Related Party of each Entity in clause (a) through this clause (u); provided that each Holder of Claims or Interests that is party to the Restructuring Support Agreement shall be a Releasing Party; provided, further, that, in each case, an Entity shall not be a Releasing Party if it timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation.[8]

Under the Plan, "**Released Parties**" means, collectively, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Holder of an ABL Facility Claim; (e) each Company Party; (f) the Plan Sponsor; (g) the Sponsor; (h) each Holder of a DIP Claim; (i) each Agent/Trustee; (j) each DIP Backstop Party; (k) each New Preferred Equity Investment Backstop Party; (l) each New Term Loan Facility Lender; (m) each New Noteholder; (n) each New ABL Facility Lender; (o) each current and former Affiliate of each Entity in clause (a) through the following clause (p); and (p) each Related Party of each Entity in clause (a) through this clause (p); provided that, in each case, an Entity shall not be a Released Party if it:  (x) elects to opt out of the releases described in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved prior to Confirmation.

<u>**YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE UNLESS YOU CHECK THE OPT-OUT BOX BELOW.**</u>

☐    The undersigned elects to **OPT OUT** of the Third-Party Release with respect to its Secured Notes Claims (Class 4 First Lien Secured Claims).

☐    The undersigned elects to **OPT OUT** of the Third-Party Release with respect to its First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims).

**Item 5.  Certification of Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) Held in Additional Accounts**.

By completing and returning this Ballot, the Beneficial Holder of the Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) identified in

---

[8]    Notwithstanding anything contrary herein, with respect to funds and accounts managed by BlackRock, Inc. or its Affiliates that are Consenting Stakeholders under the Restructuring Support Agreement (the "<u>BlackRock Consenting Creditors</u>"), the defined terms "Releasing Parties" and "Released Parties" shall be limited to (i) the BlackRock Consenting Creditors, (ii) any trading desk(s), fund(s), account, branch, unit, and/or business group(s) of the BlackRock Consenting Creditors that have a beneficial interest in the Company Claims/Interests held by BlackRock Consenting Creditors, or are otherwise acting for the benefit of or at the direction of the BlackRock Consenting Creditors, and (iii) any Affiliates and Related Parties of BlackRock Consenting Creditors for which the BlackRock Consenting Creditors are legally entitled to bind under applicable law.

Item 1 certifies that this Ballot is the only Ballot submitted for the Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) identified in Item 1 owned by such Beneficial Holder as indicated in Item 1, except for the Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) identified in the following table. **For the avoidance of doubt, if any Beneficial Holder holds Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) through one or more Nominees, such Beneficial Holder must identify all Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) held through its own name and/or each Nominee in the following table and must indicate the same vote to accept or reject the Plan on all Ballots submitted.**

ONLY COMPLETE ITEM 5 IF YOU HAVE SUBMITTED OTHER BALLOTS ON ACCOUNT OF A SECURED NOTES CLAIM (CLASS 4 FIRST LIEN SECURED CLAIM) AND A FIRST LIEN DEFICIENCY CLAIM (CLASS 5 JUNIOR FUNDED DEBT CLAIM).

| Account Number of Secured Notes Claims Voted in Class 4 | Name of Owner[9] | Principal Amount of Secured Notes Claims Voted in Class 4[10] | CUSIP of Secured Notes Claims Voted in Class 4 |
|---|---|---|---|
| **Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims)** | | | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |

---

[9]   Insert your name if the Secured Notes Claims in Class 4 are held by you in your own name or, if held in a street name through a Nominee, insert the name of your broker or bank and their DTC Participant Number.

[10]  The Solicitation Agent shall tabulate a Holder's Class 5 First Lien Deficiency Claim by using the Claim amount of such Holder's Secured Notes Claim when calculating the voting results, which findings shall be included in the Voting Report.

9

**Item 6**. **Certifications**.

By signing this Ballot, the undersigned certifies that:

(a)  as of the Voting Record Date, either:  (i) the undersigned is the Eligible Holder of the Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) set forth in <u>Item 1</u>; or (ii) the undersigned is an authorized signatory for a Beneficial Holder of the Secured Notes Claims (Class 4 First Lien Secured Claims) set forth in <u>Item 1</u>.

(b)  the undersigned (or in the case of an authorized signatory, the Beneficial Holder) has received a copy of the Disclosure Statement and the Solicitation Package (including the Plan and the Restructuring Support Agreement) and acknowledges that the Solicitation is being made pursuant to the terms and conditions set forth therein;

(c)  the undersigned has submitted the same election with respect to each of the Plan and the Third-Party Release, as applicable, with respect to all of its Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims);

(d)  by submitting this Beneficial Holder Ballot, the Beneficial Holder is deemed to have consented to, and expressly authorizes, the Nominee to disclose the Beneficial Holder's name and contact information to the Solicitation Agent upon request;

(e)  no other Ballot(s) or Master Ballot(s) with respect to the Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) set forth in <u>Item 1</u> have been submitted or, if any other Ballot(s) or Master Ballots(s) have been submitted with respect to such Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims), then any such earlier Ballot(s) or Master Ballot(s) are hereby revoked; and

(f)  the undersigned understands and acknowledges that the Solicitation Agent may verify the amount of the Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) set forth in <u>Item 1</u> held by the Beneficial Holder as of the Voting Record Date with any Nominee through which the Beneficial Holder holds its Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) set forth in <u>Item 1</u> and, by returning an executed Ballot, the Beneficial Holder directs any such Nominee to provide any information or comply with any actions requested by the Solicitation Agent to verify the amount set forth in <u>Item 1</u> hereof.  In the event of a discrepancy regarding such amount that cannot be timely reconciled without undue effort on the part of the Solicitation Agent, the amount shown on the records of the Nominee, if applicable, or the Debtors' records shall control.

| | |
|---|---|
| Name of Beneficial Holder: | |
| | (Print or type) |
| DTC Participant Number: | |
| Signature: | |
| Name of Signatory: | |
| | (If other than Beneficial Holder) |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

11

**INSTRUCTIONS FOR COMPLETING AND RETURNING THIS BALLOT**

1. The Debtors are soliciting prepetition votes on the Plan from Eligible Holders of Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) as of the Voting Record Date (January 15, 2026). **PLEASE READ THE PLAN, THE DISCLOSURE STATEMENT AND EACH OF ITS EXHIBITS, THE RESTRUCTURING SUPPORT AGREEMENT, THIS BALLOT, AND THESE INSTRUCTIONS (THE "BALLOT INSTRUCTIONS") CAREFULLY BEFORE COMPLETING AND SUBMITTING THIS BALLOT.**

2. The Plan may be confirmed by the Bankruptcy Court and consummated, and thereby made binding upon you, provided that the Plan satisfies the requirements for confirmation set forth in the Bankruptcy Code.

3. Unless otherwise instructed by your Nominee, to ensure that your vote is counted, you must submit your Ballot to your Nominee so that your Nominee can submit a Master Ballot that reflects your vote so as to be ***actually received*** by the Solicitation Agent no later than the Voting Deadline. You may instruct your Nominee to vote on your behalf in the Master Ballot by (a) completing your Ballot, (b) indicating your decision either to accept or reject the Plan in the boxes provided in Item 2 of your Ballot, and (c) signing and returning your Ballot to your Nominee in accordance with the instructions provided by your Nominee. The Voting Deadline for the receipt of Master Ballots by the Solicitation Agent is March 3, 2026, at 5:00 p.m., prevailing Eastern Time. Your completed Ballot must be received by your Nominee in sufficient time to permit your Nominee to deliver your votes so as to be ***actually received*** by the Solicitation Agent no later than the Voting Deadline.

4. **Return of Hard Copy Ballot to Nominee**. If you are returning your Ballot to the Nominee that provided you with this Ballot, your completed Ballot must be sent to your Nominee, allowing sufficient time for your Nominee to receive your Ballot, complete a Master Ballot, and transmit the Master Ballot to the Solicitation Agent so that it is ***actually received*** by the Voting Deadline. Your Nominee is authorized to disseminate the Solicitation Packages and voting instructions to, and collect voting information from, Beneficial Holders according to its customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

5. **Return of Electronic Ballot to Nominee**. If you are directed by your Nominee to submit the Beneficial Holder Ballot to the Nominee via electronic means, such instructions to your Nominee shall have the same effect as if you had completed and returned a physical Beneficial Holder Ballot to your Nominee, including all certifications.

6. The time by a Master Ballot including your vote is ***actually received*** by the Solicitation Agent shall be the time used to determine whether such Master Ballot has been submitted by the Voting Deadline. **The Voting Deadline is March 3, 2026, at 5:00 p.m., prevailing Eastern Time**.

7. If a Ballot is received *after* the Voting Deadline, and if the Voting Deadline is not extended, it may be counted only in the sole discretion of the Debtors or as permitted by the Bankruptcy Court. Additionally, **the following Ballots will *not* be counted**:

    1. any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;
    2. any Ballot that was transmitted other than as specifically set forth in the Ballot;
    3. any Ballot that was cast by an entity that it not entitled to vote on the Plan, including a prepetition Ballot submitted by or on behalf of a non-Eligible Holder;

12

4. any Ballot that was sent to any person or entity other than the Solicitation Agent;

5. any Ballot that is unsigned;

6. any Ballot that is not clearly marked to either accept or reject the Plan or is marked both to accept and reject the Plan;

7. any Ballot that partially rejects and/or partially accepts the Plan in a particular Voting Class;

8. any Ballot superseded by a later, timely submitted valid Ballot;

9. an improperly submitted Ballot; or

10. any Ballot that is not actually received by the Solicitation Agent by the Voting Deadline, unless the Debtors determine otherwise or as permitted by the Court.

8. The method of delivery of Ballots to the Solicitation Agent is at the election and risk of each Holder of a Secured Notes Claim (Class 4 First Lien Secured Claim) and First Lien Deficiency Claim (Class 5 Junior Funded Debt Claim). Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent ***actually receives*** the original executed Ballot. For the avoidance of doubt, a Ballot submitted electronically via the online portal shall be considered an original. In all cases, Holders should allow sufficient time to assure timely delivery.

9. If multiple Ballots are received from the same Holder, the latest, timely received, and properly completed Ballot or Master Ballot will supersede and revoke any earlier received Ballot(s) with respect to such Claims.

10. This Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you in the event that (i) the Debtors revoke or withdraw the Plan, (ii) the Confirmation Order is not entered, or (iii) consummation of the Plan does not occur. In addition, for the avoidance of doubt, any Ballots submitted by Consenting Lenders shall be subject to the applicable provisions of the Restructuring Support Agreement.

11. You must vote each of your Secured Notes Claims (Class 4 First Lien Secured Claims) either to accept or reject the Plan and each of your First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) either to accept or reject the Plan; you may ***not*** split your vote within the Class 4 First Lien Secured Claims or the Class 5 Junior Funded Debt Claims classes.

12. This Ballot does ***not*** constitute and shall not be deemed to be:  (a) a Proof of Claim; or (b) an assertion or admission with respect to any Claim.

13. **Please be sure to sign and date your Ballot**. You should indicate that you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court (if applicable), must submit proper evidence to the requesting party to so act on behalf of such Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to your Ballot.

14. Each Ballot votes ***only*** your Claims indicated on that Ballot, so please complete and return each Ballot that you received.

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE, PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE. PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR NOMINEE. THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT AT OR BEFORE THE VOTING DEADLINE.**

**PLEASE RETURN YOUR BALLOT PROMPTLY.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THE BALLOT INSTRUCTIONS, OR THE PROCEDURES FOR VOTING ON THE PLAN, PLEASE CONTACT THE SOLICITATION AGENT BY EMAIL AT MCCINFO@VERITAGLOBAL.COM OR CALL (866) 967-1788 (TOLL-FREE US / CANADA) OR (310) 751-2688 (INTERNATIONAL).**

---

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT OR THE MASTER BALLOT AT OR BEFORE THE VOTING DEADLINE, WHICH IS MARCH 3, 2026, AT 5:00 P.M., PREVAILING EASTERN TIME (AND IF THE VOTING DEADLINE IS NOT EXTENDED), THEN THE VOTE REFLECTED IN THIS BALLOT OR THE MASTER BALLOT MAY BE COUNTED ONLY IN THE SOLE DISCRETION OF THE DEBTORS OR AS PERMITTED BY THE BANKRUPTCY COURT. IF YOU ARE NOT AN ELIGIBLE HOLDER (OR THE AUTHORIZED SIGNATORY OF AN ELIGIBLE HOLDER), YOU MAY NOT SUBMIT A PREPETITION BALLOT. ANY PREPETITION BALLOT RECEIVED BY A NON-ELIGIBLE HOLDER (OR ON BEHALF OF A NON-ELIGIBLE HOLDER) WILL NOT BE COUNTED.**

---

14

**Exhibit A**

*Please check ONLY ONE box below to indicate the CUSIP/ISIN to which this Beneficial Holder Ballot
pertains.  If you check more than one box below you risk having your vote invalidated.*

| | **DESCRIPTION** | **CUSIP** | **ISIN** |
|---|---|---|---|
| **Secured Notes Claims (Class 4 First Lien Secured Claims) / First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims)** | | | |
| ☐ | 5.875% Senior Secured Notes | 50168Q AC 9 | US50168QAC96 |
| ☐ | 5.875% Senior Secured Notes | U5022T AC 0 | USU5022TAC00 |
| ☐ | 9.500% Senior Secured Notes | 50168Q AE 5 | US50168QAE52 |
| ☐ | 9.500% Senior Secured Notes | U5022T AE 6 | USU5022TAE65 |
| ☐ | 8.625% Senior Secured Notes | 50168Q AF 2 | US50168QAF28 |
| ☐ | 8.625% Senior Secured Notes | U5022T AF 3 | USU5022TAF31 |

**Exhibit 4B**

**Secured Notes Claims (Class 4) and**
**First Lien Deficiency Claim (Class 5) Master Ballot**

**IMPORTANT**:  NO CHAPTER 11 CASES HAVE BEEN COMMENCED AS OF THE DATE OF THE DISTRIBUTION OF THIS MASTER BALLOT (THIS "MASTER BALLOT").  THE DEBTORS (AS DEFINED BELOW) INTEND TO COMMENCE VOLUNTARY CHAPTER 11 CASES IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY (THE "BANKRUPTCY COURT") TO SEEK CONFIRMATION OF THE PLAN (AS DEFINED BELOW) BY THE BANKRUPTCY COURT, AS DESCRIBED IN GREATER DETAIL IN THE DISCLOSURE STATEMENT (AS DEFINED BELOW).[1]  ONLY ELIGIBLE HOLDERS (OR THEIR AUTHORIZED SIGNATORIES) ARE ENTITLED TO VOTE ON THE DEBTORS' PREPACKAGED PLAN PRIOR TO THE DEBTORS' CHAPTER 11 PETITIONS AND THE BANKRUPTCY COURT'S CONDITIONAL APPROVAL OF THE DISCLOSURE STATEMENT.

**MASTER BALLOT FOR HOLDERS OF SECURED NOTES CLAIMS AND FIRST LIEN DEFICIENCY CLAIMS TO (I) VOTE TO ACCEPT OR REJECT THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF MULTI-COLOR CORPORATION AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) OPT OUT OF THE PLAN RELEASES**

---

**PLEASE READ AND FOLLOW THE ENCLOSED
INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**FOR YOUR VOTE TO BE COUNTED, THIS MASTER BALLOT MUST BE COMPLETED, SIGNED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY KURTZMAN CARSON CONSULTANTS, LLC (D/B/A VERITA GLOBAL) ("VERITA" OR THE "SOLICITATION AGENT") BY MARCH 3, 2026, AT 5:00 P.M., PREVAILING EASTERN TIME (THE "VOTING DEADLINE") IN ACCORDANCE WITH THE INSTRUCTIONS BELOW.**

---

On January 27, 2026, Multi-Color Corporation and certain of its affiliates (collectively, the "Debtors")[2] commenced solicitation of votes on the *Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be altered, amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan").

In connection with the solicitation process, the Debtors distributed the Plan and the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be altered, amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Disclosure Statement") to:  (i) Holders of Cash Flow Revolving Facility Claims, Cash Flow Term Loan Facilities Claims, and Secured Notes Claims (together, Class 4 under the Plan) (collectively, the "First Lien Secured Claims") and (ii) Holders of First Lien Deficiency Claims and Unsecured Notes Claims (together, Class 5 under the Plan) (collectively, the "Junior Funded Debt Claims"), in each case, as of January 15, 2026 (the "Voting Record Date").  As explained in further detail in the Disclosure Statement, on January 25, 2026, after engaging in extensive, arm's-length, good-faith negotiations, the Debtors entered into a restructuring support agreement (as amended, modified, or

---

[1]   Capitalized terms used but not defined herein have the meanings set forth in the Plan, the Restructuring Support Agreement, or the Disclosure Statement (each as defined below), as applicable.

[2]   The last four digits of Debtor Multi-Color Corporation's tax identification number are 5853.  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.veritaglobal.net/MCC.  The location of the Debtors' service address for purposes of these chapter 11 cases is: 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327.

supplemented from time to time, and including all exhibits and supplements thereto, the "Restructuring Support Agreement" and, the transactions contemplated thereby, the "Restructuring Transactions") with certain of the Debtors' key economic stakeholders, including the (i) Secured Ad Hoc Group, which holds over two-thirds of the First Lien Secured Claims, (ii) Plan Sponsor, and (iii) Sponsor.  As used herein, the term "Nominee" means the nominee, broker, or other Depository Trust Company ("DTC") participant for the Holder of a First Lien Secured Claim or Junior Funded Debt Claim.

The Debtors are soliciting prepetition votes on the Plan from Eligible Holders of Class 4 First Lien Secured Claims and Eligible Holders of Class 5 Junior Funded Debt Claims (each, a "Voting Class" and collectively, the "Voting Classes").

The Debtors intend to implement the Restructuring Transactions by commencing voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court and seeking confirmation and consummation of the Plan.  The Debtors anticipate that such Chapter 11 Cases will be commenced in the Bankruptcy Court on or about January 28, 2026.  The deadline to (i) vote to accept the Plan or reject the Plan and (ii) elect to opt out of the Plan Releases is March 3, 2026, at 5:00 p.m., prevailing Eastern Time.

**You are receiving this Master Ballot because you are the Nominee of a Beneficial Holder[3] and an Eligible Holder[4] of a Secured Notes Claim (First Lien Secured Claim in Class 4) and a First Lien Deficiency Claim (Class 5 Junior Funded Debt Claim) as of the Voting Record Date.**

**This Master Ballot is to be used by you as a Nominee or as the proxy holder of a Nominee for certain Beneficial Holders' Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) to transmit to the Solicitation Agent the votes of such Beneficial Holders in respect of their Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) to accept or reject the Plan.  The CUSIP numbers (the "CUSIP") for Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) entitled to vote and of which you are the Nominee are set forth on Exhibit A attached hereto.  THE VOTES ON THIS MASTER BALLOT FOR BENEFICIAL HOLDERS OF SECURED NOTES CLAIMS (CLASS 4 FIRST LIEN SECURED CLAIMS) AND FIRST LIEN DEFICIENCY CLAIMS (CLASS 5 JUNIOR FUNDED DEBT CLAIMS) SHALL BE APPLIED TO EACH DEBTOR AGAINST WHOM SUCH BENEFICIAL HOLDERS HAVE A SECURED NOTES CLAIM (CLASS 4 FIRST LIEN SECURED CLAIM) AND A FIRST LIEN DEFICIENCY CLAM (CLASS 5 JUNIOR FUNDED DEBT CLAIM).**

---

[3]   "Beneficial Holder" is a beneficial owner of Secured Notes Claims (Class 4 First Lien Secured Claims) and/or First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) whose Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by the Nominees (as defined herein) holding through the DTC or other relevant security depository and/or the applicable administrative agent as of the Voting Record Date.

[4]   "Eligible Holder" is a Beneficial Holder of a Secured Notes Claim (Class 4 First Lien Secured Claims) and/or First Lien Deficiency Claim (Class 5 Junior Funded Debt Claims) who is (A) (i) a "qualified institutional buyer" (as defined in Rule 144A of the Securities Act of 1933 (as amended, the "Securities Act")), or (ii) an institutional "accredited investor" within the meaning of Rule 501(a) (1), (2), (3), (7), (8), (9), (12), or (13) of Regulation D under the Securities Act, in each case, having (or is a, direct or indirect, wholly-owned subsidiary of any entity having) total assets in excess of $10 million, or (B) not a "U.S. person" (as defined in Regulation S of the Securities Act).

3

The Disclosure Statement describes the rights and treatment for each Class under the Plan. The Disclosure Statement, the Plan, and certain other materials (the "Solicitation Package") have been distributed under separate cover from this Master Ballot. This Master Ballot may not be used for any purpose other than for (i) casting votes to accept or reject the Plan, (ii) opting out of the releases provided under the Plan, and (iii) making certain certifications or elections with respect thereto. Once completed and returned in accordance with the attached instructions, the votes on the Plan and opt out elections will be counted as set forth herein.

You are authorized to disseminate information and materials pertaining to the solicitation of Plan votes, and to collect votes to accept or to reject the Plan and Plan release opt out elections from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder ballot (a "Beneficial Holder Ballot"), and collecting votes and Plan release opt out elections from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

The Bankruptcy Court may confirm the Plan and thereby bind all Beneficial Holders of Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims). To have the votes of your Beneficial Holders count as either an acceptance or rejection of the Plan or an election to opt out of the releases provided under the Plan, you must properly complete, sign, and return this Master Ballot so that the Solicitation Agent *actually receives* it no later than the Voting Deadline, which is **March 3, 2026, at 5:00 p.m., prevailing Eastern Time**.

If you received this Master Ballot or other materials in electronic format and desire paper copies, or if you need to obtain additional materials, you may obtain them free of charge: (1) by emailing the Solicitation Agent at mccballots@veritaglobal.com (reference "Multi-Color Corporation" in subject line); or (2) by writing to the Solicitation Agent at MCC Ballot Processing Center c/o KCC dba Verita Global, 222 N Pacific Coast Highway, Suite 300, El Segundo, CA 90245. Following the commencement of the Chapter 11 Cases, you may also obtain copies of any documents filed in the Chapter 11 Cases free of charge on the Debtors' restructuring website at https://www.veritaglobal.net/MCC or for a fee through the Bankruptcy Court's website at https://ecf.njb.uscourts.gov.

---

4

**Item 1**.  **Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐  is a broker, bank, or other nominee for the Beneficial Holders of the aggregate principal amount of the Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) listed in Item 2 below, and is the record holder of such claims;

☐  is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, or other nominee that is the registered Beneficial Holder of the aggregate principal amount of the Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims)listed in Item 2 below; or

☐  has been granted a proxy (an original of which is attached hereto) from a broker, bank, or other nominee, or a Beneficial Holder, that is the registered Beneficial Holder of the aggregate principal amount of the Secured Notes Claims (First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) listed in Item 2 below, and accordingly, has full power and authority to vote to accept or reject the Plan, on behalf of the Beneficial Holders of the Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) described in Item 2.

**Item 2 & 3**.  **Secured Notes Claims' (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) Vote on Plan and Item 4.  Third-Party Release.**

The undersigned transmits the following votes and opt-out elections of Beneficial Holders of Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) against the Debtors as set forth below and certifies that the following Beneficial Holders of the Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims), as identified by their respective customer account numbers set forth below, are Beneficial Holders of such securities as of the Voting Record Date, and have delivered to the undersigned, as Nominee, Master Ballots casting such votes.  By submitting the votes and/or opt-out elections, the Beneficial Holders are deemed to have consented to, and expressly authorizes, the Nominee to disclose the Beneficial Holders' names and contact information to the Solicitation Agent upon request.

Indicate in the appropriate column below the aggregate principal amount voted for each account or attach such information to this Master Ballot in the form of the following table.  Please note that each Beneficial Holder must vote all of their Claims in the Voting Class either to accept or reject the Plan and may not split such vote.  Any Beneficial Holder Ballot executed by the Beneficial Holder that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.  If the Beneficial Holder has checked the box on Item 3 of the Beneficial Holder Ballot pertaining to the Third-Party Release by Holders of Secured Notes Claims (First Lien Secured Claims), as detailed in Article VIII.D of the Plan, please place an X in the Item 3 column of the Voting Class below. The full text of Article VIII.D is duplicated in the Master Ballot Instructions (as defined below).

5

| CUSIP AS INDICATED ON EXHIBIT A ATTACHED HERETO | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Your Customer Account Number for Each Beneficial Holder of a Secured Notes Claim Who Voted in Class 4** | **Principal Amount of Secured Notes Claims Held as of the Voting Record Date, if applicable[5]** | **Item 2 & 3**<br><br>Indicate the vote cast on the Beneficial Holder Ballot by placing an "X" in the appropriate column below. Please note that Holders of Secured Notes Claims are also entitled to vote on account of such Holder's First Lien Deficiency Claim, if any. | | | | **Item 4**<br><br>If the Opt-Out Election in **Item 3** of the Beneficial Holder Ballot was completed, place an "X" in the column below. | |
| | | **ACCEPT (vote FOR) the Plan** | | **or** | **REJECT (vote AGAINST) the Plan** | | |
| Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) | | | | | | | |
| | | **Class 4** | **Class 5** | | **Class 4** | **Class 5** | Class 4 | Class 5 |
| 1. | $ | | | | | | | |
| 2. | $ | | | | | | | |
| 3. | $ | | | | | | | |
| 4. | $ | | | | | | | |
| 5. | $ | | | | | | | |
| 6. | $ | | | | | | | |
| **TOTALS** | $ | | | | | | | |

**Item 5. Certification as to Transcription of Information from Item 5 of the Beneficial Holders Ballots as to Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) Voted Through Other Beneficial Holder Ballots.**

The undersigned certifies that the following information is a true and accurate schedule on which the undersigned has transcribed the information, if any, provided in Item 5 of each Beneficial Holder Ballot received from a Beneficial Holder. Please use additional sheets of paper if necessary.

| Your Customer Account Number for Each Beneficial Holder Who Completed **Item 4** of the Ballots | **TRANSCRIBE FROM ITEM 5 OF THE BENEFICIAL HOLDER BALLOTS:** | | | |
|---|---|---|---|---|
| | **Account Number of Secured Notes Claims Voted in Class 4** | **DTC Participant Name and Number** | **Principal Amount of Secured Notes Claims Voted in Class 4[6]** | **CUSIP of Secured Notes Claims Voted in Class 4** |
| **Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims)** | | | | |
| 1. | | | $ | |
| 2. | | | $ | |
| 3. | | | $ | |
| 4. | | | $ | |
| 5. | | | $ | |
| 6. | | | $ | |
| 7. | | | $ | |
| 8. | | | $ | |
| 9. | | | $ | |
| 10. | | | $ | |

**Item 6. Certifications.**

Upon execution of this Master Ballot, the undersigned certifies that:

1. it has received the Disclosure Statement and the Solicitation Package (including the Plan and the Restructuring Support Agreement), has delivered the same to the Beneficial Holders of Secured

---

[5] The Solicitation Agent shall tabulate a Holder's Class 5 First Lien Deficiency Claim by using the Claim amount of such Holder's Secured Notes Claim when calculating the voting results, which findings shall be included in the Voting Report.

[6] The Solicitation Agent shall tabulate a Holder's Class 5 First Lien Deficiency Claim by using the Claim amount of such Holder's Secured Notes Claim when calculating the voting results, which findings shall be included in the Voting Report.

Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) listed in Item 2 and Item 3 above or delivered materials via other customary communications used to solicit or collect votes, and acknowledges that the Solicitation is being made pursuant to the terms and conditions set forth therein;

1.  it has received appropriate voting instructions from each Beneficial Holder listed in Item 2 and Item 3 of this Master Ballot;

2.  it is the Nominee of the Beneficial Holder of the securities being voted;

3.  it has been authorized by each such Beneficial Holder to (i) vote on the Plan and (ii) elect to opt out of the releases provided under the Plan;

4.  it has properly disclosed:  (a) the number of Beneficial Holders who completed Beneficial Holder Ballots; (b) the respective amounts of the Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) as set forth in Item 2, as the case may be, by each Beneficial Holder who completed a Beneficial Holder Ballot; (c) each such Beneficial Holder's respective vote concerning the Plan; (d) such Beneficial Holder's respective Plan release opt out election; (e) each such Beneficial Holder's certification as to other Class 4 First Lien Secured Claims voted; and (f) the customer account or other identification number for each such Beneficial Holder; and

5.  it will maintain Ballots and evidence of separate transactions returned by Beneficial Holders (whether properly completed or defective) for at least two years after the Effective Date and disclose all such information to the Bankruptcy Court or the Debtors, as the case may be, if so ordered.

8

| | |
|---|---|
| Name of Nominee: | |
| | (Print or type) |
| DTC Participant Number: | |
| Name of Proxy Holder or Agent for Nominee (if applicable): | |
| | (Print or type) |
| Signature: | |
| Name of Signatory: | |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

<u>**INSTRUCTIONS FOR COMPLETING AND RETURNING THIS MASTER BALLOT**</u>

1.  The Debtors are soliciting prepetition votes on the Plan from Eligible Holders of Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) as of the Voting Record Date (January 15, 2026).  **PLEASE READ THE PLAN, THE DISCLOSURE STATEMENT AND EACH OF ITS EXHIBITS, THE RESTRUCTURING SUPPORT AGREEMENT, THIS MASTER BALLOT, AND THESE INSTRUCTIONS (THE "<u>MASTER BALLOT INSTRUCTIONS</u>") CAREFULLY BEFORE COMPLETING AND SUBMITTING THIS MASTER BALLOT.**

2.  The Plan may be confirmed by the Bankruptcy Court and consummated, and thereby made binding upon Holders of Claims and Interests provided that the Plan satisfies the requirements for confirmation set forth in the Bankruptcy Code.

3.  **To ensure that the Master Ballot is counted, you must complete and sign the Master Ballot as provided herein and submit it to the Solicitation Agent by <u>one</u> of the following methods so as to be <u>*actually received*</u> by the Solicitation Agent no later than the Voting Deadline, which is March 3, 2026, at 5:00 p.m., prevailing Eastern Time.**

    **Via electronic mail service to (<u>preferred method</u>):  mccballots@veritaglobal.com[7] with a reference to "Multi-Color Corporation Master Ballot" in the subject line.**

    <u>OR</u>

    **By First-Class Mail, Overnight Mail, or Hand Delivery to:**

    MCC Ballot Processing Center
    c/o KCC dba Verita Global
    222 N Pacific Coast Highway, Suite 300
    El Segundo, CA 90245

4.  **<u>Use of Hard Copy Master Ballot.</u>**  To ensure that your hard copy Master Ballot is counted, you must: (a) complete your Master Ballot in accordance with these instructions below; (b) clearly indicate the applicable Beneficial Holders decision either to accept or reject the Plan in the applicable box in <u>Item 2</u> and <u>Item 3</u> of your Master Ballot; and (c) clearly sign and return your original Master Ballot to the above street address so as to be <u>*actually received*</u> by the Solicitation Agent no later than the Voting Deadline.

5.  You should immediately distribute the Beneficial Holder Ballots (or other customary material used to collect votes in lieu of the Beneficial Holders Ballots) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) and the Solicitation Package to all Beneficial Holders of Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) and take any action required to enable each such Beneficial Holder to timely vote the Claims that it holds.  You may distribute the Solicitation Packages to Beneficial Holders, as appropriate, in accordance with your customary practices.  You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a

---

[7] For any Ballot cast via electronic mail, the format of the attachment must be found in the common workplace and industry standard format (*i.e.*, industry-standard PDF file) and the received date and time in the Solicitation Agent's inbox will be used as the timestamp for receipt.

"voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means. Any Beneficial Holder Ballot returned to you by a Beneficial Holder of a Secured Notes Claim (First Lien Secured Claim in Class 4) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) shall not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver, to the Solicitation Agent a Master Ballot that reflects the vote of such Beneficial Holders by March 3, 2026, at 5:00 p.m., prevailing Eastern Time, or otherwise validate the Beneficial Holder Ballot in a manner acceptable to the Solicitation Agent.

If you are transmitting the votes of any Beneficial Holders of Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims), you must, within two (2) Business Days after receipt by such Nominee of the Solicitation Package, forward the Solicitation Package to the Beneficial Holder of the Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) for voting (along with a return envelope provided by and addressed to the Nominee, if applicable), with the Beneficial Holder of the Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) then returning the individual Beneficial Holder Ballot to the Nominee. In such case, the Nominee will tabulate the votes of its respective Beneficial Holders on a Master Ballot that will be provided to the Nominee separately by the Solicitation Agent, in accordance with any instructions set forth in the instructions to the Master Ballot, and then return the Master Ballot to the Solicitation Agent. The Nominee should advise the Beneficial Holders to return their individual Beneficial Holder Ballots to the Nominee by a date calculated by the Nominee to allow it to prepare and return the Master Ballot to the Solicitation Agent so that the Master Ballot is **_actually received_** by the Solicitation Agent on or before the Voting Deadline, which is March 3, 2026, at 5:00 p.m., prevailing Eastern Time.

6.  With regard to any Beneficial Holder Ballots returned to you by a Beneficial Holder, you must: (a) compile and validate the votes and other relevant information of each such Beneficial Holder on the Master Ballot using the customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Ballot; (c) transmit such Master Ballot to the Solicitation Agent by the Voting Deadline; and (d) retain such Beneficial Holder Ballots from Beneficial Holders of Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims), whether in hard copy or by electronic direction, in your files for a period of two years after the Effective Date. You may be ordered to produce the Beneficial Holder Ballots, names and/or contact information to the Debtors or the Bankruptcy Court.

7.  The time by which a Master Ballot is **_actually received_** by the Solicitation Agent shall be the time used to determine whether a Master Ballot has been submitted by the Voting Deadline. **The Voting Deadline is March 3, 2026, at 5:00 p.m., prevailing Eastern Time**.

8.  If a Master Ballot is received **_after_** the Voting Deadline, it will not be counted unless the Debtors determine in their sole discretion otherwise or as permitted by the Bankruptcy Court. Additionally, **the following Master Ballots and Beneficial Holder Ballots will _not_ be counted**:

    1.  any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;
    2.  any Ballot that was transmitted other than as specifically set forth in the Ballot;
    3.  any Ballot that was cast by an entity that it not entitled to vote on the Plan, including a prepetition Ballot submitted by or on behalf of a non-Eligible Holder;
    4.  any Ballot that was sent to any person or entity other than the Solicitation Agent;
    5.  any Ballot that is unsigned;

11

6. any Ballot that is not clearly marked to either accept or reject the Plan or is marked both to accept and reject the Plan;

7. any Ballot that partially rejects and/or partially accepts the Plan in a particular Voting Class;

8. any Ballot superseded by a later, timely submitted valid Ballot;

9. an improperly submitted Ballot; or

10. any Ballot that is not actually received by the Solicitation Agent by the Voting Deadline, unless the Debtors determine otherwise or as permitted by the Court.

11. The method of delivery of Master Ballots to the Solicitation Agent is at the election and risk of each Nominee of a Secured Notes Claim (Class 4 First Lien Secured Claim).  Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent *__actually receives__* the original executed Master Ballot.  For the avoidance of doubt, a Master Ballot submitted electronically via the online portal shall be considered an original.  In all cases, Nominees should allow sufficient time to assure timely delivery.

9. If multiple Master Ballots are received from the same Nominee with respect to the same Beneficial Holder Ballot belonging to a Beneficial Holder of a Secured Notes Claim (Class 4 First Lien Secured Claim) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims), the latest, timely received, and properly completed Master Ballot will supersede and revoke any earlier received Master Ballot(s) with respect to such Claims.

10. This Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you in the event that (i) the Debtors revoke or withdraw the Plan, (ii) the Confirmation Order is not entered, or (iii) consummation of the Plan does not occur.  In addition, for the avoidance of doubt, any Ballots submitted by Consenting Lenders shall be subject to the applicable provisions of the Restructuring Support Agreement.

11. A Beneficial Holder must vote each of their Secured Notes Claims (Class 4 First Lien Secured Claims) either to accept or reject the Plan and each of their First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) either to accept or reject the Plan; they may *__not__* split their vote within the Secured Notes Claims (Class 4 First Lien Secured Claims) or the First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) classes.

12. This Master Ballot does *__not__* constitute and shall not be deemed to be:  (a) a Proof of Claim; or (b) an assertion or admission with respect to any Claim.

13. **Please be sure to sign and date your Master Ballot**.  You should indicate that you are signing a Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court (if applicable), must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to your Master Ballot.

14. Each Ballot votes *__only__* the Claims indicated on that Master Ballot, so please complete and return each Master Ballot that you received.

**The following additional rules shall apply to Master Ballots**:

1. Votes cast by Beneficial Holders through a Nominee will be applied against the positions held by such entities in the Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency

Claims (Class 5 Junior Funded Debt Claims) as of the Voting Record Date, as evidenced by the record and depository listings.

2. Votes submitted by a Nominee pursuant to a Master Ballot will not be counted in excess of the record amount of the Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) held by such Nominee.

3. To the extent that conflicting votes or "overvotes" are submitted by a Nominee pursuant to a Master Ballot, the Solicitation Agent will attempt to reconcile discrepancies with the Nominee.

4. To the extent that overvotes on a Master Ballot are not reconcilable prior to the preparation of the vote certification, the Solicitation Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot that contained the overvote, but only to the extent of the Nominee's position in the Secured Notes Claims (Class 4 First Lien Secured Claims) and First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims).

5. For purposes of tabulating votes, each Beneficial Holder holding through a particular account will be deemed to have voted the principal amount relating to its holding in that particular account, although the Solicitation Agent may be asked to adjust such principal amount to reflect the Claim amount.

**Important Information Regarding the Third-Party Release under the Plan**:

Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "Third-Party Release").  The Third-Party Release is copied below, along with certain relevant definitions:[8]

**Except as otherwise specifically provided in the Plan or the Confirmation Order, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates), whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or herein after arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their estates, Affiliates, heirs, executory, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, the Debtors, their Estates, and the Reorganized Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or their Estates (including the capital structure, management, direct or indirect ownership, or operation thereof), the solicitation and provision of Solicitation Materials to Holders of Claims prior to the Chapter 11 Cases, the Chapter 11 Cases, the Restructuring Transactions, the Reorganized Debtors (including the management, direct or indirect ownership, or operation thereof), the New Common Equity Debt Election, the purchase, sale, or rescission of any Security of the Debtors, their Estates, and the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the assertion of enforcement of rights or remedies against the Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases including all prior recapitalizations, restructurings, or refinancing efforts and transactions, any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the decision to file the Chapter 11 Cases, any related adversary proceedings, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Restructuring Support Agreement, the Definitive Documents, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Definitive Documents, the Plan Supplement, the New Debt, the New ABL Facility, the New Preferred Equity Investment, the Plan Sponsor Equity Investment, the DIP Facility, the DIP Orders, the DIP Documents, the New Debt Documents, the New ABL Facility Documents, or the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan,**

---

[8]   The Plan also contains Debtor releases, exculpation, and injunction provisions set forth in Articles VIII.C, VIII.E, and VIII.F of the Plan, respectively.  Unless you otherwise are included in the definition of Released Parties, you must be a Releasing Party (*i.e.*, a Holder of a Claim or Interest that does not opt out of the Third-Party Release) to receive the Debtor releases set forth in Article VIII.C.

or the distribution of property under the Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before, in respect of the foregoing clause the Effective Date.

Notwithstanding anything to the contrary herein, the Releasing Parties do not, pursuant to the releases set forth above, release:  (i) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, and Restructuring Transactions, or any documents, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions; (ii) the rights of any Holder of Allowed Claims to receive distributions under the Plan; or (iii) any claims or Causes of Action arising from such Released Party's willful misconduct or actual fraud, in each case as determined by a final, non-appealable order entered by a court of competent jurisdiction.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (i) consensual; (ii) essential to the Confirmation of the Plan; (iii) given in exchange for good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable, and reasonable; (vii) given and made after due notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

Without limiting the foregoing, from and after the Effective Date, any Entity that is given the opportunity to opt out of the releases contained in Article VIII.D of the Plan and does not exercise such opt out may not assert any claim or other Cause of Action against any Released Party based on or relating to, or in any manner arising from, in whole or in part, the Debtors.  From and after the Effective Date, any Entity that opted out of the releases contained in Article VIII.D of the Plan may not assert any claim or other Cause of Action against any Released Party for which it is asserted or implied that such claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan and (b) specifically authorizing such Person or Entity to bring such claim or Cause of Action against any such Released Party.  The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in Article XI of the Plan, the Bankruptcy Court shall have jurisdiction to adjudicate the underlying claim or Cause of Action.

<u>Certain Definitions Related to the Third-Party Release</u>

Under the Plan, "<u>Releasing Parties</u>" means, collectively, and in each case in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Holder of an ABL Facility Claim; (e) each Company Party; (f) the Plan Sponsor; (g) the Sponsor; (h) each Holder of a DIP Claim; (i) each Agent/Trustee; (j) each DIP Backstop Party; (k) each New Preferred Equity Investment Backstop Party; (l) each New Term Loan Facility Lender; (m) each New Noteholder; (n) each New ABL Facility Lender, (o) all Holders of Claims or Interests that vote to accept the Plan and do not affirmatively opt out of the releases provided for in the Plan; (p) all Holders of Claims or Interests who are deemed to accept the Plan and do not affirmatively opt out of the releases provided for in the Plan; (q) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided for in the Plan; (r) all Holders of Claims

15

or Interests who vote to reject the Plan and who do not affirmatively opt out of the releases provided for in the Plan; (s) all Holders of Claims or Interests who are deemed to reject the Plan and who do not affirmatively opt out of the releases provided for in the Plan; (t) each current and former Affiliate of each Entity in clause (a) through the following clause (u); and (u) each Related Party of each Entity in clause (a) through this clause (u); provided that each Holder of Claims or Interests that is party to the Restructuring Support Agreement shall be a Releasing Party; provided, further, that, in each case, an Entity shall not be a Releasing Party if it timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation.[9]

Under the Plan, "Released Parties" means, collectively, and in each case in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Holder of an ABL Facility Claim; (e) each Company Party; (f) the Plan Sponsor; (g) the Sponsor; (h) each Holder of a DIP Claim; (i) each Agent/Trustee; (j) each DIP Backstop Party; (k) each New Preferred Equity Investment Backstop Party; (l) each New Term Loan Facility Lender; (m) each New Noteholder; (n) each New ABL Facility Lender; (o) each current and former Affiliate of each Entity in clause (a) through the following clause (p); and (p) each Related Party of each Entity in clause (a) through this clause (p); provided that, in each case, an Entity shall not be a Released Party if it:  (x) elects to opt out of the releases described in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved prior to Confirmation.

---

[9]  Notwithstanding anything contrary herein, with respect to funds and accounts managed by BlackRock, Inc. or its Affiliates that are Consenting Stakeholders under the Restructuring Support Agreement (the "BlackRock Consenting Creditors"), the defined terms "Releasing Parties" and "Released Parties" shall be limited to (i) the BlackRock Consenting Creditors, (ii) any trading desk(s), fund(s), account, branch, unit, and/or business group(s) of the BlackRock Consenting Creditors that have a beneficial interest in the Company Claims/Interests held by BlackRock Consenting Creditors, or are otherwise acting for the benefit of or at the direction of the BlackRock Consenting Creditors, and (iii) any Affiliates and Related Parties of BlackRock Consenting Creditors for which the BlackRock Consenting Creditors are legally entitled to bind under applicable law.

**PLEASE RETURN YOUR MASTER BALLOT PROMPTLY.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT, THE
MASTER BALLOT INSTRUCTIONS, OR THE PROCEDURES FOR VOTING
ON THE PLAN, PLEASE CONTACT THE SOLICITATION AGENT BY EMAIL AT
MCCBALLOTS@VERITAGLOBAL.COM OR CALL (877) 499-4509 (TOLL-FREE US /
CANADA) OR (917) 281-4800 (INTERNATIONAL).**

---

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS MASTER BALLOT AT OR BEFORE THE VOTING DEADLINE, WHICH IS MARCH 3, 2026, AT 5:00 P.M., PREVAILING EASTERN TIME (AND IF THE VOTING DEADLINE IS NOT EXTENDED), THEN THE VOTE REFLECTED IN THIS MASTER BALLOT MAY BE COUNTED ONLY IN THE SOLE DISCRETION OF THE DEBTORS OR AS PERMITTED BY THE BANKRUPTCY COURT.**

---

**Exhibit A**

*Please check ONLY ONE box below to indicate the CUSIP/ISIN to which this Master Ballot pertains (or clearly indicate such information directly on the Master Ballot or on a schedule thereto). If you check more than one box below, the Beneficial Holder votes submitted on this Master Ballot may be invalidated:*

| | DESCRIPTION | CUSIP | ISIN |
|---|---|---|---|
| **Secured Notes Claims (Class 4 First Lien Secured Claims) / First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims)** | | | |
| ☐ | 5.875% Senior Secured Notes | 50168Q AC 9 | US50168QAC96 |
| ☐ | 5.875% Senior Secured Notes | U5022T AC 0 | USU5022TAC00 |
| ☐ | 9.500% Senior Secured Notes | 50168Q AE 5 | US50168QAE52 |
| ☐ | 9.500% Senior Secured Notes | U5022T AE 6 | USU5022TAE65 |
| ☐ | 8.625% Senior Secured Notes | 50168Q AF 2 | US50168QAF28 |
| ☐ | 8.625% Senior Secured Notes | U5022T AF 3 | USU5022TAF31 |

**Exhibit 5**

**Cash Flow RCF (Class 4), Cash Flow Term Loan (Class 4),
and First Lien Deficiency Claims (Class 5) Ballot**

**IMPORTANT**:  NO CHAPTER 11 CASES HAVE BEEN COMMENCED AS OF THE DATE OF THE DISTRIBUTION OF THIS BALLOT (THIS "<u>BALLOT</u>").  THE DEBTORS (AS DEFINED BELOW) INTEND TO COMMENCE VOLUNTARY CHAPTER 11 CASES IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY (THE "<u>BANKRUPTCY COURT</u>") TO SEEK CONFIRMATION OF THE PLAN (AS DEFINED BELOW) BY THE BANKRUPTCY COURT, AS DESCRIBED IN GREATER DETAIL IN THE DISCLOSURE STATEMENT (AS DEFINED BELOW).[1] ONLY ELIGIBLE HOLDERS (OR THEIR AUTHORIZED SIGNATORIES) ARE ENTITLED TO VOTE ON THE DEBTORS' PREPACKAGED PLAN PRIOR TO THE DEBTORS' CHAPTER 11 PETITIONS AND THE BANKRUPTCY COURT'S CONDITIONAL APPROVAL OF THE DISCLOSURE STATEMENT. IF YOU ARE NOT AN ELIGIBLE HOLDER, YOU SHOULD NOT SUBMIT THIS PREPETITION BALLOT OR CAUSE YOUR NOMINEE TO SUBMIT A PREPETITION MASTER BALLOT ON YOUR BEHALF.  ANY PREPETITION BALLOT RECEIVED BY A NON-ELIGIBLE HOLDER WILL NOT BE COUNTED.

**BALLOT FOR HOLDERS OF CASH FLOW REVOLVING FACILITY CLAIMS, CASH FLOW TERM LOAN FACILITIES CLAIMS, AND/OR FIRST LIEN DEFICIENCY CLAIMS TO (I) VOTE TO ACCEPT OR REJECT THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF MULTI-COLOR CORPORATION AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) OPT OUT OF THE PLAN RELEASES**

---

**PLEASE READ AND FOLLOW THE ENCLOSED
INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, SIGNED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY KURTZMAN CARSON CONSULTANTS, LLC (D/B/A/ VERITA) ("<u>VERITA</u>" OR THE "<u>SOLICITATION AGENT</u>") BY MARCH 3, 2026, AT 5:00 P.M., PREVAILING EASTERN TIME (THE "<u>VOTING DEADLINE</u>"), IN ACCORDANCE WITH THE INSTRUCTIONS BELOW.**

**CONFIRMATION OF THE PLAN MAY OPERATE
TO EXTINGUISH CLAIMS YOU HOLD AGAINST THIRD PARTIES.**

---

On January 27, 2026, Multi-Color Corporation and certain of its affiliates (collectively, the "<u>Debtors</u>")[2] commenced solicitation of votes on the *Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be altered, amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "<u>Plan</u>").

In connection with the solicitation process, the Debtors distributed the Plan and the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be altered, amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and

---

[1]   Capitalized terms used but not defined herein have the meanings set forth in the Plan, the Restructuring Support Agreement, or the Disclosure Statement (each as defined below), as applicable.

[2]   The last four digits of Debtor Multi-Color Corporation's tax identification number are 5853.  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.veritaglobal.net/MCC.  The location of the Debtors' service address for purposes of these chapter 11 cases is: 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327.

supplements thereto, the "Disclosure Statement") to:  (i) Holders of Cash Flow Revolving Facility Claims, Cash Flow Term Loan Facilities Claims, and Secured Notes Claims (together, Class 4 under the Plan) (collectively, the "First Lien Secured Claims") and (ii) Holders of First Lien Deficiency Claims and Unsecured Notes Claims (together, Class 5 under the Plan) (collectively, the "Junior Funded Debt Claims"), in each case, as of January 15, 2026 (the "Voting Record Date").  As explained in further detail in the Disclosure Statement, on January 25, 2026, after engaging in extensive, arm's-length, good-faith negotiations, the Debtors entered into a restructuring support agreement (as amended, modified, or supplemented from time to time, and including all exhibits and supplements thereto, the "Restructuring Support Agreement" and, the transactions contemplated thereby, the "Restructuring Transactions") with certain of the Debtors' key economic stakeholders, including the (i) Secured Ad Hoc Group, which holds over two-thirds of the First Lien Secured Claims, (ii) Plan Sponsor, and (iii) Sponsor.

The Debtors are soliciting prepetition votes on the Plan from Eligible Holders of Class 4 First Lien Secured Claims and Eligible Holders of Class 5 Junior Funded Debt Claims (each, a "Voting Class" and collectively, the "Voting Classes").

**You are receiving this Ballot because you are a Holder of Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims), Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims), and/or First Lien Deficiency Claim (Class 5 Junior Funded Debt Claims) as of the Voting Record Date.**

Holders of Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims), Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims), and/or First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) as of the Voting Record Date are entitled to:  (i) vote to accept or reject the Plan and (ii) elect to opt out of the Plan Releases (as defined below).  The treatment of Class 4 First Lien Secured Claims under the Plan is described in the Disclosure Statement, which is included (along with the Plan) in the package (the "Solicitation Package") you are receiving with this Ballot.

The Debtors intend to implement the Restructuring Transactions by commencing voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court and seeking confirmation and consummation of the Plan.  The Debtors anticipate that such Chapter 11 Cases will commence in the Bankruptcy Court on or about January 28, 2026.  The deadline to (i) vote to accept the Plan or reject the Plan and (ii) elect to opt out of the Plan Releases is March 3, 2026, at 5:00 p.m., prevailing Eastern Time.

**Please _carefully review_ each of the Plan, the Restructuring Support Agreement, and the Disclosure Statement and each of its exhibits to understand the treatment that Holders of First Lien Secured Claims are entitled to under Plan.**

**You may (with respect to your Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims), Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims), and/or First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) set forth at Item 1 below) (i) vote to accept or reject the Plan and (ii) elect to opt out of the releases provided under the Plan in any such case by completing, signing, and submitting this Ballot in accordance with the instructions set forth below.  Your Ballot will be counted only if it is properly completed and signed and _actually received_ by the Solicitation Agent no later than the Voting Deadline, which is March 3, 2026, at 5:00 p.m., prevailing Eastern Time.**

**If the Plan is confirmed and consummated through the Chapter 11 Cases, the releases set forth in Article VIII of the Plan (the "Plan Releases") shall apply.  THE PLAN RELEASES INCLUDE A THIRD-PARTY RELEASE (THE "THIRD-PARTY RELEASE"), WHICH IS SET**

**FORTH IN <u>ARTICLE VIII.D</u> OF THE PLAN AND AT <u>ITEM 3</u> OF THIS BALLOT (TOGETHER WITH CERTAIN RELEVANT DEFINED TERMS FROM THE PLAN).**

**<u>YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE UNLESS YOU CHECK THE OPT-OUT BOX IN ITEM 3 OF THIS BALLOT AND PROPERLY COMPLETE AND TIMELY SUBMIT THIS BALLOT IN ACCORDANCE WITH THE INSTRUCTIONS SET FORTH HEREIN.</u>**

If you received this Ballot or other materials in electronic format and desire paper copies, or if you need to obtain additional materials, you may obtain them free of charge:  (1) by emailing the Solicitation Agent at mccinfo@veritaglobal.com (reference "Multi-Color Corporation" in subject line); or (2) by writing to the Solicitation Agent at MCC Ballot Processing Center c/o KCC dba Verita Global, 222 N Pacific Coast Highway, Suite 300, El Segundo, CA 90245.  Following the commencement of the Chapter 11 Cases, you may also obtain copies of any documents filed in the Chapter 11 Cases free of charge on the Debtors' restructuring website at https://www.veritaglobal.net/MCC or for a fee through the Bankruptcy Court's website at https://ecf.njb.uscourts.gov.

---

**Item 1. Amount of Claim.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims), Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims), and/or First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) in the following amount:[1]

| Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims), Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims), and/or First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) | |
| --- | --- |
| **(Aggregate Principal Amount of Cash Flow Revolving Facility Claims Held, if applicable)** | **(Aggregate Principal Amounts of Cash Flow Term Loan Facilities Claims)** |
| $_____ | $_____ |

| Eligibility | |
| --- | --- |
| The undersigned certifies that it is either (A) (i) a "qualified institutional buyer" (as defined in Rule 144A of the Securities Act of 1933 (as amended, the "Securities Act")), (ii) an institutional "accredited investor" within the meaning of Rule 501(a) (1), (2), (3), (7), (8), (9), (12), or (13) of Regulation D under the Securities Act, in each case, having (or is a, direct or indirect, wholly-owned subsidiary of any entity having) total assets in excess of $10 million, or (B) not a "U.S. person" (as defined in Regulation S of the Securities Act). | ☐ **By checking this box, the Holder of the Claims identified in Item 1 certifies that it is an Eligible Holder** |

**Item 2. Vote on Plan.**

The undersigned votes, with respect to its **Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims) and/or Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims)**, to (please check **one box**):

| | |
| --- | --- |
| ☐ **ACCEPT** (vote FOR) the Plan | ☐ **REJECT** (vote AGAINST) the Plan |

The undersigned votes, with respect to its **First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims)**, to (please check **one box**):

| | |
| --- | --- |
| ☐ **ACCEPT** (vote FOR) the Plan | ☐ **REJECT** (vote AGAINST) the Plan |

---

[1]  The Solicitation Agent shall tabulate a Holder's Class 5 First Lien Deficiency Claim by using the Claim amount of such Holder's Cash Flow Revolving Facility Claims and/or Cash Flow Term Loan Facilities Claims when calculating the voting results, which findings shall be included in the Voting Report.

**Your vote on the Plan will be applied to your Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims), Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims), and/or First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) with respect to each applicable Debtor in the same manner and in the same amount as indicated in <u>Item 1</u> above.**

<u>Item 3</u>. **Third-Party Release.**

The Third-Party Release set forth in <u>Article VIII.D</u> of the Plan is copied below, along with certain relevant definitions:[2]

**Except as otherwise specifically provided in the Plan or the Confirmation Order, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates), whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or herein after arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their estates, Affiliates, heirs, executory, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, the Debtors, their Estates, and the Reorganized Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or their Estates (including the capital structure, management, direct or indirect ownership, or operation thereof), the solicitation and provision of Solicitation Materials to Holders of Claims prior to the Chapter 11 Cases, the Chapter 11 Cases, the Restructuring Transactions, the Reorganized Debtors (including the management, direct or indirect ownership, or operation thereof), the New Common Equity Debt Election, the purchase, sale, or rescission of any Security of the Debtors, their Estates, and the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the assertion of enforcement of rights or remedies against the Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases including all prior recapitalizations, restructurings, or refinancing efforts and transactions, any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the decision to file the Chapter 11 Cases, any related adversary proceedings, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Restructuring Support Agreement, the Definitive Documents, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the**

---

[2]     The Plan also contains Debtor releases, exculpation, and injunction provisions set forth in Articles VIII.C, VIII.E, and VIII.F of the Plan, respectively.  Unless you otherwise are included in the definition of Released Parties, you must be a Releasing Party (*i.e.*, a Holder of a Claim or Interest that does not opt out of the Third-Party Release) to receive the Debtor releases set forth in Article VIII.C.

Definitive Documents, the Plan Supplement, the New Debt, the New ABL Facility, the New Preferred Equity Investment, the Plan Sponsor Equity Investment, the DIP Facility, the DIP Orders, the DIP Documents, the New Debt Documents, the New ABL Facility Documents, or the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before, in respect of the foregoing clause the Effective Date.

Notwithstanding anything to the contrary herein, the Releasing Parties do not, pursuant to the releases set forth above, release:  (i) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, and Restructuring Transactions, or any documents, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions; (ii) the rights of any Holder of Allowed Claims to receive distributions under the Plan; or (iii) any claims or Causes of Action arising from such Released Party's willful misconduct or actual fraud, in each case as determined by a final, non-appealable order entered by a court of competent jurisdiction.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (i) consensual; (ii) essential to the Confirmation of the Plan; (iii) given in exchange for good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable, and reasonable; (vii) given and made after due notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

Without limiting the foregoing, from and after the Effective Date, any Entity that is given the opportunity to opt out of the releases contained in Article VIII.D of the Plan and does not exercise such opt out may not assert any claim or other Cause of Action against any Released Party based on or relating to, or in any manner arising from, in whole or in part, the Debtors.  From and after the Effective Date, any Entity that opted out of the releases contained in Article VIII.D of the Plan may not assert any claim or other Cause of Action against any Released Party for which it is asserted or implied that such claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan and (b) specifically authorizing such Person or Entity to bring such claim or Cause of Action against any such Released Party.  The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in Article XI of the Plan, the Bankruptcy Court shall have jurisdiction to adjudicate the underlying claim or Cause of Action.

Certain Definitions Related to the Third-Party Release

Under the Plan, "Releasing Parties" means, collectively, and in each case in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Holder of an ABL Facility Claim; (e) each Company Party; (f) the Plan Sponsor; (g) the Sponsor; (h) each Holder of a DIP Claim; (i) each Agent/Trustee; (j) each DIP Backstop Party; (k) each New Preferred Equity Investment Backstop Party; (l) each New Term Loan Facility Lender; (m) each

**New Noteholder; (n) each New ABL Facility Lender, (o) all Holders of Claims or Interests that vote to accept the Plan and do not affirmatively opt out of the releases provided for in the Plan; (p) all Holders of Claims or Interests who are deemed to accept the Plan and do not affirmatively opt out of the releases provided for in the Plan; (q) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided for in the Plan; (r) all Holders of Claims or Interests who vote to reject the Plan and who do not affirmatively opt out of the releases provided for in the Plan; (s) all Holders of Claims or Interests who are deemed to reject the Plan and who do not affirmatively opt out of the releases provided for in the Plan; (t) each current and former Affiliate of each Entity in clause (a) through the following clause (u); and (u) each Related Party of each Entity in clause (a) through this clause (u); provided that each Holder of Claims or Interests that is party to the Restructuring Support Agreement shall be a Releasing Party; provided, further, that, in each case, an Entity shall not be a Releasing Party if it timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation.**[3]

**Under the Plan, "Released Parties" means, collectively, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Holder of an ABL Facility Claim; (e) each Company Party; (f) the Plan Sponsor; (g) the Sponsor; (h) each Holder of a DIP Claim; (i) each Agent/Trustee; (j) each DIP Backstop Party; (k) each New Preferred Equity Investment Backstop Party; (l) each New Term Loan Facility Lender; (m) each New Noteholder; (n) each New ABL Facility Lender; (o) each current and former Affiliate of each Entity in clause (a) through the following clause (p); and (p) each Related Party of each Entity in clause (a) through this clause (p); provided that, in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the releases described in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved prior to Confirmation.**

> **YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE UNLESS YOU CHECK THE OPT-OUT BOX BELOW. YOUR ELECTION TO OPT OUT OF THE THIRD-PARTY RELEASE IN YOUR CAPACITY AS A HOLDER OF A CLASS 4 FIRST LIEN SECURED CLAIM SHALL ALSO BE DEEMED YOUR ELECTION TO OPT OUT OF THE THIRD-PARTY RELEASE IN YOUR CAPACITY AS A HOLDER OF A CLASS 5 FIRST LIEN DEFICIENCY CLAIM. FOR THE AVOIDANCE OF DOUBT, THERE IS NO SEPARATE BALLOT WITH RESPECT TO CLASS 5 FIRST LIEN DEFICIENCY CLAIMS.**

☐　The undersigned elects to **OPT OUT** of the Third-Party Release with respect to its Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims) and/or Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims).

☐　The undersigned elects to **OPT OUT** of the Third-Party Release with respect to its First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims).

---

[3]　Notwithstanding anything contrary herein, with respect to funds and accounts managed by BlackRock, Inc. or its Affiliates that are Consenting Stakeholders under the Restructuring Support Agreement (the "BlackRock Consenting Creditors"), the defined terms "Releasing Parties" and "Released Parties" shall be limited to (i) the BlackRock Consenting Creditors, (ii) any trading desk(s), fund(s), account, branch, unit, and/or business group(s) of the BlackRock Consenting Creditors that have a beneficial interest in the Company Claims/Interests held by BlackRock Consenting Creditors, or are otherwise acting for the benefit of or at the direction of the BlackRock Consenting Creditors, and (iii) any Affiliates and Related Parties of BlackRock Consenting Creditors for which the BlackRock Consenting Creditors are legally entitled to bind under applicable law.

**Item 4. Certifications.**

By signing this Ballot, the undersigned certifies that:

(a) as of the Voting Record Date, either:  (i) the undersigned is the Eligible Holder of the Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims), Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims), and/or First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) set forth in Item 1; or (ii) the undersigned is an authorized signatory for an entity that is a Holder of the Class 4 First Lien Secured Claim set forth in Item 1;

(b) the undersigned (or in the case of an authorized signatory, the Holder) has received a copy of the Disclosure Statement and the Solicitation Package (including the Plan and the Restructuring Support Agreement) and acknowledges that the Solicitation is being made pursuant to the terms and conditions set forth therein;

(c) the undersigned has submitted the same election with respect to each of the Plan and the Third-Party Release, as applicable, with respect to all of its Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims), Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims), and/or First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims); and

(d) no other Ballot(s) with respect to the Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims), Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims), and/or First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) set forth in Item 1 have been submitted or, if any other Ballot(s) have been submitted with respect to such Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims), Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims), and/or First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims), then any such earlier Ballot(s) are hereby revoked.

| | |
|---|---|
| Name of Holder: | |
| | (Print or type) |
| Signature: | |
| Name of Signatory: | |
| | (If other than Holder) |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

## INSTRUCTIONS FOR COMPLETING AND RETURNING THIS BALLOT

1. The Debtors are soliciting prepetition votes on the Plan from Eligible Holders of Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims), Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims), and/or First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) as of the Voting Record Date (January 15, 2026). **PLEASE READ THE PLAN, THE DISCLOSURE STATEMENT AND EACH OF ITS EXHIBITS, THE RESTRUCTURING SUPPORT AGREEMENT, THIS BALLOT, AND THESE INSTRUCTIONS (THE "BALLOT INSTRUCTIONS") CAREFULLY BEFORE COMPLETING AND SUBMITTING THIS BALLOT.**

2. The Plan may be confirmed by the Bankruptcy Court and consummated, and thereby made binding upon you provided that the Plan satisfies the requirements for confirmation set forth in the Bankruptcy Code.

3. **To ensure that your Ballot is counted, you must complete and sign the Ballot as provided herein and submit it to the Solicitation Agent by <u>one</u> of the following methods so as to be <u>*actually received*</u> by the Solicitation Agent no later than the Voting Deadline, which is March 3, 2026, at 5:00 p.m., prevailing Eastern Time.**

   **Submit electronically via the e-Ballot Portal available at <u>http://www.veritaglobal.net/MCC</u> using the login credentials provided below:**

   **ID:_____**
   **PIN:_____**

   <u>OR</u>

   **By First-Class Mail, Overnight Mail, or Hand Delivery to:**

   MCC Ballot Processing Center
   c/o KCC dba Verita Global
   222 N Pacific Coast Highway, Suite 300
   El Segundo, CA 90245

4. **<u>Use of Hard Copy Ballot.</u>** To ensure that your hard copy Ballot is counted, you must: (a) complete your Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the applicable box in <u>Item 2</u> of your Ballot; and (c) clearly sign and return your original Ballot to the above street address so as to be **<u>*actually received*</u>** by the Solicitation Agent no later than the Voting Deadline.

5. **<u>Use of Electronic Ballot</u>.** To ensure that your electronic Ballot is counted, please visit https://www.veritaglobal.net/MCC and follow the instructions for online submission. You will need to enter your unique e-Ballot identification number indicated above. The online portal is the sole manner in which Ballot will be accepted via electronic means. **Ballots will not be accepted by email, facsimile, or other electronic means.**

6. If a Ballot is received *after* the Voting Deadline, and if the Voting Deadline is not extended, it may be counted only in the sole discretion of the Debtors or as permitted by the Bankruptcy Court. Additionally, **the following Ballots will *not* be counted**:

1.  any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;

2.  any Ballot that was transmitted other than as specifically set forth in the Ballot;

3.  any Ballot that was cast by an entity that it not entitled to vote on the Plan, including a prepetition Ballot submitted by or on behalf of a non-Eligible Holder;

4.  any Ballot that was sent to any person or entity other than the Solicitation Agent;

5.  any Ballot that is unsigned;

6.  any Ballot that is not clearly marked to either accept or reject the Plan or is marked both to accept and reject the Plan;

7.  any Ballot that partially rejects and/or partially accepts the Plan in a particular Voting Class;

8.  any Ballot superseded by a later, timely submitted valid Ballot;

9.  an improperly submitted Ballot; or

10. any Ballot that is not actually received by the Solicitation Agent by the Voting Deadline, unless the Debtors determine otherwise or as permitted by the Court.

7.  The method of delivery of Ballots to the Solicitation Agent is at the election and risk of each Holder of Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims), Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims), and/or First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims).  Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent ***actually receives*** the original executed Ballot.  For the avoidance of doubt, a Ballot submitted electronically via the online portal shall be considered an original.  In all cases, Holders should allow sufficient time to assure timely delivery.

8.  If multiple Ballots are received from the same Holder, the latest, timely received, and properly completed Ballot will supersede and revoke any earlier received Ballot(s) with respect to such Claims.

9.  This Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you in the event that (i) the Debtors revoke or withdraw the Plan, (ii) the Confirmation Order is not entered, or (iii) consummation of the Plan does not occur.  In addition, for the avoidance of doubt, any Ballots submitted by Consenting Lenders shall be subject to the applicable provisions of the Restructuring Support Agreement.

1.  You must vote each of your Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims) either to accept or reject the Plan, each of your Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims) either to accept or reject the Plan, and each of your First Lien Deficiency Claim (Class 5 Junior Funded Debt Claims); you may ***not*** split their vote within the Class 4 First Lien Secured Claims or Class 5 Junior Funded Debt Claims classes.

10. This Ballot does ***not*** constitute and shall not be deemed to be:  (a) a Proof of Claim; or (b) an assertion or admission with respect to any Claim.

11. **<u>Please be sure to sign and date your Ballot</u>**.  You should indicate that you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court (if applicable), must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to your Ballot.

12. Each Ballot votes ***<u>only</u>*** your Claims indicated on that Ballot, so please complete and return each Ballot that you received.

**PLEASE RETURN YOUR BALLOT PROMPTLY**.

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THE BALLOT INSTRUCTIONS, OR THE PROCEDURES FOR VOTING ON THE PLAN, PLEASE CONTACT THE SOLICITATION AGENT BY EMAIL AT MCCINFO@VERITAGLOBAL.COM OR CALL (866) 967-1788 (TOLL-FREE US / CANADA) OR (310) 751-2688 (INTERNATIONAL).**

---

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT AT OR BEFORE THE VOTING DEADLINE, WHICH IS MARCH 3 2026, AT 5:00 P.M., PREVAILING EASTERN TIME (AND IF THE VOTING DEADLINE IS NOT EXTENDED), THEN THE VOTE REFLECTED IN THIS BALLOT MAY BE COUNTED ONLY IN THE SOLE DISCRETION OF THE DEBTORS OR AS PERMITTED BY THE BANKRUPTCY COURT.  IF YOU ARE NOT AN ELIGIBLE HOLDER (OR THE AUTHORIZED SIGNATORY OF AN ELIGIBLE HOLDER), YOU MAY NOT SUBMIT A PREPETITION BALLOT. ANY PREPETITION BALLOT RECEIVED BY A NON-ELIGIBLE HOLDER (OR ON BEHALF OF A NON-ELIGIBLE HOLDER) WILL NOT BE COUNTED**

---

**Exhibit 5**

**Cash Flow RCF (Class 4), Cash Flow Term Loan (Class 4),
and First Lien Deficiency Claims (Class 5) Ballot**

**IMPORTANT**:  NO CHAPTER 11 CASES HAVE BEEN COMMENCED AS OF THE DATE OF THE DISTRIBUTION OF THIS BALLOT (THIS "BALLOT").  THE DEBTORS (AS DEFINED BELOW) INTEND TO COMMENCE VOLUNTARY CHAPTER 11 CASES IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY (THE "BANKRUPTCY COURT") TO SEEK CONFIRMATION OF THE PLAN (AS DEFINED BELOW) BY THE BANKRUPTCY COURT, AS DESCRIBED IN GREATER DETAIL IN THE DISCLOSURE STATEMENT (AS DEFINED BELOW).[1] ONLY ELIGIBLE HOLDERS (OR THEIR AUTHORIZED SIGNATORIES) ARE ENTITLED TO VOTE ON THE DEBTORS' PREPACKAGED PLAN PRIOR TO THE DEBTORS' CHAPTER 11 PETITIONS AND THE BANKRUPTCY COURT'S CONDITIONAL APPROVAL OF THE DISCLOSURE STATEMENT. IF YOU ARE NOT AN ELIGIBLE HOLDER, YOU SHOULD NOT SUBMIT THIS PREPETITION BALLOT OR CAUSE YOUR NOMINEE TO SUBMIT A PREPETITION MASTER BALLOT ON YOUR BEHALF.  ANY PREPETITION BALLOT RECEIVED BY A NON-ELIGIBLE HOLDER WILL NOT BE COUNTED.

**BALLOT FOR HOLDERS OF CASH FLOW REVOLVING FACILITY CLAIMS, CASH FLOW TERM LOAN FACILITIES CLAIMS, AND/OR FIRST LIEN DEFICIENCY CLAIMS TO (I) VOTE TO ACCEPT OR REJECT THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF MULTI-COLOR CORPORATION AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) OPT OUT OF THE PLAN RELEASES**

---

**PLEASE READ AND FOLLOW THE ENCLOSED
INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, SIGNED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY KURTZMAN CARSON CONSULTANTS, LLC (D/B/A/ VERITA) ("VERITA" OR THE "SOLICITATION AGENT") BY MARCH 3, 2026, AT 5:00 P.M., PREVAILING EASTERN TIME (THE "VOTING DEADLINE"), IN ACCORDANCE WITH THE INSTRUCTIONS BELOW.**

**CONFIRMATION OF THE PLAN MAY OPERATE
TO EXTINGUISH CLAIMS YOU HOLD AGAINST THIRD PARTIES.**

---

On January 27, 2026, Multi-Color Corporation and certain of its affiliates (collectively, the "Debtors")[2] commenced solicitation of votes on the *Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be altered, amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan").

In connection with the solicitation process, the Debtors distributed the Plan and the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be altered, amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and

---

[1]   Capitalized terms used but not defined herein have the meanings set forth in the Plan, the Restructuring Support Agreement, or the Disclosure Statement (each as defined below), as applicable.

[2]   The last four digits of Debtor Multi-Color Corporation's tax identification number are 5853.  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.veritaglobal.net/MCC.  The location of the Debtors' service address for purposes of these chapter 11 cases is: 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327.

supplements thereto, the "Disclosure Statement") to:  (i) Holders of Cash Flow Revolving Facility Claims, Cash Flow Term Loan Facilities Claims, and Secured Notes Claims (together, Class 4 under the Plan) (collectively, the "First Lien Secured Claims") and (ii) Holders of First Lien Deficiency Claims and Unsecured Notes Claims (together, Class 5 under the Plan) (collectively, the "Junior Funded Debt Claims"), in each case, as of January 15, 2026 (the "Voting Record Date").  As explained in further detail in the Disclosure Statement, on January 25, 2026, after engaging in extensive, arm's-length, good-faith negotiations, the Debtors entered into a restructuring support agreement (as amended, modified, or supplemented from time to time, and including all exhibits and supplements thereto, the "Restructuring Support Agreement" and, the transactions contemplated thereby, the "Restructuring Transactions") with certain of the Debtors' key economic stakeholders, including the (i) Secured Ad Hoc Group, which holds over two-thirds of the First Lien Secured Claims, (ii) Plan Sponsor, and (iii) Sponsor.

The Debtors are soliciting prepetition votes on the Plan from Eligible Holders of Class 4 First Lien Secured Claims and Eligible Holders of Class 5 Junior Funded Debt Claims (each, a "Voting Class" and collectively, the "Voting Classes").

**You are receiving this Ballot because you are a Holder of Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims), Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims), and/or First Lien Deficiency Claim (Class 5 Junior Funded Debt Claims) as of the Voting Record Date.**

Holders of Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims), Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims), and/or First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) as of the Voting Record Date are entitled to:  (i) vote to accept or reject the Plan and (ii) elect to opt out of the Plan Releases (as defined below).  The treatment of Class 4 First Lien Secured Claims under the Plan is described in the Disclosure Statement, which is included (along with the Plan) in the package (the "Solicitation Package") you are receiving with this Ballot.

The Debtors intend to implement the Restructuring Transactions by commencing voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court and seeking confirmation and consummation of the Plan.  The Debtors anticipate that such Chapter 11 Cases will commence in the Bankruptcy Court on or about January 28, 2026.  The deadline to (i) vote to accept the Plan or reject the Plan and (ii) elect to opt out of the Plan Releases is March 3, 2026, at 5:00 p.m., prevailing Eastern Time.

**Please *carefully review* each of the Plan, the Restructuring Support Agreement, and the Disclosure Statement and each of its exhibits to understand the treatment that Holders of First Lien Secured Claims are entitled to under Plan.**

**You may (with respect to your Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims), Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims), and/or First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) set forth at Item 1 below) (i) vote to accept or reject the Plan and (ii) elect to opt out of the releases provided under the Plan in any such case by completing, signing, and submitting this Ballot in accordance with the instructions set forth below.  Your Ballot will be counted only if it is properly completed and signed and *actually received* by the Solicitation Agent no later than the Voting Deadline, which is March 3, 2026, at 5:00 p.m., prevailing Eastern Time.**

**If the Plan is confirmed and consummated through the Chapter 11 Cases, the releases set forth in Article VIII of the Plan (the "Plan Releases") shall apply.  THE PLAN RELEASES INCLUDE A THIRD-PARTY RELEASE (THE "THIRD-PARTY RELEASE"), WHICH IS SET**

**FORTH IN <u>ARTICLE VIII.D</u> OF THE PLAN AND AT <u>ITEM 3</u> OF THIS BALLOT (TOGETHER WITH CERTAIN RELEVANT DEFINED TERMS FROM THE PLAN).**

**<u>YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE UNLESS YOU CHECK THE OPT-OUT BOX IN ITEM 3 OF THIS BALLOT AND PROPERLY COMPLETE AND TIMELY SUBMIT THIS BALLOT IN ACCORDANCE WITH THE INSTRUCTIONS SET FORTH HEREIN.</u>**

If you received this Ballot or other materials in electronic format and desire paper copies, or if you need to obtain additional materials, you may obtain them free of charge:  (1) by emailing the Solicitation Agent at mccinfo@veritaglobal.com (reference "Multi-Color Corporation" in subject line); or (2) by writing to the Solicitation Agent at MCC Ballot Processing Center c/o KCC dba Verita Global, 222 N Pacific Coast Highway, Suite 300, El Segundo, CA 90245.  Following the commencement of the Chapter 11 Cases, you may also obtain copies of any documents filed in the Chapter 11 Cases free of charge on the Debtors' restructuring website at https://www.veritaglobal.net/MCC or for a fee through the Bankruptcy Court's website at https://ecf.njb.uscourts.gov.

---

**Item 1. Amount of Claim.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims), Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims), and/or First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) in the following amount:[1]

| Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims), Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims), and/or First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) | |
| --- | --- |
| **(Aggregate Principal Amount of Cash Flow Revolving Facility Claims Held, if applicable)** | **(Aggregate Principal Amounts of Cash Flow Term Loan Facilities Claims)** |
| $_____ | $_____ |

| Eligibility | |
| --- | --- |
| The undersigned certifies that it is either (A) (i) a "qualified institutional buyer" (as defined in Rule 144A of the Securities Act of 1933 (as amended, the "Securities Act")), (ii) an institutional "accredited investor" within the meaning of Rule 501(a) (1), (2), (3), (7), (8), (9), (12), or (13) of Regulation D under the Securities Act, in each case, having (or is a, direct or indirect, wholly-owned subsidiary of any entity having) total assets in excess of $10 million, or (B) not a "U.S. person" (as defined in Regulation S of the Securities Act). | ☐   **By checking this box, the Holder of the Claims identified in Item 1 certifies that it is an Eligible Holder** |

**Item 2. Vote on Plan.**

The undersigned votes, with respect to its **Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims) and/or Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims)**, to (please check **one box**):

| ☐   **ACCEPT** (vote FOR) the Plan | ☐   **REJECT** (vote AGAINST) the Plan |
| --- | --- |

The undersigned votes, with respect to its **First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims)**, to (please check **one box**):

| ☐   **ACCEPT** (vote FOR) the Plan | ☐   **REJECT** (vote AGAINST) the Plan |
| --- | --- |

---

[1]   The Solicitation Agent shall tabulate a Holder's Class 5 First Lien Deficiency Claim by using the Claim amount of such Holder's Cash Flow Revolving Facility Claims and/or Cash Flow Term Loan Facilities Claims when calculating the voting results, which findings shall be included in the Voting Report.

**Your vote on the Plan will be applied to your Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims), Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims), and/or First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) with respect to each applicable Debtor in the same manner and in the same amount as indicated in <u>Item 1</u> above.**

<u>Item 3</u>. **Third-Party Release.**

The Third-Party Release set forth in <u>Article VIII.D</u> of the Plan is copied below, along with certain relevant definitions:[2]

**Except as otherwise specifically provided in the Plan or the Confirmation Order, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates), whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or herein after arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their estates, Affiliates, heirs, executory, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, the Debtors, their Estates, and the Reorganized Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or their Estates (including the capital structure, management, direct or indirect ownership, or operation thereof), the solicitation and provision of Solicitation Materials to Holders of Claims prior to the Chapter 11 Cases, the Chapter 11 Cases, the Restructuring Transactions, the Reorganized Debtors (including the management, direct or indirect ownership, or operation thereof), the New Common Equity Debt Election, the purchase, sale, or rescission of any Security of the Debtors, their Estates, and the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the assertion of enforcement of rights or remedies against the Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases including all prior recapitalizations, restructurings, or refinancing efforts and transactions, any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the decision to file the Chapter 11 Cases, any related adversary proceedings, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Restructuring Support Agreement, the Definitive Documents, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the**

---

[2]   The Plan also contains Debtor releases, exculpation, and injunction provisions set forth in Articles VIII.C, VIII.E, and VIII.F of the Plan, respectively.  Unless you otherwise are included in the definition of Released Parties, you must be a Releasing Party (*i.e.*, a Holder of a Claim or Interest that does not opt out of the Third-Party Release) to receive the Debtor releases set forth in Article VIII.C.

Definitive Documents, the Plan Supplement, the New Debt, the New ABL Facility, the New Preferred Equity Investment, the Plan Sponsor Equity Investment, the DIP Facility, the DIP Orders, the DIP Documents, the New Debt Documents, the New ABL Facility Documents, or the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before, in respect of the foregoing clause the Effective Date.

Notwithstanding anything to the contrary herein, the Releasing Parties do not, pursuant to the releases set forth above, release: (i) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, and Restructuring Transactions, or any documents, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions; (ii) the rights of any Holder of Allowed Claims to receive distributions under the Plan; or (iii) any claims or Causes of Action arising from such Released Party's willful misconduct or actual fraud, in each case as determined by a final, non-appealable order entered by a court of competent jurisdiction.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (i) consensual; (ii) essential to the Confirmation of the Plan; (iii) given in exchange for good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable, and reasonable; (vii) given and made after due notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

Without limiting the foregoing, from and after the Effective Date, any Entity that is given the opportunity to opt out of the releases contained in Article VIII.D of the Plan and does not exercise such opt out may not assert any claim or other Cause of Action against any Released Party based on or relating to, or in any manner arising from, in whole or in part, the Debtors. From and after the Effective Date, any Entity that opted out of the releases contained in Article VIII.D of the Plan may not assert any claim or other Cause of Action against any Released Party for which it is asserted or implied that such claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan and (b) specifically authorizing such Person or Entity to bring such claim or Cause of Action against any such Released Party. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in Article XI of the Plan, the Bankruptcy Court shall have jurisdiction to adjudicate the underlying claim or Cause of Action.

<ins>Certain Definitions Related to the Third-Party Release</ins>

Under the Plan, "<ins>Releasing Parties</ins>" means, collectively, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Holder of an ABL Facility Claim; (e) each Company Party; (f) the Plan Sponsor; (g) the Sponsor; (h) each Holder of a DIP Claim; (i) each Agent/Trustee; (j) each DIP Backstop Party; (k) each New Preferred Equity Investment Backstop Party; (l) each New Term Loan Facility Lender; (m) each

**New Noteholder; (n) each New ABL Facility Lender, (o) all Holders of Claims or Interests that vote to accept the Plan and do not affirmatively opt out of the releases provided for in the Plan; (p) all Holders of Claims or Interests who are deemed to accept the Plan and do not affirmatively opt out of the releases provided for in the Plan; (q) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided for in the Plan; (r) all Holders of Claims or Interests who vote to reject the Plan and who do not affirmatively opt out of the releases provided for in the Plan; (s) all Holders of Claims or Interests who are deemed to reject the Plan and who do not affirmatively opt out of the releases provided for in the Plan; (t) each current and former Affiliate of each Entity in clause (a) through the following clause (u); and (u) each Related Party of each Entity in clause (a) through this clause (u); provided that each Holder of Claims or Interests that is party to the Restructuring Support Agreement shall be a Releasing Party; provided, further, that, in each case, an Entity shall not be a Releasing Party if it timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation.**[3]

**Under the Plan, "<u>Released Parties</u>" means, collectively, and in each case in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Holder of an ABL Facility Claim; (e) each Company Party; (f) the Plan Sponsor; (g) the Sponsor; (h) each Holder of a DIP Claim; (i) each Agent/Trustee; (j) each DIP Backstop Party; (k) each New Preferred Equity Investment Backstop Party; (l) each New Term Loan Facility Lender; (m) each New Noteholder; (n) each New ABL Facility Lender; (o) each current and former Affiliate of each Entity in clause (a) through the following clause (p); and (p) each Related Party of each Entity in clause (a) through this clause (p); provided that, in each case, an Entity shall not be a Released Party if it:  (x) elects to opt out of the releases described in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved prior to Confirmation.**

<div style="border:1px solid black; padding:8px">

**<u>YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE UNLESS YOU CHECK THE OPT-OUT BOX BELOW.  YOUR ELECTION TO OPT OUT OF THE THIRD-PARTY RELEASE IN YOUR CAPACITY AS A HOLDER OF A CLASS 4 FIRST LIEN SECURED CLAIM SHALL ALSO BE DEEMED YOUR ELECTION TO OPT OUT OF THE THIRD-PARTY RELEASE IN YOUR CAPACITY AS A HOLDER OF A CLASS 5 FIRST LIEN DEFICIENCY CLAIM.  FOR THE AVOIDANCE OF DOUBT, THERE IS NO SEPARATE BALLOT WITH RESPECT TO CLASS 5 FIRST LIEN DEFICIENCY CLAIMS</u>.**

</div>

☐  The undersigned elects to **<u>OPT OUT</u>** of the Third-Party Release with respect to its Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims) and/or Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims).

☐  The undersigned elects to **<u>OPT OUT</u>** of the Third-Party Release with respect to its First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims).

---

[3]  Notwithstanding anything contrary herein, with respect to funds and accounts managed by BlackRock, Inc. or its Affiliates that are Consenting Stakeholders under the Restructuring Support Agreement (the "<u>BlackRock Consenting Creditors</u>"), the defined terms "Releasing Parties" and "Released Parties" shall be limited to (i) the BlackRock Consenting Creditors, (ii) any trading desk(s), fund(s), account, branch, unit, and/or business group(s) of the BlackRock Consenting Creditors that have a beneficial interest in the Company Claims/Interests held by BlackRock Consenting Creditors, or are otherwise acting for the benefit of or at the direction of the BlackRock Consenting Creditors, and (iii) any Affiliates and Related Parties of BlackRock Consenting Creditors for which the BlackRock Consenting Creditors are legally entitled to bind under applicable law.

**Item 4**. **Certifications.**

By signing this Ballot, the undersigned certifies that:

(a) as of the Voting Record Date, either:  (i) the undersigned is the Eligible Holder of the Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims), Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims), and/or First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) set forth in Item 1; or (ii) the undersigned is an authorized signatory for an entity that is a Holder of the Class 4 First Lien Secured Claim set forth in Item 1;

(b) the undersigned (or in the case of an authorized signatory, the Holder) has received a copy of the Disclosure Statement and the Solicitation Package (including the Plan and the Restructuring Support Agreement) and acknowledges that the Solicitation is being made pursuant to the terms and conditions set forth therein;

(c) the undersigned has submitted the same election with respect to each of the Plan and the Third-Party Release, as applicable, with respect to all of its Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims), Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims), and/or First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims); and

(d) no other Ballot(s) with respect to the Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims), Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims), and/or First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) set forth in Item 1 have been submitted or, if any other Ballot(s) have been submitted with respect to such Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims), Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims), and/or First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims), then any such earlier Ballot(s) are hereby revoked.

| | |
|---|---|
| Name of Holder: | |
| | (Print or type) |
| Signature: | |
| Name of Signatory: | |
| | (If other than Holder) |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

## INSTRUCTIONS FOR COMPLETING AND RETURNING THIS BALLOT

1. The Debtors are soliciting prepetition votes on the Plan from Eligible Holders of Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims), Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims), and/or First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims) as of the Voting Record Date (January 15, 2026). **PLEASE READ THE PLAN, THE DISCLOSURE STATEMENT AND EACH OF ITS EXHIBITS, THE RESTRUCTURING SUPPORT AGREEMENT, THIS BALLOT, AND THESE INSTRUCTIONS (THE "BALLOT INSTRUCTIONS") CAREFULLY BEFORE COMPLETING AND SUBMITTING THIS BALLOT.**

2. The Plan may be confirmed by the Bankruptcy Court and consummated, and thereby made binding upon you provided that the Plan satisfies the requirements for confirmation set forth in the Bankruptcy Code.

3. **To ensure that your Ballot is counted, you must complete and sign the Ballot as provided herein and submit it to the Solicitation Agent by <u>one</u> of the following methods so as to be *actually received* by the Solicitation Agent no later than the Voting Deadline, which is March 3, 2026, at 5:00 p.m., prevailing Eastern Time.**

    **Submit electronically via the e-Ballot Portal available at <u>http://www.veritaglobal.net/MCC</u> using the login credentials provided below:**

    **ID:_____**
    **PIN:_____**

    <u>OR</u>

    **By First-Class Mail, Overnight Mail, or Hand Delivery to:**

    MCC Ballot Processing Center
    c/o KCC dba Verita Global
    222 N Pacific Coast Highway, Suite 300
    El Segundo, CA 90245

4. **<u>Use of Hard Copy Ballot.</u>** To ensure that your hard copy Ballot is counted, you must: (a) complete your Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the applicable box in <u>Item 2</u> of your Ballot; and (c) clearly sign and return your original Ballot to the above street address so as to be *actually received* by the Solicitation Agent no later than the Voting Deadline.

5. **<u>Use of Electronic Ballot</u>.** To ensure that your electronic Ballot is counted, please visit https://www.veritaglobal.net/MCC and follow the instructions for online submission. You will need to enter your unique e-Ballot identification number indicated above. The online portal is the sole manner in which Ballot will be accepted via electronic means. **Ballots will not be accepted by email, facsimile, or other electronic means.**

6. If a Ballot is received *after* the Voting Deadline, and if the Voting Deadline is not extended, it may be counted only in the sole discretion of the Debtors or as permitted by the Bankruptcy Court. Additionally, **the following Ballots will *not* be counted**:

1. any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;
2. any Ballot that was transmitted other than as specifically set forth in the Ballot;
3. any Ballot that was cast by an entity that it not entitled to vote on the Plan, including a prepetition Ballot submitted by or on behalf of a non-Eligible Holder;
4. any Ballot that was sent to any person or entity other than the Solicitation Agent;
5. any Ballot that is unsigned;
6. any Ballot that is not clearly marked to either accept or reject the Plan or is marked both to accept and reject the Plan;
7. any Ballot that partially rejects and/or partially accepts the Plan in a particular Voting Class;
8. any Ballot superseded by a later, timely submitted valid Ballot;
9. an improperly submitted Ballot; or
10. any Ballot that is not actually received by the Solicitation Agent by the Voting Deadline, unless the Debtors determine otherwise or as permitted by the Court.

7. The method of delivery of Ballots to the Solicitation Agent is at the election and risk of each Holder of Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims), Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims), and/or First Lien Deficiency Claims (Class 5 Junior Funded Debt Claims).  Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent **_actually receives_** the original executed Ballot.  For the avoidance of doubt, a Ballot submitted electronically via the online portal shall be considered an original.  In all cases, Holders should allow sufficient time to assure timely delivery.

8. If multiple Ballots are received from the same Holder, the latest, timely received, and properly completed Ballot will supersede and revoke any earlier received Ballot(s) with respect to such Claims.

9. This Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you in the event that (i) the Debtors revoke or withdraw the Plan, (ii) the Confirmation Order is not entered, or (iii) consummation of the Plan does not occur.  In addition, for the avoidance of doubt, any Ballots submitted by Consenting Lenders shall be subject to the applicable provisions of the Restructuring Support Agreement.

1. You must vote each of your Cash Flow Revolving Facility Claims (Class 4 First Lien Secured Claims) either to accept or reject the Plan, each of your Cash Flow Term Loan Facilities Claims (Class 4 First Lien Secured Claims) either to accept or reject the Plan, and each of your First Lien Deficiency Claim (Class 5 Junior Funded Debt Claims); you may **_not_** split their vote within the Class 4 First Lien Secured Claims or Class 5 Junior Funded Debt Claims classes.

10. This Ballot does **_not_** constitute and shall not be deemed to be:  (a) a Proof of Claim; or (b) an assertion or admission with respect to any Claim.

11. **<u>Please be sure to sign and date your Ballot</u>**.  You should indicate that you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court (if applicable), must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to your Ballot.

12. Each Ballot votes **_only_** your Claims indicated on that Ballot, so please complete and return each Ballot that you received.

**PLEASE RETURN YOUR BALLOT PROMPTLY.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THE BALLOT INSTRUCTIONS, OR THE PROCEDURES FOR VOTING ON THE PLAN, PLEASE CONTACT THE SOLICITATION AGENT BY EMAIL AT <u>MCCINFO@VERITAGLOBAL.COM</u> OR CALL (866) 967-1788 (TOLL-FREE US / CANADA) OR (310) 751-2688 (INTERNATIONAL).**

**IF THE SOLICITATION AGENT DOES NOT <u>*ACTUALLY RECEIVE*</u> THIS BALLOT AT OR BEFORE THE VOTING DEADLINE, WHICH IS MARCH 3 2026, AT 5:00 P.M., PREVAILING EASTERN TIME (AND IF THE VOTING DEADLINE IS NOT EXTENDED), THEN THE VOTE REFLECTED IN THIS BALLOT MAY BE COUNTED ONLY IN THE SOLE DISCRETION OF THE DEBTORS OR AS PERMITTED BY THE BANKRUPTCY COURT.  IF YOU ARE NOT AN ELIGIBLE HOLDER (OR THE AUTHORIZED SIGNATORY OF AN ELIGIBLE HOLDER), YOU MAY <u>NOT</u> SUBMIT A PREPETITION BALLOT.  ANY PREPETITION BALLOT RECEIVED BY A NON-ELIGIBLE HOLDER (OR ON BEHALF OF A NON-ELIGIBLE HOLDER) WILL NOT BE COUNTED**

**Exhibit 6A**

**Unsecured Notes Claims (Class 5) Beneficial Holders Ballot**

**IMPORTANT**:  NO CHAPTER 11 CASES HAVE BEEN COMMENCED AS OF THE DATE OF THE DISTRIBUTION OF THIS BENEFICIAL HOLDER BALLOT (THIS "BALLOT").  THE DEBTORS (AS DEFINED BELOW) INTEND TO COMMENCE VOLUNTARY CHAPTER 11 CASES IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY (THE "BANKRUPTCY COURT") TO SEEK CONFIRMATION OF THE PLAN (AS DEFINED BELOW) BY THE BANKRUPTCY COURT, AS DESCRIBED IN GREATER DETAIL IN THE DISCLOSURE STATEMENT (AS DEFINED BELOW).[1]  ONLY ELIGIBLE HOLDERS (OR THEIR AUTHORIZED SIGNATORIES) ARE ENTITLED TO VOTE ON THE DEBTORS' PREPACKAGED PLAN PRIOR TO THE DEBTORS' CHAPTER 11 PETITIONS AND THE BANKRUPTCY COURT'S CONDITIONAL APPROVAL OF THE DISCLOSURE STATEMENT.  IF YOU ARE NOT AN ELIGIBLE HOLDER, YOU SHOULD NOT SUBMIT THIS PREPETITION BALLOT OR CAUSE YOUR NOMINEE TO SUBMIT A PREPETITION MASTER BALLOT ON YOUR BEHALF.  ANY PREPETITION BALLOT RECEIVED BY A NON-ELIGIBLE HOLDER WILL NOT BE COUNTED.

**BENEFICIAL HOLDER BALLOT
FOR HOLDERS OF UNSECURED NOTES CLAIMS TO (I) VOTE TO
ACCEPT OR REJECT THE JOINT PREPACKAGED PLAN OF REORGANIZATION
OF MULTI-COLOR CORPORATION AND ITS DEBTOR AFFILIATES PURSUANT TO
CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) OPT OUT OF THE PLAN RELEASES**

---

**PLEASE READ AND FOLLOW THE ENCLOSED
INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**THE DEADLINE FOR THE RECEIPT OF BALLOTS AND MASTER BALLOTS IS MARCH 3, 2026,
AT 5:00 P.M., PREVAILING EASTERN TIME (THE "VOTING DEADLINE").**

***IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE**, PLEASE
COMPLETE SIGN, AND DATE THE BENEFICIAL HOLDER BALLOT AND RETURN IT
PROMPTLY IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.
PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER
BALLOT COMPLETED BY YOUR NOMINEE.  THE MASTER BALLOT MUST BE ACTUALLY
RECEIVED BY KURTZMAN CARSON CONSULTANTS, LLC (D/B/A VERITA GLOBAL)
("VERITA" OR THE "SOLICITATION AGENT") ON OR BEFORE THE VOTING DEADLINE.*

***IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO VERITA**, PLEASE COMPLETE THE
BALLOT AND RETURN IT PROMPTLY IN THE ENVELOPE PROVIDED SO THAT IT IS
ACTUALLY RECEIVED BY VERITA BY THE VOTING DEADLINE.*

---

On January 27, 2026, Multi-Color Corporation and certain of its affiliates (collectively, the "Debtors")[2] commenced solicitation of votes on the *Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be altered,

---

[1]   Capitalized terms used but not defined herein have the meanings set forth in the Plan, the Restructuring Support Agreement, or the Disclosure Statement (each as defined below), as applicable.

[2]   The last four digits of Debtor Multi-Color Corporation's tax identification number are 5853.  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://veritaglobal.net/MCC.  The location of the Debtors' service address for purposes of these chapter 11 cases is: 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327.

amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan").

In connection with the solicitation process, the Debtors distributed the Plan and the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be altered, amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Disclosure Statement") to:  (i) Holders of Cash Flow Revolving Facility Claims, Cash Flow Term Loan Facilities Claims, and Secured Notes Claims (together, Class 4 under the Plan) (collectively, the "First Lien Secured Claims") and (ii) Holders of First Lien Deficiency Claims and Unsecured Notes Claims (together, Class 5 under the Plan) (collectively, the "Junior Funded Debt Claims"), in each case, as of January 15, 2026 (the "Voting Record Date").  As explained in further detail in the Disclosure Statement, on January 25, 2026, after engaging in extensive, arm's-length, good-faith negotiations, the Debtors entered into a restructuring support agreement (as amended, modified, or supplemented from time to time, and including all exhibits and supplements thereto, the "Restructuring Support Agreement" and, the transactions contemplated thereby, the "Restructuring Transactions") with certain of the Debtors' key economic stakeholders, including the (i) Secured Ad Hoc Group, which holds over two-thirds of the First Lien Secured Claims, (ii) Plan Sponsor, and (iii) Sponsor.  As used herein, the term "Nominee" means the nominee, broker, or other Depository Trust Company ("DTC") participant for the Holder of a First Lien Secured Claim or Junior Funded Debt Claim.

The Debtors are soliciting prepetition votes on the Plan from Eligible Holders of Class 4 First Lien Secured Claims and Eligible Holders of Class 5 Junior Funded Debt Claims (each, a "Voting Class" and collectively, the "Voting Classes").

**You are receiving this Ballot because your Nominee has identified you as a Beneficial Holder[3] and an Eligible Holder[4] of an Unsecured Notes Claim (Class 5 Junior Funded Debt Claims) as of the Voting Record Date.  Accordingly, you have the right to vote to accept or reject the Plan.**

Holders of Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) as of the Voting Record Date are entitled to:  (i) vote to accept or reject the Plan and (ii) elect to opt out of the Plan Releases (as defined below). The treatment of Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) under the Plan is described in the Disclosure Statement, which is included (along with the Plan) in the package (the "Solicitation Package") you are receiving with this Ballot.

The Debtors intend to implement the Restructuring Transactions by commencing voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court and seeking confirmation and consummation of the Plan.  The Debtors anticipate that such Chapter 11 Cases will commence in the Bankruptcy Court on or about January 28, 2026.  The deadline to (i) vote

---

[3]    "Beneficial Holder" is a beneficial owner of Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) whose Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by the Nominees holding through the DTC and/or the applicable indenture trustee, as of the Voting Record Date.

[4]    "Eligible Holder" is a Beneficial Holder of a Unsecured Notes Claim (Class 5 Junior Funded Debt Claims) who is (A) (i) a "qualified institutional buyer" (as defined in Rule 144A of the Securities Act of 1933 (as amended, the "Securities Act")), or (ii) an institutional "accredited investor" within the meaning of Rule 501(a) (1), (2), (3), (7), (8), (9), (12), or (13) of Regulation D under the Securities Act, in each case, having (or is a, direct or indirect, wholly-owned subsidiary of any entity having) total assets in excess of $10 million, or (B) not a "U.S. person" (as defined in the Regulation S of the Securities Act).

3

to accept the Plan or reject the Plan and (ii) elect to opt out of the Plan Releases is March 3, 2026, at 5:00 p.m., prevailing Eastern Time.

Please *carefully review* each of the Plan, the Restructuring Support Agreement, and the Disclosure Statement and each of its exhibits to understand the treatment that Holders of Allowed Junior Funded Debt Claims are entitled to under Plan.

You may (with respect to your Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) set forth at Item 1 below) (i) vote to accept or reject the Plan and (ii) elect to opt out of the releases provided under the Plan in any such case by completing, signing, and submitting this Ballot in accordance with the instructions set forth below.  Your Ballot will be counted only if it or a Master Ballot cast on your behalf is properly completed and signed and *actually received* by the Solicitation Agent no later than the Voting Deadline, which is March 3, 2026, at 5:00 p.m., prevailing Eastern Time.

If the Plan is confirmed and consummated through the Chapter 11 Cases, the releases set forth in Article VIII of the Plan (the "Plan Releases") shall apply.  THE PLAN RELEASES INCLUDE A THIRD-PARTY RELEASE (THE "THIRD-PARTY RELEASE"), WHICH IS SET FORTH IN ARTICLE VIII.D OF THE PLAN AND AT ITEM 3 OF THIS BALLOT (TOGETHER WITH CERTAIN RELEVANT DEFINED TERMS FROM THE PLAN).

YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE UNLESS YOU CHECK THE OPT-OUT BOX IN ITEM 3 OF THIS BALLOT AND PROPERLY COMPLETE AND TIMELY SUBMIT THIS BALLOT IN ACCORDANCE WITH THE INSTRUCTIONS SET FORTH HEREIN.

If you received this Ballot or other materials in electronic format and desire paper copies, or if you need to obtain additional materials, you may obtain them free of charge:  (1) by emailing the Solicitation Agent at mccinfo@veritaglobal.com (reference "Multi-Color Corporation" in subject line); or (2) by writing to the Solicitation Agent at MCC Ballot Processing Center c/o KCC dba Verita Global, 222 N Pacific Coast Highway, Suite 300, El Segundo, CA 90245.  Following the commencement of the Chapter 11 Cases, you may also obtain copies of any documents filed in the Chapter 11 Cases free of charge on the Debtors' restructuring website at https://www.veritaglobal.net/MCC or for a fee through the Bankruptcy Court's website at https://ecf.njb.uscourts.gov.

---

4

**Item 1**. **Name of Nominee(s) and Amount of Claim.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of an Unsecured Notes Claim (Class 5 Junior Funded Debt Claim) as the Beneficial Holder in the following amounts:

Only Eligible Holders (or their authorized signatories) are entitled to vote.  If you are an Eligible Holder, please confirm by checking the applicable box below.

| **Unsecured Notes Claims (Class 5 Junior Funded Debt Claims)** |
| --- |
| **(Principal Amount of Unsecured Notes Claims Held, if applicable)** |
| **$**_____ |

| **Eligibility** | |
| --- | --- |
| The undersigned certifies that it is either (A) (i) a "qualified institutional buyer" (as defined in Rule 144A of the Securities Act of 1933 (as amended, the "<u>Securities Act</u>")), or (ii) an institutional "accredited investor" within the meaning of Rule 501(a) (1), (2), (3), (7), (8), (9), (12), or (13) of Regulation D under the Securities Act, in each case, having (or is a, direct or indirect, wholly-owned subsidiary of any entity having) total assets in excess of $10 million, or (B) not a "U.S. person" (as defined in the Regulation S of the Securities Act). | ☐   **<u>By checking this box, the Holder of the Claims identified in Item 1 certifies that it is an Eligible Holder</u>** |

If a Nominee holds your Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) on your behalf and you do not know the principal amount, please contact your Nominee immediately.

**Item 2**. **Vote on Plan**.[5]

The undersigned votes, with respect to its **Unsecured Notes Claims (Class 5 Junior Funded Debt Claims)**, to (please check **<u>one box</u>**):

| ☐   **<u>ACCEPT</u>** (vote FOR) the Plan | ☐   **<u>REJECT</u>** (vote AGAINST) the Plan |
| --- | --- |

**Your vote on the Plan will be applied to your Class 5 Junior Funded Debt Claims with respect to each applicable Debtor in the same manner and in the same amount as indicated in <u>Item 1</u> above.**

---

[5]   By submitting this Beneficial Holder Ballot, the Beneficial Holder is deemed to have consented to, and expressly authorizes, the Nominee to disclose the Beneficial Holder's name and contact information to the Solicitation Agent upon request.

**Item 3**. **Third-Party Release.**

The Third-Party Release set forth in <u>Article VIII.D</u> of the Plan is copied below, along with certain relevant definitions:[6]

**Except as otherwise specifically provided in the Plan or the Confirmation Order, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates), whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or herein after arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their estates, Affiliates, heirs, executory, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, the Debtors, their Estates, and the Reorganized Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or their Estates (including the capital structure, management, direct or indirect ownership, or operation thereof), the solicitation and provision of Solicitation Materials to Holders of Claims prior to the Chapter 11 Cases, the Chapter 11 Cases, the Restructuring Transactions, the Reorganized Debtors (including the management, direct or indirect ownership, or operation thereof), the New Common Equity Debt Election, the purchase, sale, or rescission of any Security of the Debtors, their Estates, and the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the assertion of enforcement of rights or remedies against the Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases including all prior recapitalizations, restructurings, or refinancing efforts and transactions, any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the decision to file the Chapter 11 Cases, any related adversary proceedings, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Restructuring Support Agreement, the Definitive Documents, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Definitive Documents, the Plan Supplement, the New Debt, the New ABL Facility, the New Preferred Equity Investment, the Plan Sponsor Equity Investment, the DIP Facility, the DIP Orders, the DIP Documents, the New Debt Documents, the New ABL Facility Documents, or the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act, or omission, transaction,**

---

[6]   The Plan also contains Debtor releases, exculpation, and injunction provisions set forth in Articles VIII.C, VIII.E, and VIII.F of the Plan, respectively.  Unless you otherwise are included in the definition of Released Parties, you must be a Releasing Party (*i.e.*, a Holder of a Claim or Interest that does not opt out of the Third-Party Release) to receive the Debtor releases set forth in Article VIII.C.

agreement, event, or other occurrence taking place on or before, in respect of the foregoing clause the Effective Date.

Notwithstanding anything to the contrary herein, the Releasing Parties do not, pursuant to the releases set forth above, release:  (i) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, and Restructuring Transactions, or any documents, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions; (ii) the rights of any Holder of Allowed Claims to receive distributions under the Plan; or (iii) any claims or Causes of Action arising from such Released Party's willful misconduct or actual fraud, in each case as determined by a final, non-appealable order entered by a court of competent jurisdiction.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (i) consensual; (ii) essential to the Confirmation of the Plan; (iii) given in exchange for good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable, and reasonable; (vii) given and made after due notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

Without limiting the foregoing, from and after the Effective Date, any Entity that is given the opportunity to opt out of the releases contained in Article VIII.D of the Plan and does not exercise such opt out may not assert any claim or other Cause of Action against any Released Party based on or relating to, or in any manner arising from, in whole or in part, the Debtors.  From and after the Effective Date, any Entity that opted out of the releases contained in Article VIII.D of the Plan may not assert any claim or other Cause of Action against any Released Party for which it is asserted or implied that such claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan and (b) specifically authorizing such Person or Entity to bring such claim or Cause of Action against any such Released Party.  The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in Article XI of the Plan, the Bankruptcy Court shall have jurisdiction to adjudicate the underlying claim or Cause of Action.

<u>Certain Definitions Related to the Third-Party Release</u>

Under the Plan, "<u>Releasing Parties</u>" means, collectively, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Holder of an ABL Facility Claim; (e) each Company Party; (f) the Plan Sponsor; (g) the Sponsor; (h) each Holder of a DIP Claim; (i) each Agent/Trustee; (j) each DIP Backstop Party; (k) each New Preferred Equity Investment Backstop Party; (l) each New Term Loan Facility Lender; (m) each New Noteholder; (n) each New ABL Facility Lender, (o) all Holders of Claims or Interests that vote to accept the Plan and do not affirmatively opt out of the releases provided for in the Plan; (p) all Holders of Claims or Interests who are deemed to accept the Plan and do not affirmatively opt out of the releases provided for in the Plan; (q) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided for in the Plan; (r) all Holders of Claims or Interests who vote to reject the Plan and who do not affirmatively opt out of the releases provided for in the Plan; (s) all Holders of Claims or Interests who are deemed to reject the Plan and who do not affirmatively opt out of the

7

releases provided for in the Plan; (t) each current and former Affiliate of each Entity in clause (a) through the following clause (u); and (u) each Related Party of each Entity in clause (a) through this clause (u); provided that each Holder of Claims or Interests that is party to the Restructuring Support Agreement shall be a Releasing Party; provided, further, that, in each case, an Entity shall not be a Releasing Party if it timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation.[7]

Under the Plan, "**Released Parties**" means, collectively, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Holder of an ABL Facility Claim; (e) each Company Party; (f) the Plan Sponsor; (g) the Sponsor; (h) each Holder of a DIP Claim; (i) each Agent/Trustee; (j) each DIP Backstop Party; (k) each New Preferred Equity Investment Backstop Party; (l) each New Term Loan Facility Lender; (m) each New Noteholder; (n) each New ABL Facility Lender; (o) each current and former Affiliate of each Entity in clause (a) through the following clause (p); and (p) each Related Party of each Entity in clause (a) through this clause (p); provided that, in each case, an Entity shall not be a Released Party if it:  (x) elects to opt out of the releases described in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved prior to Confirmation.

> **YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE UNLESS YOU CHECK THE OPT-OUT BOX BELOW.**

☐   The undersigned elects to **OPT OUT** of the Third-Party Release.

**Item 4.  Certification of Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) Held in Additional Accounts**.

By completing and returning this Ballot, the Beneficial Holder of the Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) identified in Item 1 certifies that this Ballot is the only Ballot submitted for the Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) identified in Item 1 owned by such Beneficial Holder as indicated in Item 1, except for the Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) identified in the following table.  For the avoidance of doubt, if any Beneficial Holder holds Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) through one or more Nominees, such Beneficial Holder must identify all Class 5 Junior Funded Debt Claims held through its own name and/or each Nominee in the following table and must indicate the same vote to accept or reject the Plan on all Ballots submitted.

---

[7]   Notwithstanding anything contrary herein, with respect to funds and accounts managed by BlackRock, Inc. or its Affiliates that are Consenting Stakeholders under the Restructuring Support Agreement (the "BlackRock Consenting Creditors"), the defined terms "Releasing Parties" and "Released Parties" shall be limited to (i) the BlackRock Consenting Creditors, (ii) any trading desk(s), fund(s), account, branch, unit, and/or business group(s) of the BlackRock Consenting Creditors that have a beneficial interest in the Company Claims/Interests held by BlackRock Consenting Creditors, or are otherwise acting for the benefit of or at the direction of the BlackRock Consenting Creditors, and (iii) any Affiliates and Related Parties of BlackRock Consenting Creditors for which the BlackRock Consenting Creditors are legally entitled to bind under applicable law.

ONLY COMPLETE <u>ITEM 4</u> IF YOU HAVE SUBMITTED OTHER BALLOTS ON ACCOUNT OF AN UNSECURED NOTES CLAIM (CLASS 5 JUNIOR FUNDED DEBT CLAIMS).

| Account Number of Unsecured Notes Claims Voted in Class 5 | Name of Owner[8] | Principal Amount of Unsecured Notes Claims Voted in Class 5 | CUSIP of Unsecured Notes Claims Voted in Class 5 |
|---|---|---|---|
| Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) | | | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |

**<u>Item 5</u>**. **Certifications**.

By signing this Ballot, the undersigned certifies that:

    (a)  as of the Voting Record Date, either:  (i) the undersigned is the Eligible Holder of the Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) set forth in <u>Item 1</u>; or (ii) the undersigned is an authorized signatory for a Beneficial Holder of the Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) set forth in <u>Item 1</u>.

    (b)  the undersigned (or in the case of an authorized signatory, the Beneficial Holder) has received a copy of the Disclosure Statement and the Solicitation Package (including the Plan and the

---

[8]    Insert your name if the Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) are held by you in your own name or, if held in a street name through a Nominee, insert the name of your broker or bank and their DTC Participant Number.

Restructuring Support Agreement) and acknowledges that the Solicitation is being made pursuant to the terms and conditions set forth therein;

(c) the undersigned has submitted the same election with respect to each of the Plan and the Third-Party Release, as applicable, with respect to all of its Unsecured Notes Claims (Class 5 Junior Funded Debt Claims);

(d) by submitting this Beneficial Holder Ballot, the Beneficial Holder is deemed to have consented to, and expressly authorizes, the Nominee to disclose the Beneficial Holder's name and contact information to the Solicitation Agent upon request;

(e) no other Ballot(s) or Master Ballot(s) with respect to the Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) set forth in Item 1 have been submitted or, if any other Ballot(s) or Master Ballots(s) have been submitted with respect to such Unsecured Notes Claims (Class 5 Junior Funded Debt Claims), then any such earlier Ballot(s) or Master Ballot(s) are hereby revoked; and

(f) the undersigned understands and acknowledges that the Solicitation Agent may verify the amount of the Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) set forth in Item 1 held by the Beneficial Holder as of the Voting Record Date with any Nominee through which the Beneficial Holder holds its Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) set forth in Item 1 and, by returning an executed Ballot, the Beneficial Holder directs any such Nominee to provide any information or comply with any actions requested by the Solicitation Agent to verify the amount set forth in Item 1 hereof.  In the event of a discrepancy regarding such amount that cannot be timely reconciled without undue effort on the part of the Solicitation Agent, the amount shown on the records of the Nominee, if applicable, or the Debtors' records shall control.

| | |
|---|---|
| Name of Beneficial Holder: | |
| | (Print or type) |
| DTC Participant Number: | |
| Signature: | |
| Name of Signatory: | |
| | (If other than Beneficial Holder) |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

10

## INSTRUCTIONS FOR COMPLETING AND RETURNING THIS BALLOT

1. The Debtors are soliciting prepetition votes on the Plan from Eligible Holders of Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) as of the Voting Record Date (January 15, 2026). **PLEASE READ THE PLAN, THE DISCLOSURE STATEMENT AND EACH OF ITS EXHIBITS, THE RESTRUCTURING SUPPORT AGREEMENT, THIS BALLOT, THE ELECTION FORM, AND THESE INSTRUCTIONS (THE "BALLOT INSTRUCTIONS") CAREFULLY BEFORE COMPLETING AND SUBMITTING THIS BALLOT.**

1. The Plan may be confirmed by the Bankruptcy Court and consummated, and thereby made binding upon you, provided that the Plan satisfies the requirements for confirmation set forth in the Bankruptcy Code.

2. Unless otherwise instructed by your Nominee, to ensure that your vote is counted, you must submit your Ballot to your Nominee so that your Nominee can submit a Master Ballot that reflects your vote so as to be ***actually received*** by the Solicitation Agent no later than the Voting Deadline. You may instruct your Nominee to vote on your behalf in the Master Ballot by (a) completing your Ballot, (b) indicating your decision either to accept or reject the Plan in the boxes provided in Item 2 of your Ballot, and (c) signing and returning your Ballot to your Nominee in accordance with the instructions provided by your Nominee. The Voting Deadline for the receipt of Master Ballots by the Solicitation Agent is March 3, 2026, at 5:00 p.m., prevailing Eastern Time. Your completed Ballot must be received by your Nominee in sufficient time to permit your Nominee to deliver your votes so as to be ***actually received*** by the Solicitation Agent no later than the Voting Deadline.

3. **Return of Hard Copy Ballot to Nominee**. If you are returning your Ballot to the Nominee that provided you with this Ballot, your completed Ballot must be sent to your Nominee, allowing sufficient time for your Nominee to receive your Ballot, complete a Master Ballot, and transmit the Master Ballot to the Solicitation Agent so that it is ***actually received*** by the Voting Deadline. Your Nominee is authorized to disseminate the Solicitation Packages and voting instructions to, and collect voting information from, Beneficial Holders according to its customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

4. **Return of Electronic Ballot to Nominee**. If you are directed by your Nominee to submit the Beneficial Holder Ballot to the Nominee via electronic means, such instructions to your Nominee shall have the same effect as if you had completed and returned a physical Beneficial Holder Ballot to your Nominee, including all certifications.

5. The time by which a Ballot or Master Ballot including your vote is ***actually received*** by the Solicitation Agent shall be the time used to determine whether such Ballot or Master Ballot has been submitted by the Voting Deadline. **The Voting Deadline is March 3, 2026, at 5:00 p.m., prevailing Eastern Time**.

6. If a Ballot is received *after* the Voting Deadline, and if the Voting Deadline is not extended, it may be counted only in the sole discretion of the Debtors or as permitted by the Bankruptcy Court. Additionally, **the following Ballots will *not* be counted**:

    1. any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;
    2. any Ballot that was transmitted other than as specifically set forth in the Ballot;
    3. any Ballot that was cast by an entity that it not entitled to vote on the Plan, including a prepetition Ballot submitted by or on behalf of a non-Eligible Holder;
    4. any Ballot that was sent to any person or entity other than the Solicitation Agent;

11

5. any Ballot that is unsigned;

6. any Ballot that is not clearly marked to either accept or reject the Plan or is marked both to accept and reject the Plan;

7. any Ballot that partially rejects and/or partially accepts the Plan in a particular Voting Class;

8. any Ballot superseded by a later, timely submitted valid Ballot;

9. an improperly submitted Ballot; or

10. any Ballot that is not actually received by the Solicitation Agent by the Voting Deadline, unless the Debtors determine otherwise or as permitted by the Court.

7. The method of delivery of Ballots to the Solicitation Agent is at the election and risk of each Holder of an Unsecured Notes Claim (Class 5 Junior Funded Debt Claims).  Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent ***actually receives*** the original executed Ballot.  For the avoidance of doubt, a Ballot submitted electronically via the online portal shall be considered an original.  In all cases, Holders should allow sufficient time to assure timely delivery.

8. If multiple Ballots are received from the same Holder, the latest, timely received, and properly completed Ballot or Master Ballot will supersede and revoke any earlier received Ballot(s) with respect to such Claims.

9. This Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you in the event that (i) the Debtors revoke or withdraw the Plan, (ii) the Confirmation Order is not entered, or (iii) consummation of the Plan does not occur.  In addition, for the avoidance of doubt, any Ballots submitted by Consenting Lenders shall be subject to the applicable provisions of the Restructuring Support Agreement.

10. You must vote all of your Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) either to accept or reject the Plan; you may ***not*** split your vote.

11. This Ballot does ***not*** constitute and shall not be deemed to be:  (a) a Proof of Claim; or (b) an assertion or admission with respect to any Claim.

12. **Please be sure to sign and date your Ballot**.  You should indicate that you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court (if applicable), must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to your Ballot.

13. Each Ballot votes ***only*** your Claims indicated on that Ballot, so please complete and return each Ballot that you received.

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE, PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.  PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR NOMINEE.  THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT AT OR BEFORE THE VOTING DEADLINE.**

**PLEASE RETURN YOUR BALLOT PROMPTLY.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THE BALLOT INSTRUCTIONS, OR THE PROCEDURES FOR VOTING ON THE PLAN, PLEASE CONTACT THE SOLICITATION AGENT BY EMAIL AT MCCINFO@VERITAGLOBAL.COM OR CALL (866) 967-1788 (TOLL-FREE US / CANADA) OR (310) 751-2688 (INTERNATIONAL).**

---

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT OR THE MASTER BALLOT AT OR BEFORE THE VOTING DEADLINE, WHICH IS MARCH 3, 2026, AT 5:00 P.M., PREVAILING EASTERN TIME (AND IF THE VOTING DEADLINE IS NOT EXTENDED), THEN THE VOTE REFLECTED IN THIS BALLOT OR THE MASTER BALLOT MAY BE COUNTED ONLY IN THE SOLE DISCRETION OF THE DEBTORS OR AS PERMITTED BY THE BANKRUPTCY COURT.  IF YOU ARE NOT AN ELIGIBLE HOLDER (OR THE AUTHORIZED SIGNATORY OF AN ELIGIBLE HOLDER), YOU MAY NOT SUBMIT A PREPETITION BALLOT.  ANY PREPETITION BALLOT RECEIVED BY A NON-ELIGIBLE HOLDER (OR ON BEHALF OF A NON-ELIGIBLE HOLDER) WILL NOT BE COUNTED.**

---

**Exhibit A**

*Please check ONLY ONE box below to indicate the CUSIP/ISIN to which this Beneficial Holder Ballot pertains.  If you check more than one box below you risk having your vote invalidated.*

| | DESCRIPTION | CUSIP | ISIN |
|---|---|---|---|
| **Unsecured Notes Claims (Class 5 Junior Funded Debt Claims)** | | | |
| ☐ | 10.500% Senior Unsecured Notes | 50168A AA 8 | US50168AAA88 |
| ☐ | 10.500% Senior Unsecured Notes | U5022D AA 9 | USU5022DAA91 |
| ☐ | 8.250% Senior Unsecured Notes | 50168Q AD 7 | US50168QAD79 |
| ☐ | 8.250% Senior Unsecured Notes | U5022T AD 8 | USU5022TAD82 |

**Exhibit 6B**

**Unsecured Notes Claims Master (Class 5) Ballot**

**IMPORTANT**:  NO CHAPTER 11 CASES HAVE BEEN COMMENCED AS OF THE DATE OF THE DISTRIBUTION OF THIS MASTER BALLOT (THIS "MASTER BALLOT").  THE DEBTORS (AS DEFINED BELOW) INTEND TO COMMENCE VOLUNTARY CHAPTER 11 CASES IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY (THE "BANKRUPTCY COURT") TO SEEK CONFIRMATION OF THE PLAN (AS DEFINED BELOW) BY THE BANKRUPTCY COURT, AS DESCRIBED IN GREATER DETAIL IN THE DISCLOSURE STATEMENT (AS DEFINED BELOW).[1]  ONLY ELIGIBLE HOLDERS (OR THEIR AUTHORIZED SIGNATORIES) ARE ENTITLED TO VOTE ON THE DEBTORS' PREPACKAGED PLAN PRIOR TO THE DEBTORS' CHAPTER 11 PETITIONS AND THE BANKRUPTCY COURT'S CONDITIONAL APPROVAL OF THE DISCLOSURE STATEMENT.

**MASTER BALLOT FOR HOLDERS OF UNSECURED NOTES CLAIMS TO (I) VOTE TO ACCEPT OR REJECT THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF MULTI-COLOR CORPORATION AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) OPT OUT OF THE PLAN RELEASES**

---

**PLEASE READ AND FOLLOW THE ENCLOSED
INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**FOR YOUR VOTE TO BE COUNTED, THIS MASTER BALLOT MUST BE COMPLETED, SIGNED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY KURTZMAN CARSON CONSULANTS, LLC (D/B/A VERITA GLOBAL) ("VERITA" OR THE "SOLICITATION AGENT") BY MARCH 3, 2026, AT 5:00 P.M., PREVAILING EASTERN TIME (THE "VOTING DEADLINE") IN ACCORDANCE WITH THE INSTRUCTIONS BELOW.**

---

On January 27, 2026, Multi-Color Corporation and certain of its affiliates (collectively, the "Debtors")[2] commenced solicitation of votes on the *Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be altered, amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan").

In connection with the solicitation process, the Debtors distributed the Plan and the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be altered, amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Disclosure Statement") to:  (i) Holders of Cash Flow Revolving Facility Claims, Cash Flow Term Loan Facilities Claims, and Secured Notes Claims (together, Class 4 under the Plan) (collectively, the "First Lien Secured Claims") and (ii) Holders of First Lien Deficiency Claims and Unsecured Notes Claims (together, Class 5 under the Plan) (collectively, the "Junior Funded Debt Claims"), in each case, as of January 15, 2026 (the "Voting Record Date").  As explained in further detail in the Disclosure Statement, on January 25, 2026, after engaging in extensive, arm's-length, good-faith

---

[1]   Capitalized terms used but not defined herein have the meanings set forth in the Plan, the Restructuring Support Agreement, or the Disclosure Statement (each as defined below), as applicable.

[2]   The last four digits of Debtor Multi-Color Corporation's tax identification number are 5853.  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.veritaglobal.net/MCC.  The location of the Debtors' service address for purposes of these chapter 11 cases is: 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327.

negotiations, the Debtors entered into a restructuring support agreement (as amended, modified, or supplemented from time to time, and including all exhibits and supplements thereto, the "Restructuring Support Agreement" and, the transactions contemplated thereby, the "Restructuring Transactions") with certain of the Debtors' key economic stakeholders, including the (i) Secured Ad Hoc Group, which holds over two-thirds of the First Lien Secured Claims, (ii) Plan Sponsor, and (iii) Sponsor.  As used herein, the term "Nominee" means the nominee, broker, or other Depository Trust Company ("DTC") participant for the Holder of a First Lien Secured Claim or Junior Funded Debt Claim.

The Debtors are soliciting prepetition votes on the Plan from Eligible Holders of Class 4 First Lien Secured Claims and Eligible Holders of Class 5 Junior Funded Debt Claims (each, a "Voting Class" and collectively, the "Voting Classes").

The Debtors intend to implement the Restructuring Transactions by commencing voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court and seeking confirmation and consummation of the Plan.  The Debtors anticipate that such Chapter 11 Cases will be commenced in the Bankruptcy Court on or about January 28, 2026.  The deadline to (i) vote to accept the Plan or reject the Plan and (ii) elect to opt out of the Plan Releases is March 3, 2026, at 5:00 p.m., prevailing Eastern Time.

**You are receiving this Master Ballot because you are the Nominee of a Beneficial Holder[3] and Eligible Holder[4] of an Unsecured Notes Claim (Class 5 Junior Funded Debt Claim) as of the Voting Record Date.**

**This Master Ballot is to be used by you as a Nominee or as the proxy holder of a Nominee for certain Beneficial Holders' Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) to transmit to the Solicitation Agent the votes of such Beneficial Holders in respect of their Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) to accept or reject the Plan.  The CUSIP numbers (the "CUSIP") for Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) entitled to vote and of which you are the Nominee are set forth on Exhibit A attached hereto.  THE VOTES ON THIS MASTER BALLOT FOR BENEFICIAL HOLDERS OF UNSECURED NOTES CLAIMS (CLASS 5 JUNIOR FUNDED DEBT CLAIMS) SHALL BE APPLIED TO EACH DEBTOR AGAINST WHOM SUCH BENEFICIAL HOLDERS HAVE AN UNSECURED NOTES CLAIM (CLASS 5 JUNIOR FUNDED DEBT CLAIMS).**

The Disclosure Statement describes the rights and treatment for each Class under the Plan.  The Disclosure Statement, the Plan, and certain other materials (the "Solicitation Package") have been distributed under separate cover from this Master Ballot.  This Master Ballot may not be used for any purpose other than for (i) casting votes to accept or reject the Plan, (ii) electing to opt out of the releases provided under the Plan, and (iii) making certain certifications or elections with respect thereto.  Once

---

[3]   "Beneficial Holder" is a beneficial owner of Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) whose Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by the Nominees (as defined herein) holding through the DTC or other relevant security depository and/or the applicable administrative agent as of the Voting Record Date.

[4]   "Eligible Holder" is a Beneficial Holder of a Unsecured Notes Claim (Class 5 Junior Funded Debt Claims) who is (A) (i) a "qualified institutional buyer" (as defined in Rule 144A of the Securities Act of 1933 (as amended, the "Securities Act")), or (ii) an institutional "accredited investor" within the meaning of Rule 501(a) (1), (2), (3), (7), (8), (9), (12), or (13) of Regulation D under the Securities Act, in each case, having (or is a, direct or indirect, wholly-owned subsidiary of any entity having) total assets in excess of $10 million, or (B) not a "U.S. person" (as defined in the Regulation S of the Securities Act).

3

completed and returned in accordance with the attached instructions, the votes on the Plan and opt out elections will be counted as set forth herein.

You are authorized to disseminate information and materials pertaining to the solicitation of Plan votes, and to collect votes to accept or to reject the Plan and Plan release opt out elections from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder ballot (a "Beneficial Holder Ballot"), and collecting votes and Plan release opt out elections from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

The Bankruptcy Court may confirm the Plan and thereby bind all Beneficial Holders of Unsecured Notes Claims (Class 5 Junior Funded Debt Claims).  To have the votes of your Beneficial Holders count as either an acceptance or rejection of the Plan, and opt out of the releases provided under the Plan, you must properly complete, sign, and return this Master Ballot so that the Solicitation Agent *actually receives* it no later than the Voting Deadline, which is **March 3, 2026, at 5:00 p.m., prevailing Eastern Time**.

If you received this Master Ballot or other materials in electronic format and desire paper copies, or if you need to obtain additional materials, you may obtain them free of charge:  (1) by emailing the Solicitation Agent at mccballots@veritaglobal.com (reference "Multi-Color Corporation" in subject line); or (2) by writing to the Solicitation Agent at MCC Ballot Processing Center c/o KCC dba Verita Global, 222 N Pacific Coast Highway, Suite 300, El Segundo, CA 90245.  Following the commencement of the Chapter 11 Cases, you may also obtain copies of any documents filed in the Chapter 11 Cases free of charge on the Debtors' restructuring website at https://www.veritaglobal.net/MCC or for a fee through the Bankruptcy Court's website at https://ecf.njb.uscourts.gov.

---

**Item 1.  Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐ is a broker, bank, or other nominee for the Beneficial Holders of the aggregate principal amount of the Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) listed in Item 2 below, and is the record holder of such claims;

☐ is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, or other nominee that is the registered Beneficial Holder of the aggregate principal amount of the Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) listed in Item 2 below; or

☐ has been granted a proxy (an original of which is attached hereto) from a broker, bank, or other nominee, or a Beneficial Holder, that is the registered Beneficial Holder of the aggregate principal amount of the Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) listed in Item 2 below, and accordingly, has full power and authority to vote to accept or reject the Plan, on behalf of the Beneficial Holders of the Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) described in Item 2.

**Item 2.  Unsecured Notes Claims' (Class 5 Junior Funded Debt Claims) Vote on Plan and Item 3. Third-Party Release.**

The undersigned transmits the following votes and opt-out elections of Beneficial Holders of Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) against the Debtors as set forth below and certifies that the following Beneficial Holders of the Unsecured Notes Claims (Class 5 Junior Funded Debt Claims), as identified by their respective customer account numbers set forth below, are Beneficial Holders of such securities as of the Voting Record Date, and have delivered to the undersigned, as Nominee, Master Ballots casting such votes.  By submitting the votes and/or opt-out elections, the Beneficial Holders are deemed to have consented to, and expressly authorizes, the Nominee to disclose the Beneficial Holders' names and contact information to the Solicitation Agent upon request.

Indicate in the appropriate column below the aggregate principal amount voted for each account or attach such information to this Master Ballot in the form of the following table.  Please note that each Beneficial Holder must vote all of their Claims in the Voting Class either to accept or reject the Plan and may not split such vote.  Any Beneficial Holder Ballot executed by the Beneficial Holder that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.  If the Beneficial Holder has checked the box on Item 3 of the Beneficial Holder Ballot pertaining to the Third-Party Release by Holders of Unsecured Notes Claims (Class 5 Junior Funded Debt Claims), as detailed in Article VIII.D of the Plan, please place an X in the Item 3 column of the Voting Class below.  The full text of Article VIII.D is duplicated in the Master Ballot Instructions (as defined below).

5

| CUSIP AS INDICATED ON EXHIBIT A ATTACHED HERETO | | | | | |
|---|---|---|---|---|---|
| **Your Customer Account Number for Each Beneficial Holder of an Unsecured Notes Claim Who Voted in Class 5** | **Principal Amount of Unsecured Notes Claims Held as of the Voting Record Date, if applicable** | **Item 2**<br><br>**Indicate the vote cast on the Beneficial Holder Ballot by placing an "X" in the appropriate column below.** | | | **Item 3**<br><br>**If the Opt-Out Election in Item 3 of the Beneficial Holder Ballot was completed, place an "X" in the column below.** |
| | | **ACCEPT (vote FOR) the Plan** | **or** | **REJECT (vote AGAINST) the Plan** | |
| Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) | | | | | |
| 1. | $ | | | | |
| 2. | $ | | | | |
| 3. | $ | | | | |
| 4. | $ | | | | |
| 5. | $ | | | | |
| 6. | $ | | | | |
| **TOTALS** | $ | | | | |

6

**Item 3.  Certification as to Transcription of Information from Item 4 of the Beneficial Holders Ballots as to Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) Voted Through Other Beneficial Holder Ballots.**

The undersigned certifies that the following information is a true and accurate schedule on which the undersigned has transcribed the information, if any, provided in Item 4 of each Beneficial Holder Ballot received from a Beneficial Holder.  Please use additional sheets of paper if necessary.

| Your Customer Account Number for Each Beneficial Holder of an Unsecured Notes Claim Who Completed Item 4 of the Ballots | TRANSCRIBE FROM ITEM 4 OF THE BENEFICIAL HOLDER BALLOTS: | | | |
|---|---|---|---|---|
| | Account Number of Unsecured Notes Claims Voted in Class 5 | DTC Participant Name and Number | Principal Amount of Unsecured Notes Claims Voted in Class 5 | CUSIP of Unsecured Notes Claims Voted in Class 5 |
| Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) | | | | |
| 1. | | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |
| | | | $ | |

7

**Item 4**.  **Certifications.**

Upon execution of this Master Ballot, the undersigned certifies that:

1.  it has received the Disclosure Statement and the Solicitation Package (including the Plan and the Restructuring Support Agreement), has delivered the same to the Beneficial Holders of Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) listed in Item 2 above or delivered materials via other customary communications used to solicit or collect votes, and acknowledges that the Solicitation is being made pursuant to the terms and conditions set forth therein;

1.  it has received appropriate voting instructions from each Beneficial Holder listed in Item 2 of this Master Ballot;

2.  it is the Nominee of the Beneficial Holder of the securities being voted;

3.  it has been authorized by each such Beneficial Holder to (i) vote on the Plan and (ii) elect to opt out of the releases provided under the Plan;

4.  it has properly disclosed:  (a) the number of Beneficial Holders who completed Beneficial Holder Ballots; (b) the respective amounts of the Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) as set forth in Item 2, as the case may be, by each Beneficial Holder who completed a Beneficial Holder Ballot; (c) each such Beneficial Holder's respective vote concerning the Plan; (d) such Beneficial Holder's respective Plan release opt out election; (e) each such Beneficial Holder's certification as to other Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) voted; and (f) the customer account or other identification number for each such Beneficial Holder; and

5.  it will maintain Ballots and evidence of separate transactions returned by Beneficial Holders (whether properly completed or defective) for at least two years after the Effective Date and disclose all such information to the Bankruptcy Court or the Debtors, as the case may be, if so ordered.

| | |
|---|---|
| Name of Nominee: | |
| | (Print or type) |
| DTC Participant Number: | |
| Name of Proxy Holder or Agent for Nominee (if applicable): | |
| | (Print or type) |
| Signature: | |
| Name of Signatory: | |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

<u>**INSTRUCTIONS FOR COMPLETING AND RETURNING THIS MASTER BALLOT**</u>

1. The Debtors are soliciting prepetition votes on the Plan from Eligible Holders of Class 5 Junior Funded Debt Claims as of the Voting Record Date (January 15, 2026).  **PLEASE READ THE PLAN, THE DISCLOSURE STATEMENT AND EACH OF ITS EXHIBITS, THE RESTRUCTURING SUPPORT AGREEMENT, THIS MASTER BALLOT, THE ELECTION FORM, AND THESE INSTRUCTIONS (THE "<u>MASTER BALLOT INSTRUCTIONS</u>") CAREFULLY BEFORE COMPLETING AND SUBMITTING THIS MASTER BALLOT.**

2. The Plan may be confirmed by the Bankruptcy Court and consummated, and thereby made binding upon Holders of Claims and Interests provided that the Plan satisfies the requirements for confirmation set forth in the Bankruptcy Code.

3. **To ensure that the Master Ballot is counted, you must complete and sign the Master Ballot as provided herein and submit it to the Solicitation Agent by <u>one</u> of the following methods so as to be <u>*actually received*</u> by the Solicitation Agent no later than the Voting Deadline, which is March 3, 2026, at 5:00 p.m., prevailing Eastern Time.**

    **Via electronic mail service to (<u>preferred method</u>):  mccballots@veritaglobal.com[5] with a reference to "Multi-Color Corporation Master Ballot" in the subject line.**

    OR

    **By First-Class Mail, Overnight Mail, or Hand Delivery to:**

    MCC Ballot Processing Center
    c/o KCC dba Verita Global
    222 N Pacific Coast Highway, Suite 300
    El Segundo, CA 90245

4. **<u>Use of Hard Copy Master Ballot.</u>**  To ensure that your hard copy Master Ballot is counted, you must: (a) complete your Master Ballot in accordance with these instructions below; (b) clearly indicate the applicable Beneficial Holders decision either to accept or reject the Plan in the applicable box in <u>Item 2</u> of your Master Ballot; and (c) clearly sign and return your original Master Ballot to the above street address so as to be <u>*actually received*</u> by the Solicitation Agent no later than the Voting Deadline.

5. You should immediately distribute the Beneficial Holder Ballots (or other customary material used to collect votes in lieu of the Beneficial Holders Ballots) and the Solicitation Package to all Beneficial Holders of Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) and take any action required to enable each such Beneficial Holder to timely vote the Claims that it holds.  You may distribute the Solicitation Packages to Beneficial Holders, as appropriate, in accordance with your customary practices.  You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.  Any Beneficial Holder Ballot returned to you by a Beneficial Holder of an Unsecured Notes Claim (Class 5 Junior Funded Debt Claim) shall

---

[5]   For any Ballot cast via electronic mail, the format of the attachment must be found in the common workplace and industry standard format (*i.e.*, industry-standard PDF file) and the received date and time in the Solicitation Agent's inbox will be used as the timestamp for receipt.

not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver, to the Solicitation Agent a Master Ballot that reflects the vote of such Beneficial Holders by March 3, 2026, at 5:00 p.m., prevailing Eastern Time, or otherwise validate the Beneficial Holder Ballot in a manner acceptable to the Solicitation Agent.

If you are transmitting the votes of any Beneficial Holders of Unsecured Notes Claims (Class 5 Junior Funded Debt Claims), you must, within two (2) Business Days after receipt by such Nominee of the Solicitation Package, forward the Solicitation Package to the Beneficial Holder of the Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) for voting (along with a return envelope provided by and addressed to the Nominee, if applicable), with the Beneficial Holder of the Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) then returning the individual Beneficial Holder Ballot to the Nominee.  In such case, the Nominee will tabulate the votes of its respective Beneficial Holders on a Master Ballot that will be provided to the Nominee separately by the Solicitation Agent, in accordance with any instructions set forth in the instructions to the Master Ballot, and then return the Master Ballot to the Solicitation Agent.  The Nominee should advise the Beneficial Holders to return their individual Beneficial Holder Ballots to the Nominee by a date calculated by the Nominee to allow it to prepare and return the Master Ballot to the Solicitation Agent so that the Master Ballot is ***actually received*** by the Solicitation Agent on or before the Voting Deadline, which is March 3, 2026, at 5:00 p.m., prevailing Eastern Time.

6.  With regard to any Beneficial Holder Ballots returned to you by a Beneficial Holder, you must: (a) compile and validate the votes and other relevant information of each such Beneficial Holder on the Master Ballot using the customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Ballot; (c) transmit such Master Ballot to the Solicitation Agent by the Voting Deadline; and (d) retain such Beneficial Holder Ballots from Beneficial Holders of Class 5 Junior Funded Debt Claims, whether in hard copy or by electronic direction, in your files for a period of two years after the Effective Date.  You may be ordered to produce the Beneficial Holder Ballots, Beneficial Holders' names and/or contact information to the Debtors or the Bankruptcy Court.

7.  The time by which a Master Ballot is ***actually received*** by the Solicitation Agent shall be the time used to determine whether a Master Ballot has been submitted by the Voting Deadline.  **The Voting Deadline is March 3, 2026, at 5:00 p.m., prevailing Eastern Time**.

8.  If a Master Ballot is received ***after*** the Voting Deadline, it will not be counted unless the Debtors determine in their sole discretion otherwise or as permitted by the Bankruptcy Court.  Additionally, **the following Master Ballots and Beneficial Holder Ballots will *not* be counted**:

    1.  any Beneficial Holder Ballot or Master Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder of the Claim;
    2.  any Beneficial Holder Ballot or Master Ballot that was transmitted other than as specifically set forth in the Beneficial Holder Ballot or Master Ballot;
    3.  any Beneficial Holder Ballot or Master Ballot that was cast by an entity that it not entitled to vote on the Plan, including a prepetition Ballot submitted by or on behalf of a non-Eligible Holder;
    4.  any Beneficial Holder Ballot or Master Ballot that was sent to any person or entity other than the Solicitation Agent;
    5.  any Beneficial Holder Ballot or Master Ballot that is unsigned;
    6.  any Beneficial Holder Ballot or Master Ballot that is not clearly marked to either accept or reject the Plan or is marked both to accept and reject the Plan; and
    7.  any Beneficial Holder Ballot or Master Ballot that partially rejects and/or partially accepts the Plan in a particular Voting Class.

11

8. any Beneficial Holder Ballot or Master Ballot superseded by a later, timely submitted valid Ballot;

9. any improperly submitted Beneficial Holder Ballot or Master;

10. any Beneficial Holder Ballot or Master Ballot that is not actually received by the Solicitation Agent by the Voting Deadline, unless the Debtors determine otherwise or as permitted by the Court;

9. The method of delivery of Master Ballots to the Solicitation Agent is at the election and risk of each Nominee of an Unsecured Notes Claim (Class 5 Junior Funded Debt Claims).  Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent **_actually receives_** the original executed Master Ballot.  For the avoidance of doubt, a Master Ballot submitted electronically via the online portal shall be considered an original.  In all cases, Nominees should allow sufficient time to assure timely delivery.

10. If multiple Master Ballots are received from the same Nominee with respect to the same Beneficial Holder Ballot belonging to a Beneficial Holder of an Unsecured Notes Claim (Class 5 Junior Funded Debt Claims), the latest, timely received, and properly completed Master Ballot will supersede and revoke any earlier received Master Ballot(s) with respect to such Claims.

11. This Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you in the event that (i) the Debtors revoke or withdraw the Plan, (ii) the Confirmation Order is not entered, or (iii) consummation of the Plan does not occur.  In addition, for the avoidance of doubt, any Ballots submitted by Consenting Lenders shall be subject to the applicable provisions of the Restructuring Support Agreement.

12. A Beneficial Holder must vote all of their Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) either to accept or reject the Plan; they may **_not_** split their vote.

13. This Master Ballot does **_not_** constitute and shall not be deemed to be:  (a) a Proof of Claim; or (b) an assertion or admission with respect to any Claim.

14. **Please be sure to sign and date your Master Ballot**.  You should indicate that you are signing a Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court (if applicable), must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to your Master Ballot.

15. Each Ballot votes **_only_** the Claims indicated on that Master Ballot, so please complete and return each Master Ballot that you received.

**The following additional rules shall apply to Master Ballots**:

16. Votes cast by Beneficial Holders through a Nominee will be applied against the positions held by such entities in the Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) as of the Voting Record Date, as evidenced by the record and depository listings.

17. Votes submitted by a Nominee pursuant to a Master Ballot will not be counted in excess of the record amount of the Unsecured Notes Claims (Class 5 Junior Funded Debt Claims) held by such Nominee.

12

18. To the extent that conflicting votes or "overvotes" are submitted by a Nominee pursuant to a Master Ballot, the Solicitation Agent will attempt to reconcile discrepancies with the Nominee.

19. To the extent that overvotes on a Master Ballot are not reconcilable prior to the preparation of the vote certification, the Solicitation Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot that contained the overvote, but only to the extent of the Nominee's position in the Class 5 Junior Funded Debt Claims.

20. For purposes of tabulating votes, each Beneficial Holder holding through a particular account will be deemed to have voted the principal amount relating to its holding in that particular account, although the Solicitation Agent may be asked to adjust such principal amount to reflect the Claim amount.

**Important Information Regarding the Third-Party Release under the Plan**:

Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "Third-Party Release").  The Third-Party Release is copied below, along with certain relevant definitions:[6]

**Except as otherwise specifically provided in the Plan or the Confirmation Order, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates), whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or herein after arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their estates, Affiliates, heirs, executory, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, the Debtors, their Estates, and the Reorganized Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or their Estates (including the capital structure, management, direct or indirect ownership, or operation thereof), the solicitation and provision of Solicitation Materials to Holders of Claims prior to the Chapter 11 Cases, the Chapter 11 Cases, the Restructuring Transactions, the Reorganized Debtors (including the management, direct or indirect ownership, or operation thereof), the New Common Equity Debt Election, the purchase, sale, or rescission of any Security of the Debtors, their Estates, and the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the assertion of enforcement of rights or remedies against the Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases including all prior recapitalizations, restructurings, or refinancing efforts and transactions, any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the decision to file the Chapter 11 Cases, any related adversary proceedings, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Restructuring Support Agreement, the Definitive Documents, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Definitive Documents, the Plan Supplement, the New Debt, the New ABL Facility, the New Preferred Equity Investment, the Plan Sponsor Equity Investment, the DIP Facility, the DIP Orders, the DIP Documents, the New Debt Documents, the New ABL Facility Documents, or the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan,**

---

[6]   The Plan also contains Debtor releases, exculpation, and injunction provisions set forth in Articles VIII.C, VIII.E, and VIII.F of the Plan, respectively.  Unless you otherwise are included in the definition of Released Parties, you must be a Releasing Party (*i.e.*, a Holder of a Claim or Interest that does not opt out of the Third-Party Release) to receive the Debtor releases set forth in Article VIII.C.

14

or the distribution of property under the Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before, in respect of the foregoing clause the Effective Date.

Notwithstanding anything to the contrary herein, the Releasing Parties do not, pursuant to the releases set forth above, release:  (i) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, and Restructuring Transactions, or any documents, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions; (ii) the rights of any Holder of Allowed Claims to receive distributions under the Plan; or (iii) any claims or Causes of Action arising from such Released Party's willful misconduct or actual fraud, in each case as determined by a final, non-appealable order entered by a court of competent jurisdiction.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (i) consensual; (ii) essential to the Confirmation of the Plan; (iii) given in exchange for good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable, and reasonable; (vii) given and made after due notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

Without limiting the foregoing, from and after the Effective Date, any Entity that is given the opportunity to opt out of the releases contained in Article VIII.D of the Plan and does not exercise such opt out may not assert any claim or other Cause of Action against any Released Party based on or relating to, or in any manner arising from, in whole or in part, the Debtors.  From and after the Effective Date, any Entity that opted out of the releases contained in Article VIII.D of the Plan may not assert any claim or other Cause of Action against any Released Party for which it is asserted or implied that such claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan and (b) specifically authorizing such Person or Entity to bring such claim or Cause of Action against any such Released Party.  The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in Article XI of the Plan, the Bankruptcy Court shall have jurisdiction to adjudicate the underlying claim or Cause of Action.

Certain Definitions Related to the Third-Party Release

Under the Plan, "Releasing Parties" means, collectively, and in each case in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Holder of an ABL Facility Claim; (e) each Company Party; (f) the Plan Sponsor; (g) the Sponsor; (h) each Holder of a DIP Claim; (i) each Agent/Trustee; (j) each DIP Backstop Party; (k) each New Preferred Equity Investment Backstop Party; (l) each New Term Loan Facility Lender; (m) each New Noteholder; (n) each New ABL Facility Lender, (o) all Holders of Claims or Interests that vote to accept the Plan and do not affirmatively opt out of the releases provided for in the Plan; (p) all Holders of Claims or Interests who are deemed to accept the Plan and do not affirmatively opt out of the releases provided for in the Plan; (q) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided for in the Plan; (r) all Holders of Claims

15

or Interests who vote to reject the Plan and who do not affirmatively opt out of the releases provided for in the Plan; (s) all Holders of Claims or Interests who are deemed to reject the Plan and who do not affirmatively opt out of the releases provided for in the Plan; (t) each current and former Affiliate of each Entity in clause (a) through the following clause (u); and (u) each Related Party of each Entity in clause (a) through this clause (u); provided that each Holder of Claims or Interests that is party to the Restructuring Support Agreement shall be a Releasing Party; provided, further, that, in each case, an Entity shall not be a Releasing Party if it timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation.[7]

Under the Plan, "Released Parties" means, collectively, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Holder of an ABL Facility Claim; (e) each Company Party; (f) the Plan Sponsor; (g) the Sponsor; (h) each Holder of a DIP Claim; (i) each Agent/Trustee; (j) each DIP Backstop Party; (k) each New Preferred Equity Investment Backstop Party; (l) each New Term Loan Facility Lender; (m) each New Noteholder; (n) each New ABL Facility Lender; (o) each current and former Affiliate of each Entity in clause (a) through the following clause (p); and (p) each Related Party of each Entity in clause (a) through this clause (p); provided that, in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the releases described in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved prior to Confirmation.

---

[7] Notwithstanding anything contrary herein, with respect to funds and accounts managed by BlackRock, Inc. or its Affiliates that are Consenting Stakeholders under the Restructuring Support Agreement (the "BlackRock Consenting Creditors"), the defined terms "Releasing Parties" and "Released Parties" shall be limited to (i) the BlackRock Consenting Creditors, (ii) any trading desk(s), fund(s), account, branch, unit, and/or business group(s) of the BlackRock Consenting Creditors that have a beneficial interest in the Company Claims/Interests held by BlackRock Consenting Creditors, or are otherwise acting for the benefit of or at the direction of the BlackRock Consenting Creditors, and (iii) any Affiliates and Related Parties of BlackRock Consenting Creditors for which the BlackRock Consenting Creditors are legally entitled to bind under applicable law.

**PLEASE RETURN YOUR MASTER BALLOT PROMPTLY.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT, THE
MASTER BALLOT INSTRUCTIONS, OR THE PROCEDURES FOR VOTING
ON THE PLAN, PLEASE CONTACT THE SOLICITATION AGENT BY EMAIL AT
MCCBALLOTS@VERITAGLOBAL.COM OR CALL (877) 499-4509 (TOLL-FREE US / CANADA)
OR (917) 281-4800 (INTERNATIONAL).**

---

**IF THE SOLICITATION AGENT DOES NOT _ACTUALLY RECEIVE_ THIS BALLOT OR THE
MASTER BALLOT AT OR BEFORE THE VOTING DEADLINE, WHICH IS MARCH 3, 2026, AT
5:00 P.M., PREVAILING EASTERN TIME (AND IF THE VOTING DEADLINE IS NOT
EXTENDED), THEN THE VOTE REFLECTED IN THIS BALLOT OR THE MASTER BALLOT
MAY BE COUNTED ONLY IN THE SOLE DISCRETION OF THE DEBTORS OR AS PERMITTED
BY THE BANKRUPTCY COURT.**

---

**Exhibit A**

*Please check ONLY ONE box below to indicate the CUSIP/ISIN to which this Master Ballot pertains (or clearly indicate such information directly on the Master Ballot or on a schedule thereto). If you check more than one box below, the Beneficial Holder votes submitted on this Master Ballot may be invalidated:*

| | DESCRIPTION | CUSIP | ISIN |
|---|---|---|---|
| **Unsecured Notes Claims (Class 5 Junior Funded Debt Claims)** | | | |
| ☐ | 10.500% Senior Unsecured Notes | 50168A AA 8 | US50168AAA88 |
| ☐ | 10.500% Senior Unsecured Notes | U5022D AA 9 | USU5022DAA91 |
| ☐ | 8.250% Senior Unsecured Notes | 50168Q AD 7 | US50168QAD79 |
| ☐ | 8.250% Senior Unsecured Notes | U5022T AD 8 | USU5022TAD82 |

**Exhibit 7**

**Notice of Non-Voting Status (Impaired, Unimpaired, and Disputed Claims)**

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MULTI-COLOR CORPORATION, *et al.*, | ) | Case No. 26-10910 (MBK) |
| | ) | |
| Debtors. [1] | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF NON-VOTING STATUS TO HOLDERS
OR POTENTIAL HOLDERS OF UNIMPAIRED CLAIMS
CONCLUSIVELY PRESUMED TO ACCEPT THE PLAN, HOLDERS
OR POTENTIAL HOLDERS OF IMPAIRED CLAIMS DEEMED TO REJECT
THE PLAN, AND HOLDERS OR POTENTIAL HOLDERS OF DISPUTED CLAIMS**

**PLEASE TAKE NOTICE THAT** on January 29, 2026, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of New Jersey (the "Court"). Contemporaneously therewith, the Debtors filed the *Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 17] (as may be altered, amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan") and the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 18] (as may be altered, amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Disclosure Statement").[2]

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Kurtzman Carson Consultants, LLC (d/b/a Verita Global) (the "Solicitation Agent"), the Debtors' claims and noticing agent in the chapter 11 cases, by: (a) visiting the Debtors' restructuring website at: https://veritaglobal.net/MCC; (b) writing to Multi-Color Corporation, Ballot Processing Center, c/o Kurtzman Carson Consultants, LLC (d/b/a Verita Global), 222 N Pacific Coast Highway, Suite 300, El Segundo, California 90245; (c) submit an electronic request at https://www.veritaglobal.net/MCC/inquiry; or (d) calling the Solicitation Agent at (866) 967-1788 (toll

---

[1]   The last four digits of Debtor Multi-Color Corporation's tax identification number are 5853. A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://veritaglobal.net/MCC. The location of the Debtors' service address for purposes of these Chapter 11 Cases is: 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327.

[2]   A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' Chapter 11 Cases, is set forth in the *Declaration of Garrett Gabel, Chief Restructuring Officer of Multi-Color Corporation, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 23] (the "First Day Declaration"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration, the Plan, or the Disclosure Statement, as applicable. The statements contained herein are summaries of certain provisions contained in the Plan and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein. To the extent there is a discrepancy between the terms herein and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall govern and control. For a more detailed description of the Plan, please refer to the Disclosure Statement.

free, U.S. and Canada) or (310) 751-2688 (international).  You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via the Bankruptcy Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

**PLEASE TAKE FURTHER NOTICE THAT** you are a Holder or potential Holder of a Claim against or Existing Equity Interest in the Debtors that, due to the nature and treatment of such Claim or Existing Equity Interest under the Plan, *is **not** entitled to vote on the Plan*.  Specifically, under the terms of the Plan, (i) a Holder of a Claim in a Class that is not Impaired under the Plan and, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, (ii) a Holder of a Claim or Existing Equity Interest in a Class that is Impaired under the Plan and deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  The treatment of Unimpaired Claims under the Plan is described in greater detail in the Disclosure Statement.

**PLEASE TAKE FURTHER NOTICE THAT** the following provisions are included in the Plan:

**<u>ARTICLE VIII</u> OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND <u>ARTICLE VIII.D</u> OF THE PLAN CONTAINS THE FOLLOWING THIRD-PARTY RELEASE (THE "<u>THIRD-PARTY RELEASE</u>"):**

**Except as otherwise specifically provided in the Plan or the Confirmation Order, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates), whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or herein after arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their estates, Affiliates, heirs, executory, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, the Debtors, their Estates, and the Reorganized Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or their Estates (including the capital structure, management, direct or indirect ownership, or operation thereof), the solicitation and provision of Solicitation Materials to Holders of Claims prior to the Chapter 11 Cases, the Chapter 11 Cases, the Restructuring Transactions, the Reorganized Debtors (including the management, direct or indirect ownership, or operation thereof), the New Common Equity Debt Election, the purchase, sale, or rescission of any Security of the Debtors, their Estates, and the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the assertion of enforcement of rights or remedies against the Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases including all prior recapitalizations, restructurings, or refinancing efforts and transactions, any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the decision to file the Chapter 11 Cases, any related adversary proceedings, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Restructuring Support Agreement, the Definitive Documents, the Plan Supplement, or any**

3

Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Definitive Documents, the Plan Supplement, the New Debt, the New ABL Facility, the New Preferred Equity Investment, the Plan Sponsor Equity Investment, the DIP Facility, the DIP Orders, the DIP Documents, the New Debt Documents, the New ABL Facility Documents, or the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before, in respect of the foregoing clause the Effective Date.

Notwithstanding anything to the contrary herein, the Releasing Parties do not, pursuant to the releases set forth above, release:  (i) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, and Restructuring Transactions, or any documents, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions; (ii) the rights of any Holder of Allowed Claims to receive distributions under the Plan; or (iii) any claims or Causes of Action arising from such Released Party's willful misconduct or actual fraud, in each case as determined by a final, non-appealable order entered by a court of competent jurisdiction.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (i) consensual; (ii) essential to the Confirmation of the Plan; (iii) given in exchange for good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable, and reasonable; (vii) given and made after due notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

Without limiting the foregoing, from and after the Effective Date, any Entity that is given the opportunity to opt out of the releases contained in Article VIII.D of the Plan and does not exercise such opt out may not assert any claim or other Cause of Action against any Released Party based on or relating to, or in any manner arising from, in whole or in part, the Debtors.  From and after the Effective Date, any Entity that opted out of the releases contained in Article VIII.D of the Plan may not assert any claim or other Cause of Action against any Released Party for which it is asserted or implied that such claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan and (b) specifically authorizing such Person or Entity to bring such claim or Cause of Action against any such Released Party.  The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in Article XI of the Plan, the Bankruptcy Court shall have jurisdiction to adjudicate the underlying claim or Cause of Action.

Definitions related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "***RELEASED PARTY***" MEANS COLLECTIVELY, AND IN EACH CASE SOLELY IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH CONSENTING STAKEHOLDER; (D) EACH HOLDER OF AN ABL FACILITY CLAIM; (E) EACH COMPANY PARTY; (F) THE PLAN SPONSOR; (G) THE SPONSOR; (H) EACH HOLDER OF A DIP CLAIM; (I) EACH AGENT/TRUSTEE; (J) EACH DIP BACKSTOP PARTY;

4

(K) EACH NEW PREFERRED EQUITY INVESTMENT BACKSTOP PARTY; (L) EACH NEW TERM LOAN FACILITY LENDER; (M) EACH NEW NOTEHOLDER; (N) EACH NEW ABL FACILITY LENDER; (O) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (P); AND (P) EACH RELATED PARTY OF EACH ENTITY IN CLAUSES (A) THROUGH THIS CLAUSE (P); *PROVIDED* THAT, IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT: (X) ELECTS TO OPT OUT OF THE THIRD-PARTY RELEASE; OR (Y) TIMELY OBJECTS TO THE RELEASES DESCRIBED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED PRIOR TO CONFIRMATON.

UNDER THE PLAN, "*RELEASING PARTY*" MEANS, COLLECTIVELY, AND IN EACH ASE IN ITS CAPACITY AS SUCH: (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH CONSENTING STAKEHOLDER; (D) EACH HOLDER OF AN ABL FACILITY CLAIM; (E) EACH COMPANY PARTY; (F) THE PLAN SPONSOR; (G) THE SPONSOR; (H) EACH HOLDER OF A DIP CLAIM; (I) EACH AGENT/TRUSTEE; (J) EACH DIP BACKSTOP PARTY; (K) EACH NEW PREFERRED EQUITY INVESTMENT BACKSTOP PARTY; (L) EACH NEW TERM LOAN FACILITY LENDER; (M) EACH NEW NOTEHOLDER; (N) EACH NEW ABL FACILTY LENDER; (O) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO ACCEPT THE PLAN AND DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED FOR IN THE PLAN; (P) ALL HOLDERS OF CLAIMS OR INTERESTS WHO ARE DEEMED TO ACCEPT THE PLAN AND DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED FOR IN THE PLAN; (Q) ALL HOLDERS OF CLAIMS OR INTERESTS WHO ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED FOR IN THE PLAN; (R) ALL HOLDERS OF CLAIMS OR INTERESTS WHO VOTE TO REJECT THE PLAN AND WHO DO NOT AFFIRMATELY OPT OUT OF THE RELEASES PROVIDED FOR IN THE PLAN; (S) ALL HOLDERS OF CLAIMS OR INTERESTS WHO ARE DEEMED TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED FOR IN THE PLAN; (T) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (U); AND (U) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH THIS CLAUSE (U); *PROVIDED* THAT EACH HOLDER OF CLAIMS OR INTERESTS THAT IS PARTY TO THE RESTRUCTURING SUPPORT AGREEMENT SHALL BE A RELEASING PARTY; *PROVIDED, FURTHER*, THAT, IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.[3]

UNDER THE PLAN, "*RELATED PARTY*" MEANS COLLECTIVELY, WITH RESPECT TO ANY PERSON OR ENTITY, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH, CURRENT AND FORMER DIRECTORS, MANAGERS, OFFICERS, COMMITTEE MEMBERS, MEMBERS OF ANY GOVERNING BODY, SHAREHOLDERS, UNITHOLDERS, EQUITY HOLDERS (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), AFFILIATED INVESTMENT FUNDS OR INVESTMENT VEHICLES, MANAGED ACCOUNTS OR FUNDS, PREDECESSORS, PARTICIPANTS, SUCCESSORS, ASSIGNS (WHETHER BY LAW OR

---

[3] Notwithstanding anything contrary herein, with respect to funds and accounts managed by BlackRock, Inc. or its Affiliates that are Consenting Stakeholders under the Restructuring Support Agreement (the "BlackRock Consenting Creditors"), the defined terms "Releasing Parties" and "Released Parties" shall be limited to (i) the BlackRock Consenting Creditors, (ii) any trading desk(s), fund(s), account, branch, unit, and/or business group(s) of the BlackRock Consenting Creditors that have a beneficial interest in the Company Claims/Interests held by BlackRock Consenting Creditors, or are otherwise acting for the benefit of or at the direction of the BlackRock Consenting Creditors, and (iii) any Affiliates and Related Parties of BlackRock Consenting Creditors for which the BlackRock Consenting Creditors are legally entitled to bind under applicable law.

OTHERWISE), SUBSIDIARIES, AFFILIATES, PARTNERS, LIMITED PARTNERS, GENERAL PARTNERS, PRINCIPALS, MEMBERS, MANAGEMENT COMPANIES, FUND ADVISORS OR MANAGERS, EMPLOYEES, AGENTS, TRUSTEES, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS (INCLUDING ANY OTHER ATTORNEYS OR PROFESSIONALS RETAINED BY ANY CURRENT OR FORMER DIRECTOR OR MANAGER IN HIS OR HER CAPACITY AS DIRECTOR OR MANAGER OF AN ENTITY), ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS AND ADVISORS AND ANY SUCH PERSON'S OR ENTITY'S RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES.

**ALL HOLDERS OF IMPAIRED OR UNIMPAIRED CLAIMS OR EXISTING EQUITY INTERESTS THAT DO NOT ELECT TO OPT OUT OF THE PROVISIONS CONTAINED IN <u>ARTICLE VIII</u> OF THE PLAN USING THE ENCLOSED OPT-OUT FORM, OR BY FILING AN OBJECTION TO THE THIRD-PARTY RELEASES CONTAINED IN THE PLAN, WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE THIRD-PARTY RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES.  BY ELECTING TO OPT-OUT OF THE THIRD-PARTY RELEASE SET FORTH IN <u>ARTICLE VIII.D</u> OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE THIRD-PARTY RELEASES SET FORTH IN <u>ARTICLE VIII</u> OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY AND TO PROVIDE YOU WITH THE ATTACHED OPT-OUT FORM WITH RESPECT TO THE THIRD-PARTY RELEASE PROVIDED IN THE PLAN.  IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT.**

Dated: January 30, 2026

/s/

| | |
|---|---|
| **COLE SCHOTZ P.C.** | **KIRKLAND & ELLIS LLP** |
| Michael D. Sirota, Esq. | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Warren A. Usatine, Esq. | Steven N. Serajeddini, P.C. (*pro hac vice* pending) |
| Felice R. Yudkin, Esq. | 601 Lexington Avenue |
| Court Plaza North, 25 Main Street | New York, New York 10022 |
| Hackensack, New Jersey 07601 | Telephone:      (212) 446-4800 |
| Telephone: (201) 489-3000 | Facsimile:      (212) 446-4900 |
| Email:  msirota@coleschotz.com | Email:           steven.serajeddini@kirkland.com |
|        wusatine@coleschotz.com | |
|        fyudkin@coleschotz.com | -and- |

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Rachael M. Bentley (*pro hac vice* pending)
Peter A. Candel (*pro hac vice* pending)
Ashley L. Surinak (*pro hac vice* pending)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:           rachael.bentley@kirkland.com
                 peter.candel@kirkland.com
                 ashley.surinak@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**OPTIONAL:  HOLDERS OF CLAIMS AND EXISTING EQUITY INTERESTS
OPT-OUT FORM**

You are receiving this opt-out form (the "Opt-Out Form") because you are or may be a Holder of a Claim or Existing Equity Interest that is not entitled to vote on the *Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as altered, amended, supplemented, or otherwise modified from time to time, the "Plan"). Except as otherwise set forth in the definition of Releasing Party in the Plan, Holders of Claims and Existing Equity Interests are deemed to grant the Third-Party Release set forth in Article VIII.D of the Plan (the "Third-Party Release"), unless a Holder affirmatively opts out of the Third-Party Release or timely objects to the Third-Party Release on or before March 3, 2026, at 5:00 p.m., prevailing Eastern Time, and such objection is not resolved before confirmation.

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS OPT-OUT FORM CAREFULLY BEFORE COMPLETING THIS OPT-OUT FORM.

**UNLESS YOU CHECK THE BOX ON THIS OPT-OUT FORM BELOW AND FOLLOW ALL INSTRUCTIONS, YOU WILL BE HELD TO FOREVER RELEASE THE RELEASED PARTIES (AS DEFINED HEREIN) IN ACCORDANCE WITH THE PLAN.**

**THIS OPT-OUT FORM MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY KURTZMAN CARSON CONSULTANTS, LLC (D/B/A VERITA GLOBAL) (THE "SOLICITATION AGENT") ON OR BEFORE 5:00 P.M. PREVAILING EASTERN TIME ON MARCH 3, 2026 (THE "VOTING DEADLINE").**

This Opt-Out Form may not be used for any purpose other than opting out of the Third-Party Release contained in the Plan.  If you believe you have received this Opt-Out Form in error, or if you believe that you have received the wrong opt-out form, please contact the Solicitation Agent immediately by submitting an electronic request at https://www.veritaglobal.net/MCC/inquiry or by phone at (866) 967-1788 (toll free, U.S. and Canada) or (310) 751-2688 (international).  Before completing this Opt-Out Form, please read and follow the enclosed "Instructions for Completing this Opt-Out Form" carefully to ensure that you complete, execute, and return this Opt-Out Form properly.

**Item 1. Optional Third-Party Release.**

AS A HOLDER OF A CLAIM OR EXISTING EQUITY INTEREST, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH BELOW.  YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.  YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN ONLY IF (I) THE BANKRUPTCY COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE THIRD-PARTY RELEASES AND (II) YOU (A) CHECK THE BOX BELOW AND SUBMIT THE OPT-OUT FORM BY THE VOTING DEADLINE OR (B) TIMELY OBJECT TO THE THIRD-PARTY RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.  THE ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS AT YOUR OPTION.

☐   **By checking this box, you elect to opt out of the Third-Party Release set forth below.**

2

Article VIII.D of the Plan provides for the following ("**Third-Party Release**"):[1]

**Except as otherwise specifically provided in the Plan or the Confirmation Order, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates), whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or herein after arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their estates, Affiliates, heirs, executory, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, the Debtors, their Estates, and the Reorganized Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or their Estates (including the capital structure, management, direct or indirect ownership, or operation thereof), the solicitation and provision of Solicitation Materials to Holders of Claims prior to the Chapter 11 Cases, the Chapter 11 Cases, the Restructuring Transactions, the Reorganized Debtors (including the management, direct or indirect ownership, or operation thereof), the New Common Equity Debt Election, the purchase, sale, or rescission of any Security of the Debtors, their Estates, and the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the assertion of enforcement of rights or remedies against the Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases including all prior recapitalizations, restructurings, or refinancing efforts and transactions, any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the decision to file the Chapter 11 Cases, any related adversary proceedings, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Restructuring Support Agreement, the Definitive Documents, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Definitive Documents, the Plan Supplement, the New Debt, the New ABL Facility, the New Preferred Equity Investment, the Plan Sponsor Equity Investment, the DIP Facility, the DIP Orders, the DIP Documents, the New Debt Documents, the New ABL Facility Documents, or the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act, or**

---

[1]   The Plan also contains Debtor releases, exculpation, and injunction provisions set forth in Articles VIII.C, VIII.E, and VIII.F of the Plan, respectively.  Unless you otherwise are included in the definition of Released Parties, you must be a Releasing Party (*i.e.*, a Holder of a Claim or Interest that does not opt out of the Third-Party Release) to receive the Debtor releases set forth in Article VIII.C.

3

omission, transaction, agreement, event, or other occurrence taking place on or before, in respect of the foregoing clause the Effective Date.

Notwithstanding anything to the contrary herein, the Releasing Parties do not, pursuant to the releases set forth above, release:  (i) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, and Restructuring Transactions, or any documents, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions; (ii) the rights of any Holder of Allowed Claims to receive distributions under the Plan; or (iii) any claims or Causes of Action arising from such Released Party's willful misconduct or actual fraud, in each case as determined by a final, non-appealable order entered by a court of competent jurisdiction.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (i) consensual; (ii) essential to the Confirmation of the Plan; (iii) given in exchange for good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable, and reasonable; (vii) given and made after due notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

Without limiting the foregoing, from and after the Effective Date, any Entity that is given the opportunity to opt out of the releases contained in Article VIII.D of the Plan and does not exercise such opt out may not assert any claim or other Cause of Action against any Released Party based on or relating to, or in any manner arising from, in whole or in part, the Debtors.  From and after the Effective Date, any Entity that opted out of the releases contained in Article VIII.D of the Plan may not assert any claim or other Cause of Action against any Released Party for which it is asserted or implied that such claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan and (b) specifically authorizing such Person or Entity to bring such claim or Cause of Action against any such Released Party.  The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in Article XI of the Plan, the Bankruptcy Court shall have jurisdiction to adjudicate the underlying claim or Cause of Action.

Definitions related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "*RELEASED PARTY*" MEANS COLLECTIVELY, AND IN EACH CASE SOLELY IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH CONSENTING STAKEHOLDER; (D) EACH HOLDER OF AN ABL FACILITY CLAIM; (E) EACH COMPANY PARTY; (F) THE PLAN SPONSOR; (G) THE SPONSOR; (H) EACH HOLDER OF A DIP CLAIM; (I) EACH AGENT/TRUSTEE; (J) EACH DIP BACKSTOP PARTY; (K) EACH NEW PREFERRED EQUITY INVESTMENT BACKSTOP PARTY; (L) EACH NEW TERM LOAN FACILITY LENDER; (M) EACH NEW NOTEHOLDER; (N) EACH NEW ABL FACILITY LENDER; (O) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (P);  (P) EACH RELATED PARTY OF EACH ENTITY IN CLAUSES (A) THROUGH THIS CLAUSE (P); *PROVIDED* THAT, IN EACH CASE, AN

4

ENTITY SHALL NOT BE A RELEASED PARTY IF IT:  (X) ELECTS TO OPT OUT OF THE THIRD-PARTY RELEASE; OR (Y) TIMELY OBJECTS TO THE RELEASES DESCRIBED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED PRIOR TO CONFIRMATON.

UNDER THE PLAN, "***RELEASING PARTY***" MEANS, COLLECTIVELY, AND IN EACH ASE IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH CONSENTING STAKEHOLDER; (D) EACH HOLDER OF AN ABL FACILITY CLAIM; (E) EACH COMPANY PARTY; (F) THE PLAN SPONSOR; (G) THE SPONSOR; (H) EACH HOLDER OF A DIP CLAIM; (I) EACH AGENT/TRUSTEE; (J) EACH DIP BACKSTOP PARTY; (K) EACH NEW PREFERRED EQUITY INVESTMENT BACKSTOP PARTY; (L) EACH NEW TERM LOAN FACILITY LENDER; (M) EACH NEW NOTEHOLDER; (N) EACH NEW ABL FACILTY LENDER; (O) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO ACCEPT THE PLAN AND DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED FOR IN THE PLAN; (P) ALL HOLDERS OF CLAIMS OR INTERESTS WHO ARE DEEMED TO ACCEPT THE PLAN AND DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED FOR IN THE PLAN; (Q) ALL HOLDERS OF CLAIMS OR INTERESTS WHO ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED FOR IN THE PLAN; (R) ALL HOLDERS OF CLAIMS OR INTERESTS WHO VOTE TO REJECT THE PLAN AND WHO DO NOT AFFIRMATELY OPT OUT OF THE RELEASES PROVIDED FOR IN THE PLAN; (S) ALL HOLDERS OF CLAIMS OR INTERESTS WHO ARE DEEMED TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED FOR IN THE PLAN; (T) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (U); AND (U) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH THIS CLAUSE (U); *PROVIDED* THAT EACH HOLDER OF CLAIMS OR INTERESTS THAT IS PARTY TO THE RESTRUCTURING SUPPORT AGREEMENT SHALL BE A RELEASING PARTY; *PROVIDED, FURTHER*, THAT, IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.[2]

UNDER THE PLAN, "***RELATED PARTY***" MEANS COLLECTIVELY, WITH RESPECT TO ANY PERSON OR ENTITY, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH, CURRENT AND FORMER DIRECTORS, MANAGERS, OFFICERS, COMMITTEE MEMBERS, MEMBERS OF ANY GOVERNING BODY, SHAREHOLDERS, UNITHOLDERS, EQUITY HOLDERS (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), AFFILIATED INVESTMENT FUNDS OR INVESTMENT VEHICLES, MANAGED ACCOUNTS OR FUNDS, PREDECESSORS, PARTICIPANTS, SUCCESSORS, ASSIGNS (WHETHER BY LAW OR OTHERWISE), SUBSIDIARIES, AFFILIATES, PARTNERS, LIMITED PARTNERS, GENERAL PARTNERS, PRINCIPALS, MEMBERS, MANAGEMENT COMPANIES, FUND ADVISORS OR

---

[2]   Notwithstanding anything contrary herein, with respect to funds and accounts managed by BlackRock, Inc. or its Affiliates that are Consenting Stakeholders under the Restructuring Support Agreement (the "BlackRock Consenting Creditors"), the defined terms "Releasing Parties" and "Released Parties" shall be limited to (i) the BlackRock Consenting Creditors, (ii) any trading desk(s), fund(s), account, branch, unit, and/or business group(s) of the BlackRock Consenting Creditors that have a beneficial interest in the Company Claims/Interests held by BlackRock Consenting Creditors, or are otherwise acting for the benefit of or at the direction of the BlackRock Consenting Creditors, and (iii) any Affiliates and Related Parties of BlackRock Consenting Creditors for which the BlackRock Consenting Creditors are legally entitled to bind under applicable law.

MANAGERS, EMPLOYEES, AGENTS, TRUSTEES, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS (INCLUDING ANY OTHER ATTORNEYS OR PROFESSIONALS RETAINED BY ANY CURRENT OR FORMER DIRECTOR OR MANAGER IN HIS OR HER CAPACITY AS DIRECTOR OR MANAGER OF AN ENTITY), ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS AND ADVISORS AND ANY SUCH PERSON'S OR ENTITY'S RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES.

**Item 2. Certifications.**

By signing this Opt-Out Form, the undersigned certifies to the Bankruptcy Court and the Debtors:

- that, as of January 15, 2026, either: (i) the undersigned is the Holder of Claims or Existing Equity Interests; or (ii) the undersigned is an authorized signatory for an Entity or Person that is the Holder of Claims or Existing Equity Interests;

- that the Holder has received a copy of the *Notice of Non-Voting Status* and that this Opt-Out Form is made pursuant to the terms and conditions set forth therein;

- that the undersigned has made the same election with respect to all Claims or Existing Equity Interests; and

- that no other Opt-Out Form has been cast with respect to the Holder's Claims or Existing Equity Interests, or, if any other Opt-Out Forms have been cast with respect to such Claims or Equity Interests, such Opt-Out Forms are hereby revoked.

YOUR RECEIPT OF THIS OPT-OUT FORM DOES NOT SIGNIFY THAT YOUR CLAIM OR EXISTING EQUITY INTEREST HAS BEEN OR WILL BE ALLOWED.

| | |
|---|---|
| **Name of Holder:** | |
| | **(Print or Type)** |
| **Signature:** | |
| **Name of Signatory:** | |
| | **(If other than Holder)** |
| **Title:** | |
| **Address:** | |
| | |
| | |
| **Date Completed:** | |

If your address or contact information has changed, please note the new information here.

6

**TO OPT OUT, PLEASE SUBMIT YOUR OPT-OUT FORM BY ONE OF THE FOLLOWING TWO METHODS:**

**Via Opt-Out Portal.  To submit your Opt-Out Form via the Solicitation Agent's online portal, visit https://www.veritaglobal.net/MCC, click on the "Submit Opt-Out Form" section of the website (the "e-Ballot Portal"), and follow the instructions to submit your Opt-Out Form.**

**Via Paper Form.  Complete, sign, and date this Opt-Out Form and return it promptly by first-class mail, overnight courier, or hand delivery to the address below.**

| By First-Class Mail: | By Overnight Courier or Hand Delivery: |
|---|---|
| MCC Ballot Processing Center<br>c/o KCC dba Verita Global<br>222 N Pacific Coast Highway, Suite 300<br>El Segundo, California 90245 | MCC Ballot Processing Center<br>c/o KCC dba Verita Global<br>222 N Pacific Coast Highway, Suite 300<br>El Segundo, California 90245 |

Parties that submit their Opt-Out Form using the Opt-Out Portal should NOT also submit a paper Opt-Out Form.

IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE THIS OPT-OUT FORM ON OR BEFORE 5:00 P.M. PREVAILING EASTERN TIME ON MARCH 3, 2026, THEN YOUR ELECTION TRANSMITTED HEREBY WILL NOT BE EFFECTIVE.

OPT-OUT FORMS SENT BY FACSIMILE OR EMAIL WILL NOT BE ACCEPTED.

## <u>INSTRUCTIONS FOR COMPLETING THIS OPT-OUT FORM</u>

1.  Capitalized terms used in the Opt-Out Form or in these instructions (the "<u>Instructions</u>") but not otherwise defined therein or herein shall have the meaning set forth in the Plan.

2.  To ensure that your election is counted, you <u>must</u> complete the Opt-Out Form and take the following steps:  (a) clearly indicate your decision to "opt out" of the Third-Party Release set forth in the Plan in <u>Item 1</u> above; (b) make sure that the information required by <u>Item 2</u> above has been correctly inserted; <u>and</u> (c) sign, date and return an original of your Opt-Out Form in accordance with paragraph 3 directly below.

3.  **<u>Return of Opt-Out Form</u>**:  Your Opt-Out Form MUST be returned to the Solicitation Agent so as to be **actually received** by the Solicitation Agent on or before the Voting Deadline, which is **5:00 p.m. (prevailing Eastern Time) on March 3, 2026**.

4.  If an Opt-Out Form is received by the Solicitation Agent <u>after</u> the Voting Deadline, it will not be effective.  Additionally**,** the following Opt-Out Forms will <u>NOT</u> be counted:

    ➢ ANY OPT-OUT FORM THAT IS ILLEGIBLE OR CONTAINS INSUFFICIENT INFORMATION TO PERMIT THE IDENTIFICATION OF THE HOLDER OF THE CLAIM OR EXISTING EQUITY INTEREST;

    ➢ ANY OPT-OUT FORM CAST BY OR ON BEHALF OF AN ENTITY THAT IS NOT ENTITLED TO OPT OUT OF THE THIRD-PARTY RELEASE;

    ➢ ANY OPT-OUT FORM SENT TO THE DEBTORS, THE DEBTORS' AGENTS/REPRESENTATIVES (OTHER THAN THE SOLICITATION AGENT), OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS;

    ➢ ANY OPT-OUT FORM TRANSMITTED BY FACSIMILE OR EMAIL;

    ➢ ANY UNSIGNED OPT-OUT FORM; OR

    ➢ ANY OPT-OUT FORM NOT COMPLETED IN ACCORDANCE WITH THE PROCEDURES APPROVED IN THE SOLICITATION ORDER.

5.  The method of delivery of Opt-Out Forms to the Solicitation Agent is at the election and risk of each Holder of a Claim or Existing Equity Interest.  Except as otherwise provided herein, such delivery will be deemed made to the Solicitation only when the Solicitation Agent **actually receives** the executed Opt-Out Form.  Holders should allow sufficient time to assure timely delivery.

6.  If multiple Opt-Out Forms are received from the same Holder with respect to the same Claim or Existing Equity Interest prior to the Voting Deadline, the last Opt-Out Form timely received will supersede and revoke any earlier received Opt-Out Forms.

7.  The Opt-Out Form is not a letter of transmittal and may not be used for any purpose other than to Opt-Out of the Third-Party Release.  Accordingly, at this time, Holders of Existing Equity Interests should not surrender certificates or instruments representing or evidencing their Existing Equity Interests, and neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates or instruments surrendered together with an Opt-Out Form.

8.  The Opt-Out Form does <u>not</u> constitute, and shall not be deemed to be, (a) a proof of claim, (b) proof of interest, or (c) an assertion or admission of a Claim or Existing Equity Interest.

9.  <u>Please be sure to sign and date your Opt-Out Form</u>.  If you are signing an Opt-Out Form in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Opt-Out Form.

**<u>PLEASE RETURN YOUR OPT-OUT FORM PROMPTLY.</u>**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS OPT-OUT FORM
OR THE INSTRUCTIONS OR PROCEDURES, PLEASE CONTACT
THE SOLICITATION AGENT AT:
(866) 967-1788 (toll free, U.S. and Canada) or (310) 751-2688 (international)
Or via online form:  https://www.veritaglobal.net/MCC**

---

**IF THE SOLICITATION AGENT DOES NOT <u>ACTUALLY</u> <u>RECEIVE</u> THE OPT-OUT FORM FROM YOU BEFORE THE VOTING DEADLINE, WHICH IS 5:00 P.M. PREVAILING EASTERN TIME ON MARCH 3, 2026, THEN YOUR OPT-OUT ELECTION TRANSMITTED THEREBY WILL NOT BE EFFECTIVE.**

---

**Exhibit 8**

**New Preferred Equity Investment and Claims Election Procedures**

**MULTI-COLOR CORPORATION RIGHTS OFFERING AND CLAIMS ELECTION
PROCEDURES**

Pursuant to the *Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be altered, amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan")[1] of Multi-Color Corporation and its affiliated debtors (the "Debtors"),

(i)     each Holder of an Allowed First Lien Secured Claim (each, a "First Lien Secured Claim Holder") is being granted:

a.  a subscription right (each, a "New Preferred Equity Subscription Right") to subscribe for and purchase its Pro Rata share (based on the amount of the Allowed First Lien Secured Claims held by a First Lien Secured Claim Holder) of the New Preferred Equity Investment (after accounting for the New Preferred Equity Investment Holdback, the "New RO Preferred Equity") in the Reorganized Parent (the "Company") in an aggregate liquidation preference equal to the Rights Offering Amount;

b.  a right to irrevocably elect to receive New Term Loan Cash Out Proceeds in full satisfaction of the distribution it would have otherwise received pursuant to Article III.B.4(b)(ii) of the Plan, and **not** New Debt (the "New Term Loan Cash Out Election");

c.  a right to irrevocably elect to participate in the New Common Equity Debt Election and receive New Term Loans in full satisfaction of the distribution it would have otherwise received pursuant to Article III.B.4(b)(vi) of the Plan, and **not** New Common Equity (the "New Common Equity Debt Election" and together with the New Term Loan Cash Out Election, the "Elections" and each an "Election"); and

(ii)    each Holder of a First Lien Claim that is not a Secured Claim (the "First Lien Deficiency Claim"; and Holder of such First Lien Deficiency Claim, each a "First Lien Deficiency Claim Holder") is being granted a right to participate in the New Common Equity Debt Election and receive New Term Loans in full satisfaction of the distribution it would have otherwise received pursuant to Article III.B.5(b)(ii) of the Plan, **not** New Common Equity,

---

[1]   Capitalized terms used but not defined herein have the meanings set forth in the Plan, the restructuring support agreement (as amended, modified, or supplemented from time to time, and including all exhibits and supplements thereto, the "Restructuring Support Agreement"), or the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as may be altered, amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Disclosure Statement"), as applicable.

**in each case as provided under Article III.B.4(b) and Article III.B.5(b) of the Plan and as more fully described in these Rights Offering and Claim Election Procedures ("<u>Procedures</u>").**

**In addition, each First Lien Secured Claim Holder that validly elects to participate, and funds its participation, in the Rights Offering (as defined below) (collectively, "<u>Participating Holders</u>") will also receive New Common Equity (the "<u>New RO Common Equity</u>") in an amount equal to its First Lien Claim Holder Participation Premium Ratio (as defined below) multiplied by the New Common Equity that is equal to the New Preferred Equity Participation Premium.[2] The New RO Preferred Equity and the New RO Common Equity to be issued to the Participating Holders are referred hereto collectively as "<u>New RO Equity</u>."**

**Any First Lien Secured Claim Holder that does not validly exercise its New Preferred Equity Subscription Rights in accordance these Procedures will not receive the New RO Equity.**

**Any First Lien Secured Claim Holder that does not submit a duly completed New Term Loan Cash Out Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the New Debt and not New Term Loan Cash Out Proceeds on account of such distribution.**

**Any First Lien Secured Claim Holder that does not submit a duly completed New Common Equity Debt Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the First Lien New Common Equity Allocation and not New Term Loans on account of such distribution.**

**Any First Lien Deficiency Claim Holder that does not submit a duly completed New Common Equity Debt Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the Junior Funded Debt New Common Equity Allocation and not New Term Loans on account of such distribution.**

**The Allowed First Lien Claims are claims arising under, derived from, or on account of (1) the Cash Flow Revolving Facility, (2) the Cash Flow Term Loan Facilities and (3) the Secured Notes.**

**The First Lien Secured Claims are First Lien Claims (or any portion thereof) that are Secured Claims.  The Secured Claims are claims that are (a) secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable Law or by reason of a Bankruptcy Court order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the Holder's interest in the Debtors' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of**

---

[2]   "New Preferred Equity Participation Premium" means 5.4% of the New Common Equity at Plan Equity Value, on a Fully Diluted Basis, but subject to dilution by the MIP Interests and the New Warrants.

the Bankruptcy Code; or (b) Allowed pursuant to the Plan, or separate order of the Bankruptcy Court, as a secured claim.

The offering of $391,200,000, constituting the New Preferred Equity Subscription Investment (the "<u>Rights Offering Amount</u>"), of the New Preferred Equity Investment (after accounting for the New Preferred Equity Investment Holdback) is referred to as the "<u>Rights Offering</u>."

The offering, issuance and distribution of the New RO Equity, the Backstop Premium Preferred Equity, the Backstop Common Equity issued to Backstop Parties on account of the New Preferred Equity Investment Backstop Commitment Premium, the New Warrants, the First Lien New Common Equity Allocation and the Junior Funded Debt New Common Equity Allocation under the Plan after the Petition Date shall be exempt from registration requirements under the Securities Act of 1933, as amended (the "<u>Securities Act</u>"), or any state or local law requiring registration for offer and sale of a security, in reliance upon the exemption provided in section 1145(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "<u>Bankruptcy Code</u>") to the maximum extent permitted by law, or, if section 1145(a) is not available, then the New RO Equity, the Backstop Premium Preferred Equity, the Backstop Common Equity issued to Backstop Parties on account of the New Preferred Equity Investment Backstop Commitment Premium, the New Warrants, the First Lien New Common Equity Allocation and the Junior Funded Debt New Common Equity Allocation are being offered, issued and distributed under the Plan pursuant to other applicable exemptions from registration under the Securities Act and any other applicable securities laws. To the extent that the New RO Equity, the Backstop Premium Preferred Equity, the Backstop Common Equity issued to Backstop Parties on account of the New Preferred Equity Investment Backstop Commitment Premium, the New Warrants, the First Lien New Common Equity Allocation and the Junior Funded Debt New Common Equity Allocation are being issued under the Plan pursuant to section 1145(a) of the Bankruptcy Code, such New RO Equity, Backstop Premium Preferred Equity, Backstop Common Equity issued to Backstop Parties on account of the New Preferred Equity Investment Backstop Commitment Premium, New Warrants, the First Lien New Common Equity Allocation and the Junior Funded Debt New Common Equity Allocation may be resold by the holders thereof without registration unless the holder is an "underwriter" (as defined in section 1145(b)(1) of the Bankruptcy Code) with respect to such securities.

The Holdback Preferred Equity, RO Backstop Preferred Equity, Backstop Common Equity (each, as defined below) issued to the Backstop Parties on account of the foregoing and New Notes are being offered, issued and distributed without registration under the Securities Act, or any state or local law requiring registration for offer and sale of a security, in reliance on the exemption provided in Section 4(a)(2) of the Securities Act, Regulation S under the Securities Act or another available exemption. Resales of New Equity Interests issued to "underwriters," and resales of the Holdback Preferred Equity, RO Backstop Preferred Equity, Backstop Common Equity issued to the Backstop Parties on account of the foregoing and New Notes will require registration under the Securities Act or an exemption from registration under the Securities Act. Resale restrictions are discussed in more detail in Article XII of the *Disclosure Statement Relating to the Joint*

3

*Prepackaged Plan of Reorganization of Multi-Color Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as the same may be amended, supplemented or modified from time to time, including all exhibits and schedules thereto, the "<u>Disclosure Statement</u>"), entitled "Certain Securities Law Matters."

None of the New Preferred Equity Subscription Rights distributed in connection with these Procedures have been or will be registered under the Securities Act, nor any state or local law requiring registration for offer and sale of a security.

To exercise the New Preferred Equity Subscription Rights and/or make the New Term Loan Cash Out Election and/or New Common Equity Debt Election with respect to the outstanding loans under the Cash Flow Revolving Facility or the Cash Flow Term Loan Facilities (collectively, the "<u>Secured Loans</u>"), each Holder of the underlying Secured Loans as reflected on the registers maintained by the administrative agent of the Secured Loans on the date of any such exercise of New Preferred Equity Subscription Rights or any Election, as applicable (a "<u>Lender</u>") that is a First Lien Secured Claim Holder must timely and properly execute and deliver its duly completed and executed Lender Subscription Form (as defined below) (with accompanying Investor Questionnaire, and IRS Form W-9 or appropriate IRS Form W-8, as applicable) to Verita Global, LLC(the "<u>Subscription Agent</u>") in advance of the Subscription Expiration and Election Deadline (as defined below).

To exercise the New Preferred Equity Subscription Rights and/or make the New Term Loan Cash Out Election and/or New Common Equity Debt Election with respect to the Secured Notes, each Holder of the underlying Secured Notes as of the date of any such exercise of New Preferred Equity Subscription Rights or any Election, as applicable (a "<u>Noteholder</u>") that is a First Lien Secured Claim Holder must (i) return its duly completed and executed Noteholder Beneficial Owner Subscription Form (as defined below) (with accompanying Investor Questionnaire, and IRS Form W-9 or appropriate IRS Form W-8, as applicable) to its bank, broker, intermediary, securities nominee or agent (each, a "<u>Nominee</u>") (unless otherwise directed by its Nominee) in sufficient time to allow such Nominee to deliver such documents to be actually received by the Subscription Agent on or before the Subscription Expiration and Election Deadline, and (ii) electronically deliver (or cause to be delivered) such Secured Notes to the appropriate contra CUSIP established by The Depository Trust Company ("<u>DTC</u>") for the Rights Offering and/or the Elections through the Automated Tender Offer Program ("<u>ATOP</u>") of DTC, so that they are received by the Subscription Expiration and Election Deadline.

To make the New Common Equity Debt Election with respect to the Secured Loans, each Lender that is a First Lien Deficiency Claim Holder must timely and properly execute and deliver its duly completed and executed Lender Subscription Form (with accompanying Investor Questionnaire, and IRS Form W-9 or appropriate IRS Form W-8, as applicable) to the Subscription Agent in advance of the Subscription Expiration and Election Deadline.

To make the New Common Equity Debt Election with respect to the Secured Notes, each Noteholder that is a First Lien Deficiency Claim Holder must (i) return its duly completed

4

and executed Noteholder Beneficial Owner Subscription Form (with accompanying Investor Questionnaire, and IRS Form W-9 or appropriate IRS Form W-8, as applicable) to its Nominees (unless otherwise directed by its Nominee) in sufficient time to allow such Nominee to deliver such documents to be actually received by the Subscription Agent on or before the Subscription Expiration and Election Deadline, and (ii) electronically deliver (or cause to be delivered) such Secured Notes to the appropriate contra CUSIP established by DTC for the New Common Equity Debt Election through the ATOP of DTC, so that they are received by the Subscription Expiration and Election Deadline.

The New Preferred Equity Subscription Rights and the rights to make any Election are not detachable or otherwise transferable separately from the underlying Secured Loans and Secured Notes.  Rather, the New Preferred Equity Subscription Rights and the rights to make the Elections, together with the underlying Secured Loans and Secured Notes with respect to which such New Preferred Equity Subscription Rights or rights to make an Election were allocated, will trade together and will be evidenced by the underlying Secured Loans and Secured Notes until the Subscription Expiration and Election Deadline, subject to such limitations, if any, that would be applicable to the transferability of the underlying Secured Loans and Secured Notes; *provided*, that following the exercise of any New Preferred Equity Subscription Rights and/or any Election, the Holder thereof shall be prohibited from selling, transferring, assigning, pledging, hypothecating, participating, donating or otherwise encumbering or disposing of (each of the foregoing, a "Transfer") the Secured Loans and Secured Notes corresponding to such New Preferred Equity Subscription Rights and/or Election unless the Rights Offering is terminated; *provided further*, that such Holders shall be permitted to designate affiliates to receive the New Preferred Equity, the New Common Equity, the New Warrants and/or the New Debt, as applicable, without the need to Transfer any Secured Loans or Secured Notes to such affiliate (including any controlled investment affiliates).

The distribution or communication of these Procedures and the issuance of the New Equity Interests in certain jurisdictions may be restricted by law.  No action has been taken or will be taken to permit the distribution or communication of these Procedures in any jurisdiction where any action for that purpose may be required.  Accordingly, these Procedures may not be distributed or communicated, and the New Equity Interests may not be subscribed for or issued, in any jurisdiction except in circumstances where such distribution, communication, subscription or issuance would comply with all applicable laws without the need for the Debtors to take any action or obtain any consent, approval or authorization therefor except for any notice filings required under U.S. federal and applicable state securities laws.  Further, the Rights Offering has not been approved or disapproved by the U.S. Securities and Exchange Commission or any other state securities commission or any other regulatory or governmental authority, nor have any of the foregoing passed upon the accuracy or adequacy of the information presented, and any representation to the contrary is a criminal offense.

Lenders, Noteholders and Nominees of Noteholders should note the following dates and times relating to the Rights Offering and the Elections:

| Date | Calendar Date | Event |
|---|---|---|
| Solicitation and Subscription Commencement Date | March 2, 2026 | The commencement date of the Rights Offering (the "Solicitation and Subscription Commencement Date"). |
| Subscription Expiration and Election Deadline | 5:00 p.m. (Prevailing Eastern Time) on March 20, 2026 (as may be extended pursuant to the terms herein) | The deadline for Lenders and Noteholders to subscribe for New RO Preferred Equity and make the Elections, as such deadline may be extended pursuant to the terms herein (the "Subscription Expiration and Election Deadline").<br><br>A Lender's duly completed and executed Lender Subscription Form (with accompanying Investor Questionnaire, and IRS Form W-9 or appropriate IRS Form W-8, as applicable) must be returned to the Subscription Agent on or prior to the Subscription Expiration and Election Deadline.  Lenders that participate in the Rights Offering or make any Election shall be prohibited from Transferring the underlying Secured Loans, and the administrative agent of the Secured Loans shall be prohibited from effectuating any such requested Transfers unless the Rights Offering is terminated.<br><br>A Noteholder's duly completed and executed Noteholder Beneficial Owner Subscription Form (with accompanying Investor Questionnaire, and IRS Form W-9 or appropriate IRS Form W-8, as applicable) must be returned to its Nominee (unless otherwise directed by its Nominee) in sufficient time to allow such Nominee to deliver such documents to be actually received by the Subscription Agent on or before the Subscription Expiration and Election Deadline.  The Noteholder must instruct its Nominee to electronically deliver the applicable underlying Secured Notes via ATOP to the appropriate contra CUSIP established by DTC, so that such underlying Secured Notes are actually received by the Subscription Agent on or before the Subscription Expiration and Election Deadline.  Secured Notes delivered to the Subscription Agent via ATOP may not thereafter be Transferred unless the Rights Offering is terminated.<br><br>First Lien Secured Claim Holders who are not Backstop Parties must deliver the Funding Amount (as defined below) for all Subscribed New RO Preferred Equity (as defined below) by the Subscription Expiration and Election Deadline.<br><br>First Lien Secured Claim Holders who are Backstop Parties must deliver the Funding Amount for (i) all Holdback Preferred Equity, (ii) all Subscribed New RO |

| | | |
|---|---|---|
| | | Preferred Equity (if any) and (iii) the applicable RO Backstop Preferred Equity (as defined below) (if any) no later than the Backstop Funding Deadline (as defined below) to the Subscription Agent or otherwise in accordance with the Backstop Commitment Agreement (as defined below). |
| | | The Subscription Expiration and Election Deadline may be extended by the Debtors, or as required by law, either before or after the previously scheduled Subscription Expiration and Election Deadline.  In the event that the Debtors extend the Subscription Expiration and Election Deadline, the Debtors shall: (i) post a notice of such extension (the "Extension Notice") on the Debtors' restructuring website at **www.veritaglobal.net/MCC**; (ii) file a copy of the Extension Notice on the docket of the Debtors' Chapter 11 Cases; and (iii) provide a copy of the Extension Notice to counsel to the Secured Ad Hoc Group and the Plan Sponsors, with email notice being sufficient.   The Debtors shall use commercially reasonable efforts to cause such notice to be posted, filed, and delivered in accordance with the foregoing at least five (5) Business Days prior to any previously scheduled Subscription Expiration and Election Deadline. |

To Lenders, Noteholders and Nominees of Noteholders:

On January 29, 2026 the Debtors filed the Plan and Disclosure Statement.  Pursuant to the Plan, each Lender and Noteholder has the right to participate in the Rights Offering and/or make the Elections, in each case in accordance with the terms and conditions of the Plan and these Procedures.

Pursuant to the Plan and these Procedures, each Lender will be allocated New Preferred Equity Subscription Rights to subscribe for and fund New RO Preferred Equity in an amount equal to its Pro Rata (as defined in the Plan) share of the Rights Offering Amount based upon a fraction (expressed as a percentage), the numerator of which is its Allowed First Lien Secured Claims and the denominator of which is all Allowed First Lien Secured Claims, and may exercise such New Preferred Equity Subscription Rights by (x) timely and properly executing and delivering its Lender Subscription Form (with accompanying Investor Questionnaire, and IRS Form W-9 or appropriate IRS Form W-8, as applicable), the form of which is attached to these Procedures as Annex 1 (the "Lender Subscription Form"), to the Subscription Agent by the Subscription Expiration and Election Deadline, and (y) funding in cash the aggregate funding amount (the "Funding Amount"), as calculated in accordance with its Lender Subscription Form in accordance with the Instructions (as defined below) provided herein.

Pursuant to the Plan and these Procedures, each Noteholder will be allocated New Preferred Equity Subscription Rights to subscribe for and fund New RO Preferred Equity in an amount equal to its Pro Rata share of the Rights Offering Amount based upon a fraction (expressed as a percentage), the numerator of which is its Allowed First Lien Secured Claims and the denominator of which is all Allowed First Lien Secured Claims, and may exercise such New Preferred Equity

7

Subscription Rights by (x) timely and properly executing and delivering its Noteholder Beneficial Owner Subscription Form (with accompanying Investor Questionnaire, and IRS Form W-9 or appropriate IRS Form W-8, as applicable), the form of which is attached to these Procedures as Annex 2 (the "Noteholder Beneficial Owner Subscription Form"), to its Nominee (or as otherwise directed by its Nominee) in sufficient time to allow such Nominee to process and deliver copies of all Noteholder Beneficial Owner Subscription Forms (with accompanying Investor Questionnaire, and IRS Forms) to the Subscription Agent on or before the Subscription Expiration and Election Deadline, (y) electronically delivering (or causing to be delivered) such Secured Notes through ATOP to the appropriate contra CUSIP established by DTC, so that they are received by the Subscription Expiration and Election Deadline and (z) funding in cash the Funding Amount, as calculated in accordance with its Noteholder Beneficial Owner Subscription Form in accordance with the Instructions provided herein.

**As part of the exercise and election process, following exercise of the New Preferred Equity Subscription Rights and/or the Elections, the Secured Loans underlying the New Preferred Equity Subscription Rights that are being exercised or for which an Election is being made will be frozen from Transfer**. **Lenders that participate in the Rights Offering or make the Elections shall be prohibited from Transferring the underlying Secured Loans, and the administrative agent of the Secured Loans shall be prohibited from effectuating any such requested Transfers unless the Rights Offering is terminated, as described below.  As part of the exercise and election process, following exercise of the New Preferred Equity Subscription Rights and/or the Elections, the Secured Notes underlying the New Preferred Equity Subscription Rights that are being exercised or for which an Election is being made will be frozen from Transfer unless the Rights Offering is terminated, as described below**. All Noteholder Beneficial Owner Subscription Forms and/or other instructions required by the Nominee must be returned to the applicable Nominee in sufficient time to allow such Nominee to process and deliver the applicable underlying Secured Notes through ATOP to the appropriate contra CUSIP established by DTC prior to the Subscription Expiration and Election Deadline.  By instructing its Nominee to submit the underlying Secured Notes through ATOP to the appropriate contra CUSIP established by DTC, the Noteholder is (i) authorizing its Nominee to exercise all New Preferred Equity Subscription Rights associated with the amount of Secured Notes as to which the instruction pertains, (ii) authorizing its Nominee to make the specified Election and (iii) certifying that it understands that, once submitted, the underlying Secured Notes will be frozen from Transfer unless the Rights Offering is terminated.  Notwithstanding the above, Lenders and Noteholders shall be permitted to designate affiliates to receive the New Preferred Equity, the New Common Equity, the New Warrants and/or the New Debt, as applicable, without the need to Transfer any Secured Loans or Secured Notes to such affiliate.

Unless the Rights Offering is terminated, on the Effective Date, and on account of the Rights Offering and the treatment otherwise set forth in the Plan:

(a) the underlying First Lien Secured Claims will be fully and finally satisfied, settled, released, and discharged pursuant to the Plan;

(b) each First Lien Secured Claim Holder that does not validly exercise its New Preferred Equity Subscription Rights in accordance these Procedures will not receive the New RO Equity and will only receive its Pro Rata share of the New Debt (assuming no New Term Loan Cash Out

8

Election is made on or prior to the Subscription Expiration and Election Deadline), the First Lien Cash Consideration, the New Warrants, the First Lien New Preferred Equity Allocation, and the First Lien New Common Equity Allocation (assuming no New Common Equity Debt Election is made on or prior to the Subscription Expiration and Election Deadline), each in accordance with and subject to the terms and conditions and elections provided for in the Plan;

(c) each First Lien Secured Claim Holder that validly subscribes for and funds the New RO Preferred Equity, whether or not a Backstop Party, will receive:

(i) an amount of New RO Preferred Equity equal to such Lender's or Noteholder's Pro Rata share (based on the amount of the First Lien Secured Claims held by such First Lien Secured Claim Holder) of the Rights Offering Amount (the "Subscribed New RO Preferred Equity"), as further described in these Procedures; and

(ii) New Common Equity in an amount equal to (x) such Holder's First Lien Claim Holder Participation Premium Ratio *multiplied* by (y) the New Common Equity that is equal to the New Preferred Equity Participation Premium;

(d) each Backstop Party will receive (in addition to the above):

(i) its applicable number of the New RO Preferred Equity (the "RO Backstop Preferred Equity") that is unsubscribed by the Lenders and Noteholders entitled thereto and funded by such Backstop Party in accordance with the terms and conditions of the Backstop Commitment Agreement;

(ii) its applicable number of additional New Preferred Equity on account of the New Preferred Equity Investment Backstop Commitment Premium as determined in accordance with the terms and conditions of the Backstop Commitment Agreement (the "Backstop Premium Preferred Equity");

(iii) its applicable number of New Preferred Equity on account of the New Preferred Equity Investment Holdback (the "Holdback Preferred Equity") that is funded by such Backstop Party and determined in accordance with the terms and conditions of the Backstop Commitment Agreement; and

(iv) New Common Equity in an amount equal to (x) such Holder's Backstop Party Participation Premium Ratio *multiplied* by (y) the New Common Equity that is equal to the New Preferred Equity Participation Premium (the "Backstop Common Equity").

Each First Lien Secured Claim Holder that validly subscribes for and funds the Subscribed New RO Preferred Equity (other than on account of a backstop commitment) will receive New Common Equity based upon a fraction, the numerator of which is the Subscribed New RO Preferred Equity of such First Lien Secured Claim Holder and the denominator of which is the sum of (a) the Rights Offering Amount, *plus* (b) the aggregate amount of Holdback Preferred Equity, *plus* (c) the aggregate amount of Backstop Premium Preferred Equity (the sum of the foregoing, the "Participation Premium Denominator," and the foregoing fraction with respect to each such First Lien Secured Claim Holder, the "First Lien Claim Holder Participation Premium Ratio").

9

Backstop Parties will be entitled to receive additional New Common Equity based upon a fraction, the numerator of which is the sum of such Backstop Party's (a) RO Backstop Preferred Equity, *plus* (b) Backstop Premium Preferred Equity, *plus* (c) Holdback Preferred Equity, and the denominator of which is the Participation Premium Denominator (the foregoing fraction with respect to such Backstop Party, the "Backstop Party Participation Premium Ratio").

**Any First Lien Secured Claim Holder that does not submit a duly completed New Term Loan Cash Out Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the New Debt and not New Term Loan Cash Out Proceeds on account of such distribution.**

**Any First Lien Secured Claim Holder that does not submit a duly completed New Common Equity Debt Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the First Lien New Common Equity Allocation and not New Term Loans on account of such distribution.**

**Any First Lien Deficiency Claim Holder that does not submit a duly completed New Common Equity Debt Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the Junior Funded Debt New Common Equity Allocation and not New Term Loans on account of such distribution.**

Each First Lien Secured Claim Holder that is both a Lender and a Noteholder and wishes to exercise its New Preferred Equity Subscription Rights or make a New Term Loan Cash Out Election and/or New Common Equity Debt Election with respect to both its Secured Loans and Secured Notes must follow the respective procedures for both Secured Loans and Secured Notes. Each First Lien Secured Claim Holder that wishes to both exercise its New Preferred Equity Subscription Rights and make the New Term Loan Cash Out Election and/or New Common Equity Debt Election with respect to its Secured Loans and/or Secured Notes must follow the respective procedures for both the Rights Offering and the New Term Loan Cash Out Election and/or New Common Equity Debt Election. If a Noteholder holds Secured Notes underlying the New Preferred Equity Subscription Rights or subject to any Election that it wishes to exercise or make through multiple Nominees, it must complete, execute and deliver a separate Noteholder Beneficial Owner Subscription Form with respect to each such Nominee.

**Failure of a Lender to submit its Lender Subscription Form on a timely basis will result in forfeiture of such Lender's New Preferred Equity Subscription Rights and the rights to make the Elections, subject to the provisions of Section 10 herein relating to the waiver or correction of defects or irregularities. None of the Debtors, the Subscription Agent or any of the Backstop Parties will have any liability for any such failure.**

**The amount of time necessary for a Nominee to process and deliver the applicable Secured Notes through ATOP may vary. Noteholders are urged to consult with their Nominees to determine the necessary deadline to return their Noteholder Beneficial Owner Subscription Forms to their Nominee (as well as any other steps required by such Nominee, which may vary from Nominee to Nominee). Failure of a Noteholder to submit such Noteholder Beneficial Owner Subscription Form (or other instructions required by the Nominee) on a timely basis will result in forfeiture of such Noteholder's New Preferred**

10

**Equity Subscription Rights and the rights to make the Elections, subject to the provisions of Section 10 herein relating to the waiver or correction of defects or irregularities.  None of the Debtors, the Subscription Agent or any of the Backstop Parties will have any liability for any such failure.**

**Any First Lien Secured Claim Holder that does not submit a duly completed New Term Loan Cash Out Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the New Debt and not New Term Loan Cash Out Proceeds on account of such distribution.**

**Any First Lien Secured Claim Holder that does not submit a duly completed New Common Equity Debt Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the First Lien New Common Equity Allocation and not New Term Loans on account of such distribution.**

**Any First Lien Deficiency Claim Holder that does not submit a duly completed New Common Equity Debt Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the Junior Funded Debt New Common Equity Allocation and not New Term Loans on account of the distribution.**

No Lender or Noteholder shall be entitled to participate in the Rights Offering unless cash in an amount equal to the Funding Amount of its Subscribed New RO Preferred Equity, calculated in accordance with its Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable, is received by the Subscription Agent (i) in the case of a Lender or Noteholder that is not a Backstop Party, on or before the Subscription Expiration and Election Deadline and (ii) in the case of a Lender or Noteholder that is a Backstop Party, no later than the Backstop Funding Deadline (together with the Funding Amount for the applicable Backstop Term Loans as set forth in the Funding Notice), or otherwise in accordance with the terms of the Backstop Commitment Agreement.  If the Rights Offering is terminated for any reason, the Funding Amount previously received by the Subscription Agent will be returned to the applicable Lenders and Noteholders as provided in Section 6 hereof and, with respect to deposited Secured Notes, the deposited Secured Notes will be released by the Subscription Agent.  No interest will be paid on any advanced funding of the Funding Amount or on any returned Funding Amount.

Before electing to participate in the Rights Offering, each Lender and Noteholder should review the Disclosure Statement (including the risk factors described in Article IX entitled "Risk Factors") and the Plan, and, in each case, any amendments, supplements or other modifications thereto, in addition to these Procedures and the Instructions contained herein and in its Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable.  A copy of the Disclosure Statement is available from the Subscription Agent and on the Debtors' restructuring website at www.veritaglobal.net/MCC.

**In order to participate in the Rights Offering, you must complete all the applicable steps outlined in Sections 3-4 below.  If such steps are not completed by the Subscription Expiration and Election Deadline (other than with respect to payments of the Funding Amount by Backstop Parties, which must be received by the Backstop Funding Deadline), you shall be deemed to have forever and irrevocably relinquished and waived your right to**

11

**participate in the Rights Offering, subject to the provisions of Section 10 herein relating to the waiver or correction of defects or irregularities.**

**In order to make any Election, you must complete all the steps outlined in Sections 17-18 below. If such steps are not completed by the Subscription Expiration and Election Deadline, you shall be deemed to have forever and irrevocably relinquished and waived your right to make such Election.**

**Any First Lien Secured Claim Holder that does not submit a duly completed New Term Loan Cash Out Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the New Debt and not New Term Loan Cash Out Proceeds on account of such distribution.**

**Any First Lien Secured Claim Holder that does not submit a duly completed New Common Equity Debt Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the First Lien New Common Equity Allocation and not New Term Loans on account of such distribution.**

**Any First Lien Deficiency Claim Holder that does not submit a duly completed New Common Equity Debt Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the Junior Funded Debt New Common Equity Allocation and not New Term Loans on account of such distribution.**

**1.      Participation in the Rights Offering; Description of Backstop**

Lenders and Noteholders that are First Lien Secured Claim Holders have the right, but not the obligation, to participate in the Rights Offering by subscribing for and funding New RO Preferred Equity.

Subject to the terms and conditions set forth in the Plan and these Procedures, each Lender and Noteholder is entitled to subscribe for either all or none of its Pro Rata share of New RO Preferred Equity. Subject to the terms and conditions as set forth in the Plan, these Procedures and the Backstop Commitment Agreement, each Backstop Party has certain obligations with respect to the funding of RO Backstop Preferred Equity and the Holdback Preferred Equity. Each Lender or Noteholder that exercises its New Preferred Equity Subscription Rights to fund New RO Preferred Equity will receive its Pro Rata share of the New RO Preferred Equity.

There will be no over-subscription privilege in the Rights Offering. Any amount of New RO Preferred Equity that is unsubscribed by the Lenders and Noteholders entitled thereto will be funded by the applicable Backstop Parties as RO Backstop Preferred Equity in accordance with the Backstop Commitment Agreement. Subject to the terms and conditions of the Backstop Commitment Agreement, each Backstop Party has agreed to fund (on a several and not joint basis) (i) a certain amount of the RO Backstop Preferred Equity and (ii) a certain amount of New Preferred Equity on account of the New Preferred Equity Investment Holdback. As consideration for their undertakings, the Backstop Parties will receive the Backstop Premium Preferred Equity set forth in Section [3.1] of the Backstop Commitment Agreement. Each Backstop Party will also receive its share of the Backstop Common Equity.

12

The offering of the New Equity Interests and New Notes before the Petition Date shall be exempt from the registration requirements of the Securities Act in reliance upon section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder and/or in reliance on Regulation S under the Securities Act.

The offering, issuance and distribution of the New RO Equity, the Backstop Premium Preferred Equity, the Backstop Common Equity issued to Backstop Parties on account of the New Preferred Equity Investment Backstop Commitment Premium, the New Warrants, the First Lien New Common Equity Allocation, and the Junior Funded Debt New Common Equity Allocation under the Plan after the Petition Date shall be exempt from registration requirements under the Securities Act, or any state or local law requiring registration for offer and sale of a security, in reliance upon the exemption provided in section 1145(a) of the Bankruptcy Code to the maximum extent permitted by law, or, if section 1145(a) is not available, then the New RO Equity, the Backstop Premium Preferred Equity, the Backstop Common Equity issued to Backstop Parties on account of the New Preferred Equity Investment Backstop Commitment Premium, the New Warrants, the First Lien New Common Equity Allocation and the Junior Funded Debt New Common Equity Allocation are being offered, issued and distributed under the Plan pursuant to other applicable exemptions from registration under the Securities Act and any other applicable securities laws.  To the extent that the New RO Equity, the Backstop Premium Preferred Equity, the Backstop Common Equity issued to Backstop Parties on account of the New Preferred Equity Investment Backstop Commitment Premium, the New Warrants, the First Lien New Common Equity Allocation and the Junior Funded Debt New Common Equity Allocation are being issued under the Plan pursuant to section 1145(a) of the Bankruptcy Code, such New RO Equity, Backstop Premium Preferred Equity, Backstop Common Equity issued to Backstop Parties on account of the New Preferred Equity Investment Backstop Commitment Premium, New Warrants, the First Lien New Common Equity Allocation and the Junior Funded Debt New Common Equity Allocation may be resold by the holders thereof without registration unless the holder is an "underwriter" (as defined in section 1145(b)(1) of the Bankruptcy Code) with respect to such securities.

The Holdback Preferred Equity, RO Backstop Preferred Equity, Backstop Common Equity issued to the Backstop Parties on account of the foregoing and New Notes are being offered, issued and distributed without registration under the Securities Act, or any state or local law requiring registration for offer and sale of a security, in reliance on the exemption provided in Section 4(a)(2) of the Securities Act, Regulation S under the Securities Act or another available exemption. Resales of New Equity Interests issued to "underwriters," and resales of the Holdback Preferred Equity, RO Backstop Preferred Equity, Backstop Common Equity issued to the Backstop Parties on account of the foregoing and New Notes will require registration under the Securities Act or an exemption from registration under the Securities Act.  Resale restrictions are discussed in more detail in Article XII of the Disclosure Statement, entitled "Certain Securities Law Matters."

None of the New Preferred Equity Subscription Rights distributed in connection with these Procedures have been or will be registered under the Securities Act, nor any state or local law requiring registration for offer and sale of a security.

**SUBJECT TO THE TERMS AND CONDITIONS OF THE PLAN AND THESE PROCEDURES (AND THE BACKSTOP COMMITMENT AGREEMENT IN THE CASE**

13

**OF ANY BACKSTOP PARTY), ONCE A LENDER OR NOTEHOLDER HAS PROPERLY EXERCISED ITS NEW PREFERRED EQUITY SUBSCRIPTION RIGHTS AND/OR MADE AN ELECTION, SUCH EXERCISE AND/OR ELECTION WILL BE IRREVOCABLE AND WITHDRAWALS WILL NOT BE PERMITTED. NOTWITHSTANDING THE FOREGOING, WITHDRAWALS THROUGH PTOP WILL BE ALLOWED SOLELY TO CORRECT INCORRECT INSTRUCTIONS AND ARE SUBJECT TO THE SUBSCRIPTION AGENT'S APPROVAL. NOMINEES MUST CONTACT THE SUBSCRIPTION AGENT PRIOR TO SUBMITTING ANY WITHDRAWAL REQUESTS.**

**2.      Rights Subscription Period**

The Rights Offering will commence on the Solicitation and Subscription Commencement Date and will expire on the Subscription Expiration and Election Deadline (as such deadline may be extended pursuant to the terms set forth herein).  Each Lender or Noteholder intending to fund New RO Preferred Equity in the Rights Offering must affirmatively elect to exercise its New Preferred Equity Subscription Rights in the manner set forth in the instructions for the exercise of any New Preferred Equity Subscription Rights and submission of any Election (consistent herewith, including as described in Section 4 hereof, the "Instructions") on or prior to the Subscription Expiration and Election Deadline and must fund the Funding Amount for any exercised New Preferred Equity Subscription Rights by the applicable deadline.

Any exercise (including payment by any Lender or Noteholder that is not a Backstop Party) of New Preferred Equity Subscription Rights after the Subscription Expiration and Election Deadline will not be allowed and any purported exercise received by the Subscription Agent after the Subscription Expiration and Election Deadline, regardless of when the documents or payment relating to such exercise were sent, will not be honored, subject to the provisions of Section 10 herein relating to the waiver or correction of defects or irregularities.

The Subscription Expiration and Election Deadline may be extended by the Debtors as required by law.  In the event that the Debtors extend the Subscription Expiration and Election Deadline, the Debtors shall: (i) post the Extension Notice on the Debtors' restructuring website at www.veritaglobal.net/MCC; (ii) file a copy of the Extension Notice on the docket of the Debtors' Chapter 11 Cases; and (iii) provide a copy of the Extension Notice to counsel to the Secured Ad Hoc Group and the Plan Sponsors, with email notice being sufficient.  The Debtors shall use commercially reasonable efforts to cause the Extension Notice to be posted, filed, and delivered in accordance with the foregoing at least five (5) Business Days prior to any previously scheduled Subscription Expiration and Election Deadline.

**3.      Delivery of the Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form**

Each Lender and Noteholder may exercise either all or none of such Lender's or Noteholder's New Preferred Equity Subscription Rights, make a New Term Loan Cash Out Election and/or New Common Equity Debt Election with respect to all or none of such Lender's or Noteholder's First Lien Secured Claims, or make a New Common Equity Debt Election with respect to all or none of such Lender's or Noteholder's First Lien Deficiency Claims, in each case,

subject to the terms and conditions of the Plan and these Procedures (and the Backstop Commitment Agreement in the case of any Backstop Party). Once a Lender or Noteholder has properly exercised its New Preferred Equity Subscription Rights and/or made an Election, such exercise and/or Election will be irrevocable and withdrawals will not be permitted. In order to facilitate the exercise of the New Preferred Equity Subscription Rights and/or the submission of any Election, beginning on the Solicitation and Subscription Commencement Date, the Subscription Agent will furnish, or cause to be furnished, to each Lender the Lender Subscription Form and to each Noteholder or Noteholder's Nominee, as applicable, the Noteholder Beneficial Owner Subscription Form, together with appropriate instructions for the proper completion and due execution by, and timely delivery by or on behalf of, the Lender or Noteholder of the Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable, and the payment of the Funding Amount, as calculated in accordance with such Lender's or Noteholder's Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable. To effectuate delivery of the aforementioned documents, the Subscription Agent is authorized to rely on (i) information or registers provided by the administrative agent of the Secured Loans and (ii) securities position reports requested and obtained from DTC for purposes of distribution. In addition, appropriate service of the aforementioned documents will be deemed completed by the Subscription Agent upon delivery of such documents to DTC and the applicable Nominees (or such Nominees' agents); *provided*, *however*, that the Subscription Agent will instruct such Nominees (or their agents) to immediately distribute such documents to the underlying Noteholders, as applicable, in accordance with their customary procedures.

**4.      Exercise of New Preferred Equity Subscription Rights**

(a)      In order to validly exercise New Preferred Equity Subscription Rights, each Lender or Noteholder that is not a Backstop Party must:

(i)      with respect to Noteholders, instruct its Nominee(s) to electronically deliver, the Secured Notes underlying the New Preferred Equity Subscription Rights that are being exercised through ATOP, such that they are received by the Subscription Expiration and Election Deadline;

(ii)      for Noteholders who wish to designate another person to receive their New RO Equity, submit the Secured Notes as instructed by the Subscription Agent such that they are received by the Subscription Expiration and Election Deadline;

(iii)      return a duly completed and executed Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable (each with accompanying Investor Questionnaire, and IRS Form W-9 or appropriate IRS Form W-8, as applicable) to (a) the Subscription Agent, if a Lender, or (b) to a Noteholder's Nominee (or as otherwise directed by its Nominee), if a Noteholder, so that such documents are actually received by the Subscription Agent on or before the Subscription Expiration and Election Deadline; and

(iv)      no later than the Subscription Expiration and Election Deadline, fund the Funding Amount for all Subscribed New RO Preferred Equity, to the Subscription Agent by wire transfer of immediately available funds in accordance with the instructions

15

included in Item 3 of the Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable.

(b)      In order to validly exercise New Preferred Equity Subscription Rights, each Lender or Noteholder that is a Backstop Party must:

(i)      with respect to Noteholders, instruct its Nominees to electronically deliver the Secured Notes underlying the New Preferred Equity Subscription Rights that are being exercised through ATOP, such that they are received by the Subscription Expiration and Election Deadline;

(ii)      for Noteholders who wish to designate another person to receive their New RO Equity, submit the Secured Notes as instructed by the Subscription Agent such that they are received by the Subscription Expiration and Election Deadline;

(iii)      (a) return a duly completed and executed Lender Subscription Form (with accompanying Investor Questionnaire, and IRS Form W-9 or appropriate IRS Form W-8, as applicable) to the Subscription Agent, if a Lender, and/or (b) return a duly completed and executed Noteholder Beneficial Owner Subscription Form (with accompanying Investor Questionnaire, and IRS Form W-9 or appropriate IRS Form W-8, as applicable) to a Noteholder's Nominee (or as otherwise directed by its Nominee), if a Noteholder, so that such documents are actually received by the Subscription Agent on or before the Subscription Expiration and Election Deadline;

(iv)      for Noteholders, ensure that the Backstop Party Addendum (as defined below) is provided to their Nominee so that the Nominee will receive confirmation that payment does not have to be made prior to the Subscription Expiration and Election Deadline; and

(v)      no later than the deadline specified in the Funding Notice (such deadline, the "Backstop Funding Deadline"), pay the Funding Amount for all Subscribed New RO Preferred Equity, the Holdback Preferred Equity and RO Backstop Preferred Equity to the Subscription Agent by wire transfer of immediately available funds in accordance with the instructions included in the Funding Notice.

(c)      In the event that funds received by the Subscription Agent in payment for a subscribing Lender's Subscribed New RO Preferred Equity, Holdback Preferred Equity and RO Backstop Preferred Equity, as applicable, are less than the applicable Funding Amount for the Subscribed New RO Preferred Equity, Holdback Preferred Equity and RO Backstop Preferred Equity, as applicable, of such Lender, the subscription represented by such subscribing Lender's Lender Subscription Form will not be recognized, and the associated New Preferred Equity Subscription Rights will be deemed forever relinquished and waived, subject to the provisions of Section 10 herein relating to the waiver or correction of defects or irregularities.

(d)      In the event that funds received by the Subscription Agent in payment for a subscribing Noteholder's Subscribed New RO Preferred Equity, Holdback Preferred Equity and RO Backstop Preferred Equity, as applicable, are less than the applicable Funding Amount for the Subscribed New RO Preferred Equity, Holdback Preferred Equity and RO Backstop Preferred

16

Equity, as applicable, of such Noteholder, the subscription represented by such subscribing Noteholder's Noteholder Beneficial Owner Subscription Form will not be recognized, and the associated New Preferred Equity Subscription Rights will be deemed forever relinquished and waived, subject to the provisions of Section 10 herein relating to the waiver or correction of defects or irregularities.  For the avoidance of doubt, if the principal amount(s) of underlying Secured Notes held by a Noteholder that is electronically delivered through ATOP is less than all of such Noteholder's Secured Notes, the subscription represented by such subscribing Noteholder's Noteholder Beneficial Owner Subscription Form will not be recognized, and the associated New Preferred Equity Subscription Rights will be deemed forever relinquished and waived, subject to the provisions of Section 10 herein relating to the waiver or correction of defects or irregularities.

(e)      The payments of cash made in accordance with the Rights Offering will be deposited and held by the Subscription Agent in a segregated bank account established by the Subscription Agent for this purpose, until disbursed to the Company in connection with the settlement of the Rights Offering on the Effective Date or returned to subscribing Lenders and Noteholders as provided in Section 6.  The Subscription Agent may not use such funds for any other purpose prior to the Effective Date and may not encumber or permit such funds to be encumbered with any lien or similar encumbrance.  Such funds held in the segregated bank account or otherwise by the Subscription Agent shall not be deemed part of the Debtors' bankruptcy estate.

Special note for Backstop Parties.  Backstop Parties must complete the Backstop Party Addendum attached to the Lender Subscription Form or Noteholder Beneficial Owner Subscription Form, as applicable (the "Backstop Party Addendum") and submit the Backstop Party Addendum to the Subscription Agent.  Backstop Parties that are Lenders must complete and return the Backstop Party Addendum to the Subscription Agent in accordance with the directions included in the Backstop Party Addendum.  Backstop Parties that are Noteholders must arrange for the Backstop Party Addendum to (a) be completed and returned to the Subscription Agent in accordance with the directions included in the Backstop Party Addendum and (b) be provided to their Nominee so that the Nominee will be informed that funding from such Backstop Party does not have to be made prior to the Subscription Expiration and Election Deadline.  Each Backstop Party must provide its payment by the deadline set forth in the Funding Notice (as defined in the Backstop Commitment Agreement) to the extent that such payment has not already been made to the Subscription Agent, or otherwise in accordance with the terms of the Backstop Commitment Agreement.

The rights and obligations of the Backstop Parties in the Rights Offering shall be governed by the Backstop Commitment Agreement to the extent the rights or obligations set forth therein differ from the rights and obligations set forth in these Procedures or any subscription forms attached hereto.

## 5.      Transfer Restriction; Revocation

(a)      The New Preferred Equity Subscription Right and the rights to make any Election are not detachable or otherwise transferable separately from the Secured Loans and Secured Notes.  If any New Preferred Equity Subscription Rights are Transferred by a Lender or Noteholder in contravention of the foregoing, the New Preferred Equity Subscription Rights will be cancelled, and neither such Lender or Noteholder nor the purported transferee will receive any New RO

17

Preferred Equity otherwise purchasable on account of such Transferred New Preferred Equity Subscription Rights. Similarly, if the right to make the Election is Transferred in contravention of the foregoing, any election by such transferee will be disregarded.

(b)      Lenders and Noteholders shall be permitted to designate affiliates to receive the New Preferred Equity, the New Common Equity, the New Warrants and/or the New Debt, as applicable, without the need to Transfer any Secured Loans or Secured Notes to such affiliate.

(c)      The New Preferred Equity Subscription Rights and the rights to make any Election, together with the underlying Secured Loans or Secured Notes with respect to which such New Preferred Equity Subscription Rights or rights to make an Election were allocated, will trade together as a unit, subject to such limitations, if any, that would be applicable to the transferability of the underlying Secured Loans or Secured Notes.

(d)      Once a Lender or Noteholder has properly exercised its New Preferred Equity Subscription Rights and/or made an Election, subject to the terms and conditions contained in these Procedures (and the Backstop Commitment Agreement in the case of any Backstop Party), such exercise and/or Election will be irrevocable and withdrawals will not be permitted. Moreover, following the exercise of any New Preferred Equity Subscription Rights and/or any Election, the Holder thereof shall be prohibited from Transferring or assigning the Secured Loans and Secured Notes, as applicable, corresponding to such New Preferred Equity Subscription Rights and/or Election unless the Rights Offering is terminated.

## 6.      Termination of Rights Offering/Return of Payment

Unless the Effective Date has occurred, the Rights Offering will be deemed automatically terminated without any action of any party upon the earlier of (i)(a) the Bankruptcy Court entering an order denying confirmation of the Plan and (b) the Debtors proposing an alternative plan that does not provide for the Rights Offering, (ii) termination of the Restructuring Support Agreement in accordance with its terms, and (iii) termination of the Backstop Commitment Agreement in accordance with its terms. If the Rights Offering is terminated, any cash paid to the Subscription Agent will be returned, without interest, and all deposited Secured Notes shall be released by the Subscription Agent, to the applicable Noteholder as soon as reasonably practicable thereafter, but in any event within six (6) Business Days after the date on which the Rights Offering is terminated.

## 7.      Settlement of the Rights Offering and Distribution of the New RO Equity

The settlement of the Rights Offering is conditioned on confirmation of the Plan by the Bankruptcy Court, compliance by the Debtors with these Procedures, satisfaction of the conditions precedent set forth in the Backstop Commitment Agreement and the simultaneous occurrence of the Effective Date.

The Debtors intend that the New Preferred Equity and New Common Equity will be initially issued on the books of the Company's transfer agent. After the initial issuance of the New Preferred Equity and New Common Equity, however, Lenders and Noteholders may freely transfer such New Preferred Equity and New Common Equity in accordance with the procedures of the Company's transfer agent to an account at DTC (if the New Preferred Equity and New Common Equity have been issued in book-entry form in accordance with the practices and procedures of

18

DTC), subject to applicable securities laws and provisions of the New Governance Documents, including compliance with section 1145 of the Bankruptcy Code.  For the avoidance of doubt, the Holdback Preferred Equity, RO Backstop Preferred Equity, Backstop Common Equity issued to the Backstop Parties on account of the foregoing and New Notes are being issued pursuant to Section 4(a)(2) of the Securities Act, Regulation S under the Securities Act or another available exemption, and such shares will bear a legend indicating that the securities may not be sold or otherwise transferred unless such securities are registered with the SEC pursuant to the Securities Act and comply with any applicable state or local law requiring registration of securities, or such sale or transfer is exempt from registration requirements of the Securities Act and any applicable state or local law.

**8.       Minimum Distribution; No Fractional Distributions**

The Reorganized Debtors may in their discretion not make cash payments of less than $100 or a distribution and issuance of New Equity Interests to any single Holder whose aggregate sum of New Equity Interests to be distributed to such holder on account of such Allowed Claim would be worth less than $100.  No fractional shares of New Equity Interests shall be distributed, and no Cash shall be distributed in lieu of such fractional amounts.  When any distribution pursuant to the Plan on account of an Allowed Claim, as applicable, would otherwise result in the issuance of a number of shares of New Equity Interests that is not a whole number, the actual distribution of shares of New Equity Interests shall be rounded as follows: (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefore.  The total number of authorized shares of New Equity Interests to be distributed under the Plan shall be adjusted as necessary to account for the foregoing rounding.

**9.       Bulk Tenders**

With respect to subscribing Noteholders, Nominees must submit instructions on account of each Noteholder separately.  "Bulk Tenders" via ATOP are not permitted and will be rejected.

**10.      Validity of Exercise of New Preferred Equity Subscription Rights and Submission of Elections**

All questions concerning the timeliness, viability, form, and eligibility of any exercise of New Preferred Equity Subscription Rights and submission of any Election will be determined in good faith by the Debtors and if necessary, subject to a final and binding determination by the Bankruptcy Court.  The Debtors, pursuant to the terms of the Backstop Commitment Agreement, may waive any defect or irregularity, or permit a defect or irregularity to be corrected within such time as they may determine in good faith, or reject the purported exercise of any New Preferred Equity Subscription Rights.  Lender Subscription Forms and Noteholder Beneficial Owner Subscription Forms will be deemed not to have been received or accepted until all irregularities have been waived or cured within such time as the Debtors determine in good faith.  In addition, the Debtors, pursuant to the terms of the Backstop Commitment Agreement, may permit any such defect or irregularity to be cured within such time as they may determine in good faith to be appropriate.

19

For the avoidance of doubt and notwithstanding the above, the Debtor and its agents are not required to inform parties of any defect or irregularity with their submission of documents or payments and may reject such submissions without previously notifying the party prior to such rejection other than as required pursuant to the terms of the Backstop Commitment Agreement. Additionally, each such irregularity or defect if reviewed, will be done so on an individual submission basis.

## 11.  Minimum Denominations

There is no minimum principal amount of Secured Loans or Secured Notes with respect to which New Preferred Equity Subscription Rights may be exercised.

## 12.  DTC

All of the Secured Notes are held in book-entry form in accordance with the practices and procedures of DTC. The Debtors intend to comply with the practices and procedures of DTC for the purpose of conducting the Rights Offering, and, subject to compliance with Section 13 hereof, these Procedures will be deemed appropriately modified to achieve such compliance.

## 13.  Modification of Procedures

The Debtors reserve the right, subject to the terms of the Backstop Commitment Agreement, to modify these Procedures or adopt additional procedures consistent with the provisions of these Procedures to effectuate the Rights Offering and to issue the New RO Equity, Holdback Preferred Equity, RO Backstop Preferred Equity, Backstop Premium Preferred Equity and Backstop Common Equity; *provided* that the Debtors shall provide prompt written notice (the "Modification Notice") to the Lenders and Noteholders of any material modification to these Procedures made after the Solicitation and Subscription Commencement Date by: (i) posting the Modification Notice on the Debtors' restructuring website at www.veritaglobal.net/MCC; (ii) filing a copy of the Modification Notice on the docket of the Debtors' Chapter 11 Cases; and (iii) providing a copy of the Modification Notice to counsel the Secured Ad Hoc Group and the Plan Sponsors, with email notice being sufficient.  Subject to the terms of the Backstop Commitment Agreement and the Restructuring Support Agreement, the Debtors may execute and enter into agreements and take further action that the Debtors determine in good faith are necessary and appropriate to effect and implement the Rights Offering and the issuance of the New RO Equity, the Holdback Preferred Equity, RO Backstop Preferred Equity, Backstop Premium Preferred Equity and Backstop Common Equity.

## 14.  Inquiries and Transmittal of Documents; Subscription Agent

The Instructions should be carefully read and strictly followed.

Questions relating to the Rights Offering should be directed to the Subscription Agent at the following phone number or email address: (866) 967-1788 (domestic toll-free) or (310) 751-2688 (for international calls) or mccballots@veritaglobal.com (referencing "Multi-Color Corporation" in the subject line). To obtain copies of the documents, please visit www.veritaglobal.net/MCC.

20

The risk of non-delivery of all documents and payments to the Subscription Agent and any Nominee is on the Lender or Noteholder electing to exercise its New Preferred Equity Subscription Rights and not the Debtors or the Subscription Agent.

Lenders and Nominees (or Noteholders that are instructed by their Nominees to return the Noteholder Beneficial Owner Subscription Form directly to the Subscription Agent) must return the Lender Subscription Form and/or the Noteholder Beneficial Owner Subscription Form, as applicable, and the Investor Questionnaire and the appropriate IRS tax form by no later than the Subscription Expiration and Election Deadline to the following:

<div align="center">

MCC Rights Offering Subscription
c/o Verita Global
222 N Pacific Coast Highway, Suite 300
El Segundo, CA 90245

**Preferred Method**
Submit via email:
mccballots@veritaglobal.com

</div>

All documents relating to the Rights Offering are available from the Subscription Agent. In addition, these documents, together with all filing made with the Court by the Debtors, are available free of charge from the Debtors' restructuring website at www.veritaglobal.net/MCC.

**Only choose <u>one</u> method of return.  If you choose to return the applicable documents via email, do not follow up with hard copies.**

15.    **Backstop Commitment Agreement**

The Debtors are party to that certain Backstop Commitment Agreement (the "<u>Backstop Commitment Agreement</u>") dated [●], 2026 with, among others, each party listed as a "Financing Party" on Schedule 1 thereto (the "<u>Backstop Parties</u>").  In the event of any conflict between these Procedures and the terms of the Backstop Commitment Agreement, the terms of the Backstop Commitment Agreement will control with respect to the rights and obligations of the Backstop Parties in connection with the Rights Offering.

16.    **Description of the Elections**

*Elections for Holders of Allowed First Lien Secured Claims*

Any First Lien Secured Claim Holder has the right, but not the obligation, to make the New Term Loan Cash Out Election and/or New Common Equity Debt Election.

In accordance with the Plan, on the Effective Date, each First Lien Secured Claim Holder that submits a duly completed (a) New Term Loan Cash Out Election in accordance with these procedures on or prior to the Subscription Expiration and Election Deadline shall receive New Term Loan Cash Out Proceeds and not New Debt and (b) New Common Equity Debt Election in accordance with these procedures on or prior to the Subscription Expiration and Election Deadline shall receive New Term Loans and not New Common Equity.

<div align="center">21</div>

For the avoidance of doubt, (a) any Holder of an Allowed First Lien Secured Claim that does not submit a duly completed New Term Loan Cash Out Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the New Debt and not New Term Loan Cash Out Proceeds on account of such distribution and (b) any Holder of an Allowed First Lien Secured Claim that does not submit a duly completed New Common Equity Debt Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the First Lien New Common Equity Allocation and not New Term Loans on account of such distribution.

### *Election for Holders of First Lien Deficiency Claims*

Any First Lien Deficiency Claim Holder has the right, but not the obligation, to make the New Common Equity Debt Election.

In accordance with the Plan, on the Effective Date, each First Lien Deficiency Claim Holder that submits a duly completed New Common Equity Debt Election in accordance with these Procedures on or prior to the Subscription Expiration and Election Deadline shall receive New Term Loans and not New Common Equity.

In accordance with the Plan, on the Effective Date, each First Lien Deficiency Claim Holder that submits a duly completed New Common Equity Debt Election on or prior to the Subscription Expiration and Election Deadline shall receive New Term Loans and not New Common Equity.

### 17. Election Deadline

Each Lender or Noteholder intending to make any Election must affirmatively make such election in the Lender Subscription Form and/or the Noteholder Beneficial Owner Subscription Form, as applicable, in the manner set forth in the Instructions on or prior to the Subscription Expiration and Election Deadline. Any election after the Subscription Expiration and Election Deadline will not be allowed and any purported election received by the Subscription Agent after the Subscription Expiration and Election Deadline, regardless of when the documents relating to such election were sent, will not be honored.

### 18. Making the Election

### *Elections for Holders of Allowed First Lien Secured Claims*

In order to validly make the New Term Loan Cash Out Election and/or New Common Equity Debt Election, each Lender or Noteholder that is a First Lien Secured Claim Holder, regardless of whether exercising its New Preferred Equity Subscription Rights or not thereto, must,

(i) with respect to Noteholders, instruct its Nominee(s) to electronically deliver, the Secured Notes for which the New Term Loan Cash Out Election and/or New Common Equity Debt Election is being made through ATOP, such that they are received by the Subscription Expiration and Election Deadline; and

(ii)     return a duly completed and executed Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable (each with accompanying Investor Questionnaire, and IRS Form W-9 or appropriate IRS Form W-8, as applicable) to (a) the Subscription Agent, if a Lender, or (b) to a Noteholder's Nominee (or as otherwise directed by its Nominee), if a Noteholder, so that such documents are actually received by the Subscription Agent on or before the Subscription Expiration and Election Deadline.

### *Election for Holders of First Lien Deficiency Claims*

In order to validly make the New Common Equity Debt Election, each Lender or Noteholder that is a First Lien Deficiency Claim Holder must,

(i)     with respect to Noteholders, instruct its Nominee(s) to electronically deliver, the Secured Notes for which the New Common Equity Debt Election is being made through ATOP, such that they are received by the Subscription Expiration and Election Deadline; and

(ii)     return a duly completed and executed Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable (each with accompanying Investor Questionnaire, IRS Form W-9 or appropriate IRS Form W-8, as applicable) to (a) the Subscription Agent, if a Lender, or (b) to a Noteholder's Nominee (or as otherwise directed by its Nominee), if a Noteholder, so that such documents are actually received by the Subscription Agent on or before the Subscription Expiration and Election Deadline.

Once a Lender or Noteholder has properly exercised its New Preferred Equity Subscription Rights and/or made an Election, subject to the terms and conditions contained in these Procedures (and the Backstop Commitment Agreement in the case of any Backstop Party), such exercise and/or Election will be irrevocable and withdrawals will not be permitted. Moreover, following an Election, the Holder thereof shall be prohibited from Transferring or assigning the Secured Loans and Secured Notes, as applicable, corresponding to such Election unless the Rights Offering is terminated. The settlement of the Elections is conditioned on confirmation of the Plan by the Bankruptcy Court, and will be governed by the terms and conditions set out in the Plan.

### 19.    Inquiries and Transmittal of Documents; Subscription Agent

The Instructions should be carefully read and strictly followed.

Questions relating to any Election should be directed to the Subscription Agent at the following phone number or email address: (866) 967-1788 (domestic toll-free) or (310) 751-2688 (for international calls) or mccballots@veritaglobal.com (referencing "Multi-Color Corporation" in the subject line). To obtain copies of the documents, please visit www.veritaglobal.net/MCC.

The risk of non-delivery of all documents to the Subscription Agent and any Nominee is on the Lender or Noteholder making an Election and not the Debtors or the Subscription Agent.

23

Lenders and Nominees (or Noteholders that are instructed by their Nominees to return the Noteholder Beneficial Owner Subscription Form directly to the Subscription Agent) must return the Lender Subscription Form and/or the Noteholder Beneficial Owner Subscription Form, as applicable, and Investor Questionnaire and the appropriate IRS tax form by no later than the Subscription Expiration and Election Deadline to the following:

<div align="center">

MCC Rights Offering Subscription
c/o Verita Global
222 N Pacific Coast Highway, Suite 300
El Segundo, CA 90245

**Preferred Method**
Submit via email:
mccballots@veritaglobal.com

</div>

All documents relating to the Elections are available from the Subscription Agent. In addition, these documents, together with all filing made with the Court by the Debtors, are available free of charge from the Debtors' restructuring website at www.veritaglobal.net/MCC.

**Only choose <u>one</u> method of return.  If you choose to return the applicable documents via email, do not follow up with hard copies.**

### MCC RIGHTS OFFERING AND ELECTION INSTRUCTIONS

**Terms used and not defined herein shall have the meaning assigned to them in the Plan.**

**To elect to participate in the Rights Offering and make an Election, you must follow all the instructions set out below.**

**To elect to participate in the Rights Offering only, you must follow the instructions 1, 2, 4 through 9 set out below.**

**To make an Election only, you must follow the instructions 1, 3, 4, 5, 6 and 7 set out below.**

1.   **Insert** the principal amount of your Secured Loans and/or Secured Notes that you hold in the corresponding fields within your Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable. There is no minimum principal amount of Secured Loans or Secured Notes with respect to which New Preferred Equity Subscription Rights may be exercised.

     If you are a Lender and you do not know the principal amount of your Secured Loans, please contact the administrative agent for the Secured Loans immediately. If you are a Noteholder and you do not know the principal amount of your Secured Notes, please contact your Nominee immediately. If you are a Noteholder intending to exercise your New Preferred Equity Subscription Rights, you must provide instructions to your Nominee to submit all of your Secured Notes into the ATOP system through DTC to the appropriate contra CUSIP established by DTC.

2.   **Complete** the calculation in Item 2 of your Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable, which calculates your Funding Amount (*i.e.*, the amount of New RO Preferred Equity you are entitled to subscribe for in the Rights Offering).

3.   **To make an Election, complete** Item 9 and/or Item 10, as applicable, of your Lender Subscription Form and/or Item 10 and/or Item 11, as applicable, of your Noteholder Beneficial Owner Subscription Form, as applicable, if you intend to make the New Term Loan Cash Out Election and/or New Common Equity Debt Election, as applicable.

4.   **Read, complete and sign** the Investor Questionnaire and the certification in Item 4 of your Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable, and all other requested information in the remaining items.

5.   **Read, complete and sign** an IRS Form W-9 if you are a U.S. person. If you are a non-U.S. person, read, complete and sign an appropriate IRS Form W-8. These forms may be obtained from the IRS at its website: www.irs.gov.

6.   **For Noteholders ONLY, instruct** your Nominee to electronically deliver via ATOP your Secured Notes to the appropriate contra CUSIP established by DTC by the Subscription Expiration and Election Deadline. If you are a Noteholder intending to exercise your New

Preferred Equity Subscription Rights or make any Election, you must provide instructions to your Nominee to submit all of your Secured Notes into the ATOP system.

7.    **Return** your signed Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable (each with accompanying Investor Questionnaire, and IRS Form W-9 or appropriate IRS Form W-8, as applicable) to the Subscription Agent prior to the Subscription Expiration and Election Deadline or the Subscription Expiration and Election Deadline, as applicable, or, for Noteholders, to your Nominee in sufficient time to allow your Nominee to process your instructions and prepare and deliver your Noteholder Beneficial Owner Subscription Form to the Subscription Agent (or otherwise follow the instructions of your Nominee) prior to the Subscription Expiration and Election Deadline or the Subscription Expiration and Election Deadline, as applicable.

8.    **Arrange for full payment** of the Funding Amount in immediately available funds, calculated in accordance with Item 2 of your Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable.  A Lender or Noteholder who is not a Backstop Party should follow the payment instructions as provided in Item 3 of the Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable. Any Backstop Party should follow the payment instructions that will be provided in the Funding Notice, except to the extent of any Funding Amount previously paid by such Backstop Party to the Subscription Agent, or otherwise in accordance with the terms of the Backstop Commitment Agreement.

9.    **For Backstop Parties ONLY, confirm** that you are a Backstop Party by checking the appropriate box in Item 5 of your Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable, so that the Nominee, if applicable, will receive confirmation that payment does not have to be made prior to the Subscription Expiration and Election Deadline.  If you are a Backstop Party, you must also complete the Backstop Party Addendum which is attached to your Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable, and submit the Backstop Party Addendum to the Subscription Agent. (This instruction is only for Backstop Parties).

> **The Subscription Expiration and Election Deadline is 5:00 p.m. (Prevailing Eastern Time) on March 20, 2026 (as such deadline may be extended pursuant to the Procedures).**
>
> **Lender Subscription Forms and Noteholder Beneficial Owner Subscription Forms (each with accompanying Investor Questionnaire, and IRS Form W-9 or appropriate IRS Form W-8, as applicable) must be received by the Subscription Agent and, for Noteholders, the underlying Secured Notes must be delivered through ATOP to the appropriate contra CUSIP established by DTC by the Subscription Expiration and Election Deadline or the subscription(s) represented by your Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable, will not be recognized, and the associated New Preferred Equity Subscription Rights will be deemed forever relinquished and waived, subject to the provisions of Section 10 herein relating to the waiver or correction of defects or irregularities.**

2

**For Noteholders, please note that, unless otherwise directed by your Nominee, the Noteholder Beneficial Owner Subscription Form (with accompanying Investor Questionnaire, and IRS Form W-9 or appropriate IRS Form W-8, as applicable) must be received by your Nominee in sufficient time to allow such Nominee to process and deliver your underlying Secured Notes through ATOP to the appropriate contra CUSIP established by DTC by the Subscription Expiration and Election Deadline or the subscription represented by your Noteholder Beneficial Owner Subscription Form will not be recognized, and the associated New Preferred Equity Subscription Rights will be deemed forever relinquished and waived, subject to the provisions of Section 10 herein relating to the waiver or correction of defects or irregularities.**

**Further, the full payment of the Funding Amount by Lenders and Noteholders who are not Backstop Parties must be received by the Subscription Agent by the Subscription Expiration and Election Deadline or the subscription(s) represented by your Lender Subscription Form and/or Noteholder Beneficial Owner Subscription Form, as applicable, will not be recognized, and the associated New Preferred Equity Subscription Rights will be deemed forever relinquished and waived, subject to the provisions of Section 10 herein relating to the waiver or correction of defects or irregularities.**

**Lenders and Noteholders that are Backstop Parties must deliver the Funding Amount for their Subscribed New RO Preferred Equity, the Holdback Preferred Equity and RO Backstop Preferred Equity directly to the Subscription Agent, as applicable, pursuant to the Funding Notice (except to the extent of any Funding Amounts previously provided by any such Lenders and Noteholders to the Subscription Agent in accordance with the terms of the Backstop Commitment Agreement) no later than the Backstop Funding Deadline, or otherwise in accordance with the terms of the Backstop Commitment Agreement.**

**In order to validly make an Election, each Lender or Noteholder, regardless of whether exercising its New Preferred Equity Subscription Rights or not thereto, must follow the instructions set out in Sections 1, 3, 4, 5, 6 and 7 above.**

**Any First Lien Secured Claim Holder that does not submit a duly completed New Term Loan Cash Out Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the New Debt and not New Term Loan Cash Out Proceeds on account of such distribution.**

**Any First Lien Secured Claim Holder that does not submit a duly completed New Common Equity Debt Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the First Lien New Common Equity Allocation and not New Term Loans on account of such distribution.**

**Any First Lien Deficiency Claim Holder that does not submit a duly completed New Common Equity Debt Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the Junior Funded Debt New Common Equity Allocation and not New Term Loans on account of such distribution.**

3

**Questions relating to the Rights Offering and/or any Election should be directed to the Subscription Agent at the following phone number or email address: (866) 967-1788 (domestic toll-free) or (310) 751-2688 (for international calls) or mccballots@veritaglobal.com (referencing "Multi-Color Corporation" in the subject line). To obtain copies of the documents, please visit www.veritaglobal.net/MCC.**

Lenders and Nominees (or Noteholders that are instructed by their Nominees to return the Noteholder Beneficial Owner Subscription Form directly to the Subscription Agent) must return the Lender Subscription Form, and/or Noteholder Beneficial Owner Subscription Form, as applicable, and the Investor Questionnaire and the appropriate IRS tax form by no later than the Subscription Expiration and Election Deadline to the following:

MCC Rights Offering Subscription
c/o Verita Global
222 N Pacific Coast Highway, Suite 300
El Segundo, CA 90245

**Preferred Method**
Submit via email:
mccballots@veritaglobal.com

**Only choose <u>one</u> method of return.  If you choose to return the applicable documents via email, do not follow up with hard copies.**

4

## Annex 1

**Lender Subscription Form**

[*Lender Subscription Form provided as a separate document.*]

**LENDER SUBSCRIPTION FORM**
**FOR RIGHTS OFFERING AND CLAIMS ELECTIONS**

**FOR USE BY HOLDERS OF**
**SECURED LOANS**

**IN CONNECTION WITH THE DEBTORS'**
**DISCLOSURE STATEMENT DATED JANUARY 27, 2026**

---

**SUBSCRIPTION EXPIRATION AND ELECTION DEADLINE**

**The Subscription Expiration and Election Deadline is 5:00 p.m. (Prevailing Eastern Time) on March 20, 2026, unless otherwise extended pursuant to the terms of the Rights Offering and Claims Election Procedures (the "Procedures"). Capitalized terms used but not defined herein shall have the meanings assigned to them in the Procedures.**

**To exercise the New Preferred Equity Subscription Rights and/or make the New Term Loan Cash Out Election and/or New Common Equity Debt Election with respect to the outstanding loans under the Cash Flow Revolving Facility or the Cash Flow Term Loan Facilities (collectively, the "Secured Loans"), each Holder of the underlying Secured Loans (a "Lender") as reflected on the registers maintained by the administrative agent of the Secured Loans on the date of any such exercise of New Preferred Equity Subscription Rights or any Election, as applicable, that is a First Lien Secured Claim Holder must timely and properly execute and deliver its duly completed and executed Lender Subscription Form (with accompanying Investor Questionnaire, attached hereto as <u>Exhibit A</u>, and IRS Form W-9 or appropriate IRS Form W-8, as applicable) to Verita Global, LLC (the "Subscription Agent") by the Subscription Expiration and Election Deadline.**

**To make the New Common Equity Debt Election with respect to the Secured Loans, each Lender that is a First Lien Deficiency Claim Holder must timely and properly execute and deliver its duly completed and executed Lender Subscription Form (with accompanying Investor Questionnaire, and IRS Form W-9 or appropriate IRS Form W-8, as applicable) to the Subscription Agent in advance of the Subscription Expiration and Election Deadline.**

**Any First Lien Secured Claim Holder that does not validly exercise its New Preferred Equity Subscription Rights in accordance with the Procedures will not receive the New RO Equity.**

**Any First Lien Secured Claim Holder that does not submit a duly completed New Term Loan Cash Out Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the New Debt and not New Term Loan Cash Out Proceeds on account of such distribution.**

**Any First Lien Secured Claim Holder that does not submit a duly completed New Common Equity Debt Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the First Lien New Common Equity Allocation and not New**

**Term Loans on account of such distribution.**

**Any First Lien Deficiency Claim Holder that does not submit a duly completed New Common Equity Debt Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the Junior Funded Debt New Common Equity Allocation and not New Term Loans on account of such distribution.**

**Failure of a Lender to submit its Lender Subscription Form on a timely basis will result in forfeiture of such Lender's New Preferred Equity Subscription Rights and the rights to make the Elections, subject to the provisions of Section 10 of the Procedures relating to the waiver or correction of defects or irregularities. None of the Debtors, the Subscription Agent or any of the Backstop Parties will have any liability for any such failure.**

**Lenders who are not Backstop Parties must deliver the Funding Amount for all Subscribed New RO Preferred Equity by the Subscription Expiration and Election Deadline.**

**Lenders who are Backstop Parties must deliver the Funding Amount for (i) all Holdback Preferred Equity, (ii) all Subscribed New RO Preferred Equity (if any) and (iii) the applicable RO Backstop Preferred Equity (if any) no later than the Backstop Funding Deadline.**

**As part of the exercise and election process, following exercise of the New Preferred Equity Subscription Rights and/or the Elections, the Secured Loans underlying the New Preferred Equity Subscription Rights that are being exercised or for which an Election is being made will be frozen from Transfer. Lenders that participate in the Rights Offering or make the Elections shall be prohibited from Transferring the underlying Secured Loans, and the administrative agent of the Secured Loans shall be prohibited from effectuating any such requested Transfers unless the Rights Offering is terminated.**

**Lenders that are Backstop Parties must arrange for the Backstop Party Addendum to be completed and returned to the Subscription Agent. Lenders that are Backstop Parties must deliver the Funding Amount for (i) all Holdback Preferred Equity, (ii) all Subscribed New RO Preferred Equity (if any) and (iii) the applicable RO Backstop Preferred Equity (if any) directly to the Subscription Agent pursuant to the Funding Notice (except to the extent of any funding amounts previously provided by any such Lenders to the Subscription Agent in accordance with the terms of the Backstop Commitment Agreement) no later than the Backstop Funding Deadline, or otherwise in accordance with the terms of the Backstop Commitment Agreement.**

**The offering, issuance and distribution of the New RO Equity, the Backstop Premium Preferred Equity, the Backstop Common Equity issued to Backstop Parties on account of the New Preferred Equity Investment Backstop Commitment Premium, the New Warrants, the First Lien New Common Equity Allocation and the Junior Funded Debt New Common Equity Allocation under the Plan after the Petition Date shall be exempt from registration requirements under the Securities Act, or any state or local law requiring registration for offer and sale of a security, in reliance upon the exemption provided in section 1145(a) of the**

**Bankruptcy Code to the maximum extent permitted by law, or, if section 1145(a) is not available, then the New RO Equity, the Backstop Premium Preferred Equity, the Backstop Common Equity issued to Backstop Parties on account of the New Preferred Equity Investment Backstop Commitment Premium, the New Warrants, the First Lien New Common Equity Allocation and the Junior Funded Debt New Common Equity Allocation are being offered, issued and distributed under the Plan pursuant to other applicable exemptions from registration under the Securities Act and any other applicable securities laws. To the extent that the New RO Equity, the Backstop Premium Preferred Equity, the Backstop Common Equity issued to Backstop Parties on account of the New Preferred Equity Investment Backstop Commitment Premium, the New Warrants, the First Lien New Common Equity Allocation and the Junior Funded Debt New Common Equity Allocation are being issued under the Plan pursuant to section 1145(a) of the Bankruptcy Code, such New RO Equity, Backstop Premium Preferred Equity, Backstop Common Equity issued to Backstop Parties on account of the New Preferred Equity Investment Backstop Commitment Premium, New Warrants, the First Lien New Common Equity Allocation and the Junior Funded Debt New Common Equity Allocation may be resold by the holders thereof without registration unless the holder is an "underwriter" (as defined in section 1145(b)(1) of the Bankruptcy Code) with respect to such securities.**

**The Holdback Preferred Equity, RO Backstop Preferred Equity, Backstop Common Equity issued to the Backstop Parties on account of the foregoing and New Notes are being offered, issued and distributed without registration under the Securities Act, or any state or local law requiring registration for offer and sale of a security, in reliance on the exemption provided in Section 4(a)(2) of the Securities Act, Regulation S under the Securities Act or another available exemption. Resales of New Equity Interests issued to "underwriters," and resales of the Holdback Preferred Equity, RO Backstop Preferred Equity, Backstop Common Equity issued to the Backstop Parties on account of the foregoing and New Notes will require registration under the Securities Act or an exemption from registration under the Securities Act. Resale restrictions are discussed in more detail in Article XII of the Disclosure Statement, entitled "Certain Securities Law Matters."**

**The New Preferred Equity Subscription Rights and the rights to make the Elections are not detachable or otherwise transferable separately from the underlying Secured Loans. Rather, the New Preferred Equity Subscription Rights and the rights to make the Elections, together with the underlying Secured Loans with respect to which such New Preferred Equity Subscription Rights and rights to make the Elections were allocated, will trade together and will be evidenced by the underlying Secured Loans until the Subscription Expiration and Election Deadline, subject to such limitations, if any, that would be applicable to the transferability of the underlying Secured Loans; *provided* that following the exercise of any New Preferred Equity Subscription Rights and/or any Election, the Holder thereof shall be prohibited from selling, transferring, assigning, pledging, hypothecating, participating, donating or otherwise encumbering or disposing of (each of the foregoing, a "Transfer") the Secured Loans corresponding to such New Preferred Equity Subscription Rights and/or Election unless the Rights Offering is terminated; *provided further*, that First Lien Secured**

**Claim Holders shall be permitted to designate affiliates to receive the New Preferred Equity, the New Common Equity, the New Warrants and/or the New Debt, as applicable, without the need to Transfer any Secured Loans to such affiliate (including any controlled investment affiliates).**

**The distribution or communication of the Procedures and the issuance of the New Equity Interests and the New Notes in certain jurisdictions may be restricted by law. No action has been taken or will be taken to permit the distribution or communication of the Procedures in any jurisdiction where any action for that purpose may be required. Accordingly, the Procedures may not be distributed or communicated, and the New Equity Interests and the New Notes may not be subscribed for or issued, in any jurisdiction except in circumstances where such distribution, communication, subscription or issuance would comply with all applicable laws without the need for the Debtors to take any action or obtain any consent, approval or authorization therefor except for any notice filings required under U.S. federal and applicable state securities laws. Further, the Rights Offering has not been approved or disapproved by the U.S. Securities and Exchange Commission or any other state securities commission or any other regulatory or governmental authority, nor have any of the foregoing passed upon the accuracy or adequacy of the information presented, and any representation to the contrary is a criminal offense.**

**None of the New Preferred Equity Subscription Rights distributed in connection with the Procedures have been or will be registered under the Securities Act, nor any state or local law requiring registration for offer and sale of a security.**

**The rights and obligations of the Backstop Parties in the Rights Offering shall be governed by the Backstop Commitment Agreement to the extent the rights or obligations set forth therein differ from the rights and obligations set forth herein or in the Procedures.**

**Please note that you are responsible for all calculations made pursuant to this Lender Subscription Form.**

**Please refer to the Procedures for details on your entitlement to the New RO Preferred Equity to the extent you participate in the Rights Offering.**

**If you have any questions, please contact the Subscription Agent at the following phone number or email address: (866) 967-1788 (domestic toll-free) or (310) 751-2688 (for international calls) or mccballots@veritaglobal.com. To obtain copies of the documents, please visit www.veritaglobal.net/MCC.**

**SUBJECT TO THE TERMS AND CONDITIONS OF THE PLAN AND THE PROCEDURES (AND THE BACKSTOP COMMITMENT AGREEMENT IN THE CASE OF ANY BACKSTOP PARTY), ONCE A LENDER HAS PROPERLY EXERCISED ITS NEW PREFERRED EQUITY SUBSCRIPTION RIGHTS AND/OR MADE AN ELECTION, SUCH EXERCISE AND/OR ELECTION WILL BE IRREVOCABLE AND WITHDRAWALS WILL NOT BE PERMITTED.**

> **To exercise your Rights, fill out Items 1-8 in this Lender Subscription Form (including the Investor Questionnaire attached hereto as <u>Exhibit A</u>) completely and legibly.**
>
> **To make an Election, fill out Item 9 and/or Item 10, as applicable, in this Lender Subscription Form completely and legibly.**

## 1. Amount of Secured Loans

I certify that I am a Holder of the Secured Loans in the following principal amount (insert amount on the lines below) or that I am the authorized signatory of that Holder. For the purposes of this Lender Subscription Form, do not adjust the principal (face) amount for any accrued or unmatured interest. Accrued prepetition interest is accounted for in the multiplier set forth in Item 2 and Item 3a below.

If you do not know the principal amount of your Secured Loans, please contact the administrative agent for the Secured Loans immediately.

*Insert aggregate principal amount of Secured Loans held, as applicable.*

Cash Flow Revolving Facility:_____
[1A]

Cash Flow Term Loan Facility (USD):_____
[1B]

Cash Flow Term Loan Facility (EUR):_____
[1C]

## 2. Funding Amount Calculation

Each First Lien Secured Claim Holder is entitled to subscribe for and fund New RO Preferred Equity in an amount equal to its Pro Rata share of the Rights Offering Amount based upon a fraction (expressed as a percentage), the numerator of which is its Allowed First Lien Secured Claims and the denominator of which is all Allowed First Lien Secured Claims.

Each Lender has the right, but not the obligation, to participate in the Rights Offering by subscribing for and funding New RO Preferred Equity.

Subject to the terms and conditions set forth in the Plan and the Procedures, each Lender is entitled to subscribe for either ***all or none*** of its Pro Rata share of New RO Preferred Equity at the Funding Amount.

By filling in the following blanks, you are indicating that the undersigned Lender is subscribing to fund the principal amount of New RO Preferred Equity associated with the principal amount specified in Box B, on the terms and subject to the conditions set forth in the Procedures.

**New RO Preferred Equity:**

The amount of New RO Preferred Equity for which the undersigned may subscribe, based on the principal amount shown above, is calculated as follows:

| BOX A | | | | BOX B |
|---|---|---|---|---|
| _____<br>(Insert principal amount of Cash Flow Revolving Facility from Item 1 above) | X | [●] | = | _____<br>[2A]<br>(Principal Amount of New RO Preferred Equity)<br>(Round down to nearest whole number) |
| _____<br>(Insert principal amount of Cash Flow Term Loan Facility (USD) from Item 1 above) | X | [●] | = | _____<br>[2B]<br>(Principal Amount of New RO Preferred Equity)<br>(Round down to nearest whole number) |
| _____<br>(Insert principal amount of Cash Flow Term Loan Facility (EUR) from Item 1 above) | X | [●][1] | = | _____<br>[2C]<br>(Principal Amount of New RO Preferred Equity)<br>(Round down to nearest whole number) |

| | | | | |
|---|---|---|---|---|
| _____<br>[2A]<br>(Principal Amount of New RO Preferred Equity) | X | [1.00] | = | _____<br>[3A]<br>(Funding Amount) |
| _____<br>[2B]<br>(Principal Amount of New RO Preferred Equity) | X | [1.00] | = | _____<br>[3B]<br>(Funding Amount) |
| _____<br>[2C]<br>(Principal Amount of New RO Preferred Equity) | X | [1.00] | = | _____<br>[3C]<br>(Funding Amount) |

| BOX C |
|---|
| **Total Funding Amount**: _____<br>[3A]+[3B]+[3C] |

---

[1] The conversion rate reflects the pre-Petition Date exchange rate of 1.186 between the U.S. dollar and the Euro dollar as of January 26, 2026.

3.  **Payment and Delivery Instructions**

    **Insert Funding Amount as set forth in BOX C:**

        **$**_____

For Lenders that did not check the box in Item 5 below, payment of the Funding Amount calculated pursuant to Item 2 above must be made by wire transfer ONLY of immediately available funds in accordance with the following wire instructions:

*Domestic/International wire:*

| Name of Account: | Computershare Inc AAF for Client Funds 1 |
|---|---|
| Account No.: | |
| SWIFT No.: | |
| Bank Name: | |
| Bank Address: | |
| Routing Number: | |
| Special Instructions: | Funding for KCC – Multi-Color Corporation Offer – [Name of Participant] |

**Holders of Allowed First Lien Secured Claims who are not Backstop Parties must deliver the Funding Amount for all Subscribed New RO Preferred Equity shown in Box C above by the Subscription Expiration and Election Deadline.**

**Holders of Allowed First Lien Secured Claims who are Backstop Parties will receive a separate Funding Notice (as defined in the Backstop Commitment Agreement) and must deliver the Funding Amount for (i) all Holdback Preferred Equity, (ii) all Subscribed New RO Preferred Equity (if any) and (iii) the applicable RO Backstop Preferred Equity (if any) no later than the Backstop Funding Deadline.**

**THE PAYMENT MUST BE MADE BY LENDERS THAT ARE NOT BACKSTOP PARTIES BY THE SUBSCRIPTION EXPIRATION AND ELECTION DEADLINE.**

Please provide your completed Lender Subscription Form (Investor Questionnaire and other required instruction, as applicable) to the Subscription Agent. The Funding Amount must be paid by the Subscription Expiration and Election Deadline, unless you are a Backstop Party.

4.  **Certification and Investor Questionnaire.**

The undersigned hereby certifies that it (i) is the Holder of the Secured Loans set forth in Item 1 above, or the authorized signatory (the "Authorized Signatory") of such Lender acting on behalf of the Lender, (ii) is entitled to participate in the Rights Offering, (iii) has reviewed a copy of the Plan, the Disclosure Statement and the Procedures and other applicable materials and (iv) understands that the exercise of the New Preferred Equity Subscription Rights under the Rights Offering and the submission of the Elections are subject to all the terms and conditions set forth in the Plan and the Procedures.

Please provide your completed Lender Subscription Form and Investor Questionnaire to the Subscription Agent by the Subscription Expiration and Election Deadline. By subscribing for the total principal amount of New RO Preferred Equity shown in Box C above, the Lender (or the Authorized Signatory on behalf of the Lender) acknowledges that payment of the Funding Amount shown in Box C must be made by the Lender by the Subscription Expiration and Election Deadline, unless the Lender is a Backstop Party.

**The Lender (or the Authorized Signatory on behalf of such Lender) acknowledges that, by executing this Lender Subscription Form, the Lender has elected to subscribe for the principal amount of New RO Preferred Equity associated with the principal amount indicated and will be bound to pay the Funding Amount for the New RO Preferred Equity it has subscribed for and that it may be liable to the Debtors to the extent of any nonpayment.**

**In addition, the Lender (or the Authorized Signatory on behalf of such Lender) acknowledges that (a) by making the specified Elections under Item 9, the Lender will have irrevocably elected to (i) receive New Term Loan Cash Out Proceeds and not New Debt and (ii) New Term Loans and not New Common Equity and (b) by making the specified New Common Equity Debt Election under Item 10, the Lender will have irrevocably elected to receive New Term Loans and not New Common Equity.**

**In the event that funds received by the Subscription Agent in payment for a subscribing Lender's Subscribed New RO Preferred Equity are less than the aggregate Funding Amount for the Subscribed New RO Preferred Equity of such Lender, the subscription(s) represented by such subscribing Lender's Lender Subscription Form will not be recognized, and the associated New Preferred Equity Subscription Rights will be deemed forever relinquished and waived, subject to the provisions of Section 10 of the Procedures relating to the waiver or correction of defects or irregularities.**

Date: _____

Name of Lender: _____

Signature: _____

Name of Signatory: _____

Title: _____

Telephone Number: _____

Email: _____

## 5. Backstop Party Representation.

*(This section is only for Backstop Parties, each of whom is aware of its status as a Backstop Party. If you are a Backstop Party, a fully completed Backstop Party Addendum MUST be provided along with your Lender Subscription Form. A Backstop Party Addendum is attached to this Lender Subscription Form, and the Backstop Party is responsible for forwarding it to the Subscription Agent to confirm that payment does not have to be made prior to the Subscription Expiration and*

*Election Deadline. Please note that checking the box below if you are not a Backstop Party may result in forfeiture of your rights to participate in the Rights Offering.)*

☐   I am a Backstop Party identified in the Backstop Commitment Agreement and the Backstop Party Addendum has been included with my form.

**6.   Registration Information**

**The Debtors intend that the New Preferred Equity and New Common Equity will be initially issued on the books and records of the Company's transfer agent.**

**After the initial issuance of the New Preferred Equity and New Common Equity, however, Lenders and Noteholders may freely transfer such New Preferred Equity and New Common Equity in accordance with the procedures of the Company's transfer agent to an account at DTC (if the New Preferred Equity and New Common Equity have been issued in book-entry form in accordance with the practices and procedures of DTC), subject to applicable securities laws and provisions of the New Governance Documents, including compliance with section 1145 of the Bankruptcy Code. For the avoidance of doubt, the Holdback Preferred Equity, RO Backstop Preferred Equity, Backstop Common Equity issued to Backstop Parties on account of the foregoing and New Notes are being issued pursuant to Section 4(a)(2) of the Securities Act, Regulation S under the Securities Act or another available exemption, and such shares will bear a legend indicating that the securities may not be sold or otherwise transferred unless such securities are registered with the SEC pursuant to the Securities Act and comply with any applicable state or local law requiring registration of securities, or such sale or transfer is exempt from registration requirements of the Securities Act and any applicable state or local law.**

**The New Warrants will be issued in book-entry form on the books and records of the Company. The New Term Loans will be issued in accordance with the terms of the New Term Loan Facility Credit Agreement and records thereto will be maintained by the New Term Loan Facility Agent.**

**Please indicate on the lines provided below the name of the Lender or its designee in whose name the New Preferred Equity, New Common Equity, New Warrants and New Term Loans should be issued. You may direct that the New Preferred Equity, New Common Equity, New Warrants and New Term Loans be issued to different parties in any allocation of your choice. For example, you may request that all New Common Equity be delivered to fund 1 while all of the New Warrants be delivered to fund 2.**

**It is strongly recommended that the below information be typed to ensure that it is legible. Please also select the "account type" into which such securities will be issued:**

Registration Name[2] Line 1 (Maximum 35 Characters): _____

---

[2]   To the extent there is more than one registrant, please attach a separate sheet with the information required under Item 6.

Registration Name Line 2 (Maximum 35 Characters):_____

(if needed)

Address 1:_____

Address 2:_____

Address 3:_____

City, State, Postal Code:_____

Telephone:_____

Email: _____

U.S. Tax Identification Number: _____

Check here if non-US (no TIN) ☐

☐   INDIVIDUAL ACCOUNT;

☐   IRA ACCOUNT;

☐   CORPORATIONS (S-CORP): (ASSOCIATED, ASSOCIATES, ASSOCIATION, CO, CO. COMPANY, CORP, CORPORATE/PARTNER, ENTERPRISE(S), FUND, GROUP, INCORPORATED, INC, INTERNATIONAL, INTL, LIMITED, LTD, LIFETIME LIMITED COMPANY, LLC, L.L.C., PARTNER, PARTNERS, PLC, PUBLIC LIMITED COMPANY);

☐   PARTNERSHIP: (LP, L P, L.P., LLP, LIMITED PARTNERSHIP, LIFETIME LIMITED PARTNERSHIP);

☐   BANK;

☐   NOMINEE ACCOUNTS;

☐   THE NEW C-CORP;

☐   NON-PROFIT: (CEMETERY, CHURCH, COLLEGE, COMMISSION FOR CHILDREN WITH, COMMISSION FOR HANDICAPPED, COMMISSION MINISTRIES INC, COMMISSION OF PUBLIC WORKS, COMMISSION OF BANKING & FOUNDATIONS, HOSPITAL, SCHOOL, SYNAGOGUE, UNIVERSITY);

☐   FIDUCIARY ACCOUNT: (CUSTODIAN, CO-TRUSTEE, ESTATE, EXECUTOR, EXECUTRIX FBO, F/B/O, FAO, FIDUCIARY TRUST, ITF, LIFE TEN, PENSION PLAN, INDIVIDUAL NAME PROFIT SHARING PLAN, RETIREMENT PLAN, 401K PLAN, SELL TRANSFER PLEDGE, STATE UNIFORM TRANSFER RO MINOR'S ACT, TTEE, TTEES, UW, UTMA, UGMA, USUFRUCT, UNIFIED, UNIF GIFT MIN ACT, UNIF TRUST MIN ACT, UNIFIED GIFT TO MINORS ACT, UNIFORM GIFT TO MINORS, UNIFORM TRANSFER TO MINORS, GRAT (GRANTOR ANNUITY TRUST));

☐   TENANTS IN COMMON;

☐   TENANTS BY ENTIRETY: (TEN ENT, TENANTS ENT, TENANTS ENTIRETY, TENANTS BY ENTIRETY, TENANTS BY ENTIRETIES);

☐    JOINT TENANTS: (JT TEN, JT TEN WROS, JT WROS, J/T/W/R/S, JOINT TENANCY, JOINT TENANTS WITH RIGHT OF SURVIVORSHIP, JT OWNERSHIP, IF JT ACCOUNT WITH TOD); or

☐    COMMUNITY PROPERTY: (COM PROP, COMM PROP, COM PROPERTY, COMM PROPERTY, MARITAL PROPERTY, HWACP, HUSBAND & WIFE AS COMMUNITY PROPERTY).

**Please indicate on the lines provided below DTC participant information for deposit of the New Common Equity and New Preferred Equity into the brokerage account of the Lender in the event such securities are DTC-eligible and issued in book-entry form in accordance with the practices and procedures of DTC.**

DTC Participant Name: _____

DTC Participant Number: _____

Beneficial Holder Name: _____

Beneficial Holder Account Number: _____

DTC Participant Contact Name: _____

DTC Participant Contact Telephone: _____

DTC Participant Contact Email: _____

7.  **Wire information in the event a refund is needed:**

| | |
|---|---|
| Account Name: | |
| Bank Account No.: | |
| ABA/Routing No.: | |
| Bank Name: | |
| Bank Address: | |
| Reference: | |

**Once completed, you must return this Lender Subscription Form and Investor Questionnaire to the Subscription Agent no later than the Subscription Expiration and Election Deadline.**

**PLEASE RETURN THIS LENDER SUBSCRIPTION FORM (INCLUDING INVESTOR QUESTIONNAIRE) ONLY TO THE SUBSCRIPTION AGENT BY THE SUBSCRIPTION EXPIRATION AND ELECTION DEADLINE.**

Return completed documents to:

MCC Rights Offering Subscription
c/o Verita Global
222 N Pacific Coast Highway, Suite 300
El Segundo, CA 90245

**Preferred Method**
Submit via email:
mccballots@veritaglobal.com

**The method of delivery of the Lender Subscription Form, Investor Questionnaire and any other required documents is at each Lender's option and sole risk.**

> **PAYMENT OF THE FUNDING AMOUNT <u>MUST</u> BE MADE BY LENDERS THAT ARE NOT BACKSTOP PARTIES BY THE SUBSCRIPTION EXPIRATION AND ELECTION DEADLINE.**

**8.  Designee Information.**

**Please complete ONLY if the New Preferred Equity, New Common Equity, New Warrants and/or New Term Loans are to be issued in the name of a designee or designees. The right to receive cash in connection with a New Term Loan Cash Out Election and/or New Common Equity Buyout Election cannot be designated to another person or entity. Any such party must also submit an IRS Form W-8 or IRS Form W-9, as applicable.**

(a)    <u>Amount of Designation.</u>[3]

Percentage of New RO Preferred Equity: _____

Percentage of New RO Common Equity: _____

Percentage of New Warrants: _____

Percentage of New Term Loans: _____

Percentage of Holdback Preferred Equity: _____

Percentage of RO Backstop Preferred Equity: _____

Percentage of Backstop Premium Preferred Equity: _____

Percentage of Backstop Common Equity: _____

(b)    <u>Designee Registration Information.</u>

**Please indicate on the lines provided below the name of the designee in whose name the New Preferred Equity, New Common Equity, New Warrants and/or New Term Loans should be registered, and in whose name the New Preferred Equity, New Common Equity, New Warrants and/or New Term Loans should be issued in the event that such instruments**

---

[3]    To the extent there is more than one designee, please attach a separate sheet with the information required under Item 8.

**are issued in registered form on the books and records of the Company or the applicable agent. It is strongly recommended that the below information be typed to ensure that it is legible. Please also select the "account type" into which such securities will be issued:**

Registration Name Line 1 (Maximum 35 Characters): _____

Registration Name Line 2 (Maximum 35 Characters): _____

(if needed)

Address 1: _____

Address 2: _____

Address 3: _____

City, State, Postal Code: _____

Telephone: _____

Email: _____

U.S. Tax Identification Number: _____

Check here if non-US (no TIN) ☐

☐    INDIVIDUAL ACCOUNT;

☐    IRA ACCOUNT;

☐    CORPORATIONS (S-CORP): (ASSOCIATED, ASSOCIATES, ASSOCIATION, CO, CO. COMPANY, CORP, CORPORATE/PARTNER, ENTERPRISE(S), FUND, GROUP, INCORPORATED, INC, INTERNATIONAL, INTL, LIMITED, LTD, LIFETIME LIMITED COMPANY, LLC, L.L.C., PARTNER, PARTNERS, PLC, PUBLIC LIMITED COMPANY);

☐    PARTNERSHIP: (LP, L P, L.P., LLP, LIMITED PARTNERSHIP, LIFETIME LIMITED PARTNERSHIP);

☐    BANK;

☐    NOMINEE ACCOUNTS;

☐    THE NEW C-CORP;

☐    NON-PROFIT: (CEMETERY, CHURCH, COLLEGE, COMMISSION FOR CHILDREN WITH, COMMISSION FOR HANDICAPPED, COMMISSION MINISTRIES INC, COMMISSION OF PUBLIC WORKS, COMMISSION OF BANKING & FOUNDATIONS, HOSPITAL, SCHOOL, SYNAGOGUE, UNIVERSITY);

☐    FIDUCIARY ACCOUNT: (CUSTODIAN, CO-TRUSTEE, ESTATE, EXECUTOR, EXECUTRIX FBO, F/B/O, FAO, FIDUCIARY TRUST, ITF, LIFE TEN, PENSION PLAN, INDIVIDUAL NAME PROFIT SHARING PLAN, RETIREMENT PLAN, 401K PLAN, SELL TRANSFER PLEDGE, STATE UNIFORM TRANSFER RO MINOR'S ACT, TTEE, TTEES, UW, UTMA, UGMA, USUFRUCT, UNIFIED, UNIF GIFT MIN ACT, UNIF TRUST MIN ACT, UNIFIED GIFT TO MINORS ACT, UNIFORM GIFT

TO MINORS, UNIFORM TRANSFER TO MINORS, GRAT (GRANTOR ANNUITY TRUST));

☐ TENANTS IN COMMON;

☐ TENANTS BY ENTIRETY: (TEN ENT, TENANTS ENT, TENANTS ENTIRETY, TENANTS BY ENTIRETY, TENANTS BY ENTIRETIES);

☐ JOINT TENANTS: (JT TEN, JT TEN WROS, JT WROS, J/T/W/R/S, JOINT TENANCY, JOINT TENANTS WITH RIGHT OF SURVIVORSHIP, JT OWNERSHIP, IF JT ACCOUNT WITH TOD); or

☐ COMMUNITY PROPERTY: (COM PROP, COMM PROP, COM PROPERTY, COMM PROPERTY, MARITAL PROPERTY, HWACP, HUSBAND & WIFE AS COMMUNITY PROPERTY).

**Please indicate on the lines provided below DTC participant information for deposit of the New Common Equity and New Preferred Equity into the brokerage account of the designee, in the event such securities are DTC-eligible and issued in book-entry form in accordance with the practices and procedures of DTC.**

DTC Participant Name: _____

DTC Participant Number: _____

Beneficial Holder Name: _____

Beneficial Holder Account Number: _____

DTC Participant Contact Name: _____

DTC Participant Contact Telephone: _____

DTC Participant Contact Email: _____

## 9.  Elections for Holders of Allowed First Lien Secured Claims

In accordance with the Plan, on the Effective Date, each First Lien Secured Claim Holder that submits a duly completed (a) New Term Loan Cash Out Election on or prior to the Subscription Expiration and Election Deadline shall receive New Term Loan Cash Out Proceeds and not New Debt and (b) New Common Equity Debt Election in accordance with the Procedures on or prior to the Subscription Expiration and Election Deadline shall receive New Term Loans and not New Common Equity.

Any First Lien Secured Claim Holder that does not submit a duly completed New Term Loan Cash Out Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the New Debt and not New Term Loan Cash Out Proceeds on account of such distribution.

Any First Lien Secured Claim Holder that does not submit a duly completed New Common Equity Debt Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the First Lien New Common Equity Allocation and not New Term Loans on account of such distribution. For the purposes of the New Term Loan Cash Out Election and/or

New Common Equity Debt Election, do not adjust the principal (face) amount for any accrued or unmatured interest.

If you do not know the principal amount of your Secured Loans, please contact the administrative agent for the Secured Loans immediately.

**The undersigned submits the following New Term Loan Cash Out Election:**

| Secured Loans | Aggregate Principal Amount | New Term Loan Cash Out Election |
|---|---|---|
| Cash Flow Revolving Facility | $[●] | ☐ |
| Cash Flow Term Loan Facility (USD) | $[●] | ☐ |
| Cash Flow Term Loan Facility (EUR) | €[●] | ☐ |

**The undersigned submits the following New Common Equity Debt Election:**

| Secured Loans | Aggregate Principal Amount | New Common Equity Debt Election |
|---|---|---|
| Cash Flow Revolving Facility | $[●] | ☐ |
| Cash Flow Term Loan Facility (USD) | $[●] | ☐ |
| Cash Flow Term Loan Facility (EUR) | €[●] | ☐ |

## 10. Election for Holders of First Lien Deficiency Claims

In accordance with the Plan, on the Effective Date, each First Lien Deficiency Claim Holder that submits a duly completed New Common Equity Debt Election on or prior to the Subscription Expiration and Election Deadline shall receive New Term Loans and not New Common Equity.

Any First Lien Deficiency Claim Holder that does not submit a duly completed New Common Equity Debt Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the Junior Funded Debt New Common Equity Allocation and not New Term Loans on account of such distribution. For the purposes of a New Common Equity Debt Election, do not adjust the principal (face) amount for any accrued or unmatured interest.

If you do not know the principal amount of your Secured Loans, please contact the administrative agent for the Secured Loans immediately.

**The undersigned submits the following New Common Equity Debt Election:**

| Secured Loans | Aggregate Principal Amount | New Common Equity Debt Election |
|---|---|---|
| Cash Flow Revolving Facility | $[●] | ☐ |
| Cash Flow Term Loan Facility (USD) | $[●] | ☐ |
| Cash Flow Term Loan Facility (EUR) | €[●] | ☐ |

## BACKSTOP PARTY ADDENDUM

The undersigned certifies that the undersigned is a party to that certain Backstop Commitment Agreement, dated [●], 2026, by and among Labels Buyer, LLC, the other Debtors party thereto and the Backstop Parties party thereto, and therefore is not required to submit payment of the Funding Amount in connection with the Rights Offering prior to the Subscription Expiration and Election Deadline. A Lender that is a Backstop Party must provide its payment in accordance with Section [  ] of the Backstop Commitment Agreement. If you are a Backstop Party, please submit a properly executed Backstop Party Addendum along with the Lender Subscription Form. The information in the table below should be identical to the information provided in Item 6 of the Lender Subscription Form.

**IN WITNESS WHEREOF**, the undersigned has executed this addendum on and as of the ___ day of _____ , 2026.

**If an Entity:**

Name of Entity:

Signature:  _____

By: _____

Its:  _____

State or Country of Principal Place of Business:  _____

Address:  _____

Fax:  _____

E-mail

US Tax ID/EIN:  _____

OR Check here if non-US (no TIN) ☐

**If an Individual Investor:**

Name of Individual:

Signature:  _____

State or Country of Primary Residence:  _____

Address:  _____

Fax:  _____

E-mail:  _____

US Tax ID/EIN:  _____

OR Check here if non-US (no TIN) ☐

**EXHIBIT A**

## INVESTOR QUESTIONNAIRE

*Each Holder, whether or not a Backstop Party, and each Designee must **separately** complete this Investor Questionnaire to participate in the Rights Offering. Each such person must certify by checking each box and signing below as follows:*

- The undersigned certifies that: (i) the undersigned is (A) the Holder, or an authorized signatory of the Holder, indicated below and that the undersigned Holder owns the reported Term Loan Principal Amount listed in Item 1 above, or (B) a Designee of a Holder (or, in each case, an authorized signatory thereof); (ii) the undersigned has received a copy of the Plan, the Disclosure Statement and the Procedures; and (iii) the undersigned understands that the exercise of the Subscription Rights is subject to all the terms and conditions set forth in the Procedures and, to the extent applicable, the Plan (including the Disclosure Statement).

- The undersigned certifies that the status checked below is accurate. Please check *one* of the two boxes below, either to confirm that you are a Qualified Investor or that you are not a Qualified Investor.

  - The undersigned is a Qualified Investor. *See* Appendix A for relevant definitions. Please check *one or more* of the three boxes below, as applicable.

    - By checking this box, you certify that you ARE an institutional "Accredited Investor" having (or a, direct or indirect, wholly-owned subsidiary of any entity having) total assets in excess of $10 million.

    - By checking this box, you certify that you ARE a "qualified institutional buyer" (as defined in Rule 144A of the Securities Act of 1933, as amended (the "Act")) having (or a, direct or indirect, wholly-owned subsidiary of any entity having) total assets in excess of $10 million.

    - By checking this box, you certify that you are NOT a U.S. person.

  - By checking this box, you certify that you are NOT a Qualified Investor.

- The undersigned has read and understands the Procedures, the Plan, the Disclosure Statement, this Subscription Form and, if applicable, the Backstop Commitment Agreement and understands the terms and conditions herein and therein and the risks associated with the Debtors and their business as described in the Plan and the Disclosure Statement. The undersigned has, to the extent deemed necessary by the same, discussed with legal counsel the representations, warranties, and agreements that such Person is making herein.

- The undersigned is acquiring the New Equity Interests and/or New Notes, as applicable, for its own account with the present intention of holding such securities for purposes of investment, and it has no intention of selling such securities in a public distribution in violation of the federal securities laws or any applicable local or state securities laws.

- The undersigned is not acquiring the New Equity Interests and/or New Notes, as applicable, as a result of any advertisement, article, notice or other communication regarding the New Equity Interests and/or New Notes, as applicable, published in any newspaper, magazine or similar media or broadcast over television or radio or presented at any seminar or, to such Person's knowledge, any other general solicitation or general advertisement. Neither the undersigned nor any Person acting on its behalf has engaged, or will engage, in any form of general solicitation or general advertising (within the meaning of Rule 502(c) under the Securities Act) in connection with the offering of the New Equity Interests and the New Notes, in violation of the federal securities laws or any applicable state securities laws.

- The undersigned understands and acknowledges that the New Equity Interests and the New Notes are being offered pursuant to an exemption from the registration requirements of the Securities Act in reliance upon section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder and/or in reliance on Regulation S under the Securities Act. The undersigned has read and understands the resale restrictions discussed under in Article XII of the Disclosure Statement.

**IF ANY BACKSTOP PARTY AND ITS DESIGNEES FAILS TO CERTIFY (BY FAILING TO CHECK EACH OF THE BOXES ABOVE) THAT IT IS A QUALIFIED INVESTOR AND THE OTHER MATTERS SPECIFIED THEREIN, SUCH PERSON RISKS FORFEITING ITS NEW PREFERRED EQUITY SUBSCRIPTION RIGHTS AND RIGHTS TO RECEIVE ANY HOLDBACK PREFERRED EQUITY, HOLDBACK PREFERRED EQUITY AND/OR BACKSTOP COMMON EQUITY TO BE ISSUED TO SUCH BACKSTOP PARTY ON ACCOUNT OF THE FOREGOING.**

**IF THERE IS MORE THAN ONE DESIGNEE, THE HOLDER (THE "<u>DESIGNATING PARTY</u>") MUST COMPLETE A SEPARATE FORM OF <u>EXHIBIT A</u> FOR <u>EACH</u> SUCH DESIGNEE.**

**HOLDER**:

Name: _____

By:_____
Name:
Title:

**OR (IF APPLICABLE)**

**DESIGNEE**:

Designating Party Name (same as above):

_____

Designee Name:

_____

By:_____
Name:
Title:

**APPENDIX A**

**"Qualified Investor" means (A) (i) a "qualified institutional buyer" (as defined in Rule 144A of the Securities Act), or (ii) an institutional "Accredited Investor" within the meaning of Rule 501(a) (1), (2), (3), (7), (8), (9), (12), or (13) of the Securities Act, in each case, having (or is a, direct or indirect, wholly-owned subsidiary of any entity having) total assets of in excess of $10 million, or (B) not a "U.S. person" (as defined in Regulation S of the Securities Act).**

An "Accredited Investor" (as defined in Rule 501 of Regulation D of the Act) is any person or entity that falls within any of the following categories:

1. Any bank as defined in Section 3(a)(2) of the Act, or any savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Act whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934; any investment adviser registered pursuant to Section 203 of the Investment Advisers Act of 1940 or registered pursuant to the laws of a state; any investment adviser relying on the exemption from registering with the Securities and Exchange Commission (the "Commission") under Section 203(l) or (m) of the Investment Advisers Act of 1940; any insurance company as defined in Section 2(a)(13) of the Act; any investment company registered under the Investment Company Act of 1940 or a business development company as defined in Section 2(a)(48) of that act; any Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958; any Rural Business Investment Company as defined in Section 384A of the Consolidated Farm and Rural Development Act; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of such act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000, or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

2. Any private business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940;

3. Any organization described in Section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, partnership, or limited liability company, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000;

4. Any director, executive officer, or general partner of the issuer of the securities being offered or sold, or any director, executive officer, or general partner of a general partner of that issuer;

5. Any natural person whose individual net worth, or joint net worth with that person's spouse or spousal equivalent, exceeds $1,000,000;

    a.    Except as provided in clause (ii) paragraph (5), for purposes of calculating net worth under this paragraph (5):

        i.    The person's primary residence shall not be included as an asset;

        ii.    Indebtedness that is secured by the person's primary residence, up to the estimated fair market value of the primary residence at the time of the sale of securities, shall not be included as a liability (except that if the amount of such indebtedness outstanding at the time of sale of securities exceeds the amount outstanding 60 days before such time, other than as a result of the acquisition of the primary residence, the amount of such excess shall be included as a liability); and

        iii.    Indebtedness that is secured by the person's primary residence in excess of the estimated fair market value of the primary residence at the time of the sale of securities shall be included as a liability;

    b.    Clause (i) of this paragraph (5) will not apply to any calculation of a person's net worth made in connection with a purchase of securities in accordance with a right to purchase such securities, provided that:

        i.    Such right was held by the person on July 20, 2010;

        ii.    The person qualified as an Accredited Investor on the basis of net worth at the time the person acquired such right; and

        iii.    The person held securities of the same issuer, other than such right, on July 20, 2010.

6. Any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse or spousal equivalent in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

7. Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii) under the Act;

8. Any entity in which all of the equity owners are Accredited Investors.

9. Any entity, of a type not listed in paragraphs (1), (2), (3), (7), or (8) above, not formed for the specific purpose of acquiring the securities offered, owning investments in excess of $5,000,000;

22

10. Any natural person holding in good standing one or more professional certifications or designations or credentials from an accredited educational institution that the Commission has designated as qualifying an individual for accredited investor status. In determining whether to designate a professional certification or designation or credential from an accredited educational institution for purposes of this paragraph (10), the Commission will consider, among others, the following attributes:

   a. The certification, designation, or credential arises out of an examination or series of examinations administered by a self-regulatory organization or other industry body or is issued by an accredited educational institution;

   b. The examination or series of examinations is designed to reliably and validly demonstrate an individual's comprehension and sophistication in the areas of securities and investing;

   c. Persons obtaining such certification, designation, or credential can reasonably be expected to have sufficient knowledge and experience in financial and business matters to evaluate the merits and risks of a prospective investment; and

   d. An indication that an individual holds the certification or designation is either made publicly available by the relevant self-regulatory organization or other industry body or is otherwise independently verifiable;

11. Any natural person who is a "knowledgeable employee," as defined in rule 3c5(a)(4) under the Investment Company Act of 1940 (17 CFR 270.3c-5(a)(4)), of the issuer of the securities being offered or sold where the issuer would be an investment company, as defined in section 3 of such act, but for the exclusion provided by either section 3(c)(1) or section 3(c)(7) of such act;

12. Any "family office," as defined in rule 202(a)(11)(G)-1 under the Investment Advisers Act of 1940 (17 CFR 275.202(a)(11)(G)-1):

   a. With assets under management in excess of $5,000,000,

   b. That is not formed for the specific purpose of acquiring the securities offered, and

   c. Whose prospective investment is directed by a person who has such knowledge and experience in financial and business matters that such family office is capable of evaluating the merits and risks of the prospective investment; and

13. Any "family client," as defined in rule 202(a)(11)(G)-1 under the Investment Advisers Act of 1940 (17 CFR 275.202(a)(11)(G)-(1)), of a family office meeting the requirements in paragraph (12) of this definition and whose prospective investment in the issuer is directed by such family office pursuant to paragraph (12)(iii).

23

"U.S. person" means:

1.      Any natural person resident in the United States;

2.      Any partnership or corporation organized or incorporated under the laws of the United States;

3.      Any estate of which any executor or administrator is a U.S. person;

4.      Any trust of which any trustee is a U.S. person;

5.      Any agency or branch of a foreign entity located in the United States;

6.      Any non-discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary for the benefit or account of a U.S. person;

7.      Any discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary organized, incorporated, or (if an individual) resident in the United States; and

8.      Any partnership or corporation if:

        a.      Organized or incorporated under the laws of any foreign jurisdiction; and

        b.      Formed by a U.S. person principally for the purpose of investing in securities not registered under the Securities Act, unless it is organized or incorporated, and owned, by accredited investors (as defined in Rule 501(a) under the Act) who are not natural persons, estates or trusts.

The following are not "U.S. persons":

1.      Any discretionary account or similar account (other than an estate or trust) held for the benefit or account of a non-U.S. person by a dealer or other professional fiduciary organized, incorporated, or (if an individual) resident in the United States;

2.      Any estate of which any professional fiduciary acting as executor or administrator is a U.S. person if:

        a.      An executor or administrator of the estate who is not a U.S. person has sole or shared investment discretion with respect to the assets of the estate; and

        b.      The estate is governed by foreign law;

3.      Any trust of which any professional fiduciary acting as trustee is a U.S. person, if a trustee who is not a U.S. person has sole or shared investment discretion with respect to the trust assets, and no beneficiary of the trust (and no settlor if the trust is revocable) is a U.S. person;

24

4.      An employee benefit plan established and administered in accordance with the law of a country other than the United States and customary practices and documentation of such country;

5.      Any agency or branch of a U.S. person located outside the United States if:

     a.      The agency or branch operates for valid business reasons; and

     b.      The agency or branch is engaged in the business of insurance or banking and is subject to substantive insurance or banking regulation, respectively, in the jurisdiction where located; and

6.      The International Monetary Fund, the International Bank for Reconstruction and Development, the Inter-American Development Bank, the Asian Development Bank, the African Development Bank, the United Nations, and their agencies, affiliates and pension plans, and any other similar international organizations, their agencies, affiliates and pension plans.

25

## Annex 2

**Noteholder Beneficial Owner Subscription Form**

[*Noteholder Beneficial Owner Subscription Form provided as a separate document.*]

**NOTEHOLDER BENEFICIAL OWNER SUBSCRIPTION FORM**
**FOR RIGHTS OFFERING AND CLAIMS ELECTIONS**

**FOR USE BY HOLDERS OF**
**SECURED NOTES**

**IN CONNECTION WITH THE DEBTORS'**
**DISCLOSURE STATEMENT DATED JANUARY 27, 2026**

---

### SUBSCRIPTION EXPIRATION AND ELECTION DEADLINE

**The Subscription Expiration and Election Deadline is 5:00 p.m. (Prevailing Eastern Time) on March 20, 2026, unless otherwise extended pursuant to the terms of the Rights Offering and Claims Election Procedures (the "Procedures").  Capitalized terms used but not defined herein shall have the meanings assigned to them in the Procedures.**

**To exercise the New Preferred Equity Subscription Rights and/or make the New Term Loan Cash Out Election and/or New Common Equity Debt Election with respect to the Secured Notes (as defined below), each Holder of the underlying Secured Notes (a "Noteholder") that is a First Lien Secured Claim Holder as of the date of any such exercise of New Preferred Equity Subscription Rights or any Election, as applicable, must (i) return its duly completed and executed Noteholder Beneficial Owner Subscription Form (with accompanying Investor Questionnaire, attached hereto as Exhibit A, and IRS Form W-9 or appropriate IRS Form W-8, as applicable) to its bank, broker, intermediary, securities nominee or agent (each, a "Nominee") (unless otherwise directed by its Nominee) in sufficient time to allow such Nominee to deliver such documents to be actually received by Verita Global, LLC (the "Subscription Agent") on or before the Subscription Expiration and Election Deadline, and (ii) electronically deliver (or cause to be delivered) such Secured Notes into an appropriate contra CUSIP established by The Depository Trust Company ("DTC") for the Rights Offering and/or Elections through the Automated Tender Offer Program ("ATOP") of DTC, so that they are received by the Subscription Expiration and Election Deadline.**

**To make the New Common Equity Debt Election with respect to the Secured Notes, each Noteholder that is a First Lien Deficiency Claim Holder as of the date of such election must (i) return its duly completed and executed Noteholder Beneficial Owner Subscription Form (with accompanying Investor Questionnaire, and IRS Form W-9 or appropriate IRS Form W-8, as applicable) to its Nominees (unless otherwise directed by its Nominee) in sufficient time to allow such Nominee to deliver such documents to be actually received by the Subscription Agent on or before the Subscription Expiration and Election Deadline, and (ii) electronically deliver (or cause to be delivered) such Secured Notes into an appropriate contra CUSIP established by DTC for the New Common Equity Debt Election through ATOP, so that they are received by the Subscription Expiration and Election Deadline.**

**Any First Lien Secured Claim Holder that does not validly exercise its New Preferred Equity Subscription Rights in accordance with the Procedures will not receive the New RO Equity.**

**Any First Lien Secured Claim Holder that does not submit a duly completed New Term Loan Cash Out Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the New Debt and not New Term Loan Cash Out Proceeds on account of such distribution.**

**Any First Lien Secured Claim Holder that does not submit a duly completed New Common Equity Debt Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the First Lien New Common Equity Allocation and not New Term Loans on account of such distribution.**

**Any First Lien Deficiency Claim Holder that does not submit a duly completed New Common Equity Debt Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the Junior Funded New Common Equity Allocation and not New Term Loans on account of such distribution.**

**Failure of a Noteholder to submit its Noteholder Beneficial Owner Subscription Form (or other instructions required by the Nominee) on a timely basis will result in forfeiture of such Noteholder's New Preferred Equity Subscription Rights and the rights to make the Elections, subject to the provisions of Section 10 of the Procedures relating to the waiver or correction of defects or irregularities. None of the Debtors, the Subscription Agent or any of the Backstop Parties will have any liability for any such failure.**

**Noteholders who are not Backstop Parties must deliver the Funding Amount for all Subscribed New RO Preferred Equity by the Subscription Expiration and Election Deadline.**

**Noteholders who are Backstop Parties must deliver the Funding Amount for (i) all Holdback Preferred Equity, (ii) all Subscribed New RO Preferred Equity (if any) and (iii) the applicable RO Backstop Preferred Equity (if any) no later than the Backstop Funding Deadline.**

**As part of the exercise and election process, following exercise of the New Preferred Equity Subscription Rights and/or the Elections, the Secured Notes underlying the New Preferred Equity Subscription Rights that are being exercised or for which an Election is being made will be frozen from Transfer. Noteholders that participate in the Rights Offering or make the Elections shall be prohibited from Transferring the underlying Secured Notes unless the Rights Offering is terminated.**

**All Noteholder Beneficial Owner Subscription Forms and/or other instructions required by the Nominee must be returned to the applicable Nominee in sufficient time to allow such Nominee to process and deliver the applicable underlying Secured Notes through ATOP prior to the Subscription Expiration and Election Deadline. By instructing its Nominee to submit the underlying Secured Notes through ATOP, the Noteholder is (i) authorizing its Nominee to exercise all New Preferred Equity Subscription Rights associated with the amount of Secured Notes as to which the instruction pertains, (ii) authorizing its Nominee to make the specified Election and (iii) certifying that it understands that, once submitted,**

**the underlying Secured Notes will be frozen from Transfer unless the Rights Offering is terminated.**

**Noteholders that are Backstop Parties must arrange for the Backstop Party Addendum to (a) be completed and returned to the Subscription Agent and (b) be provided to their Nominee so that the Nominee will be informed that funding from such Backstop Party does not have to be made prior to the Subscription Expiration and Election Deadline. Noteholders that are Backstop Parties must deliver the Funding Amount for (i) all Holdback Preferred Equity, (ii) all Subscribed New RO Preferred Equity (if any) and (iii) the applicable RO Backstop Preferred Equity (if any) directly to the Subscription Agent pursuant to the Funding Notice (except to the extent of any funding amounts previously provided by any such Noteholders to the Subscription Agent in accordance with the terms of the Backstop Commitment Agreement) no later than the Backstop Funding Deadline, or otherwise in accordance with the terms of the Backstop Commitment Agreement.**

**The offering, issuance and distribution of the New RO Equity, the Backstop Premium Preferred Equity, the Backstop Common Equity issued to Backstop Parties on account of the New Preferred Equity Investment Backstop Commitment Premium, the New Warrants, the First Lien New Common Equity Allocation and the Junior Funded Debt New Common Equity Allocation under the Plan after the Petition Date shall be exempt from registration requirements under the Securities Act, or any state or local law requiring registration for offer and sale of a security, in reliance upon the exemption provided in section 1145(a) of the Bankruptcy Code to the maximum extent permitted by law, or, if section 1145(a) is not available, then the New RO Equity, the Backstop Premium Preferred Equity, the Backstop Common Equity issued to Backstop Parties on account of the New Preferred Equity Investment Backstop Commitment Premium, the New Warrants, the First Lien New Common Equity Allocation and the Junior Funded Debt New Common Equity Allocation are being offered, issued and distributed under the Plan pursuant to other applicable exemptions from registration under the Securities Act and any other applicable securities laws. To the extent that the New RO Equity, the Backstop Premium Preferred Equity, the Backstop Common Equity issued to Backstop Parties on account of the New Preferred Equity Investment Backstop Commitment Premium, the New Warrants, the First Lien New Common Equity Allocation and the Junior Funded Debt New Common Equity Allocation are being issued under the Plan pursuant to section 1145(a) of the Bankruptcy Code, such New RO Equity, Backstop Premium Preferred Equity, Backstop Common Equity issued to Backstop Parties on account of the New Preferred Equity Investment Backstop Commitment Premium, New Warrants, the First Lien New Common Equity Allocation and the Junior Funded Debt New Common Equity Allocation may be resold by the holders thereof without registration unless the holder is an "underwriter" (as defined in section 1145(b)(1) of the Bankruptcy Code) with respect to such securities.**

**The Holdback Preferred Equity, RO Backstop Preferred Equity, Backstop Common Equity issued to the Backstop Parties on account of the foregoing and New Notes are being offered, issued and distributed without registration under the Securities Act, or any state or local law requiring registration for offer and sale of a security, in reliance on the exemption provided in Section 4(a)(2) of the Securities Act, Regulation S under the Securities Act or another**

**available exemption.  Resales of New Equity Interests issued to "underwriters," and resales of the Holdback Preferred Equity, RO Backstop Preferred Equity, Backstop Common Equity issued to the Backstop Parties on account of the foregoing and New Notes will require registration under the Securities Act or an exemption from registration under the Securities Act.  Resale restrictions are discussed in more detail in Article XII of the Disclosure Statement, entitled "Certain Securities Law Matters."**

**The New Preferred Equity Subscription Rights and the rights to make the Elections are not detachable or otherwise transferable separately from the underlying Secured Notes.  Rather, the New Preferred Equity Subscription Rights and the rights to make the Elections, together with the underlying Secured Notes with respect to which such New Preferred Equity Subscription Rights and rights to make the Elections were allocated, will trade together and will be evidenced by the underlying Secured Notes until the Subscription Expiration and Election Deadline, subject to such limitations, if any, that would be applicable to the transferability of the underlying Secured Notes; provided, that following the exercise of any New Preferred Equity Subscription Rights and/or any Election, the Holder thereof shall be prohibited from selling, transferring, assigning, pledging, hypothecating, participating, donating or otherwise encumbering or disposing of (each of the foregoing, a "Transfer") the Secured Notes corresponding to such New Preferred Equity Subscription Rights and/or Election unless the Rights Offering is terminated; provided further, that First Lien Secured Claim Holders shall be permitted to designate affiliates to receive the New Preferred Equity, the New Common Equity, the New Warrants and/or the New Debt, as applicable, without the need to Transfer any Secured Notes to such affiliate (including any controlled investment affiliates).**

**The distribution or communication of the Procedures and the issuance of the New Equity Interests and the New Notes in certain jurisdictions may be restricted by law.  No action has been taken or will be taken to permit the distribution or communication of the Procedures in any jurisdiction where any action for that purpose may be required.  Accordingly, the Procedures may not be distributed or communicated, and the New Equity Interests and the New Notes may not be subscribed for or issued, in any jurisdiction except in circumstances where such distribution, communication, subscription or issuance would comply with all applicable laws without the need for the Debtors to take any action or obtain any consent, approval or authorization therefor except for any notice filings required under U.S. federal and applicable state securities laws.  Further, the Rights Offering has not been approved or disapproved by the U.S. Securities and Exchange Commission or any other state securities commission or any other regulatory or governmental authority, nor have any of the foregoing passed upon the accuracy or adequacy of the information presented, and any representation to the contrary is a criminal offense.**

**None of the New Preferred Equity Subscription Rights distributed in connection with the Procedures have been or will be registered under the Securities Act, nor any state or local law requiring registration for offer and sale of a security.**

> **The rights and obligations of the Backstop Parties in the Rights Offering shall be governed by the Backstop Commitment Agreement to the extent the rights or obligations set forth therein differ from the rights and obligations set forth herein or in the Procedures.**
>
> **Please note that you are responsible for all calculations made pursuant to this Noteholder Beneficial Owner Subscription Form.**
>
> **Please refer to the Procedures for details on your entitlement to the New RO Preferred Equity to the extent you participate in the Rights Offering.**
>
> **If you have any questions, please contact the Subscription Agent at the following phone number or email address: (866) 967-1788 (domestic toll-free) or (310) 751-2688 (for international calls) or mccballots@veritaglobal.com. To obtain copies of the documents, please visit www.veritaglobal.net/MCC.**
>
> **SUBJECT TO THE TERMS AND CONDITIONS OF THE PLAN AND THE PROCEDURES (AND THE BACKSTOP COMMITMENT AGREEMENT IN THE CASE OF ANY BACKSTOP PARTY), ONCE A NOTEHOLDER HAS PROPERLY EXERCISED ITS NEW PREFERRED EQUITY SUBSCRIPTION RIGHTS AND/OR MADE AN ELECTION, SUCH EXERCISE AND/OR ELECTION WILL BE IRREVOCABLE AND WITHDRAWALS WILL NOT BE PERMITTED. NOTWITHSTANDING THE FOREGOING, WITHDRAWALS THROUGH PTOP WILL BE ALLOWED SOLELY TO CORRECT INCORRECT INSTRUCTIONS AND ARE SUBJECT TO THE SUBSCRIPTION AGENT'S APPROVAL. NOMINEES MUST CONTACT THE SUBSCRIPTION AGENT PRIOR TO SUBMITTING ANY WITHDRAWAL REQUESTS.**
>
> **To exercise your Rights, fill out Items 1-9 in this Noteholder Beneficial Owner Subscription Form (including the Investor Questionnaire attached hereto as <u>Exhibit A</u>) completely and legibly – *and follow the instructions of your Nominee with respect to the submission of your instructions to the Nominee.***
>
> **To make an Election, fill out Item 10 and/or Item 11, as applicable, in this Noteholder Beneficial Owner Subscription Form completely and legibly – *and follow the instructions of your Nominee with respect to the submission of your instructions to the Nominee.***

**1. Amount of Secured Notes**

I certify that I am a beneficial owner of the aggregate principal amounts as set forth below of the Debtors' 5.875% Senior Secured Notes due 2028 (the "<u>2028 5.875% Secured Notes</u>"), 9.50% Senior Secured Notes due 2028 (the "<u>2028 9.50% Secured Notes</u>") and 8.625% Senior Secured Notes due 2031 (the "<u>2031 Secured Notes</u>" and, together with the 2028 5.875% Secured Notes and the 2028 9.50% Secured Notes, the "<u>Secured Notes</u>") in the following principal amounts (insert amount on the lines below) or that I am the authorized signatory of that beneficial owner. For the purposes of this Noteholder Beneficial Owner Subscription Form, do not adjust the

principal (face) amount for any accrued or unmatured interest.  Accrued prepetition interest is accounted for in the multiplier set forth in Item 2 and Item 3a below.

If you do not know the principal amount of your Secured Notes, please contact your Nominee immediately.

*Insert aggregate principal amount of Secured Notes held, as applicable.*

2028 5.875% Secured Notes (CUSIP
50168QAC9/U5022TAC0):_____

[1A]

2028 9.50% Secured Notes (CUSIP
50168QAE5/U5022TAE6):_____

[1B]

2031 Secured Notes (CUSIP
50168QAF2/U5022TAF3):_____

[1C]

**IMPORTANT NOTE: IF YOU HOLD YOUR SECURED NOTES THROUGH MORE THAN ONE NOMINEE, YOU MUST COMPLETE AND RETURN A SEPARATE NOTEHOLDER BENEFICIAL OWNER SUBSCRIPTION FORM TO EACH APPLICABLE NOMINEE.  YOU MAY NOT AGGREGATE POSITIONS HELD BY DIFFERENT NOMINEES ON A SINGLE NOTEHOLDER BENEFICIAL OWNER SUBSCRIPTION FORM.**

## 2. Funding Amount Calculation

Each First Lien Secured Claim Holder is entitled to subscribe for and fund New RO Preferred Equity in an amount equal to its Pro Rata share of the Rights Offering Amount based upon a fraction (expressed as a percentage), the numerator of which is its Allowed First Lien Secured Claims and the denominator of which is all Allowed First Lien Secured Claims.

Each Noteholder has the right, but not the obligation, to participate in the Rights Offering by subscribing for and funding New RO Preferred Equity.

Subject to the terms and conditions set forth in the Plan and the Procedures, each Noteholder is entitled to subscribe for either ***all or none*** of its Pro Rata share of New RO Preferred Equity at the Funding Amount.

By filling in the following blanks, you are indicating that the undersigned Noteholder is subscribing to fund the principal amount of New RO Preferred Equity associated with the principal amount specified in Box B, on the terms and subject to the conditions set forth in the Procedures.

**New RO Preferred Equity:**

The amount of New RO Preferred Equity for which the undersigned may subscribe, based on the principal amount shown above, is calculated as follows:

| BOX A | | | | BOX B |
|---|---|---|---|---|
| _____<br>(Insert principal amount of 2028 5.875% Secured Notes from Item 1 above) | X | [●] | = | _____<br>[2A]<br>(Principal Amount of New RO Preferred Equity)<br>(Round down to nearest whole number) |
| _____<br>(Insert principal amount of 2028 9.50% Secured Notes from Item 1 above) | X | [●] | = | _____<br>[2B]<br>(Principal Amount of New RO Preferred Equity)<br>(Round down to nearest whole number) |
| _____<br>(Insert principal amount of 2031 Secured Notes from Item 1 above) | X | [●] | = | _____<br>[2C]<br>(Principal Amount of New RO Preferred Equity)<br>(Round down to nearest whole number) |

| | | | | |
|---|---|---|---|---|
| _____<br>[2A]<br>(Principal Amount of New RO Preferred Equity) | X | [1.00] | = | _____<br>[3A]<br>(Funding Amount) |
| _____<br>[2B]<br>(Principal Amount of New RO Preferred Equity) | X | [1.00] | = | _____<br>[3B]<br>(Funding Amount) |
| _____<br>[2C]<br>(Principal Amount of New RO Preferred Equity) | X | [1.00] | = | _____<br>[3C]<br>(Funding Amount) |

| BOX C |
|---|
| **Total Funding Amount**: _____<br>[3A]+[3B]+[3C] |

**3. Payment and Delivery Instructions**

    **Insert Funding Amount as set forth in BOX C:**

        $_____

For Noteholders that did not check the box in Item 5 below, payment of the Funding Amount calculated pursuant to Item 2 above must be made by wire transfer ONLY of immediately available funds in accordance with the following wire instructions:

*Domestic/International wire:*

| Name of Account: | Computershare Inc AAF for Client Funds 1 |
|---|---|
| Account No.: | |
| SWIFT No.: | |
| Bank Name: | |
| Bank Address: | |
| Routing Number: | |
| Special Instructions: | Funding for KCC – Multi-Color Corporation Offer – [Name of Participant] |

**Holders of Allowed First Lien Secured Claims who are not Backstop Parties must deliver the Funding Amount for all Subscribed New RO Preferred Equity shown in Box C above by the Subscription Expiration and Election Deadline.**

**Holders of Allowed First Lien Secured Claims who are Backstop Parties will receive a separate Funding Notice (as defined in the Backstop Commitment Agreement) and must deliver the Funding Amount for (i) all Holdback Preferred Equity, (ii) all Subscribed New RO Preferred Equity (if any) and (iii) the applicable RO Backstop Preferred Equity (if any) no later than the Backstop Funding Deadline.**

**THE PAYMENT MUST BE MADE BY NOTEHOLDERS THAT ARE NOT BACKSTOP PARTIES BY THE SUBSCRIPTION EXPIRATION AND ELECTION DEADLINE.**

Please provide your completed Noteholder Beneficial Owner Subscription Form (Investor Questionnaire and other required instruction, as applicable) to your Nominee **in sufficient time** to allow such Nominee to deliver the aggregate principal amount of Secured Notes shown in Box A via ATOP.  The Funding Amount must be paid by the Subscription Expiration and Election Deadline, unless you are a Backstop Party.

**PLEASE NOTE: NO SUBSCRIPTION WILL BE VALID UNLESS THE RELEVANT SECURED NOTES HAVE BEEN TENDERED THROUGH ATOP BY THE SUBSCRIPTION EXPIRATION AND ELECTION DEADLINE.**

**4. Certification and Investor Questionnaire.**

The undersigned hereby certifies that it (i) is the beneficial owner of the Secured Notes set forth in Item 1 above, or the authorized signatory (the "Authorized Signatory") of such Noteholder acting on behalf of the Noteholder, (ii) is entitled to participate in the Rights Offering, (iii) has reviewed a copy of the Plan, the Disclosure Statement and the Procedures and other applicable materials and (iv) understands that the exercise of the New Preferred Equity Subscription Rights under the Rights Offering and the submission of the Elections are subject to all the terms and conditions set forth in the Plan and the Procedures.

Please provide your completed Noteholder Beneficial Owner Subscription Form and Investor Questionnaire to your Nominee in sufficient time to allow your Nominee to process and deliver your underlying Secured Notes through ATOP by the Subscription Expiration and Election Deadline. By subscribing for the total principal amount of New RO Preferred Equity shown in Box C above, the Noteholder (or the Authorized Signatory on behalf of the Noteholder) is hereby instructing its Nominee to arrange for the delivery of the Secured Notes shown in Box A via ATOP by the Subscription Expiration and Election Deadline, and acknowledges that payment of the Funding Amount shown in Box C associated with the delivery of such Secured Notes must be made by the Noteholder by the Subscription Expiration and Election Deadline, unless the Noteholder is a Backstop Party.

**The Noteholder (or the Authorized Signatory on behalf of such Noteholder) acknowledges that, by executing this Noteholder Beneficial Owner Subscription Form or otherwise providing its subscription instructions to its Nominee, the Noteholder has elected to subscribe for the principal amount of New RO Preferred Equity associated with the principal amount indicated, and will be bound to pay the Funding Amount for the New RO Preferred Equity it has subscribed for and that it may be liable to the Debtors to the extent of any nonpayment. In addition, the Noteholder (or the Authorized Signatory on behalf of such Noteholder) acknowledges that (a) by making the specified Elections under Item 10, the Noteholder will have irrevocably elected to (i) receive New Term Loan Cash Out Proceeds and not New Debt and (ii) New Term Loans and not New Common Equity and (b) by making the specified New Common Equity Debt Election under Item 11, the Noteholder will have irrevocably elected to receive New Term Loans and not New Common Equity.**

**In the event that funds received by the Subscription Agent in payment for a subscribing Noteholder's Subscribed New RO Preferred Equity are less than the aggregate Funding Amount for the Subscribed New RO Preferred Equity of such Noteholder, the subscription(s) represented by such subscribing Noteholder's Noteholder Beneficial Owner Subscription Form will not be recognized, and the associated New Preferred Equity Subscription Rights will be deemed forever relinquished and waived, subject to the provisions of Section 10 of the Procedures relating to the waiver or correction of defects or irregularities.**

Date: _____

Name of Noteholder: _____

Signature: _____

Name of Signatory: _____

Title: _____

Telephone Number: _____

Email: _____

**5. Backstop Party Representation.**

*(This section is only for Backstop Parties, each of whom is aware of its status as a Backstop Party.  If you are a Backstop Party, a fully completed Backstop Party Addendum MUST be provided to your Nominee.  A Backstop Party Addendum is attached to this Noteholder Beneficial Owner Subscription Form, and the Backstop Party is responsible for forwarding it to their Nominee who will confirm that payment does not have to be made prior to the Subscription Expiration and Election Deadline.  Please note that checking the box below if you are not a Backstop Party may result in forfeiture of your rights to participate in the Rights Offering.)*

☐   I am a Backstop Party identified in the Backstop Commitment Agreement and the Backstop Party Addendum has been provided to my Nominee.

**6. Tender of Secured Notes; Exercise Instruction.**

**Each Noteholder that exercises New Preferred Equity Subscription Rights in respect of Secured Notes must direct its Nominee to electronically tender their applicable underlying Secured Notes in the principal amount(s) set forth in Item 1 (which Nominees should copy below) to an account of the Subscription Agent via ATOP in order to participate in the Rights Offering.  Nominees must tender Noteholders' Secured Notes on a per Holder basis. Nominees may not submit bulk tender instructions.  Tendered instructions are irrevocable. Notwithstanding the foregoing, withdrawals through PTOP will be allowed solely to correct incorrect instructions and are subject to the Subscription Agent's approval.  Nominees must contact the Subscription Agent prior to submitting any withdrawal requests.**

| To Be Completed by Nominee Only (Evidence of electronic delivery of Secured Notes via ATOP) | | | | | |
|---|---|---|---|---|---|
| **CUSIP / ISIN** | **Security Description** | **Principal Amount of Secured Notes Tendered into ATOP** | **Name & DTC # of Nominee Holding Position at DTC** | **DTC ATOP Confirmation Number (VOI) (If Applicable)** | **Euroclear or Clearstream Reference Number (If Applicable)** |
| 50168QAC9/ U5022TAC0 | 2028 5.875% Secured Notes | $ | | | |
| 50168QAE5/ U5022TAE6 | 2028 9.50% Secured Notes | $ | | | |
| 50168QAF2/ U5022TAF3 | 2031 Secured Notes | $ | | | |

**7. Registration Information**

**The Debtors intend that the New Preferred Equity and New Common Equity will be initially issued on the books and records of the Company's transfer agent.**

**After the initial issuance of the New Preferred Equity and New Common Equity, however, Lenders and Noteholders may freely transfer such New Preferred Equity and New Common Equity in accordance with the procedures of the Company's transfer agent to an**

**account at DTC (if the New Preferred Equity and New Common Equity have been issued in book-entry form in accordance with the practices and procedures of DTC), subject to applicable securities laws and provisions of the New Governance Documents, including compliance with section 1145 of the Bankruptcy Code. For the avoidance of doubt, the Holdback Preferred Equity, RO Backstop Preferred Equity, Backstop Common Equity issued to Backstop Parties on account of the foregoing and New Notes are being issued pursuant to Section 4(a)(2) of the Securities Act, Regulation S under the Securities Act or another available exemption, and such shares will bear a legend indicating that the securities may not be sold or otherwise transferred unless such securities are registered with the SEC pursuant to the Securities Act and comply with any applicable state or local law requiring registration of securities, or such sale or transfer is exempt from registration requirements of the Securities Act and any applicable state or local law.**

**The New Warrants will be issued in book-entry form on the books and records of the Company. The New Term Loans will be issued in accordance with the terms of the New Term Loan Facility Credit Agreement and records thereto will be maintained by the New Term Loan Facility Agent.**

**Please indicate on the lines provided below the name of the Noteholder or its designee in whose name the New Preferred Equity, New Common Equity, New Warrants, and New Term Loans should be issued. You may direct that the New Preferred Equity, New Common Equity, New Warrants, and New Term Loans be issued to different parties in any allocation of your choice. For example, you may request that all New Common Equity be delivered to fund 1 while all of the New Warrants be delivered to fund 2. It is strongly recommended that the below information be typed to ensure that it is legible. Please also select the "account type" into which such securities will be issued:**

Registration Name[1] Line 1 (Maximum 35 Characters):_____

Registration Name Line 2 (Maximum 35 Characters):_____

(if needed)

Address 1:_____

Address 2:_____

Address 3:_____

City, State, Postal Code:_____

Telephone:_____

Email: _____

U.S. Tax Identification Number: _____

Check here if non-US (no TIN) ☐

---

[1]   To the extent there is more than one registrant, please attach a separate sheet with the information required under Item 7.

☐   INDIVIDUAL ACCOUNT;

☐   IRA ACCOUNT;

☐   CORPORATIONS (S-CORP): (ASSOCIATED, ASSOCIATES, ASSOCIATION, CO, CO. COMPANY, CORP, CORPORATE/PARTNER, ENTERPRISE(S), FUND, GROUP, INCORPORATED, INC, INTERNATIONAL, INTL, LIMITED, LTD, LIFETIME LIMITED COMPANY, LLC, L.L.C., PARTNER, PARTNERS, PLC, PUBLIC LIMITED COMPANY);

☐   PARTNERSHIP: (LP, L P, L.P., LLP, LIMITED PARTNERSHIP, LIFETIME LIMITED PARTNERSHIP);

☐   BANK;

☐   NOMINEE ACCOUNTS;

☐   THE NEW C-CORP;

☐   NON-PROFIT: (CEMETERY, CHURCH, COLLEGE, COMMISSION FOR CHILDREN WITH, COMMISSION FOR HANDICAPPED, COMMISSION MINISTRIES INC, COMMISSION OF PUBLIC WORKS, COMMISSION OF BANKING & FOUNDATIONS, HOSPITAL, SCHOOL, SYNAGOGUE, UNIVERSITY);

☐   FIDUCIARY ACCOUNT: (CUSTODIAN, CO-TRUSTEE, ESTATE, EXECUTOR, EXECUTRIX FBO, F/B/O, FAO, FIDUCIARY TRUST, ITF, LIFE TEN, PENSION PLAN, INDIVIDUAL NAME PROFIT SHARING PLAN, RETIREMENT PLAN, 401K PLAN, SELL TRANSFER PLEDGE, STATE UNIFORM TRANSFER RO MINOR'S ACT, TTEE, TTEES, UW, UTMA, UGMA, USUFRUCT, UNIFIED, UNIF GIFT MIN ACT, UNIF TRUST MIN ACT, UNIFIED GIFT TO MINORS ACT, UNIFORM GIFT TO MINORS, UNIFORM TRANSFER TO MINORS, GRAT (GRANTOR ANNUITY TRUST));

☐   TENANTS IN COMMON;

☐   TENANTS BY ENTIRETY: (TEN ENT, TENANTS ENT, TENANTS ENTIRETY, TENANTS BY ENTIRETY, TENANTS BY ENTIRETIES);

☐   JOINT TENANTS: (JT TEN, JT TEN WROS, JT WROS, J/T/W/R/S, JOINT TENANCY, JOINT TENANTS WITH RIGHT OF SURVIVORSHIP, JT OWNERSHIP, IF JT ACCOUNT WITH TOD); or

☐   COMMUNITY PROPERTY: (COM PROP, COMM PROP, COM PROPERTY, COMM PROPERTY, MARITAL PROPERTY, HWACP, HUSBAND & WIFE AS COMMUNITY PROPERTY).

**Please indicate on the lines provided below DTC participant information for deposit of the New Common Equity and New Preferred Equity into the brokerage account of the Noteholder in the event such securities are DTC-eligible and issued in book-entry form in accordance with the practices and procedures of DTC.**

DTC Participant Name: _____

DTC Participant Number: _____

Beneficial Holder Name: _____

Beneficial Holder Account Number: _____

DTC Participant Contact Name: _____

DTC Participant Contact Telephone: _____

DTC Participant Contact Email: _____

**8. Wire information in the event a refund is needed:**

| Account Name: | |
|---|---|
| Bank Account No.: | |
| ABA/Routing No.: | |
| Bank Name: | |
| Bank Address: | |
| Reference: | |

**Once completed, you must return this Noteholder Beneficial Owner Subscription Form and Investor Questionnaire (or other form of instruction required by your Nominee) to your Nominee in accordance with your Nominee's instructions in sufficient time for your Nominee to tender your Secured Notes to an appropriate contra CUSIP established by DTC through ATOP no later than the Subscription Expiration and Election Deadline.**

**PLEASE RETURN THIS NOTEHOLDER BENEFICIAL OWNER SUBSCRIPTION FORM (INCLUDING INVESTOR QUESTIONNAIRE) OR OTHER INSTRUCTION (AS REQUIRED BY THE NOMINEE) ONLY TO YOUR NOMINEE. <u>DO NOT</u> RETURN THIS FORM DIRECTLY TO THE SUBSCRIPTION AGENT, UNLESS YOUR NOMINEE HAS ALREADY TENDERED YOUR SECURED NOTES THROUGH ATOP OR OTHERWISE AND THE RELATED VOI NUMBER(S) (IF APPLICABLE) ARE PROVIDED ON THIS NOTEHOLDER BENEFICIAL OWNER SUBSCRIPTION FORM.**

**THE SUBSCRIPTION AGENT MUST BE IN RECEIPT OF THIS NOTEHOLDER BENEFICIAL OWNER SUBSCRIPTION FORM BY THE SUBSCRIPTION EXPIRATION AND ELECTION DEADLINE.**

Return completed documents to:
MCC Rights Offering Subscription
c/o Verita Global
222 N Pacific Coast Highway, Suite 300
El Segundo, CA 90245

**Preferred Method**
Submit via email:
mccballots@veritaglobal.com

**The method of delivery of the applicable Noteholder Beneficial Owner Subscription Form and Investor Questionnaire (or other form of instruction required by your Nominee) and any other required documents is at each Noteholder's option and sole risk.  Each Noteholder must ensure that its Nominee tenders its Secured Notes at or prior to the Subscription Expiration and Election Deadline and, except for Noteholders who are Backstop Parties, coordinates payment of the Funding Amount.**

---

**PLEASE NOTE:  THE SUBSCRIPTION WILL NOT BE VALID UNLESS THE RELEVANT SECURED NOTES HAVE BEEN TENDERED THROUGH ATOP OR OTHERWISE BY THE SUBSCRIPTION EXPIRATION AND ELECTION DEADLINE.**

**PAYMENT OF THE FUNDING AMOUNT <u>MUST</u> BE MADE BY NOTEHOLDERS THAT ARE NOT BACKSTOP PARTIES BY THE SUBSCRIPTION EXPIRATION AND ELECTION DEADLINE.**

---

**9. Designee Information.**

**Please complete ONLY if the New Preferred Equity, New Common Equity, New Warrants and/or New Term Loans are to be issued in the name of a designee or designees. The right to receive cash in connection with a New Term Loan Cash Out Election and/or New Common Equity Buyout Election cannot be designated to another person or entity.  Any such party must also submit an IRS Form W-8 or IRS Form W-9, as applicable.**

    a.    <u>Amount of Designation</u>.[2]

Percentage of New RO Preferred Equity: _____

Percentage of New RO Common Equity: _____

Percentage of New Warrants: _____

Percentage of New Term Loans: _____

Percentage of Holdback Preferred Equity: _____

Percentage of RO Backstop Preferred Equity: _____

Percentage of Backstop Premium Preferred Equity: _____

Percentage of Backstop Common Equity: _____

---

[2]    To the extent there is more than one designee, please attach a separate sheet with the information required under Item 9.

      b.       <u>Designee Registration Information</u>.

**Please indicate on the lines provided below the name of the designee in whose name the New Preferred Equity, New Common Equity, New Warrants and/or New Term Loans should be registered, and in whose name the New Preferred Equity, New Common Equity, New Warrants and/or New Term Loans should be issued in the event that such instruments are issued in registered form on the books and records of the Company or the applicable agent.**

**It is strongly recommended that the below information be typed to ensure that it is legible. Please also select the "account type" into which such securities will be issued:**

Registration Name Line 1 (Maximum 35 Characters): _____

Registration Name Line 2 (Maximum 35 Characters): _____

(if needed)

Address 1: _____

Address 2: _____

Address 3: _____

City, State, Postal Code: _____

Telephone: _____

Email: _____

U.S. Tax Identification Number: _____

Check here if non-US (no TIN) ☐

☐      INDIVIDUAL ACCOUNT;

☐      IRA ACCOUNT;

☐      CORPORATIONS (S-CORP): (ASSOCIATED, ASSOCIATES, ASSOCIATION, CO, CO. COMPANY, CORP, CORPORATE/PARTNER, ENTERPRISE(S), FUND, GROUP, INCORPORATED, INC, INTERNATIONAL, INTL, LIMITED, LTD, LIFETIME LIMITED COMPANY, LLC, L.L.C., PARTNER, PARTNERS, PLC, PUBLIC LIMITED COMPANY);

☐      PARTNERSHIP: (LP, L P, L.P., LLP, LIMITED PARTNERSHIP, LIFETIME LIMITED PARTNERSHIP);

☐      BANK;

☐      NOMINEE ACCOUNTS;

☐      THE NEW C-CORP;

☐      NON-PROFIT: (CEMETERY, CHURCH, COLLEGE, COMMISSION FOR CHILDREN WITH, COMMISSION FOR HANDICAPPED, COMMISSION MINISTRIES INC, COMMISSION OF PUBLIC WORKS, COMMISSION OF BANKING & FOUNDATIONS, HOSPITAL, SCHOOL, SYNAGOGUE, UNIVERSITY);

☐     FIDUCIARY ACCOUNT: (CUSTODIAN, CO-TRUSTEE, ESTATE, EXECUTOR, EXECUTRIX FBO, F/B/O, FAO, FIDUCIARY TRUST, ITF, LIFE TEN, PENSION PLAN, INDIVIDUAL NAME PROFIT SHARING PLAN, RETIREMENT PLAN, 401K PLAN, SELL TRANSFER PLEDGE, STATE UNIFORM TRANSFER RO MINOR'S ACT, TTEE, TTEES, UW, UTMA, UGMA, USUFRUCT, UNIFIED, UNIF GIFT MIN ACT, UNIF TRUST MIN ACT, UNIFIED GIFT TO MINORS ACT, UNIFORM GIFT TO MINORS, UNIFORM TRANSFER TO MINORS, GRAT (GRANTOR ANNUITY TRUST));

☐     TENANTS IN COMMON;

☐     TENANTS BY ENTIRETY: (TEN ENT, TENANTS ENT, TENANTS ENTIRETY, TENANTS BY ENTIRETY, TENANTS BY ENTIRETIES);

☐     JOINT TENANTS: (JT TEN, JT TEN WROS, JT WROS, J/T/W/R/S, JOINT TENANCY, JOINT TENANTS WITH RIGHT OF SURVIVORSHIP, JT OWNERSHIP, IF JT ACCOUNT WITH TOD); or

☐     COMMUNITY PROPERTY: (COM PROP, COMM PROP, COM PROPERTY, COMM PROPERTY, MARITAL PROPERTY, HWACP, HUSBAND & WIFE AS COMMUNITY PROPERTY).

**Please indicate on the lines provided below DTC participant information for deposit of the New Common Equity and New Preferred Equity into the brokerage account of the designee, in the event such securities are DTC-eligible and issued in book-entry form in accordance with the practices and procedures of DTC.**

DTC Participant Name: _____

DTC Participant Number: _____

Beneficial Holder Name: _____

Beneficial Holder Account Number: _____

DTC Participant Contact Name: _____

DTC Participant Contact Telephone: _____

DTC Participant Contact Email: _____

## 10. Elections for Holders of Allowed First Lien Secured Claims

In accordance with the Plan, on the Effective Date, each First Lien Secured Claim Holder that submits a duly completed (a) New Term Loan Cash Out Election on or prior to the Subscription Expiration and Election Deadline shall receive New Term Loan Cash Out Proceeds and not New Debt and (b) New Common Equity Debt Election in accordance with the Procedures on or prior to the Subscription Expiration and Election Deadline shall receive New Term Loans and not New Common Equity.

Any First Lien Secured Claim Holder that does not submit a duly completed New Term Loan Cash Out Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the New Debt and not New Term Loan Cash Out Proceeds on account of such distribution.

Any First Lien Secured Claim Holder that does not submit a duly completed New Common Equity Debt Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the First Lien New Common Equity Allocation and not New Term Loans on account of such distribution.

For the purposes of the New Term Loan Cash Out Election and/or New Common Equity Debt Election, do not adjust the principal (face) amount for any accrued or unmatured interest.

If you do not know the principal amount of your Secured Notes, please contact your Nominee immediately.

**The undersigned submits the following New Term Loan Cash Out Election:**

| Secured Notes | CUSIP / ISIN | Aggregate Principal Amount | New Term Loan Cash Out Election |
|---|---|---|---|
| 2028 5.875% Secured Notes | 50168QAC9/ US50168QAC96 (Rule 144A)<br><br>U5022TAC0/ USU5022TAC00 (Regulation S) | $[●] | ☐ |
| 2028 9.50% Secured Notes | 50168QAE5/ US550168QAE52 (Rule 144A)<br><br>U5022TAE6/ USU5022TAE65 (Regulation S) | $[●] | ☐ |
| 2031 Secured Notes | 50168QAF2/ US50168QAF28 (Rule 144A)<br><br>U5022TAF3/ USU5022TAF31 (Regulation S) | $[●] | ☐ |

**The undersigned submits the following New Common Equity Debt Election:**

| Secured Notes | CUSIP / ISIN | Aggregate Principal Amount | New Common Equity Debt Election, |
|---|---|---|---|
| 2028 5.875% Secured Notes | 50168QAC9/ US50168QAC96 (Rule 144A)<br><br>U5022TAC0/ | $[●] | ☐ |

| Secured Notes | CUSIP / ISIN | Aggregate Principal Amount | New Common Equity Debt Election |
|---|---|---|---|
| | USU5022TAC00 (Regulation S) | | |
| 2028 9.50% Secured Notes | 50168QAE5/ US550168QAE52 (Rule 144A)<br><br>U5022TAE6/ USU5022TAE65 (Regulation S) | $[●] | ☐ |
| 2031 Secured Notes | 50168QAF2/ US50168QAF28 (Rule 144A)<br><br>U5022TAF3/ USU5022TAF31 (Regulation S) | $[●] | ☐ |

**IMPORTANT NOTE: IF YOU HOLD YOUR SECURED NOTES THROUGH MORE THAN ONE NOMINEE, YOU MUST COMPLETE AND RETURN A SEPARATE NOTEHOLDER BENEFICIAL OWNER SUBSCRIPTION FORM TO EACH APPLICABLE NOMINEE. YOU MAY NOT AGGREGATE POSITIONS HELD BY DIFFERENT NOMINEES ON A SINGLE NOTEHOLDER BENEFICIAL OWNER SUBSCRIPTION FORM.**

## 11. Election for Holders of First Lien Deficiency Claims

In accordance with the Plan, on the Effective Date, each First Lien Deficiency Claim Holder that submits a duly completed New Common Equity Debt Election on or prior to the Subscription Expiration and Election Deadline shall receive New Term Loans and not New Common Equity.

Any First Lien Deficiency Claim Holder that does not submit a duly completed New Common Equity Debt Election on or prior to the Subscription Expiration and Election Deadline shall receive its Pro Rata share of the Junior Funded Debt New Common Equity Allocation and not New Term Loans on account of such distribution.

For the purposes of a New Common Equity Debt Election, do not adjust the principal (face) amount for any accrued or unmatured interest.

If you do not know the principal amount of your Secured Notes, please contact your Nominee immediately.

**The undersigned submits the following New Common Equity Debt Election:**

| Secured Notes | CUSIP / ISIN | Aggregate Principal Amount | New Common Equity Debt Election |
|---|---|---|---|
| 2028 5.875% Secured Notes | 50168QAC9/ | $[●] | ☐ |

| | US50168QAC96 (Rule 144A) | | |
| | U5022TAC0/ USU5022TAC00 (Regulation S) | | |
| 2028 9.50% Secured Notes | 50168QAE5/ US550168QAE52 (Rule 144A) | $[●] | ☐ |
| | U5022TAE6/ USU5022TAE65 (Regulation S) | | |
| 2031 Secured Notes | 50168QAF2/ US50168QAF28 (Rule 144A) | $[●] | ☐ |
| | U5022TAF3/ USU5022TAF31 (Regulation S) | | |

**IMPORTANT NOTE: IF YOU HOLD YOUR SECURED NOTES THROUGH MORE THAN ONE NOMINEE, YOU MUST COMPLETE AND RETURN A SEPARATE NOTEHOLDER BENEFICIAL OWNER SUBSCRIPTION FORM TO EACH APPLICABLE NOMINEE.  YOU MAY NOT AGGREGATE POSITIONS HELD BY DIFFERENT NOMINEES ON A SINGLE NOTEHOLDER BENEFICIAL OWNER SUBSCRIPTION FORM.**

**Nominee ATOP Tender Certification**

<u>Each Noteholder that exercises the </u>Rights Offering and/or makes an Election must direct its Nominee to electronically tender their applicable underlying Secured Note sin the principal amounts set forth on this subscription and election form (which the Nominees should copy below) to the appropriate account via ATOP.  Nominees must tender on a per holder basis.  Nominees may not submit bulk tender instructions.

| To Be Completed by Nominee Only (Evidence of electronic delivery of Secured Notes via ATOP) | | | | | |
|---|---|---|---|---|---|
| **CUSIP / ISIN** | **Security Description** | **Principal Amount of Secured Notes Tendered into ATOP** | **Name & DTC # of Nominee Holding Position at DTC** | **DTC ATOP Confirmation Number (VOI) (If Applicable)** | **Euroclear or Clearstream Reference Number (If Applicable)** |
| 50168QAC9/ US50168QAC96 | 2028 5.875% Secured Notes | | | | |
| U5022TAC0/ USU5022TAC00 | 2028 5.875% Secured Notes | | | | |

| 50168QAF2/ US50168QAF28 | 2028 9.50% Secured Notes | | | | |
|---|---|---|---|---|---|
| U5022TAE6/ USU5022TAE65 | 2028 9.50% Secured Notes | | | | |
| 50168QAF2/ US50168QAF28 | 2031 Secured Notes | | | | |
| U5022TAF3/ USU5022TAF31 | 2031 Secured Notes | | | | |

## BACKSTOP PARTY ADDENDUM

The undersigned certifies that the undersigned is a party to that certain Backstop Commitment Agreement, dated [●], 2026, by and among Labels Buyer, LLC, the other Debtors party thereto and the Backstop Parties party thereto, and therefore is not required to submit payment of the Funding Amount in connection with the Rights Offering prior to the Subscription Expiration and Election Deadline.  A Noteholder that is a Backstop Party must provide its payment in accordance with Section [  ] of the Backstop Commitment Agreement.  If you are a Backstop Party, please instruct your Nominee to submit a properly executed Backstop Party Addendum along with the Noteholder Beneficial Owner Subscription Form.  The information in the table below should be identical to the information provided in Item 7 of the Noteholder Beneficial Owner Subscription Form.

**IN WITNESS WHEREOF**, the undersigned has executed this addendum on and as of the ___ day of _____ , 2026.

<u>**If an Entity:**</u>

Name of Entity:

Signature:  _____

By: _____

Its:  _____

State or Country of Principal Place of Business:  _____

Address:  _____

Fax:  _____

E-mail:  _____

US Tax ID/EIN:  _____

OR Check here if non-US (no TIN) ☐

<u>**If an Individual Investor:**</u>

Name of Individual:

Signature:  _____

State or Country of Primary Residence:  _____

Address:  _____

Fax:  _____

E-mail:  _____

US Tax ID/EIN:  _____

OR Check here if non-US (no TIN) ☐

**EXHIBIT A**

**INVESTOR QUESTIONNAIRE**

*<u>Each</u> Holder, whether or not a Backstop Party, and <u>each</u> Designee must **separately** complete this Investor Questionnaire to participate in the Rights Offering.  Each such person must certify by checking each box and signing below as follows:*

☐  The undersigned certifies that: (i) the undersigned is (A) the Holder, or an authorized signatory of the Holder, indicated below and that the undersigned Holder owns the reported Secured Notes listed in Item 1 above, or (B) a Designee of a Holder (or, in each case, an authorized signatory thereof); (ii) the undersigned has received a copy of the Plan, the Disclosure Statement and the Procedures; and (iii) the undersigned understands that the exercise of the Subscription Rights is subject to all the terms and conditions set forth in the Procedures and, to the extent applicable, the Plan (including the Disclosure Statement).

☐  The undersigned certifies that the status checked below is accurate.  Please check *one* of the two boxes below, either to confirm that you are a Qualified Investor or that you are not a Qualified Investor.

  ☐  The undersigned is a Qualified Investor.  *See* <u>Appendix A</u> for relevant definitions.  Please check *one or more* of the three boxes below, as applicable.

    ☐  By checking this box, you certify that you ARE an institutional "Accredited Investor" having (or a, direct or indirect, wholly-owned subsidiary of any entity having) total assets in excess of $10 million.

    ☐  By checking this box, you certify that you ARE a "qualified institutional buyer" (as defined in Rule 144A of the Securities Act of 1933, as amended (the "Act")) having (or a, direct or indirect, wholly-owned subsidiary of any entity having) total assets in excess of $10 million.

    ☐  By checking this box, you certify that you are NOT a U.S. person.

  ☐  By checking this box, you certify that you are NOT a Qualified Investor.

☐  The undersigned has read and understands the Procedures, the Plan, the Disclosure Statement, this Subscription Form and, if applicable, the Backstop Commitment Agreement and understands the terms and conditions herein and therein and the risks associated with the Debtors and their business as described in the Plan and the Disclosure Statement.  The undersigned has, to the extent deemed necessary by the same, discussed with legal counsel the representations, warranties, and agreements that such Person is making herein.

☐   The undersigned is acquiring the New Equity Interests and/or New Notes, as applicable, for its own account with the present intention of holding such securities for purposes of investment, and it has no intention of selling such securities in a public distribution in violation of the federal securities laws or any applicable local or state securities laws.

☐   The undersigned is not acquiring the New Equity Interests and/or New Notes, as applicable, as a result of any advertisement, article, notice or other communication regarding the New Equity Interests and/or New Notes, as applicable, published in any newspaper, magazine or similar media or broadcast over television or radio or presented at any seminar or, to such Person's knowledge, any other general solicitation or general advertisement.  Neither the undersigned nor any Person acting on its behalf has engaged, or will engage, in any form of general solicitation or general advertising (within the meaning of Rule 502(c) under the Securities Act) in connection with the offering of the New Equity Interests and the New Notes, in violation of the federal securities laws or any applicable state securities laws.

☐   The undersigned understands and acknowledges that the New Equity Interests and the New Notes are being offered pursuant to an exemption from the registration requirements of the Securities Act in reliance upon section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder and/or in reliance on Regulation S under the Securities Act. The undersigned has read and understands the resale restrictions discussed under in Article XII of the Disclosure Statement.

**IF ANY BACKSTOP PARTY AND ITS DESIGNEES FAILS TO CERTIFY (BY FAILING TO CHECK EACH OF THE BOXES ABOVE) THAT IT IS A QUALIFIED INVESTOR AND THE OTHER MATTERS SPECIFIED THEREIN, SUCH PERSON RISKS FORFEITING ITS NEW PREFERRED EQUITY SUBSCRIPTION RIGHTS AND RIGHTS TO RECEIVE ANY HOLDBACK PREFERRED EQUITY, HOLDBACK PREFERRED EQUITY AND/OR BACKSTOP COMMON EQUITY TO BE ISSUED TO SUCH BACKSTOP PARTY ON ACCOUNT OF THE FOREGOING.**

**IF THERE IS MORE THAN ONE DESIGNEE, THE HOLDER (THE "<u>DESIGNATING PARTY</u>") MUST COMPLETE A SEPARATE FORM OF <u>EXHIBIT A</u> FOR <u>EACH</u> SUCH DESIGNEE.**

**HOLDER**:

Name: _____

By:_____
Name:
Title:

**OR (IF APPLICABLE)**

**DESIGNEE**:

Designating Party Name (same as above):

_____

Designee Name:

_____

By:_____
Name:
Title:

**APPENDIX A**

"Qualified Investor" means (A) (i) a "qualified institutional buyer" (as defined in Rule 144A of the Securities Act), or (ii) an institutional "Accredited Investor" within the meaning of Rule 501(a)(1), (2), (3), (7), (8), (9), (12), or (13) of the Securities Act, in each case, having (or is a, direct or indirect, wholly-owned subsidiary of any entity having) total assets of in excess of $10 million, or (B) not a "U.S. person" (as defined in Regulation S of the Securities Act).

An "Accredited Investor" (as defined in Rule 501 of Regulation D of the Act) is any person or entity that falls within any of the following categories:

1. Any bank as defined in Section 3(a)(2) of the Act, or any savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Act whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934; any investment adviser registered pursuant to Section 203 of the Investment Advisers Act of 1940 or registered pursuant to the laws of a state; any investment adviser relying on the exemption from registering with the Securities and Exchange Commission (the "Commission") under Section 203(l) or (m) of the Investment Advisers Act of 1940; any insurance company as defined in Section 2(a)(13) of the Act; any investment company registered under the Investment Company Act of 1940 or a business development company as defined in Section 2(a)(48) of that act; any Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958; any Rural Business Investment Company as defined in Section 384A of the Consolidated Farm and Rural Development Act; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of such act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000, or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

2. Any private business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940;

3. Any organization described in Section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, partnership, or limited liability company, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000;

4. Any director, executive officer, or general partner of the issuer of the securities being offered or sold, or any director, executive officer, or general partner of a general partner of that issuer;

5. Any natural person whose individual net worth, or joint net worth with that person's spouse or spousal equivalent, exceeds $1,000,000;

    a. Except as provided in clause (ii) paragraph (5), for purposes of calculating net worth under this paragraph (5):

        i. The person's primary residence shall not be included as an asset;

        ii. Indebtedness that is secured by the person's primary residence, up to the estimated fair market value of the primary residence at the time of the sale of securities, shall not be included as a liability (except that if the amount of such indebtedness outstanding at the time of sale of securities exceeds the amount outstanding 60 days before such time, other than as a result of the acquisition of the primary residence, the amount of such excess shall be included as a liability); and

        iii. Indebtedness that is secured by the person's primary residence in excess of the estimated fair market value of the primary residence at the time of the sale of securities shall be included as a liability;

    b. Clause (i) of this paragraph (5) will not apply to any calculation of a person's net worth made in connection with a purchase of securities in accordance with a right to purchase such securities, provided that:

        i. Such right was held by the person on July 20, 2010;

        ii. The person qualified as an Accredited Investor on the basis of net worth at the time the person acquired such right; and

        iii. The person held securities of the same issuer, other than such right, on July 20, 2010.

6. Any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse or spousal equivalent in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

7. Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii) under the Act;

8. Any entity in which all of the equity owners are Accredited Investors.

9. Any entity, of a type not listed in paragraphs (1), (2), (3), (7), or (8) above, not formed for the specific purpose of acquiring the securities offered, owning investments in excess of $5,000,000;

10. Any natural person holding in good standing one or more professional certifications or designations or credentials from an accredited educational institution that the Commission has designated as qualifying an individual for accredited investor status. In determining whether to designate a professional certification or designation or credential from an accredited educational institution for purposes of this paragraph (10), the Commission will consider, among others, the following attributes:

   a. The certification, designation, or credential arises out of an examination or series of examinations administered by a self-regulatory organization or other industry body or is issued by an accredited educational institution;

   b. The examination or series of examinations is designed to reliably and validly demonstrate an individual's comprehension and sophistication in the areas of securities and investing;

   c. Persons obtaining such certification, designation, or credential can reasonably be expected to have sufficient knowledge and experience in financial and business matters to evaluate the merits and risks of a prospective investment; and

   d. An indication that an individual holds the certification or designation is either made publicly available by the relevant self-regulatory organization or other industry body or is otherwise independently verifiable;

11. Any natural person who is a "knowledgeable employee," as defined in rule 3c5(a)(4) under the Investment Company Act of 1940 (17 CFR 270.3c-5(a)(4)), of the issuer of the securities being offered or sold where the issuer would be an investment company, as defined in section 3 of such act, but for the exclusion provided by either section 3(c)(1) or section 3(c)(7) of such act;

12. Any "family office," as defined in rule 202(a)(11)(G)-1 under the Investment Advisers Act of 1940 (17 CFR 275.202(a)(11)(G)-1):

   a. With assets under management in excess of $5,000,000,

   b. That is not formed for the specific purpose of acquiring the securities offered, and

   c. Whose prospective investment is directed by a person who has such knowledge and experience in financial and business matters that such family office is capable of evaluating the merits and risks of the prospective investment; and

13. Any "family client," as defined in rule 202(a)(11)(G)-1 under the Investment Advisers Act of 1940 (17 CFR 275.202(a)(11)(G)-(1)), of a family office meeting the requirements in paragraph (12) of this definition and whose prospective investment in the issuer is directed by such family office pursuant to paragraph (12)(iii).

"U.S. person" means:

1.      Any natural person resident in the United States;

2.      Any partnership or corporation organized or incorporated under the laws of the United States;

3.      Any estate of which any executor or administrator is a U.S. person;

4.      Any trust of which any trustee is a U.S. person;

5.      Any agency or branch of a foreign entity located in the United States;

6.      Any non-discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary for the benefit or account of a U.S. person;

7.      Any discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary organized, incorporated, or (if an individual) resident in the United States; and

8.      Any partnership or corporation if:

        a.      Organized or incorporated under the laws of any foreign jurisdiction; and

        b.      Formed by a U.S. person principally for the purpose of investing in securities not registered under the Securities Act, unless it is organized or incorporated, and owned, by accredited investors (as defined in Rule 501(a) under the Act) who are not natural persons, estates or trusts.

The following are not "U.S. persons":

1.      Any discretionary account or similar account (other than an estate or trust) held for the benefit or account of a non-U.S. person by a dealer or other professional fiduciary organized, incorporated, or (if an individual) resident in the United States;

2.      Any estate of which any professional fiduciary acting as executor or administrator is a U.S. person if:

        a.      An executor or administrator of the estate who is not a U.S. person has sole or shared investment discretion with respect to the assets of the estate; and

        b.      The estate is governed by foreign law;

3.      Any trust of which any professional fiduciary acting as trustee is a U.S. person, if a trustee who is not a U.S. person has sole or shared investment discretion with respect to the trust assets, and no beneficiary of the trust (and no settlor if the trust is revocable) is a U.S. person;

28

4.      An employee benefit plan established and administered in accordance with the law of a country other than the United States and customary practices and documentation of such country;

5.      Any agency or branch of a U.S. person located outside the United States if:

        a.      The agency or branch operates for valid business reasons; and

        b.      The agency or branch is engaged in the business of insurance or banking and is subject to substantive insurance or banking regulation, respectively, in the jurisdiction where located; and

6.      The International Monetary Fund, the International Bank for Reconstruction and Development, the Inter-American Development Bank, the Asian Development Bank, the African Development Bank, the United Nations, and their agencies, affiliates and pension plans, and any other similar international organizations, their agencies, affiliates and pension plans.

**<u>Exhibit 9</u>**

**Election Form**

**NOTEHOLDER BENEFICIAL OWNER ELECTION FORM
("ELECTION FORM")**

**FOR USE BY HOLDERS OF
UNSECURED NOTES**

**IN CONNECTION WITH THE DEBTORS'
DISCLOSURE STATEMENT DATED JANUARY 27, 2026**

---

**ELECTION DEADLINE**

**The Election Deadline is 5:00 p.m. (Prevailing Eastern Time) on March 20, 2026 (the "Election Deadline"), unless otherwise extended pursuant to the terms of the *Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be altered, amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan") of Multi-Color Corporation and its affiliated debtors (the "Debtors").  Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan.**

**To make the New Common Equity Debt Election with respect to the Unsecured Notes (as defined below), each Holder of the underlying Unsecured Notes (a "Noteholder") as of the date of such election must (i) return its duly completed and executed Noteholder Beneficial Owner Election Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) to its bank, broker, intermediary, securities nominee or agent (each, a "Nominee") (unless otherwise directed by its Nominee) in sufficient time to allow such Nominee to deliver such documents to be actually received by Verita Global, LLC (the "Solicitation Agent") on or before the Election Deadline, and (ii) electronically deliver (or cause to be delivered) such Unsecured Notes into an appropriate contra CUSIP established by The Depository Trust Company ("DTC") for the New Common Equity Debt Election through the Automated Tender Offer Program ("ATOP") of DTC, so that they are received by the Election Deadline.**

**In accordance with the Plan, on the Effective Date, each Noteholder that submits a duly completed New Common Equity Debt Election on or prior to the Election Deadline shall receive the value of such Junior Funded Debt New Common Equity Allocation distribution in the form of New Term Loans in full satisfaction of the distribution it would have otherwise received pursuant to Article III.B.5(b)(ii) of the Plan and <u>not</u> New Common Equity.**

**Any Noteholder that does not submit a duly completed New Common Equity Debt Election on or prior to the Election Deadline shall receive its Pro Rata share of the Junior Funded Debt New Common Equity Allocation and not New Term Loans on account of such distribution.  The Debtors will not have any liability for any such failure.**

**Failure of a Noteholder to submit its Noteholder Beneficial Owner Election Form (or other instructions required by the Nominee) on a timely basis will result in forfeiture of such**

**Noteholder's right to make a New Common Equity Debt Election;** *provided* **that, the Debtors may permit any defect or irregularity to be cured within such time as they may determine in good faith to be appropriate.**

**Following the New Common Equity Debt Election, the Unsecured Notes for which the New Common Equity Debt Election is being made will be frozen from Transfer.  Noteholders that make the New Common Equity Debt Election shall be prohibited from selling, transferring, assigning, pledging, hypothecating, participating, donating or otherwise encumbering or disposing of (each of the foregoing, a "Transfer") the underlying Unsecured Notes unless (1) the Bankruptcy Court enters an order denying confirmation of the Plan and (2) the Debtors propose an alternative plan that does not provide for the New Common Equity Debt Election (the "Plan Termination").**

**All Noteholder Beneficial Owner Election Forms and/or other instructions required by the Nominee must be returned to the applicable Nominee in sufficient time to allow such Nominee to process and deliver the applicable underlying Unsecured Notes through ATOP prior to the Election Deadline.  By instructing its Nominee to submit the underlying Unsecured Notes through ATOP, each Noteholder is (i) authorizing its Nominee to make the New Common Equity Debt Election and (ii) certifying that it understands that, once submitted, the underlying Unsecured Notes will be frozen from Transfer until the Plan Termination.**

**The offering, issuance, and distribution of the Junior Funded Debt New Common Equity Allocation under the Plan after the Petition Date shall be exempt from registration requirements under the Securities Act, or any state or local law requiring registration for offer and sale of a security, in reliance upon the exemption provided in section 1145(a) of the Bankruptcy Code to the maximum extent permitted by law, or, if section 1145(a) is not available, then the Junior Funded Debt New Common Equity Allocation is being offered, issued, and distributed under the Plan pursuant to other applicable exemptions from registration under the Securities Act and any other applicable securities laws.**

**The right to make the New Common Equity Debt Election is not detachable or otherwise transferable separately from the underlying Unsecured Notes.  Rather, the right to make the New Common Equity Debt Election, together with the underlying Unsecured Notes, will trade together and will be evidenced by the underlying Unsecured Notes until the Election Deadline, subject to such limitations, if any, that would be applicable to the transferability of the underlying Unsecured Notes; provided that, following the exercise of the New Common Equity Debt Election, the Holder thereof shall be prohibited from Transferring the Unsecured Notes corresponding to such New Common Equity Debt Election until the Plan Termination.**

**If you have any questions, please contact the Solicitation Agent at the following phone number or email address: (866) 967-1788 (domestic toll-free) or (310) 751-2688 (for international calls) or mccballots@veritaglobal.com.  To obtain copies of the documents, please visit www.veritaglobal.net/MCC.**

> **SUBJECT TO THE TERMS AND CONDITIONS OF THE PLAN, ONCE A NOTEHOLDER HAS PROPERLY MADE THE NEW COMMON EQUITY DEBT ELECTION, SUCH ELECTION WILL BE IRREVOCABLE AND WITHDRAWALS WILL NOT BE PERMITTED.   NOTWITHSTANDING THE FOREGOING, WITHDRAWALS THROUGH PTOP WILL BE ALLOWED SOLELY TO CORRECT INCORRECT INSTRUCTIONS AND ARE SUBJECT TO THE SUBSCRIPTION AGENT'S APPROVAL. NOMINEES MUST CONTACT THE SUBSCRIPTION AGENT PRIOR TO SUBMITTING ANY WITHDRAWAL REQUESTS.**
>
> **To make an election, fill out all applicable Items in this Noteholder Beneficial Owner Election Form completely and legibly – *and follow the instructions of your Nominee with respect to the submission of your instructions to the Nominee.***

## 1. Amount of Unsecured Notes

I certify that I am a beneficial owner of the aggregate principal amounts as set forth below of the Debtors' 10.50% Senior Notes due 2027 (the "2027 10.50% Unsecured Notes") and 8.250% Senior Notes due 2029 (the "2029 8.250% Unsecured Notes" and, together with the 2027 Unsecured Notes, the "Unsecured Notes") in the following principal amounts (insert amount on the lines below) or that I am the authorized signatory of that beneficial Holder.  For the purposes of this Noteholder Beneficial Owner Election Form, do not adjust the principal (face) amount for any accrued or unmatured interest.

If you do not know the principal amount of your Unsecured Notes, please contact your Nominee immediately.

*Insert aggregate principal amount of Unsecured Notes held, as applicable.*

2027 10.50% Unsecured Notes (CUSIP 50168AAA8/U5022DAA9):_____
[1A]

2029 8.250% Unsecured Notes (CUSIP 50168QAD7/U5022TAD8):_____
[1B]

**IMPORTANT NOTE: IF YOU HOLD YOUR UNSECURED NOTES THROUGH MORE THAN ONE NOMINEE, YOU MUST COMPLETE AND RETURN A SEPARATE ELECTION FORM TO EACH APPLICABLE NOMINEE.   YOU MAY NOT AGGREGATE POSITIONS HELD BY DIFFERENT NOMINEES ON A SINGLE ELECTION FORM.**

## 2. Certification.

The undersigned hereby certifies that it (i) is the beneficial owner of the Unsecured Notes set forth in Item 1 above or the authorized signatory (the "Authorized Signatory") of such Noteholder acting on behalf of the Noteholder, (ii) is entitled to make the New Common Equity

Debt Election, (iii) has reviewed a copy of the Plan and the Disclosure Statement and other applicable materials and (iv) understands that the submission of the New Common Equity Debt Election is subject to all the terms and conditions set forth in the Plan. In addition, the Noteholder (or Authorized Signatory on behalf of such Noteholder) acknowledges that by making the New Common Equity Debt Election under Item. 3, the Noteholder will have irrevocably elected to receive New Term Loans and not New Common Equity.

Please provide your completed Election Form to your Nominee in sufficient time to allow your Nominee to process and deliver your underlying Unsecured Notes through ATOP by the Election Deadline.

Date: _____

Name of Noteholder: _____

Signature: _____

Name of Signatory: _____

Title: _____

Telephone Number: _____

Email: _____

**3. Unsecured Note Election Instructions**

In accordance with the Plan, on the Effective Date, each Noteholder that submits a duly completed New Common Equity Debt Election on or prior to the Election Deadline shall receive the value of such Junior Funded Debt New Common Equity Allocation distribution in the form of New Term Loans in full satisfaction of the distribution it would have otherwise received pursuant to Article III.B.5(b)(ii) of the Plan and **not** New Common Equity.

For the avoidance of doubt, if you do not make the election in the table below on or prior to the Election Deadline, you shall receive your Pro Rata share of the Junior Funded Debt New Common Equity Allocation and not New Term Loans on account of such distribution.

For the purposes of a New Common Equity Debt Election, do not adjust the principal (face) amount for any accrued or unmatured interest.

If you do not know the principal amount of your Unsecured Notes, please contact your Nominee immediately.

**The undersigned submits the following New Common Equity Debt Election:**

| Unsecured Notes | CUSIP / ISIN | Aggregate Principal Amount | New Common Equity Debt Election |
|---|---|---|---|
| 2027 10.50% Unsecured Notes | 50168AAA8 (Rule 144A)<br><br>U5022DAA9 | $[●] | ☐ |

| | | | |
|---|---|---|---|
| | (Regulation S) | | |
| 2029 8.250% Unsecured Notes | 50168QAD7 (Rule 144A) <br><br> U5022TAD8 (Regulation S) | $[●] | ☐ |

**Once completed, you must return this Election Form with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable (or other form of instruction required by your Nominee), to your Nominee in accordance with your Nominee's instructions in sufficient time for your Nominee to tender your Unsecured Notes to an appropriate contra CUSIP established by the DTC through ATOP no later than the Election Deadline.**

**4. Nominee ATOP Tender Certification**

> **Each Noteholder that makes a New Common Equity Debt Election in respect of Unsecured Notes must direct its Nominee to electronically tender their applicable underlying Unsecured Notes in the principal amount(s) set forth in Item 1 (which Nominees should copy below) to an account of the Solicitation Agent via ATOP in order to participate in the Election. Nominees must tender Noteholders' Unsecured Notes on a per Holder basis. Nominees may not submit bulk tender instructions. Tendered instructions are irrevocable. Notwithstanding the foregoing, withdrawals through PTOP will be allowed solely to correct incorrect instructions and are subject to the Subscription Agent's approval. Nominees must contact the Subscription Agent prior to submitting any withdrawal requests.**

| To Be Completed by Nominee Only <br> (Evidence of electronic delivery of Unsecured Notes via ATOP) | | | | | |
|---|---|---|---|---|---|
| **CUSIP / ISIN** | **Security Description** | **Principal Amount of Unsecured Notes Tendered into ATOP** | **Name & DTC # of Nominee Holding Position at DTC** | **DTC ATOP Confirmation Number (VOI) (If Applicable)** | **Euroclear or Clearstream Reference Number (If Applicable)** |
| 50168AAA8/ US50168AAA88 (Rule 144A) | 2027 10.50% Unsecured Notes | $ | | | |
| U5022DAA9/ USU5022DAA91 (Regulation S) | 2027 10.50% Unsecured Notes | $ | | | |
| 50168QAD7/ US50168QAD79 (Rule 144A) | 2029 8.250% Unsecured Notes | $ | | | |
| U5022TAD8/ USU5022TAD82 (Regulation S) | 2029 8.250% Unsecured Notes | $ | | | |

**IMPORTANT NOTE: IF YOU HOLD YOUR UNSECURED NOTES THROUGH MORE THAN ONE NOMINEE, YOU MUST COMPLETE AND RETURN AN ELECTION FORM TO EACH APPLICABLE NOMINEE. YOU MAY NOT AGGREGATE POSITIONS HELD BY DIFFERENT NOMINEES ON A SINGLE ELECTION FORM.**

**PLEASE RETURN THIS ELECTION FORM (INCLUDING IRS FORM W-9 OR APPROPRIATE IRS FORM W-8, AS APPLICABLE) OR OTHER INSTRUCTION (AS REQUIRED BY THE NOMINEE) ONLY TO YOUR NOMINEE.  DO NOT RETURN THIS FORM DIRECTLY TO THE SOLICITATION AGENT, UNLESS YOUR NOMINEE HAS ALREADY TENDERED YOUR UNSECURED NOTES THROUGH ATOP OR OTHERWISE AND THE RELATED VOI NUMBER(S) (IF APPLICABLE) ARE PROVIDED ON THIS ELECTION FORM.**

**THE SOLICITATION AGENT MUST BE IN RECEIPT OF THIS ELECTION FORM BY THE ELECTION DEADLINE.**

Return completed documents to:

MCC Unsecured Notes Claims Election
c/o Verita Global
222 N Pacific Coast Highway, Suite 300
El Segundo, CA 90245

**Preferred Method**
Submit via email:
mccballots@veritaglobal.com

**The method of delivery of the applicable Noteholder Beneficial Owner Election Form (or other form of instruction required by your Nominee) and any other required documents is at each Noteholder's option and sole risk.  Each Noteholder must ensure that its Nominee tenders its Unsecured Notes at or prior to the Election Deadline.**

**PLEASE NOTE: YOUR ELECTION WILL NOT BE VALID UNLESS THE RELEVANT UNSECURED NOTES HAVE BEEN TENDERED THROUGH ATOP OR OTHERWISE BY THE ELECTION DEADLINE.**