**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo
James N. Lawlor
Joseph F. Pacelli (admitted *pro hac vice*)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com
jlawlor@wmd-law.com
jpacelli@wmd-law.com

*Counsel for the Cross-Holder Ad Hoc Group*

**JONES DAY**
Bruce Bennett (admitted *pro hac vice*)
555 South Flower Street, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

-and-

Benjamin Rosenblum (admitted *pro hac vice*)
Genna L. Ghaul
Andrew Butler (admitted *pro hac vice*)
Benjamin C. Sandberg (admitted *pro hac vice*)
250 Vesey Street
New York, New York 10281
Telephone: (212) 326-8312
Facsimile: (212) 755-7306
brosenblum@jonesday.com
gghaul@jonesday.com
abutler@jonesday.com
bsandberg@jonesday.com

*Counsel for the Cross-Holder Ad Hoc Group*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>MULTI-COLOR CORPORATION, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No.: 26-10910 (MBK)<br><br>Judge: Michael B. Kaplan |
| BTG Pactual Asset Management US, LLC, BTG Pactual Absolute Return Master Fund, L.P., Canyon Capital Advisors LLC, The Canyon Value Realization Master Fund, L.P., River Canyon Fund Management LLC, River Canyon Total Return Bond Fund, Owl Creek Asset Management, L.P., Owl Creek Credit Opportunities Master Fund, L.P., Shenkman Opportunistic Credit Master Fund LP, Third Point LLC, and Third Point Master Fund LP<br><br>Plaintiffs<br><br>v.<br><br>Barclays Bank PLC<br><br>Defendant. | Adv. Pro. No.: 26-_____ (MBK) |

## COMPLAINT

Plaintiffs BTG Pactual Asset Management US, LLC, BTG Pactual Absolute Return Master Fund, L.P., Canyon Capital Advisors LLC, The Canyon Value Realization Master Fund, L.P., River Canyon Fund Management LLC, River Canyon Total Return Bond Fund, Owl Creek Asset Management, L.P., Owl Creek Credit Opportunities Master Fund, L.P., Shenkman Opportunistic Credit Master Fund LP, Third Point LLC, and Third Point Master Fund LP (each a "Plaintiff" and collectively, the "Plaintiffs" or the "Cross-Holder Ad Hoc Group") file this complaint for

---

[1] The last four digits of Debtor Multi-Color Corporation's tax identification number are 5853. A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://veritaglobal.net/MCC. The location of the Debtors' service address for purposes of these chapter 11 cases is: 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327.

2

declaratory judgment (the "Complaint") against Barclays Bank PLC ("Barclays"), in its capacity as Collateral Agent under the Term Loan Guarantee and Collateral Agreement attached hereto as **Exhibit A** (the "Term Loan Security Agreement"). As the basis for the Complaint, Plaintiffs, by their attorneys, allege on personal knowledge as to matters relating to themselves and their own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. The debtors and debtors in possession (collectively, the "Debtors") in the above captioned chapter 11 cases (the "Chapter 11 Cases") have made several sworn statements in these Chapter 11 Cases that the Defendant holds certain secured liens covering "substantially all" of the Debtors' assets and property. This is false. In fact, at the first hearing in these Chapter 11 Cases, the Debtors' lead investment banker conceded not only that the claim was false, but also that the Debtors knew the claim was false when they made it. The relevant security agreements make plain that these creditors' claims are only secured by a few limited categories of assets. Through this Complaint, Plaintiffs seek a declaration (a) that Defendant only holds liens on the Debtors' assets that are specified in the Term Loan Security Agreement; and (b) determining the fair market value of the assets on which the Defendant holds liens.

## PARTIES

2. Plaintiff BTG Pactual Asset Management US, LLC is a Delaware limited liability company and manages certain sub-funds that hold beneficial interests in (a) the 10.50% Senior Notes due 2027 (the "2027 Unsecured Notes") issued pursuant to that certain indenture, dated July 1, 2019 (the "2027 Indenture") by and among LABL, Inc. ("LABL"), the guarantors from time to time party thereto, and Wilmington Trust, National Association ("Wilmington Trust"), as trustee; and (b) the 8.250% Senior Notes due 2029 (the "2029 Unsecured Notes") issued pursuant to that

3

certain indenture, dated October 29, 2021 (the "2029 Indenture") by and among LABL, as issuer, the guarantors from time to time party thereto, and Wilmington Trust, as trustee.

