| | |
|---|---|
| **WOLLMUTH MAHER & DEUTSCH LLP**<br>Paul R. DeFilippo<br>James N. Lawlor<br>Joseph F. Pacelli (admitted *pro hac vice*)<br>500 Fifth Avenue<br>New York, New York 10110<br>Telephone: (212) 382-3300<br>Facsimile: (212) 382-0050<br>pdefilippo@wmd-law.com<br>jlawlor@wmd-law.com<br>jpacelli@wmd-law.com<br><br>*Counsel for the Cross-Holder Ad Hoc Group* | **JONES DAY**<br>Bruce Bennett (admitted *pro hac vice*)<br>555 South Flower Street, Fiftieth Floor<br>Los Angeles, California 90071<br>Telephone: (213) 243-2382<br>Facsimile: (213) 243-2539<br>bbennett@jonesday.com<br><br>-and-<br><br>Benjamin Rosenblum (admitted *pro hac vice*)<br>Genna L. Ghaul<br>Andrew Butler (admitted *pro hac vice*)<br>Benjamin C. Sandberg (admitted *pro hac vice*)<br>250 Vesey Street<br>New York, New York 10281<br>Telephone: (212) 326-8312<br>Facsimile: (212) 755-7306<br>brosenblum@jonesday.com<br>gghaul@jonesday.com<br>abutler@jonesday.com<br>bsandberg@jonesday.com<br><br>*Counsel for the Cross-Holder Ad Hoc Group* |

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>MULTI-COLOR CORPORATION, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No.: 26-10910 (MBK)<br><br>Judge: Michael B. Kaplan |

**CROSS-HOLDER AD HOC GROUP'S EMERGENCY**
**MOTION FOR RELIEF FROM THE SALE PROCESS AND**
**FOR MODIFICATION OF CERTAIN RELATED MATERIALS**

Movants, the Cross-Holder Ad Hoc Group, respectfully request that this Court enter an order providing the relief set forth below, and in support thereof, represent as follows:

---

[1] The last four digits of Debtor Multi-Color Corporation's tax identification number are 5853. A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://veritaglobal.net/MCC. The location of the Debtors' service address for purposes of these chapter 11 cases is: 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327.

1

**PRELIMINARY STATEMENT**

1. The Movants bring this emergency motion to address a deeply flawed process that is occurring outside of the supervision of this Court. This process appears designed not to maximize value for creditors, but rather to chill competition and limit participation. The Debtors and their advisors have implemented a secretive process characterized by: (i) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; (ii) a refusal by the Debtors to share even basic process materials; and (iii) an unreasonably compressed timeline.

2. The Movants are creditors who hold substantial positions in the Debtors' capital structure. Their objective is to maximize value for stakeholders by encouraging robust participation in any process and enabling the formulation of well-capitalized bids, which may include a bid involving Movants and a partner or partners. The process as currently structured frustrates the objective of maximizing value. Instead, it appears to be purely for show and designed to fail, such that the Debtors will not interrupt the proposed insider plan transaction with the Debtors' existing equity owner.

3. The Movants respectfully request that this Court enter an order: (i) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; (ii) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; and (iii) establishing a reasonable timeline for the sale process that provides for no less than one month from the Court's order on this Motion.

4. Because the unapproved sale process is ongoing and delay will only compound the harm, the Movants respectfully request that this Motion be heard on an expedited basis.

2

**JURISDICTION**

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Movants maintain that venue is improper before this court for the reasons set forth in Movant's *Motion to Dismiss or, in the Alternative, Transfer the Chapter 11 Cases* (Docket No. 71). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**BACKGROUND**

**I. The Parties**

6.      The Debtors are engaged in the business of manufacturing labels and packaging materials for consumer products companies. The Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on January 29, 2026 (the "Petition Date"). The Debtors are represented by Evercore Group L.L.C. ("Evercore") as investment banker and Kirkland & Ellis LLP and Cole Schotz P.C. as counsel.

7.      The Movants are members of the Cross-Holder Ad Hoc Group that collectively holds significant positions in the Debtors' debt instruments. The Movants are advised by Guggenheim Securities, LLC ("Guggenheim") as financial advisor and Jones Day and Wollmuth Maher & Deutsch LLP as counsel.

**II. The Flawed, Secretive and Unapproved "Marketing" Process**

8.      On the Petition Date, the Debtors filed a proposed Disclosure Statement and Chapter 11 plan, pursuant to which the majority owner of the reorganized Debtors would remain Clayton, Dubilier & Rice ("CD&R"). (Docket Nos. 17 and 18). The proposed Disclosure Statement and Chapter 11 plan do not discuss any marketing process—either historical or contemplated—for a sale of the Debtors or their assets.

