**LOWENSTEIN SANDLER LLP**
Jeffrey Cohen, Esq. (admitted *pro hac vice*)
Eric S. Chafetz, Esq.
Colleen M. Restel, Esq.
Philip Gross, Esq.
One Lowenstein Drive
Roseland, NJ 07068
Telephone: (973) 597-2500
Email: jcohen@lowenstein.com
Email: echafetz@lowenstein.com
Email: crestel@lowenstein.com
Email: pgross@lowenstein.com

- and-

**DEBEVOISE & PLIMPTON LLP**
Erica Weisgerber (admitted *pro hac vice*)
Zach Saltzman, Esq. (admitted *pro hac vice*)
Nick Kaluk, Esq. (admitted *pro hac vice*)
Mitch Carlson, Esq. (admitted *pro hac vice*)
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000
Email: eweisgerber@debevoise.com
Email: zhsaltzm@debevoise.com
Email: nskaluk@debevoise.com
Email: mcarlson@debevoise.com

**LATHAM & WATKINS, LLP**
Ray C. Schrock, Esq. (admitted *pro hac vice*)
Candace M. Arthur, Esq. (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200

Ryan Preston Dahl, Esq. (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611

Deniz Irgi, Esq. (admitted *pro hac vice*)
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067

Email: ray.schrock@lw.com
Email: ryan.dahl@lw.com
Email: candace.arthur@lw.com
Email: deniz.irgi@lw.com

*Counsel to Clayton Dubilier & Rice LLC, on behalf of itself and its affiliates and/or related entities, including CD&R Labels Holdings, L.P., Arawak XI, L.P., Arawak XI-A, L.P., CD&R Investment Associates XI, Ltd., and Clayton, Dubilier & Rice Fund XI (Credit Investor), Ltd.*

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re: | Chapter 11 |
| MULTI-COLOR CORPORATION, *et al.*, | Case No. 26-10910 (MBK) |
| Debtors[1]. | (Joint Administration Requested) |

# CD&R'S JOINDER AND OBJECTION
# TO MOTIONS OF CROSS-HOLDER GROUP AND
# UNITED STATES TRUSTEE TO DISMISS CASE AND TRANSFER VENUE

---

[1] The last four digits of Debtor Multi-Color Corporation's tax identification number are 5853. A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.veritaglobal.net/MCC. The location of the Debtors' service address for purposes of these chapter 11 cases is: 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327.

Clayton Dubilier & Rice LLC, on behalf of itself and its affiliates and/or related entities, including CD&R Labels Holdings, L.P., Arawak XI, L.P., Arawak XI-A, L.P., CD&R Investment Associates XI, Ltd., and Clayton, Dubilier & Rice Fund XI (Credit Investor), Ltd. (collectively, "**CD&R**"), by and through their undersigned counsel, hereby submits this objection (this "**Objection**") and joinder (this "**Joinder**") to the Debtors' Objection (the "**Debtors' Objection**") to (a) the *Motion to Dismiss, or, in the Alternative, Transfer the Chapter 11 Cases* [Docket No. 71] (the "**Cross-Holder Motion**") filed by the Cross-Holder Ad Hoc Group (the "**Cross-Holder Group**"); and (b) the *Motion of the United States Trustee to (I) Dismiss Case of Debtor MCC-Norwood, LLC Pursuant to 11 U.S.C. § 1112(b) and (II) Transfer Venue or Dismiss Cases of All Debtors Pursuant to 28 U.S.C. §§ 1406, 1408, and 1412 and Fed. R. Bankr. P. 1014(a))* [Docket No. 266] (the "**UST Motion**" and, together with the Cross-Holder Motion, the "**Motions**")[2] filed by the United States Trustee for Regions 3 and 9 (the "**U.S. Trustee**" and, together with the Cross-Holder Group, "**Movants**").  In support of this Joinder and Objection, CD&R respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Movants' request to dismiss or transfer these chapter 11 cases from this District should be denied.  The Debtors have satisfied the statutory requirements for filing the chapter 11 cases in this District:  the principal assets of Debtor MCC-Norwood, LLC ("**Norwood**") are located in this District, and Norwood has not owned property outside this District during the relevant time period fixed by 28 U.S.C. § 1408.  Rather than seriously challenge these facts, the Cross-Holder Group instead relies on alleged purported defects in Norwood's bankruptcy petition