3. Plaintiff BTG Pactual Absolute Return Master Fund, L.P. is a limited partnership organized under the laws of the Cayman Islands and is a beneficial owner of the 2027 Unsecured Notes.

4. Plaintiff Canyon Capital Advisors LLC is a Delaware limited liability company and manages certain sub-funds that hold beneficial interests in, among other issuances of the Debtors' debt, the 2027 Unsecured Notes and the 2029 Unsecured Notes.

5. Plaintiff The Canyon Value Realization Master Fund, L.P. is a limited partnership organized under the laws of the Cayman Islands and is a beneficial owner of the 2027 Unsecured Notes.

6. Plaintiff River Canyon Fund Management LLC is a Delaware limited liability company and manages certain sub-funds that hold beneficial interests in the 2027 Unsecured Notes.

7. Plaintiff River Canyon Total Return Bond Fund is a regulated investment company and is a beneficial owner of the 2027 Unsecured Notes.

8. Plaintiff Owl Creek Asset Management, L.P. is a Delaware limited partnership and manages certain sub-funds that hold beneficial interests in the 2027 Unsecured Notes and the 2029 Unsecured Notes.

9. Plaintiff Owl Creek Credit Opportunities Master Fund, L.P. is a limited partnership organized under the laws of the Cayman Islands and is a beneficial owner of the 2027 Unsecured Notes.

10.  Plaintiff Shenkman Opportunistic Credit Master Fund LP is a limited partnership organized under the laws of the Cayman Islands and is a beneficial owner of the 2027 Unsecured Notes.

11.  Plaintiff Third Point LLC is a Delaware limited liability company and manages certain sub-funds that hold beneficial interests in the 2027 Unsecured Notes.

12.  Plaintiff Third Point Master Fund LP is a limited partnership organized under the laws of the Cayman Islands and is a beneficial owner of the 2027 Unsecured Notes.

13.  Defendant Barclays Bank PLC is a public limited company organized under the laws of the United Kingdom and is the Collateral Agent and Administrative Agent under the Term Loan Security Agreement.

## JURISDICTION AND VENUE

14.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).

15.  Venue is not proper in this district.  By their own admission, none of the Debtors is domiciled in this district, none of the Debtors has had its principal place of business in this district at any time during the 180 days preceding the commencement of these Chapter 11 Cases, and none of the Debtors has had its principal assets in this district for at most more than a few days during the 180 days prior to the commencement of these Chapter 11 Cases.  The only petition on which the Debtors sought to establish venue, the petition of MCC-Norwood LLC ("Norwood"), specifically verified facts proving that venue is not proper in this district.  The Norwood petition stated that Norwood is domiciled in Ohio, has its principal place of business in Atlanta, Georgia, and has its principal assets in Atlanta, Georgia.  The Court should dismiss the Chapter 11 Cases or transfer them to a proper district.  Until such time, the Cross-Holder Ad Hoc Group objects to

5

venue in this district as improper for failure to satisfy any of the grounds for venue under 28 U.S.C. § 1408. *See The Cross-Holder Ad Hoc Group's Motion to Dismiss or, in the Alternative, Transfer the Chapter 11 Cases*, Case No. 26-10910 (the "Main Case"), Dkt. No. 71-1.

16. Notwithstanding the foregoing, and without waiving any of Plaintiffs' rights to continue objecting to a finding of proper venue in this Court, to the extent the Court finds that venue is proper in this district for the Chapter 11 Cases, then venue is proper in this district for purposes of this Complaint under 28 U.S.C. § 1409(a) because it is a proceeding arising in or related to the Chapter 11 Cases in the district court where such cases are pending.

17. This adversary proceeding is commenced pursuant to (a) Rule 7001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), which allows for an adversary proceeding "to determine the validity, priority, or extent of a lien or other interest in property," and (b) Rule 7001(i) of the Bankruptcy Rules, which allows for a proceeding to obtain a declaratory judgment relating to the foregoing, and section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"). Declaratory relief is appropriate pursuant to Bankruptcy Rule 7001 and 28 U.S.C. § 2201.

18. An actual and substantial controversy exists between the parties of sufficient immediacy to warrant judicial relief on all counts brought herein.