9.      Attached as Exhibit B to the Disclosure Statement is a copy of a Restructuring Support Agreement. The Restructuring Support Agreement obligates the Debtors to "support

3

and take all steps reasonably necessary and desirable to implement and consummate the Restructuring Transactions," including the proposed Chapter 11 plan. RSA, § 7.01(a). It contains numerous provisions requiring the Debtors to prosecute the proposed Chapter 11 plan and related transactions. *Id.*; *see also id.* at §§ 7.01(b)-(e) and 7.03(b). Among other things, the support agreement does not allow the Debtors to "seek or solicit" any alternative Chapter 11 plan other than "a sale or disposition of the assets" of the Debtors. *Id.* § 7.02(g). The Debtors are also obligated under that agreement to provide any "Alternative Restructuring Proposal[s]" promptly to CD&R and the Secured Ad Hoc Group. RSA, § 8.02. If the Debtors accept any Alternative Restructuring Proposal, it constitutes a termination event under the agreement. *Id.* § 12.01(g).

10. At a hearing on January 30, 2026, the fact of the Debtors' post-bankruptcy marketing process was discussed. *E.g.*, Jan. 30, 2026, Hr'g Tr. at p. 149:19-24. However, the Debtors have not advertised this marketing process. Nor has there been any disclosure regarding the details of such process.

11. █████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████

12. On February 8, 2026, ████████████████████
████████████████████████████████████████████

4

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████. Ex. 2; Ex. 3 (Feb. 7, 2026 J. Kartus email).

13. Guggenheim requested that ████████████████████████ be treated as non-confidential. Ex. 3 (Feb. 8, 2026 M. Moss email). The Debtors did not agree to remove that designation. *Id*. (Feb. 9, 2026 R. Bentley email).

14. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████.

15. Between February 8, 2026 and February 12, 2026, ████████████████

████████████████████████████████████████████████████████████. *See*

Ex. 3. The Debtors' advisors requested that the Movants' advisors provide the names of the Debtors' potential partners, among other things. ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████. The parties, however, did not reach resolution.

16. As of the date of this Motion, the Movants understand that the Debtors are continuing with the same confidentiality restrictions in place, and that the timeline for the process remains compressed and inadequate to permit proper marketing.

5

# ARGUMENT

## I. The Court Has Authority to Supervise the Process to Ensure That It Is Fair and Open

17.     This Court possesses authority under 11 U.S.C. § 363 to supervise and modify sale procedures to encourage competitive bidding in Chapter 11 proceedings. The Debtors have taken the unusual approach of avoiding Court involvement for purposes of their bidding process. But a sale of substantially all of the Debtors' assets is outside of the ordinary course of business; likewise, establishing bid procedures, entering into non-disclosure agreements and the like, are not ordinary course transactions that can evade court supervision. 11 U.S.C. § 363(b)(1); *see also In re Energy Future Holdings Corp.*, Docket No. 2699 (Bankr. D. Del. Nov. 4, 2014) (Case No. 14-10979) (CSS) Tr. at 21:15-18 ("Creditor and Court oversight of the debtors' action outside the ordinary course of business, including asset marketing and sales, is not only appropriate, but is required by the law.").

18.     The Court has the power to intervene and supervise the bidding process, and courts have exercised this authority to implement bidding procedures designed to enhance competition and maximize estate value. *See In re Dura Auto. Sys., Inc.*, 2007 WL 7728109, at *90 (Bankr. D. Del. Aug. 15, 2007) (noting that "courts recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales.") (citing *In re O'Brien Env't Energy, Inc.*, 181 F.3d 527, 537 (3d Cir. 1999)); *see also In re MTE Holdings LLC*, 2021 WL 3743201, at *7 (Bankr. D. Del. Aug. 17, 2021) (recognizing that courts will "defer to the debtor's exercise of business judgment" regarding sale procedures only when "it reflects a considered judgment about the best interests of the estate.").

19.     The procedures implemented by the Debtors in this case fail to pass muster. Rather than facilitating "an open and fair public sale designed to maximize value for the

estate," *In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998), the Debtors have erected a secret and unfair process with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and a compressed timeline. The Court should exercise its authority to modify these procedures to ensure they "encourage participation by financially capable bidders," *Dura Auto.*, 2007 WL 7728109, at *90, rather than chill such participation.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

21. In this case, potential bidders already face numerous challenges, particularly given the secretive and extremely compressed timeline of the process and the Debtors' presentation of the Restructuring Support Agreement as a *fait-accompli*. Frequently, existing creditors are a natural partner or source of financing given their prior investment in and familiarity with a company. The alliance of the Secured Ad Hoc Group with the plan sponsor supports this point. The Movants' competing DIP proposal is yet another indication. Here, the Movants are a natural source of competition for generating the best possible transaction for the estate. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7

██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████. *See In re Energy Future Holdings Corp.*, 2011 WL 13503057, at *3 (Bankr. D. Del. Apr. 26, 2011) (voiding "[a]ny provisions contained in confidentiality agreements . . . that preclude communication between potential bidders and the Debtors' creditors").