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Cross-Holder Motion and the UST Motion.

as the basis for its demands.  The U.S. Trustee makes a similar argument and further attempts to

analogize the facts of these chapter 11 cases to the fundamentally different fact pattern considered

by the Third Circuit in *In re LTL Mgmt.*, *LLC*, 64 F.4th 84, 110 (3d Cir. 2023).  The extraordinary

relief requested by the Movants requires more than this limited showing, and the Motions should

be denied.

2.      To be sure, the Cross-Holder Group's Motion has nothing to do with the

convenience of the parties, the interests of justice, or even the merits of proper venue under

Section 1408.  The Cross-Holder Group has pursued the present challenge only because the

Debtors rejected the Cross-Holder Group's competing DIP proposal.  The Cross-Holder Group

would otherwise have been content remaining in this jurisdiction.

3.      The Cross-Holder Group has waived the right to contest venue in this Court and

should be estopped from attempting to do so now.  The Cross-Holder Group's competing DIP

proposal stipulated that venue appropriately lies in this Court (*i.e.*, the U.S. Bankruptcy Court for

the District of New Jersey), and that this Court would exercise jurisdiction with respect to the

approval of that facility.  Specifically, the Commitment Letter for that competing DIP facility

(which formed the crux of the Cross-Holder Group's DIP objection [Docket No. 74]), stated that

"each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect

of the Chapter 11 Cases may be heard in the Bankruptcy Court . . . ."  Commitment Letter § 9, ¶ 3

(at page 7).[3]  Further, the Cross-Holder Group "irrevocably and unconditionally waive[d] any

---

[3]   *Backstop Letter*, dated as of January 30, 2026 (the "**Commitment Letter**"), attached as Exhibit 1 to *Declaration of Benjamin Rosenblum in Support of the Cross-Holder Ad Hoc Group's Omnibus Objection* [Docket No. 78].  A copy of the Commitment Letter is attached to this Objection and Joinder as **Exhibit A**.  The Commitment Letter was executed by the following parties:  Canyon Capital Advisors LLC; Canyon CLO Advisors L.P.; River Canyon Fund Management LLC; Shenkman Capital Management, Inc.; PGIM Inc.; Third Point LLC; and BTG Pactual Absolute Return Master Fund LP.  *See* Commitment Letter (signature pages), pages 10–14.  These parties (aside from PGIM Inc.) comprise the majority of the members of the Cross-Holder Group.  *See Joint Verified Statement of Jones Day and Wollmuth Maher & Deutsch LLP Pursuant to Bankruptcy Rule 2019* [Ex. A, Docket No. 199, pages 2–3].

objection to the laying of venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding has been brought in any inconvenient forum." *Id.* "Bankruptcy Court," in turn, is defined as "the United States Bankruptcy Court for the District of New Jersey." Commitment Letter, Ex. A (DIP Term Sheet) at page 5. The Cross-Holder Group further represented to this Court and parties in interest that its backstop commitment was valid, binding, and enforceable.[4] The Cross-Holder Group should be obligated to live up to its representations in the Commitment Letter, including its waiver of "any objection to the laying of venue" in this Court.

4.      In its hypocritical effort to contest venue, the Cross-Holder Group fails to explain why or how the interests of justice might conceivably be served by transferring these chapter 11 cases by 62 miles to a different bankruptcy court in the same circuit. Certainly the economic reality that the Debtors are overlevered, that their prepetition debt is undersecured, and that secured creditors like CD&R are severely impaired will not change with the geography. Respectfully, the Cross-Holder Group's Motion should be seen for what it is: another attempt to deflect, delay, and hinder these chapter 11 cases. And, the evidence will still show that venue is properly before this Court and should remain so.

5.      For the reasons set forth herein and in the Debtors' Objection, the Cross-Holder Motion and the UST Motion should be denied.