19. The Defendant is subject to personal jurisdiction pursuant to Bankruptcy Rule 7004 because the Defendant has established minimum contacts with the United States.

20. Barclays is a party to the Term Loan Security Agreement. ███████████████████████████████████████████████████████████████████████████████████████████████████

21. Accordingly, this Court has personal jurisdiction over the Defendant based on its contacts with the United States.

## FACTUAL BACKGROUND

**A.    The Debtors' Prepetition Capital Structure**

22. As of January 29, 2026 (the "Petition Date"), the Debtors claimed to have approximately $5.9 billion in aggregate outstanding principal amount of debt obligations. Disclosure Statement[2] at 30. On July 1, 2019, LABL issued the 2027 Unsecured Notes in an aggregate principal amount of $690 million pursuant to the 2027 Indenture. *Id.* at 32. The 2027 Unsecured Notes are guaranteed by each wholly owned U.S. restricted subsidiary of LABL, including, upon information and belief, Multi-Color Corporation, Norwood, MCC Verstraete In Mold Labels USA Inc., MCC Manufacturing, Inc., W/S Packaging Group, LLC, and MCC Smart Packaging Solutions, LLC (collectively, the "2027 Notes Guarantors" and together with LABL, the "2027 Notes Obligors"). *Id.* at 33.

23. On October 29, 2021, the Debtors issued several tranches of new debt, including: (a) an asset-based revolving credit facility in an aggregate principal amount of up to $590 million (the "ABL Facility"), consisting of a $400 million U.S. sub-facility (the "US ABL Facility"), a $15 million French sub-facility, and a $175 million global sub-facility, pursuant to that certain ABL credit agreement (the "ABL Agreement") by and among LABL, certain U.S. and foreign subsidiaries of LABL, the lenders from time to time party thereto, and Barclays as issuing lender, swingline lender, administrative agent, Australian security trustee and collateral agent; (b) a revolving credit facility in an aggregate principal amount of up to $200 million (the "Cash Flow

---

[2] "Disclosure Statement" means the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, Dkt. No. 18, Case No. 26-10910 (the "Main Case").

Revolving Facility"), a term loan in principal aggregate amount of approximately $1,864 million (the "U.S. Term Loan Facility"), and a term loan in an aggregate principal amount of €593 million (the "Euro Term Loan Facility" and together with the Cash Flow Revolving Facility and the U.S. Term Loan Facility, the "Term Loan Facilities") pursuant to that certain cash flow credit agreement (the "Term Loan Credit Agreement") by and among LABL, Multi-Color Corporation, MCC Manufacturing, Inc., and W/S Packaging Group, LLC, as borrowers (collectively, the "Term Loan Borrowers"), MCC Smart Packaging Solutions, LLC, Norwood, LABL Acquisition Corporation, and MCC Verstraete In Mold Labels USA Inc., as guarantors (collectively, the "Term Loan Guarantors" and together with the Term Loan Borrowers, the "Term Loan Obligors"), the lenders from time to time party thereto, and Barclays, as administrative agent and collateral agent; (c) 5.875% senior secured notes due 2028 in an aggregate principal amount of $500 million (the "2028 5.875% Secured Notes") pursuant to that certain indenture (the "Secured Notes Indenture") by and among LABL, the guarantors from time to time party thereto, and Wilmington Trust, as trustee and notes collateral agent; (d) 9.500% senior secured notes due 2028 in an aggregate principal amount of $300 million (the "2028 9.500% Secured Notes") pursuant to the Secured Notes Indenture; and (e) the 2029 Unsecured Notes pursuant to the 2029 Indenture. *Id.* at 30-33.

24. On October 8, 2024, the Debtors issued 8.625% senior secured notes due 2031 in an aggregate principal amount of $950 million (the "2031 Notes" and together with the 2028 5.875% Secured Notes and the 2028 9.500% Secured Notes, the "Secured Notes") pursuant to the Secured Notes Indenture. *Id.* at 32. The obligors under the Secured Notes (the "Secured Notes Obligors") are the same parties as the Term Loan Obligors. *Id.* at 32. The Debtors also claim to have approximately $226 million in aggregate principal amount of secured debt in the form of

8

finance leases and other funded debt (collectively, the "Finance Leases and Other Secured Debt"). *Id.* at 33.