**III. ████████████████████████████████████████ is Unjustified and Antithetical to The Transparency of a Bankruptcy Process**

23.   ████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████. *Cf.* 11 U.S.C. § 107.

██████████████████████████████████████████████████

█████████████████████████—items typically disclosed to, and approved by, the Court.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████

24.   The principles of openness and disclosure are core tenants of the United States Bankruptcy Code. *See In re Gordon Prop., LLC*, 514 B.R. 449, 460 (Bankr. E.D. Va. 2013) ("[T]he hallmark of every bankruptcy case is transparency—the full, fair and timely disclosure of information that affects the administration of the estate. A debtor in possession is not fulfilling his obligations if he inhibits or delays the flow of information that should be available to the creditors, the United States trustee or the court."); *In re eToys, Inc.*, 331 B.R.

8

176, 187 (Bankr. D. Del. 2005) ("Disclosure goes to the heart of the integrity of the bankruptcy system.") (internal quotation marks and citation omitted).

25. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████. Bankruptcy is supposed to be transparent. Movants submit that the Court should order that the ████████ ██ be designated as non-confidential, thereby allowing these documents to be shared with potential bidders and others.

## IV. The Timeline for The Debtors' Process Is Unduly Compressed

26. The timeline for the Debtors' process is unduly compressed. ████████ ███████████████████████████████████████████████████████████████████████████ ██. Given the lack of disclosure around the marketing process, it is unclear which entities were given notice of this deadline and when or how information is even flowing. *See*, *e.g.*, Ex. 3 (Feb. 8, 2026 Evercore email indicating that a CIM had not yet been finalized). Typically, a process such as this one would proceed under a court-authorized bidding procedure. But this process has been anything but typical. Rather, it has proceeded in a haphazard and rushed fashion.

27. This places particular pressure on timing, as the Debtors are a large, multi-national manufacturing company. Their operations are complex, and public information concerning them is limited. The very fact that the Debtors are even being marketed, albeit discussed at a first-day hearing, is not well-advertised. And the Debtors' presentation of the Restructuring Support Agreement as a done deal presents yet more obstacles to a competitive process. To the extent that the Debtors are engaged in a bona fide marketing process, such a process requires more notice and time.

## REQUESTED RELIEF

WHEREFORE, the Movants respectfully request that this Court enter an order:

  A. ██████████████████████████████████

████████████████████████████████;

  B. ██████████████████████████████████

██████;

  C. ██████████████████████████████████

██████████████████████████████████;

  D. Establishing a timeline for the process that provides any deadline for submission of indications of interest shall occur no sooner than one month after entry of the Court's order on this Motion;

  E. Scheduling a hearing on this motion on an expedited basis; and

  F. Granting such other and further relief as the Court deems just and proper.

10

| | |
|---|---|
| Dated: February 17, 2026 | **WOLLMUTH MAHER & DEUTSCH LLP**<br><br>/s/ *Paul R. DeFilippo*<br>Paul R. DeFilippo<br>James N. Lawlor<br>Joseph F. Pacelli (admitted *pro hac vice*)<br>500 Fifth Avenue<br>New York, New York 10110<br>Telephone: (212) 382-3300<br>Email: pdefilippo@wmd-law.com<br>          jlawlor@wmd-law.com<br>          jpacelli@wmd-law.com<br><br>**JONES DAY**<br>Bruce Bennett (admitted *pro hac vice*)<br>555 South Flower Street, Fiftieth Floor<br>Los Angeles, California 90071<br>Telephone: (213) 243-2382<br>Facsimile: (213) 243-2539<br>Email: bbennett@jonesday.com<br><br>-and-<br><br>Benjamin Rosenblum (admitted *pro hac vice*<br>Genna L. Ghaul<br>Andrew Butler (admitted *pro hac vice*)<br>Benjamin C. Sandberg (admitted *pro hac vice*)<br>250 Vesey Street<br>New York, New York 10281<br>Telephone: (212) 326-8312<br>Facsimile: (212) 755-7306<br>Email: brosenblum@jonesday.com<br>          gghaul@jonesday.com<br>          abutler@jonesday.com<br>          bsandberg@jonesday.com<br><br>*Counsel for the Cross-Holder Ad Hoc Group* |