---

[4]      "The Cross-Holder Ad Hoc Group has made a proposal. It's been transmitted to the debtors and filed. The commitment letters are there." Jan. 30, 2026 Hr'g Tr. at 136:4–6.

## ARGUMENT

**I.   The Cross-Holder Group Has Waived Any Objection to Venue and Should be Estopped from Challenging Venue As a Result of Its Own Conduct**

6.      The Cross-Holder Group has waived any right to challenge venue twice over:  by consenting to venue in this Court and by seeking *affirmative* relief from this Court to advance and benefit its own economic interests.  As noted above, the Cross-Holder Group executed what it represented to this Court as valid, binding, and enforceable commitment papers.  Those commitments, in turn, specifically waive the Cross-Holder Group's right to challenge the propriety of venue in this Court, noting that:  "we hereby irrevocably and unconditionally waive any objection to the laying of venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding has been brought in any inconvenient forum."  Commitment Letter § 9, ¶ 3 (at page 7).  And, of course, the existence and enforceability of the Commitment Letter was the primary basis upon which the Cross-Holder Group sought to induce this Court to block the Debtors' DIP approval, and no doubt the Cross-Holder Group will continue to rely on the Commitment Letter in forthcoming disputes relating to the Debtors' DIP financing.  In short, the Cross-Holder Group, by its own conduct, has waived the right to challenge venue here.

7.      The doctrine of judicial estoppel exists precisely in order to prevent this sort of hypocrisy.  Judicial estoppel prevents a litigant from asserting a position inconsistent with one previously asserted in the same or in a previous proceeding.  *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*, 337 F.3d 314, 319 (3d Cir. 2003) (recognizing "the intrinsic ability of courts to dismiss an offending litigant's complaint without considering the merits of the underlying claims when such dismissal is necessary to prevent a litigant from playing fast and loose with the courts." (citation and internal quotation marks omitted)).  And so here.  The Cross-Holder Group

spent hours at the first day hearing pointing to the existence and enforceability of its Commitment Letter as the basis upon which the Court should have denied the Debtors' DIP financing. Yet, by that same letter, the Cross-Holder Group waived its right to challenge venue here—a fact that was conspicuously not mentioned during the Cross-Holder Group's prolonged objection at the first day hearing and undisclosed by its Motion. This is double dealing, full stop, and precisely where estoppel should be appropriately invoked. The Cross-Holder Group cannot be permitted to abandon its representations to this Court with respect to the enforceable waivers undertaken by that Group and by which the Cross-Holder Group attempted to induce this Court to act.

8.      Nor are the Cross-Holder Group's waivers limited to the stipulations provided by the Commitment Letter. Over the course of the past two weeks, the Cross-Holder Group has filed a lawsuit seeking declaratory findings from this Court to challenge the first lien lenders' collateral in an attempt to improve its own economic position, and has served numerous subpoenas on merits issues unrelated to venue in these cases. *See* Complaint filed at Docket No. 1 in *BTG Pactual Asset Mgmt. US, LLC, et al. v. Barclays Bank PLC,* Adv. Pro. No. 26-010141. These actions amount to more than defensive measures to "reserve rights" in these cases.

9.      Such affirmative *conduct* amounts to a waiver of venue in both bankruptcy and non-bankruptcy proceedings, notwithstanding purported reservations of rights inconsistent with parties' *actual* conduct. *See, e.g.*, *In re River Line, Inc.*, 19 B.R. 158, 163 (Bankr. M.D. Tenn. 1982) ("Nor can the plaintiff Rebco complain that venue is improper in this court. Rebco, by initiating this adversary proceeding in this court, has effectively relinquished its right to object to venue." (citing *Olberding v. Ill. Cent. R. Co.*, 346 U.S. 338, 340 (1953)); *Gulf States Reg'l Ctr., LLC v. Jaddou,* No. 23-cv-1354, 2024 U.S. Dist. LEXIS 131357, at *12 (E.D. La. July 25, 2024) ("USCIS made substantive arguments . . . sought relief from the Court, and followed directives by

6

the Court . . .  Applicable law does not allow USCIS to actively litigate the merits of its case and

then claim the court before which it voluntarily litigated is not the proper venue.").  Simply put,

the Cross-Holder Group cannot have it both ways:  it cannot consent to venue when it serves its

interests and continue to seek offensive relief from this Court, and then turn around and complain

that the Court lacks venue because it did not rule its way.