**B.     The Term Loan Security Agreement**

25.     The Term Loan Security Agreement sets forth the collateral package that supports the claims held by the lenders under the Term Loan Facilities (such claims, the "Term Loan Secured Claims" and such lenders, the "Term Loan Lenders"). Section 3.1 of the Term Loan Security Agreement lists certain categories of assets that constitute "Collateral" securing the Term Loan Secured Claims. Ex. A. § 3.1. These "Collateral" assets include, among other things, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

26.     Notably, however, the liens held by the Defendant on the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ on behalf of the Term Loan Lenders are junior to the liens on those same assets securing certain claims arising under ABL Facility. In particular, under the ABL Intercreditor Agreement, attached hereto as **Exhibit B**, because the obligors under the U.S. ABL Facility are the same as the Term Loan Facility Obligors and the ABL has priority over this collateral, these liens are subordinate to the $400 million of claims arising under the U.S. ABL Facility. *See* Ex. B, § 2.1(a). Accordingly, Section 3.1 of the Term Loan Security Agreement requires that the Term Loan Obligors' ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ can provide value to the Term Loan Lenders only after the U.S. ABL Facility has been satisfied in full.

27.     In Section 3.3, the Term Loan Security Agreement states: "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

9

 *Id.* at § 3.3.  The provision goes on to list ▮▮▮▮ categories of the Term Loan Obligors' assets that constitute "<u>Excluded Assets</u>," including, among others:

Simply put, the collateral supporting the Term Loan Secured Claims (the "<u>Collateral</u>") consists of the Term Loan Obligors' assets listed in section 3.1 of the Term Loan Security Agreement, less the Term Loan Obligors' assets listed in section 3.3 of the Term Loan Security Agreement.

---

3   Independent of them being Excluded Assets, commercial tort claims are not part of the grant of security interest under Section 3.1(q) of the Term Loan Security Agreement.

28. The Excluded Assets make up a significant portion of the value of the Term Loan Obligors' assets. As stated in the Debtors' First Day Declaration,[4] the Debtors allegedly command "a *global* presence across *more than 25 countries*" and have over 90 facilities, with over 50 of the facilities outside of North America. First Day Decl. at ¶ 4 (emphasis added). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓—a considerable portion of that "*global*" business—is not Collateral. Ex. A, § 3.3(c). Neither is any ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.* at § 3.3(n). And all ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓—is excluded from the Term Loan Lenders' Collateral. *Id.* at § 3.3(d), (e). None of the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ can be seized and sold by Term Loan Secured Lenders. Nor can any of the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ be seized or sold by the Term Loan Secured Lenders. Moreover, the Term Loan Obligors use ▓▓▓▓▓ in the ordinary course of business, meaning the exclusion of ▓▓▓ from the Collateral is significant as well. *Id.* at § 3.3(i).

29. These are not trivial exclusions. Determining the fair market value of the Collateral will be crucial to determining which of the Debtors' assets should be earmarked for satisfaction of the Term Loan Secured Claims and, as noted below, the Secured Notes Claims, and which should be shared ratably with all holders of unsecured claims. It will also determine the extent to which the Debtors' projected recoveries under the plan were materially overstated for holders of Term Loan Secured Claims and Secured Note Claims.

---

[4] "First Day Declaration" means the *Declaration of Garrett Gabel, Chief Restructuring Officer of Multi-Color Corporation and Certain of its Affiliates, in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings*, Main Case Dkt. No. 23.

11

30. Also, because the Collateral is limited to a specific set of the Debtors' assets and property, it cannot be said that the Term Loan Secured Lenders have a lien on the Debtors' business. Therefore, all of the Debtors' other assets and property that are not explicitly covered in the definition of Collateral are unencumbered assets (collectively, the "Other Unencumbered Assets," and together with the Excluded Assets, the "Unencumbered Assets") and should be distributable to unsecured creditors.