## II.    Venue Is Proper Under 28 U.S.C. § 1408; Movants Cannot Overcome Their Factual Burden with Bare Assertions

10.    Movants' venue challenge fails on the merits in any event.  As the Debtors'

proposed counsel explained at the first day hearing before this Court:  "MCC Norwood . . . has

only one asset of any value, and that is two bank accounts that are held at ConnectOne Bank, which

is a bank located in New Jersey." Jan. 30, 2026, Hearing Tr. at 28:9–10.  Movants do not seriously

dispute the existence of Norwood's bank accounts in this District,[5] nor have they offered any

evidence to establish that Norwood has any other assets of value.  The Debtors have established—

and the evidence to be presented will further establish—their basis for venue this District, and their

choice of venue is entitled to "a strong presumption in favor of maintaining venue where the

bankruptcy case is pending."  *In re PermaLife Prods., LLC*, 432 B.R. 503, 516 (Bankr. D.N.J.

2010) (citation omitted).  To overcome this presumption, Movants must carry the burden to prove,

by a preponderance of evidence, that venue is improper in this District.  *See CB Brielle, LLC v.*

---

[5]    The assertion that Norwood's bank accounts "follow" its Ohio domicile under the *mobilia sequuntur personam* doctrine is simply wrong.  *See* UST Motion at ¶ 17.  Courts have consistently held that for purposes of 28 U.S.C. § 1408, bank accounts are located in the district where they are opened.  *See In re Bavelis*, 453 B.R. 832, 869 (Bankr. S.D. Ohio 2011) ("The Brokerage Account is located where the account was opened."); *In re Farmer*, 288 B.R. 31, 34 (Bankr. N.D.N.Y. 2002) (finding venue to be proper where two bank accounts were the debtor's principal assets in the United States and such accounts were opened at bank located in district where petition was filed); *In re Iglesias*, 226 B.R. 721, 723 (Bankr. S.D. Fla. 1998) (finding debtor's bank account to be located in district where bank at which account was opened was physically located).

*Praesidian Cap. Opp. Fund III*, No. 13-34693, 2015 WL 1214192, at *3 (Bankr. D.N.J. Mar. 13, 2015).

11.    Rather than addressing this evidentiary burden head on, the Movants instead ask this Court to disregard the location of Norwood's assets because Norwood's petition does not individually list the address for its bank accounts. *See* UST Motion ¶¶ 7, 15; Cross-Holder Motion ¶ 4. But that disclosure is not a required element for venue under Section 1408. Rather, Section 1408 provides that venue is proper in the district in which a debtor has "principal assets," regardless of whether the location of those assets are specifically identified by any petition. *See* 28 U.S.C. § 1408(1). Put differently, a debtor's decision to individually list the specific location of its principal assets on the face of a petition is not dispositive of whether venue is proper. [6] The Debtors have and will make their factual showings and the Court is entitled to make a determination based on a complete factual record.

**III.    There Is No Basis for Dismissal:  These Chapter 11 Cases Are <u>Not</u> LTL Management**

12.    Relying on *LTL*, the U.S. Trustee contends that, even if venue is proper in this District, Norwood's petition should be dismissed because it lacks a "valid bankruptcy purpose." UST Motion ¶¶ 23–24. Any application of *LTL* would be misplaced here:  this is not a "Texas Two-Step" case involving a solvent "made for bankruptcy" debtor. *See LTL*, 64 F.4th at 110. *LTL* involved a corporate debtor formed on the eve of chapter 11 "almost exclusively" to manage