31. The collateral securing the claims of holders of the Secured Notes (such claims, the "Secured Notes Claims" and such holders, the "Secured Notes Lenders" and together with the Term Loan Lenders, the "Secured Lenders") is the same as the Collateral set forth in the Term Loan Security Agreement. Section 3.1 of the Notes Collateral Agreement attached hereto as **Exhibit C** (the "Secured Notes Security Agreement") lists the same categories of assets as section 3.1 in the Term Loan Security Agreement, and section 3.3 of the Secured Notes Security Agreement excludes from the definition of "Collateral" the same Excluded Assets listed in section 3.3 of the Term Loan Security Agreement. *See* Ex. C §§ 3.1, 3.3. Moreover, as stated above, the Secured Notes Obligors are the same as the Term Loan Obligors. Disclosure Statement at 31-32. Therefore, the Secured Notes Claims and Term Loan Secured Claims are secured by the same limited pool of assets.

C. **The Debtors' False Statements Concerning the Collateral**

32. As is plain from the Term Loan Security Agreement, the Term Loan Secured Claims are not secured by the Unencumbered Assets, which, as explained above, make up a significant portion of the Term Loan Obligors' value. However, a reader of the Debtors' Disclosure Statement would be forgiven for thinking that all of the Term Loan Obligors' assets and property secure the Term Loan Secured Claims, because that is what it says. On page 32 of the Disclosure Statement, the Debtors state that the Term Loan Secured Claims are "secured by

12

liens on substantially all assets and property" of the Term Loan Obligors. Disclosure Statement at 32. This is not a lone misstatement. It also appears in the First Day Declaration, which was signed under penalty of perjury. *See* First Day Decl. at ¶ 41 ("The [Term Loan] Facilities are secured by liens on substantially all the assets and property of the borrowers and guarantors with respect to the [Term Loan] Facilities . . . ."). These documents also claim that the Secured Notes Claims are secured by substantially all asset liens. *See* Disclosure Statement at 32 ("The Secured Notes are secured by liens on substantially all the assets and property of [the Secured Notes Obligors]."); First Day Decl. at ¶ 42.

33. And these mistakes are not marginal—major sections of the Disclosure Statement appear to be untrue and unreliable. At the hearing on January 30, 2026 (the "First Day Hearing"), Mr. Banks of Evercore, the Debtors' investment banker, admitted during cross examination that he assumed the Secured Notes (and therefore the Term Loan Facilities) were secured by liens on substantially all of the Secured Notes Obligors' (and therefore the Term Loan Obligors') assets and property when he prepared the calculations used throughout the Disclosure Statement. First Day Hr'g Tr., Main Case Dkt. No. 85, at 89:9-17. But, when pressed, Mr. Banks admitted that the Secured Notes were not, in fact, secured by liens on (a) thirty-five percent of the foreign subsidiary equity interests (*Id.* at 90:12-16; 96:1-3); (b) the Debtors' owned and leased real property (*Id.* at 90:19-21; 95:17-21); and (c) the Debtors' assets and property subject to Finance Leases and Other Secured Debt (*Id.* at 94:3-95:15). The falsehoods in the Disclosure Statement and First Day Declaration create at least two critical issues that must be resolved before these Chapter 11 Cases can progress.

34. ***First***, there is a dispute regarding extent of the liens securing the Term Loan Claims and Secured Notes Claims. The Disclosure Statement and First Day Declaration assert that these

13

liens cover substantially all assets and property of the Term Loan Obligors. As evidenced by the Term Loan Security Agreement, and underscored by the statements of Mr. Banks at the First Day Hearing, these statements are not true, and the Debtors knew it. Therefore, the Court should enter a declaratory judgment resolving this dispute and finding that the Defendant's claims are only supported by liens on the Collateral as described in the Term Loan Security Agreement, and not on any Unencumbered Assets.

35. **_Second_**, the Court must determine the fair market value of the Collateral so that the Debtors can properly calculate the recoveries attributable to the Secured Lenders and the unsecured creditors under the Plan.[5] All calculations in the Disclosure Statement were performed using the false premise that the Secured Lenders have liens on substantially all of the Term Loan Obligors' assets and property. Thus, the Debtors' conclusion—that the Secured Lenders hold a $1.951.9 billion secured claim and an approximately $1.992 billion unsecured deficiency claim as of the Petition Date—cannot follow. Disclosure Statement at 11; First Day Hr'g Tr. at 100:25-101:5. Because the Unencumbered Assets were included in calculating the value of the Secured Lenders' collateral, these figures are not correct and must be recalculated. If the Unencumbered Assets have any value at all (and as stated above, there is good reason to believe they have **_significant_** value), then the Secured Lenders' secured claim will shrink and property available to satisfy claims of unsecured creditors will grow.