---

[6]    The cases Movants cite in support of their defective venue theory are inapposite. *In re George Philip Townsend, Jr.*, is distinguishable because the petition plainly stated that the Debtors "ha[d] not resided within this district for the preceding 180 days, but venue will be based on convenience of the parties" and there was no other basis from which the court could find that venue was proper. 84 B.R. 764, 765, 768 (Bankr. N.D. Fla. 1988). *In re FRG, Inc.*, 107 B.R. 461, 470 (Bankr. S.D.N.Y. 1989) is miscited; the opinion addressed tag-along debtors "bootstrapping" venue to a pending case, not whether a petition is the exclusive evidence for evaluating venue. *In re AnthymTV Co.* applied an initial burden to the *petitioning creditor* in an *involuntary* case—the court acknowledged that in voluntary cases, "a debtor's choice of forum is presumed to be the proper district for venue purposes and the party challenging the debtor's choice of venue bears the burden of proof." 650 B.R. 261, 275 (Bankr. D.S.C. 2023).

and obtain a discharge of tort liabilities in bankruptcy.  *See id.* at 109.  As the Third Circuit found, LTL had "a funding backstop, not unlike an ATM disguised as a contract, that it can draw on to pay liabilities without any disruption to its business or threat to its financial viability."  *Id.*  Based on those facts, the Third Circuit concluded that LTL's petition was not filed in good faith because it lacked any indicia of "financial distress."  *Id.* at 111.

13.    The Debtors here are a multi-national corporation with approximately 12,800 employees and $5.5 billion in funded debt obligations.  Faced with imminent loan maturities, the Debtors filed these cases with the support of the majority of their secured lenders and equity sponsor to implement a comprehensive restructuring of their funded debt liabilities.  Norwood was not created from "whole cloth" as a spinoff from a solvent debtor.  Rather, as with other guarantor affiliates, Norwood is insolvent by billions of dollars.  That Norwood's assets are not sufficient to meet its liabilities is not evidence of bad faith.  To the contrary, such evidence proves these cases were filed to address significant funded debt obligations—which is expressly endorsed by *LTL*.  *See id.* at 104 ("[T]he takeaway here is that when financial distress is present, bankruptcy may be an appropriate forum . . . .").

## IV.    Even If the Court Determines That Venue Is Improper, the Bankruptcy Court Should Exercise Its Discretion to Retain Venue or, in the Alternative, Transfer Venue

14.    If the Court determines that venue is improper under §§ 1406 and 1408, the Court should exercise its discretion to retain venue or, in the alternative transfer venue—dismissal is not an appropriate remedy.  These chapter 11 cases are not a civil complaint that can be dismissed and refiled in another venue.[7]  Nor are the Debtors an empty shell for which chapter 11 can "preserve

---

[7]    Even within the civil litigation context, courts have recognized Congressional intent that the transfer element of § 1406(a) be used to "avoid the harshness of a dismissal."  *In re Waits*, 70 B.R. 591, 594 (Bankr. S.D.N.Y. 1987).  *See also Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962) ("Congress, by the enactment of § 1406(a), recognized that 'the interest of justice' may require that the complaint not be dismissed but rather that it be transferred in order that the plaintiff not be penalized…." (citation omitted)).

no value that otherwise would be lost outside of bankruptcy." *See LTL*, 64 F.4th at 110.  As all parties have recognized, the Debtors in these cases operate a complex business with billions of dollars in enterprise value, all of which would be immediately threatened by dismissal of these chapter 11 cases.  And, even upon a hypothetical determination of improper venue, Bankruptcy Rule 1014(a)(2) clearly provides that a court "***may*** either dismiss ***or transfer*** the case" in its discretion.  Fed. R. Bankr. P. 1014(a)(2) (emphasis added).  Moreover, even when courts have construed Bankruptcy Rule 1014(a)(2) as ***requiring*** either dismissal or transfer, they have exercised significant discretion over the timing of transfer to avoid harm to a debtor's reorganization process.  *See In re Houghton Mifflin Harcourt Pub. Co.*, 474 B.R. 122, 125 (Bankr. S.D.N.Y. 2012) ("While § 1406 mandates transfer or dismissal when statutory venue requirements have not been met, it does not dictate when the transfer must take place, nor does it foreclose steps in the interim to protect the creditors who might be harmed thereby.").[8]