36. The 2027 Notes Obligors are the same as the Term Loan Obligors and the Secured Notes Obligors, with the exception of LABL Acquisition Corporation ("Holdings")—the direct parent of LABL—which guarantees the Term Loan Facility and Secured Notes, but not the 2027

---

[5] The "Plan" means the *Joint Prepackaged Plan of Reorganization of Multi-Color Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, Main Case Dkt. No. 17.

14

Unsecured Notes. However, upon information and belief, Holdings' only asset is its 100% equity interest in LABL. Therefore, for these purposes, the 2027 Notes Obligors, Term Loan Obligors, and Secured Notes Obligors are the same parties. The Unencumbered Assets should be shared ratably among these obligors' unsecured funded debt creditors, including holders of 2027 and 2029 Unsecured Notes and holders of unsecured Term Loan Facilities and Secured Notes deficiency claims. The Court should enter a declaratory judgment that determines the extent of the Secured Lenders' liens and the fair market value of the Collateral.

**D.    The Restructuring Support Agreement and Insider DIP Facility**

37.    The issues flowing from the lack of clarity surrounding the value of the Collateral are exacerbated by the Debtors' decision to enter into the Restructuring Support Agreement[6] with its private equity sponsor, Clayton, Dubilier & Rice, LLC (the "Sponsor") and certain of its favored Secured Lenders (collectively, the "Favored Lenders"). The Restructuring Support Agreement required the Debtors, Sponsor, and Favored Lenders to support the DIP facility proposed by the Sponsor and Favored Lenders (the "Insider DIP Facility"). RSA §§ 5.02(g), (h); 7.03(b).

38.    Among other problematic attributes, the Insider DIP Facility contains a roll-up component that transformed the Sponsor's and Favored Lenders' unsecured deficiency claims into fully secured claims. *See* RSA, Ex. B (DIP Term Sheet), pg. 1. The Cross-Holder Ad Hoc Group objected to the Debtors' requested interim relief with respect to the Insider DIP Facility, appealed the Court's grant of that interim relief, and will object to the Debtors' request for final relief with respect to the Insider DIP Facility. By entering the requested declaratory judgments (and by refusing to approve any more of the Insider DIP Facility's roll-up on a final basis), the Court can

---

[6] "Restructuring Support Agreement" or "RSA" means that certain Restructuring Support Agreement, dated January 25, 2026, and attached as Exhibit B to the Disclosure Statement.

and should begin the process of ensuring that the Collateral is appropriately valued and that unsecured creditors, like Plaintiffs, receive what they are lawfully due.

### COUNT I
### (Declaratory Judgment Pursuant to 28 U.S.C. § 2201(a) and Bankruptcy Rules 7001(b) and 7009(i))

39. The foregoing paragraphs are hereby incorporated as if fully set forth herein.

40. An actual and substantial legal controversy exists as to whether the Defendant holds liens secured by substantially all of the Term Loan Obligors' assets and property on behalf of the Term Loan Lenders. This controversy is of sufficient immediacy to warrant judicial relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2.

41. The Debtors state that the Defendant holds claims on behalf of the Term Loan Lenders secured by liens on substantially all of the Term Loan Obligors' assets and property.

42. Under Section 3.3 of the Term Loan Security Agreement, the Excluded Assets are carved out from the Collateral. Among others, these Excluded Assets include:

[redacted]

16



43. Further, the testimony at the First Day Hearing established that the Excluded Assets do not secure claims held by the Term Loan Lenders.

44. Moreover, because the Term Loan Lenders do not have a lien on the business, the Other Unencumbered Assets do not secure claims held by the Term Loan Lenders.

45. Accordingly, the Plaintiffs are entitled to a declaratory judgment that the liens held by the Defendant are conscribed to the Collateral as described in the Term Loan Security Agreement, which Collateral does not include any of the Unencumbered Assets pursuant to Bankruptcy Rules 7002(b) and 7002(i).