15.    Finally, and while not before the Court, it is worth reiterating that improper venue does not retroactively divest this Court of its jurisdiction or authority to issue final orders. *See Protopapas v. Brenntag AG (In re Whittaker Clark & Daniels Inc.)*, 152 F.4th 432, 443 (3d Cir. 2025) ("[A]n improperly filed bankruptcy petition . . . does not strip bankruptcy courts of subject matter jurisdiction.").  In fact, the Cross-Holder Group has expressly conceded the jurisdiction of this Court to, among other things, enter financing orders.  *See* Commitment Letter § 9 (at page 7).  The Cross-Holder Group cannot use a venue challenge as a collateral attack on

---

[8]    As various courts have found, Bankruptcy Rule 1014(a)(2)'s permissive language—in contrast to 28 U.S.C. 1406's mandatory language in civil cases—permits a court to retain venue even if it is ultimately determined to be improper. *See In re Capital Hotel Group, Inc.*, 206 B.R. 190, 193 (Bankr. E.D. Mo. 1997) ("The Court finds and concludes that upon a determination of improper venue, a Bankruptcy Court may . . . in the proper circumstances, retain the case."); *In re Lazaro*, 128 B.R. 168, 173–75 (Bankr. W.D. Tex. 1991) ("Congress seems to have recognized that venue considerations in bankruptcy cases are decidedly different from venue issues in general civil litigation . . . leaving to the courts the ability to move or not move bankruptcy cases . . . ."). *But see Thompson v. Greenwood*, 507 F.3d 416 (6th Cir. 2007) (finding that Bankruptcy Rule 1014(a)(2) requires transfer or dismissal).

this Court's jurisdictional authority, or to seek a rehearing of settled matters by a transferee court of coordinate jurisdiction.

## JOINDER AND RESERVATION OF RIGHTS

16.     As noted above, CD&R joins in and adopts the arguments set forth in the Debtors' Objection, and such arguments are hereby incorporated as if set forth herein.  CD&R further reserves the right to join in additional arguments raised by any other parties in connection with the hearing on the Cross-Holder Motion and UST Motion.

## CONCLUSION

For the reasons set forth above, in the Debtors' Objection, and to be presented at the hearing on these matters, CD&R respectfully requests that the Court deny the Cross-Holder Motion and UST Motion, find that venue in this District is proper, and grant such other and further relief as is just and proper under the circumstances.

Dated:  February 19, 2026

LOWENSTEIN SANDLER LLP
By: /s/ Eric S. Chafetz
Jeffrey Cohen, Esq. (admitted *pro hac vice*)
Eric S. Chafetz, Esq.
Colleen M. Restel, Esq.
Philip Gross, Esq.
One Lowenstein Drive
Roseland, NJ 07068
Telephone (973) 597-2500
Email: jcohen@lowenstein.com
Email: echafetz@lowenstein.com
Email: crestel@lowenstein.com
Email: pgross@lowenstein.com

-and-

LATHAM & WATKINS, LLP
Ray C. Schrock, Esq. (admitted *pro hac vice*)
Candace M. Arthur, Esq. *(*admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200

Ryan Preston Dahl, Esq. (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611

Deniz Irgi, Esq. (admitted *pro hac vice*)
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067

Email: ray.schrock@lw.com
Email: ryan.dahl@lw.com
Email: candace.arthur@lw.com
Email: deniz.irgi@lw.com

-and-

DEBEVOISE & PLIMPTON LLP
Erica Weisgerber *(*admitted *pro hac vice*)
Zach Saltzman, Esq. (admitted *pro hac vice*)
Nick Kaluk, Esq. *(*admitted *pro hac vice*)
Mitch Carlson, Esq. *(*admitted *pro hac vice*)
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000
Email: eweisgerber@debevoise.com
Email: zhsaltzm@debevoise.com
Email: nskaluk@debevoise.com
Email: mcarlson@debevoise.com

*Counsel to CD&R*