## COUNT II
**(Declaratory Judgment Pursuant to 28 U.S.C. § 2201(a), 11 U.S.C. § 105(a) and Bankruptcy Rule 3012(b))**

46. The foregoing paragraphs are hereby incorporated as if fully set forth herein.

47. Pursuant to 28 U.S.C. § 2201 and 11 U.S.C. § 105(a), this Court has the power to declare and adjudicate the rights and obligations of the parties and to grant such other and further relief as may be necessary to enforce the rights and obligations of parties with respect to property of the Debtors' estates.

48. Upon information and belief, the fair market value of the Collateral as of the Petition Date is substantially less than the total amount of the Secured Claims asserted by the Secured Lenders.

17

49. Pursuant to 11 U.S.C. § 506(a)(1), an allowed claim of a creditor secured by a lien on property in which the estate has an interest is a secured claim only to the extent of the value of such creditor's interest in the estate's interest in such property, and is an unsecured claim to the extent that the value of such creditor's interest is less than the amount of such allowed claim.

50. Bankruptcy Rule 3012 provides that the Court may determine the value of a claim secured by a lien on property in which the estate has an interest.

51. Here, a dispute exists between Plaintiffs and the Defendant concerning the value of the Collateral and, consequently, the amount of the Secured Lenders' secured claim.

52. For example, the Debtors' Disclosure Statement provides that the Secured Lenders have secured claims in the amount of $1.951.9 billion. Disclosure Statement at 11. The Debtors' Disclosure Statement states that the Secured Lenders' secured claim is undersecured, and that the Secured Lenders are impaired, with a projected recovery of 81.6% – 98.4%. *Id.* The Debtors' Disclosure Statement also states that the Defendant holds liens on "substantially all the assets and property" of the Term Loan Obligors on behalf of the Secured Lenders. Disclosure Statement at 32. As described above, however, the Secured Lenders do not have liens on substantially all the Term Loan Obligors' property. Thus, the amount of the Secured Lenders' secured claims is in controversy.

53. A judicial determination of the value of the Collateral, the value of the Unencumbered Assets, and the amount of the Secured Lenders' secured claim is necessary and appropriate to enable the Debtors to administer the estate and to resolve the actual controversy between the parties.

54. Plaintiffs are entitled to a declaratory judgment determining the value of the Collateral, the value of the Unencumbered Assets, and the allowed amount of the Favored Lenders' secured claim pursuant to Bankruptcy Rule 3012 and 11 U.S.C. § 506(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor as follows:

55. Declaring that the liens held by the Defendant are conscribed to the Collateral as described in the Term Loan Security Agreement, which Collateral does not include any of the Unencumbered Assets;

56. Declaring the fair market value of the Collateral;

57. Declaring the fair market value of the Unencumbered Assets;

58. Declaring the amount of the Secured Lenders' allowed secured claim;

59. Declaring that, to the extent the Secured Lenders' total allowed secured claim exceeds the value of the Collateral, such excess constitutes an unsecured claim; and

60. Granting such other and further relief to Plaintiffs as this Court deems just and proper.

| | |
|---|---|
| Dated: February 14, 2026 | **WOLLMUTH MAHER & DEUTSCH LLP** |
| | */s/ Paul R. DeFilippo*<br>Paul R. DeFilippo<br>James N. Lawlor<br>Joseph F. Pacelli (admitted *pro hac vice*)<br>500 Fifth Avenue<br>New York, New York 10110<br>Telephone: (212) 382-3300<br>Facsimile: (212) 382-0050<br>pdefilippo@wmd-law.com<br>jlawlor@wmd-law.com<br>jpacelli@wmd-law.com |
| | **JONES DAY**<br>Bruce Bennett (admitted *pro hac vice*)<br>555 South Flower Street, Fiftieth Floor<br>Los Angeles, California 90071<br>Telephone: (213) 243-2382<br>Facsimile: (213) 243-2539<br>bbennett@jonesday.com |
| | -and- |
| | Benjamin Rosenblum (admitted *pro hac vice*)<br>Genna L. Ghaul<br>Andrew Butler (admitted *pro hac vice*)<br>Benjamin C. Sandberg (admitted *pro hac vice*)<br>250 Vesey Street<br>New York, New York 10281<br>Telephone: (212) 326-8312<br>Facsimile: (212) 755-7306<br>brosenblum@jonesday.com<br>gghaul@jonesday.com<br>abutler@jonesday.com<br>bsandberg@jonesday.com |
| | *Counsel for the Cross-Holder Ad Hoc Group* |