**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
steven.serajeddini@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Rachael M. Bentley (admitted *pro hac vice*)
Peter A. Candel (admitted *pro hac vice*)
Lindsey J. Blumenthal (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
rachael.bentley@kirkland.com
peter.candel@kirkland.com
lindsey.blumenthal@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| MULTI-COLOR CORPORATION, *et al.*, | Case No. 26-10910 (MBK) |
| Debtors.[1] | (Jointly Administered) |

---

[1]    The last four digits of Debtor Multi-Color Corporation's tax identification number are 5853.  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/MCC.  The location of the Debtors' service address for purposes of these chapter 11 cases is:  3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327.

**DEBTORS' EMERGENCY MOTION FOR ENTRY
OF AN ORDER (I) DISBANDING THE COMMITTEE
OR IN THE ALTERNATIVE, (II) (A) DIRECTING THE U.S. TRUSTEE TO
RECONSTITUTE THE COMMITTEE AND (B) GRANTING CASE PROTECTIONS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") state

as follows in support of this motion (the "Motion"):[2]

**Preliminary Statement**

1.      An unsecured creditors' committee should not have been appointed in these chapter

11 cases.  The purpose of an unsecured creditors' committee is to ensure that the rights of

unsecured creditors are adequately represented in the chapter 11 process and to seek the maximum

possible recovery for them.  Members of the committee are selected to serve in a fiduciary role,

representing the interests of *all* unsecured creditors.  Here, the appointment of a committee is

arbitrary, capricious, unnecessary, and highly prejudicial, and the circumstances surrounding the

appointment call for close scrutiny.  There is no justification for imposing the costs of a committee

on the Debtors' estates nor adding further risk of value-destructive disruption to the timeline in

these chapter 11 cases.

2.      On March 18, 2026, after the Debtors filed the Voting Report showing ***near***

***unanimous support for the Plan*** (more than 96% of First Lien Secured Claims and more than

83% of Junior Funded Debt Claims voted to accept the Plan)[3], the U.S. Trustee appointed the

three-member Committee (as defined below), comprising two duplicative Holders of Unsecured

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Joint
      Prepackaged Chapter 11 Plan of Reorganization of Multi-Color Corporation and its Debtor Affiliates Pursuant
      to Chapter 11 of the Bankruptcy Code* [Docket No. 17] (the "Plan").

[3]   *See Declaration of James Lee with Respect to the Tabulation of Votes on the Joint Prepackaged Chapter 11 Plan
      of Reorganization of Multi-Color Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy
      Code* [Docket No. 482] (the "Voting Report").

Notes Claims ("Unsecured Notes Creditors") and one litigation claimant holding a contingent General Unsecured Claim included in the proposed settlement class subject to a settlement currently pending before the Superior Court of the State of California for the County of Napa. The Committee, therefore does not represent the interests of currently impaired or unrepresented creditors. The Committee cannot possibly negotiate for a better deal for Holders of General Unsecured Claims ("General Unsecured Creditors"), including for the benefit of the sole individual Holder of a General Unsecured Claim on the Committee—General Unsecured Claims are riding through these chapter 11 cases unaffected. Unsecured Notes Creditors, the only impaired unsecured creditors in these chapter 11 cases, are already adequately and zealously represented by the Minority Holdout Group and its counsel, which has been actively involved in every aspect of these chapter 11 cases since the petition date. The Committee therefore serves none of the statutory purposes of a creditors' committee.

3.      The Committee is unnecessary to advance the interests of a discrete group of financial stakeholders comprising sophisticated financial institutions because that task is already being carried out by the Minority Holdout Group and the Minority First Lien Group, with the assistance of multiple global law firms and other advisors. The financial burden required to support the Committee will place these already cash-strapped chapter 11 cases under further liquidity pressure and jeopardize the reinstatement of General Unsecured Claims that serves as the core of the Plan. The appointment of the Committee is wasteful and a risk to the success of these chapter 11 cases.

4.      Moreover, the Debtors are less than one week from the commencement of the Combined Hearing on March 31, 2026. As demonstrated by the Voting Report filed on March 17, 2026, all classes entitled to vote have voted to accept the Plan. There is no impaired, rejecting

class. The Plan properly provides that General Unsecured Claims are ***unimpaired*** and will be paid in the ordinary course as if the Debtors had not commenced these chapter 11 cases. The Plan is poised to be confirmed and any delays in the timeline risk upending these chapter 11 cases and returning them essentially to square one without the benefit of the value-maximizing transactions embodied in the Plan. The appointment of the Committee adds untenable, and unnecessary, risk to the critical timing element of these chapter 11 cases.

5. The Court has ample authority to act under these circumstances. To prevent unjustifiable risk to these chapter 11 cases and the Debtors' value-maximizing restructuring, the Debtors seek an emergency order disbanding the Committee immediately. It serves none of the legitimate purposes of a statutory committee under the Bankruptcy Code and has no reason to exist.

6. If the Court permits the Committee to stand, however, the Court should direct the U.S. Trustee reconstitute it to remove one or both of the conflicted Unsecured Notes Members (as defined below). The Unsecured Notes Members cannot serve as fiduciaries on behalf of *all* unsecured creditors under these circumstances and should not be permitted to drain estate resources and jeopardize the unimpaired General Unsecured Claims to advance their own interests.

7. Additionally, the Court should impose strict Case Protections (as defined below) to ensure that, if the Committee is to participate in these chapter 11 cases, its participation is limited in accordance with the unique facts and circumstances of these chapter 11 cases. The Committee should not be permitted to take any action unless and until the waiver of typical creditor-protective mechanisms expires 75 days from the Petition Date. The rationale for extending those deadlines is the same rationale as to why the Committee is not needed here, or at the very least, should be held in abeyance for the same period.

8.      Further, the Committee should not be permitted to incur uncapped fees and expenses at the expense of the Debtors' estates—its impaired constituency has ample resources and can bear its own costs without endangering General Unsecured Creditors.  The Committee has already demonstrated the unwarranted challenges that these chapter 11 cases face if the Committee is permitted to proceed without limitation.  On the eve of a contested hearing to consider the Debtors' proposed postpetition financing, and with no advanced notice to any party in interest in these chapter 11 cases, the Committee requested an adjournment of the Combined Hearing to a date that is no less than one month after the currently scheduled Combined Hearing on March 31, 2026.  The Committee should not be permitted to disrupt the Confirmation timeline that has been in place since the outset of these chapter 11 cases.  The Plan has been accepted by all voting classes and meets all of the requirements for confirmation, as will be shown at the Combined Hearing on March 31, 2026.  Nothing about the appointment of the Committee changes the relevant facts.

9.      For these reasons, and as further set forth herein, the Committee should be disbanded, or in the alternative, reconstituted to remove one or both of the conflicted Unsecured Notes Members and Case Protections should be imposed on the reconstituted Committee.

### Relief Requested

10.     The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"):  (a) disbanding the Committee (as defined below) or, in the alternative, (b) (i) directing the U.S. Trustee to reconstitute the Committee and (ii) granting Case Protections.

### Jurisdiction and Venue

11.     The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on

June 6, 2025 (Bumb, C.J.).  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

12.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

13.     The bases for the relief requested herein are sections 105(a), 105(d), 1102(a), and 1103 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rule 2020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Court's Chapter 11 Complex Case Procedures.

**Background**

14.     The Debtors, together with their non-Debtor affiliates (collectively, "MCC" or the "Company") are a leading global provider of prime label solutions, supporting prominent brands across end categories, including food and beverage, wine and spirits, home and personal care, and healthcare, among others.  Since its inception in 1916 as the Franklin Development Company, MCC has remained a consistent pioneer of label printing.  Over the years, the Company has continuously added new print technologies—including pressure sensitive, cut and stack, roll-fed, in-mold, shrink sleeve, and radio frequency identification (RFID)—and innovations to its arsenal to provide customers with the right label solution coupled with value-additive service. Headquartered in Atlanta, Georgia, MCC currently employs approximately 12,800 employees and has exponentially grown its global footprint for over a century, with current operations in over 90 facilities across the globe.

15.     On January 29, 2026 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a)

and 1108 of the Bankruptcy Code.  On February 2, 2026, this Court entered an order directing the procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 98].  On March 17, 2026, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code [Docket No. 493] (the "Committee").

## I.    The Debtors' Confirmation Timeline and Proposed Plan.

16.    On January 27, 2026, the Debtors commenced solicitation of their Plan. *See* Disclosure Statement Order ¶ 4.  The deadline to vote on the Plan was March 3, 2026.  *Id*. As of the date of the filing of this Motion, the Debtors have obtained the requisite votes to satisfy the requirements of section 1126 of the Bankruptcy Code to confirm the Plan.  *See* Voting Report ¶ 16.

17.    The Combined Hearing on final approval of the Disclosure Statement and Confirmation of the Plan is scheduled for March 31, 2026, at 1:00 p.m., prevailing Eastern Time. *See* Feb, 20, 2026 Hr'g Tr. [Docket No. 331] at 21:16–22.  The deadline to object to the Plan was March 17, 2026, except to the extent such deadline was consensually extended by the Debtors for certain parties in interest.  *Id*.

18.    The Plan contemplates the following treatment of claims and interests on the Effective Date:

- Holders of Allowed First Lien Secured Claims will receive their Pro Rata share of:  (a) the New Preferred Equity Subscription Rights; (b) the First Lien New Debt Allocation in the form of New Term Loans;[4] (c) the First Lien Cash Consideration; (d) the New Warrants; (e) the First Lien New Preferred Equity Allocation; and (f) the First Lien New Common Equity Allocation;[5]

---

[4]    Subject to the New Term Loan Cash Out Election and the New Debt Election, as set forth in the Plan.

[5]    Subject to the New Common Equity Debt Election, as set forth in the Plan.

- Holders of Allowed Junior Funded Debt Claims will receive their Pro Rata share of: (a) the Junior Funded Debt Cash Consideration; and (b) the Junior Funded Debt New Common Equity Allocation;[6]

- Holders of Allowed General Unsecured Claims will receive either reinstatement or such other treatment rendering such Allowed General Unsecured Claim unimpaired in accordance with section 1124 of the Bankruptcy Code;

- Holders of Existing Equity Interests will receive no distribution.[7]

**II.     The Appointment and Membership of the Committee.**

19.     On February 13, 2026, 15 days after the Petition Date, proposed counsel for the Debtors and counsel to the U.S. Trustee met via teleconference to discuss the Debtors' concerns regarding the submission of questionnaires to the U.S. Trustee by members of the Minority Holdout Group. During that conversation, the Debtors raised the irreconcilable conflict of interest between the Minority Holdout Group's pursuit of increased recoveries for their Unsecured Notes Claims and the unimpaired treatment of General Unsecured Claims under the Plan.

20.     On March 18, 2026, more than 30 days after the Debtors spoke with the U.S. Trustee and more than 45 days after the Petition Date, the U.S. Trustee appointed the Committee. *See Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 493]. The Committee's members are UMB Bank, N.A. ("UMB"), Shenkman Capital Management, Inc. ("Shenkman," and, together with UMB, the "Unsecured Notes Members"), and James Castillo. *Id*.

21.     UMB is the successor indenture trustee under the Unsecured Notes Indentures holding Unsecured Notes Claims totaling approximately $1.2 billion on behalf of Holders of

---

[6]     Subject to the New Common Equity Debt Election, as set forth in the Plan

[7]     *See generally* Plan, Art. III.

Unsecured Notes, representing the full outstanding principal amount of the Unsecured Notes as of the Petition Date.[8]   On March 3, 2026, counsel for UMB, McDermott Will & Schulte LLP ("McDermott"), filed a notice of appearance for UMB solely in its capacity as successor indenture trustee.  *See Notice of Appearance and Request for Service of Papers* [Docket No. 395].

22.    Shenkman is a Holder of Unsecured Notes and a member of the Minority Holdout Group represented by Jones Day and Wollmuth Maher & Deutsch LLP ("Minority Holdout Group Counsel").  *See First Amended Joint Verified Statement of Jones Day and Wollmuth Maher & Deutsch LLP Pursuant to Bankruptcy Rule 2019*, Ex. A [Docket No. 397] (the "Minority Holdout Group 2019 Statement").  In the Minority Holdout Group 2019 Statement, the Minority Holdout Group Counsel verified that Shenkman held, as of March 2, 2026, $137.3 million of 2027 Unsecured Notes and $6.9 million of 2029 Unsecured Notes.  *Id.*  Shenkman does not appear in the Top 30 List—its Unsecured Notes Claims are duplicative of a corresponding portion of UMB's Unsecured Notes Claims.  As of the date of this Motion, the Minority Holdout Group Counsel has not filed an amended verified statement under Bankruptcy Rule 2019 removing Shenkman from the Minority Holdout Group.

23.    Mr. Castillo is a plaintiff in a class action lawsuit (the "Castillo Action"), Case No. 24CV016077, pending in the Superior Court of California, County of Sacramento, asserting certain wage and hour violations under California state law.  No judgment has been entered in the Castillo Action, however, Mr. Castillo's claim is subject to the *Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement* currently pending before

---

[8]    *See Voluntary Petition for Non-Individuals Filing for Bankruptcy of Multi-Color Corporation*, Official Form 204 [Docket No. 1] (the "Top 30 List").

the Superior Court of California.[9]   Accordingly, Mr. Castillo holds a contingent, unliquidated

General Unsecured Claim against the Debtor-defendants that will be reinstated under the Plan and

is, therefore, Unimpaired.   Neither Mr. Castillo nor his counsel has filed a notice of appearance or

otherwise participated in these Chapter 11 Cases, despite the numerous hearings before the Court

and the passage of the objection deadline for Confirmation of the Plan on March 17, 2026.[10]

**Basis for Relief**

**I.        This Court Has the Authority to Disband the Committee.**

24.        The Court has inherent authority and authority under section 105 of the Bankruptcy

Code to review the U.S. Trustee's actions.  *See In re LTL Mgmt., LLC*, 636 B.R. 610, 620–21

(Bankr. D.N.J. 2022).   This authority extends to reviewing the U.S. Trustee's appointment of a

creditors' committee.  *Id.*; *In re Cont'l Cast Stone, LLC*, 625 B.R. 203, 209 (Bankr. D. Kan. 2020)

("The majority of courts hold that a bankruptcy court can review any action of the U.S. trustee

under § 105, including the existence or composition of committees."); *In re JNL Funding Corp.*,

438 B.R. 356 (Bankr. E.D.N.Y 2010); *In re Mercury Finance Co.*, 240 B.R. 270 (N.D. Ill. 1999);

*In re Sharon Steel Corp.*, 100 B.R. 767 (Bankr. W.D. Pa. 1989) ("[T]he legislative history is clear

that the bankruptcy courts are to conduct a plenary review of decisions of the U.S. Trustee affecting

creditors' committees, upon motion of a party in interest.").

25.        Section 105(a) of the Bankruptcy Code affords the bankruptcy court with broad

equitable power and provides that "[t]he court may issue any order, process, or judgment that is

necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Bankruptcy

---

[9]    *Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action and PAGA Settlement*, *Figueroa and Perez v. Multi-Color Corporation, et. al*, No. 24CV000347 (Cal. Super. Ct. Feb. 24, 2026).

[10]    Mr. Castillo did not object to Confirmation of the Plan nor did he request an extension of his deadline to file an objection.

courts' broad authority "exceeds the equitable authority available under 'traditional equity jurisprudence.'" *In re Melhose*, 469 B.R. 694, 710 (Bankr. E.D. Mich. 2012) (quoting *In re Dow Corning Corp.*, 280 F.3d 648, 658 (6th Cir. 2002)). Further, section 105(d) of the Bankruptcy Code allows the bankruptcy court to "issue an order . . . prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically." 11 U.S.C. § 105(d)(2).

26. Bankruptcy Rule 2020 expressly "provides a procedure for judicial review of the United States trustee's acts . . . in connection with the administration of the case." Fed. R. Bankr. P. 2020, advisory committee's note. Rule 2020 applies to "any act" of the U.S. Trustee. Fed. R. Bankr. P. 2020. Together, Rule 2020 and section 105 of the Bankruptcy Code enable bankruptcy courts to review and, where necessary, remedy, acts of the U.S. Trustee. Indeed, "section 105(a) can be *and should be* used to assure that the [U.S.] trustee does not act in an arbitrary and capricious manner." *In re Voluntary Purchasing Grps., Inc.*, 1997 WL 155407, at *3 (Bankr .E.D. Tex. Mar. 21, 1997) (emphasis added).

27. "[T]he majority of courts holds that the bankruptcy court has inherent power, as well as the statutory authority under § 105(a), to review acts of the U.S. Trustee under an 'arbitrary and capricious' or 'abuse of discretion' standard of review." *LTL Mgmt.*, 636 B.R. at 622 (citing *JNL Funding*, 438 B.R. at 360; *Mercury*, 240 B.R. at 270); *see In re First Rep. Bank Corp.*, 95 B.R. 58, 60 (Bankr. N.D. Tex. 1988) (reading section 105 of the Bankruptcy Code to "authorize review of the United States trustee's administrative task" and stating that "the court should use the arbitrary and capricious standard applicable for [its] administrative review.").

28. A decision is "arbitrary and capricious" if it is based on an "erroneous conclusion of law, a record devoid of evidence on which the decision maker could rationally have based its

decision, or is otherwise patently unreasonable, arbitrary or fanciful." *In re Barney's Inc.*, 197 B.R. 431, 439 (Bankr. S.D.N.Y. 1996) (citing *Heat & Control, Inc. v. Hester Indus. Inc.*, 785 F.2d 1017, 1022 (D.C. Cir. 1986)). Moreover, "[t]he authority to review the trustee's appointments under the abuse of discretion standard means that, if this court finds that the Trustee acted arbitrarily and capriciously in forming the combined committee, it can issue 'any order necessary or appropriate to rectify the situation.'" *Mercury*, 240 B.R. at 278.

29.     Where the U.S. Trustee's appointment of a committee is arbitrary and capricious or an abuse of discretion, disbandment is an appropriate remedy. *LTL Mgmt.*, 636 B.R. at 623 (determining that "the Court possesses the authority to review the U.S. Trustee's decision to" appoint a committee "and if appropriate **strike** [the] Notice [of Appointment] and **disband** the committees formed thereunder" (emphasis added)); *see In re City of Detroit, Michigan*, 519 B.R. 673, 681–82 (Bankr. E.D. Mich. 2014) (disbanding official creditors committee upon finding that the committee "would add little value to the case, if any" and thus the enormous costs could not be justified); *JNL Funding*, 438 B.R. at 360 ("Despite limited case law on this issue, the majority of courts hold[ ] that the bankruptcy court has the inherent power, as well as the statutory authority under Section 105(a), to review acts of the UST, under an 'arbitrary and capricious' or 'abuse of discretion' standard of review."); *Pac. Ave.*, 467 B.R. at 870 (ordering disbandment of committee pursuant to section 105(d)); *Mercury*, 240 B.R. at 278 ("The authority to review the trustee's appointments under the abuse of discretion standard means that, if this court finds that the Trustee acted arbitrarily and capriciously in forming the combined committee, it can issue 'any order necessary or appropriate to rectify the situation.'").

**II.     The Appointment of the Committee Was Arbitrary and Capricious.**

30.     The appointment of the Committee at this stage in these chapter 11 cases was arbitrary and capricious for multiple reasons. As an initial matter, it is too late in these chapter 11

cases to appoint the Committee.  The Bankruptcy Code directs the U.S. Trustee to appoint a committee, if any, "as soon as reasonably practicable after the order for relief."  11 U.S.C. § 1102(a)(1).  The U.S. Trustee Program Manual and Policies directs that the U.S. Trustee should "act *as quickly as possible*" after the petition date and that "a committee should be formed within the first *10 to 14 days* of a case."  U.S. Trustee Program Manual and Policies § 3-4.2.2 (2026). The Complex Case Procedures, too, mandate that the U.S. Trustee "must use best efforts to file a notice of appointment . . . within fourteen (14) days of the petition date."  Complex Case Procedures § XI.a.

31.    The U.S. Trustee received responses to its questionnaires in the first week of February, more than 45 days ago.  Shortly thereafter, the U.S. Trustee met with counsel to the Debtors to discuss the appointment of a committee, and the Debtors expressed the same concerns described in this Motion.  More than one month after its discussion with counsel to the Debtors, the U.S. Trustee appointed the Committee without advance notice or explanation to the Debtors. The timing and abruptness of the appointment are highly unusual in complex chapter 11 cases and raise numerous questions regarding the circumstances underlying the Committee's appointment. At a minimum, these circumstances warrant inquiry by the Court.  In reality, they justify disbanding the Committee.

32.    Timing concerns are particularly pronounced here.  Under other circumstances not present here, a delay of 45 days or more may be immaterial to the overall case timeline.  Here, the Debtors commenced these prepackaged chapter 11 cases with a schedule designed to permit the Debtors to reorganize efficiently and expeditiously.  The Debtors have solicited votes, filed the Voting Report demonstrating that all voting classes have voted to accept the Plan, and are in active

Confirmation-related discovery.  On this timeline, a delay of 45 days is a delay of the majority of the time the Debtors contemplated to spend in chapter 11.[11]

33.     Further, the appointment of two Unsecured Notes Creditors to the three-member Committee was arbitrary and capricious because it is contrary to the fundamental purposes of a creditors' committee.  The creditors' committee owes a fiduciary obligation to its constituency. *Mirant Americas Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors*, 2003 WL 22327118, at *4 (S.D.N.Y. Oct. 10, 2003); *see Shaw & Levine v. Gulf & Western Indus., Inc. (In re Bohack Corp.)*, 607 F.2d 258, 262 n.4 (2d Cir. 1979) ("[T]he committee owes a fiduciary duty to the creditors, and must guide its actions so as to safeguard as much as possible the rights of minority as well as majority creditors.").  The committee's duty is to protect the interests of **all** unsecured creditors.  *See ABC Automotive Prods. Corp.*, 210 B.R. 437, 441 (Bankr. E.D. Pa. 1997); *Mirant Americas Energy Mktg.*, L.P, 2003 WL 22327118, at *4 ("The principal purpose of creditors' committees is not to advocate any particular creditor class's agenda, but rather to 'strike a proper balance between the parties such that an effective and viable reorganization of the debtor may be accomplished.'").

34.     Each member of the committee is subject to these fiduciary duties.  *ABC Automotive*, 210 B.R. at 441 ("Creditors who serve on the committee owe a fiduciary duty to the constituents whom they represent." (citing *Woods v. City Nat. Bank & Trust of Chicago*, 312 U.S. 262, 268 (1941))).  "This duty obligates them to act with **undivided loyalty** for the benefit of **all of the unsecured creditors**."  *Id.* (emphasis added) (citing *Pension Benefit Guaranty Corp. v. Pincus, Verlin, Hahn, Reich & Goldstein Pro. Corp.*, 42 B.R. 960, 963 (E.D. Pa. 1984)).  "Conflicts of

---

[11]    But for rescheduling the Combined Hearing to March 31, 2026, the Combined Hearing would already be complete and the Debtors would be working toward emergence as of the filing of this Motion.

interest on the part of the representative persons or committees are . . . **not to be tolerated**." *In re Johns-Manville Corp.*, 26 B.R. 919, 925 (Bankr. S.D.N.Y. 1983) (emphasis added).

35.     Shenkman is a member of the Minority Holdout Group, which has, to date, filed an unsuccessful motion challenging venue of these chapter 11 cases, objections to every material pleading the Debtors have filed, an unsuccessful motion for "relief" from the Debtors' marketing and sale process, an unsuccessful request to certify its appeal of the Interim DIP Order for direct appeal to the Third Circuit, an appeal of the Interim DIP Order to the District Court for the District of New Jersey, and two petitions for writs of mandamus from the Third Circuit regarding venue (one of which was denied and the other of which is pending).  This extensive, scorched earth litigation is a stark illustration of Shenkman's goal in these chapter 11 cases—the reckless pursuit of its own interests at any cost.  Its appointment to the Committee will not provide unsecured creditors with a "watchdog" nor provide a negotiating counterparty to the Debtors.  *See ABC Automotive*, 210 B.R. at 441.  Shenkman's appointment to the Committee will function exclusively to shift the expense of its litigiousness to the Debtors' estates.

36.     Even Shenkman recognizes that its membership in both the Committee and the Minority Holdout Group is an intractable conflict.  On March 18, 2026, the Debtors received a non-binding indication of interest (the "Truelink IOI") in connection with the Debtors' sale and marketing process from Truelink Capital Management ("Truelink") and the members of the Minority Holdout Group *other than* Shenkman (as defined below) (together with Truelink, the "Consortium").  Shenkman's glaring absence from the Consortium under the Truelink IOI shows a meager, but ineffective, attempt to put some distance between itself and the other members of the Minority Holdout Group.  Moreover, the timing of the submission of the Truelink IOI, absent

Shenkman, on the same day that Shenkman was appointed to the Committee exacerbates the unusual and confusing circumstances surrounding the Committee's appointment.[12]

37.     Although UMB has yet to join the litigation fray, the same concerns apply—UMB holds Unsecured Notes Claims in Class 5 *only*, and therefore definitionally will pursue those interests *only* and at the Debtors' expense.  Moreover, UMB's participation in these chapter 11 cases is duplicative.  The Minority Holdout Group, represented by the Minority Holdout Group Counsel and a sophisticated investment bank, is already working to advance the interests of Unsecured Notes Creditors.  UMB is not, itself, a holder of Unsecured Notes.  Its Claims are derivative of its capacity as trustee on behalf of the actual holders.  Where those holders are forcefully advocating their own interests, the necessity, or even utility, of UMB's independent participation is questionable at best.

38.     The Unsecured Notes Members' conflicts are particularly pronounced here, where pursuit of increased recoveries under a plan for Unsecured Notes Creditors necessarily obstructs keeping General Unsecured Creditors unimpaired.  Under the Plan, which has the full support of the vast majority of the Debtors' capital structure, General Unsecured Creditors are unimpaired. Allowing General Unsecured Claims to ride through these chapter 11 cases unaffected was a negotiated term of the RSA and *this* Plan, as a concession from the Consenting Stakeholders. With General Unsecured Creditors fully unimpaired under the poised-to-be-confirmed Plan, the Committee has only one more interest to pursue—the interests of the Unsecured Notes Creditors.

---

[12]   Given the expedited relief the Debtors seek in this Motion, they have not propounded discovery on the U.S. Trustee, the Committee, or the Minority Holdout Group.  Nevertheless, the Debtors reserve their right to seek discovery into interactions among the Minority Holdout Group, Minority Holdout Group Counsel, and the U.S. Trustee regarding all facts related to the appointment of the Committee.

Such pursuit, however definitionally threatens the unimpaired interests of all General Unsecured Creditors and demonstrates the inherent conflict in their appointment to the Committee.

39.     If the Committee effectively only represents Unsecured Notes Creditors' interests, then the formation of the Committee is a prohibited use of the statutory authority under section 1102 of the Bankruptcy Code.  This Committee is a structural misuse of the committee process because the fiduciary duty obligations of a creditors' committee ***prohibit members "from using their position to advance their own individual interests."***  *In re Nationwide Sports Distributors, Inc.*, 227 B.R. 455, 463 (Bankr. E.D. Pa. 1998) (emphasis added) (quoting *In re Map Int'l, Inc.*, 105 B.R. 5, 6 (Bankr. E.D. Pa. 1989)); *see also In re Drexel Burnham Lambert Group, Inc.*, 118 B.R. 209, 212–13 (Bankr. S.D.N.Y. 1990) (holding that official committees are "not designed to provide a speaker's platform for a particular creditor."); *In re M.H. Corp.*, 30 B.R. 266, 267 (Bankr. S.D. Ohio 1983) ("[W]e will not appoint a creditors committee consisting of a single creditor, for that is inherently inconsistent with the notion of a committee.  Any single creditor ought to look after its rights in its own name.").  The Committee is therefore stuck in an irreconcilable conflict. The Unsecured Notes Members are prohibited from advancing their interests only, but they are the only interests to advance.  The Unsecured Notes Members cannot comply with their fiduciary duties and therefore cannot be members of the Committee.

40.     The Unsecured Notes Members' conflicts of interest are particularly egregious here, where all the downside risk in these chapter 11 cases is borne by currently Unimpaired General Unsecured Creditors.  Delay in the confirmation timeline places the negotiated deal embodied in the RSA and the Plan at risk and drains the estates of liquidity needed to ensure the satisfaction of General Unsecured Claims in the ordinary course upon and after emergence.

By causing such delay, the Unsecured Notes Members[13] would materially harm Unimpaired Holders of General Unsecured Creditors, to which *each* member of the Committee owes a fiduciary duty, in an attempt to increase recoveries for their own class, the other members of which are represented and active and overwhelmingly voted in favor of the Plan.

41. As an additional issue, the Unsecured Notes Members constitute a voting majority of the members of the Committee. It is difficult to conceive of a situation in which one Unsecured Notes Member would break from the other and vote with Mr. Castillo, the sole member of the Committee purportedly advancing the interests of unimpaired General Unsecured Creditors. Accordingly, the Committee, in its current form, is entirely dominated by (and therefore will pursue only the interests of) Holders of Unsecured Notes.

42. The record is devoid of any evidence that the Committee will somehow benefit *all* unsecured creditors. In fact, the opposite is true—the record demonstrates that appointment of the Committee will harm General Unsecured Creditors in pursuit of higher recoveries for Unsecured Notes Creditors, which is antithetical to the Committee's purpose. As such, the U.S. Trustee's decision to appoint the Committee was a confusing, and arbitrary and capricious, exercise of the U.S. Trustee's discretion under section 1102. For these reasons, the Court should disband the Committee.

**III. If the Court Does Not Disband the Committee, the Court Should, in the Alternative, Direct the U.S. Trustee to Reconstitute the Committee and Impose Case Protections.**

43. The Committee should be disbanded. To the extent the Court disagrees, however, the Court should use its equitable powers provided under section 105 of the Bankruptcy Code to

---

[13] Again, there is no logical reason for Mr. Castillo, or any Holder of a General Unsecured Claim, to seek to delay or otherwise disrupt Confirmation of the Plan—the voting classes overwhelmingly voted to accept the Plan and it leaves General Unsecured Claims Unimpaired.

direct the U.S. Trustee to reconstitute the Committee and impose strong Case Protections to avoid costly, unnecessary disruption to these chapter 11 cases.  The Court has the discretion to fashion these appropriate equitable remedies in situations such as these pursuant to section 105 of the Bankruptcy Code.

> **A.      The Court Should Direct the U.S. Trustee to Reconstitute the Committee and Remove One or Both of the Conflicted Unsecured Notes Members.**

44.      "On request of a party in interest . . . , the court may order the United States trustee to change the membership of a committee appointed under this subsection, if the court determines that the change is necessary to ensure adequate representation of creditors . . . ."  11 U.S.C. § 1102(a)(4); *see Sharon Steel*, 100 B.R. at 774 ("Nothing in the present [section 1102] expressly prohibits the continued existence of the power to alter the structure of a committee following the initial appointment of the committee by the U.S. Trustee." (quoting *In re Pub. Serv. Co.*, 89 B.R. 1014, 1021 (Bankr. D.N.H. 1988))).

45.      The Unsecured Notes Members' conflicts are described at length above.  They are each "patron" creditors with "vastly dissimilar interests" from the third member of the Committee, much less the entire pool of General Unsecured Creditors.  *See Voluntary Purchasing*, 1997 WL 155407, at *3.  The Debtors submit that neither Unsecured Notes Member is an allowable fiduciary and that both should be removed from the Committee.  Both Unsecured Notes Members are more-than-adequately represented in these chapter 11 cases (Shenkman by the Minority Holdout Group Counsel and UMB by McDermott) and capable of advancing their own interests as private creditors.

46.      The Debtors recognize, however, that a single-member Committee may face the exact same issue as the current Committee (representation of only one group of creditors), if a single-member Committee is even allowed under the Bankruptcy Code.  *M.H. Corp.*, 30 B.R. at

267 ("[W]e will not appoint a creditors committee consisting of a single creditor, for that is inherently inconsistent with the notion of a committee.  Any single creditor ought to look after its rights in its own name."); *see Notice of Disbandment of Official Committee of Unsecured Creditors*, *In re Revel AC, Inc.*, No. 13-16253 (GMB) (Bankr. D.N.J. Apr. 19, 2013) [Docket No. 204] (disbanding the official committee of unsecured creditors due to resignation of two of three appointed members); *see* Sept. 18, 2019 Hr'g Tr. at 8:15–19, *In re Halcon Resources Co.*, No. 19-34446 (Bankr. S.D. Tex. Sept. 18, 2019) [Docket No. 404] ("THE COURT:  . . . [H]ow practically does a Committee of one function?  Quite honestly, I've never seen a Committee of one.").  Accordingly, the Debtors submit that, if the Court is inclined to permit the Committee to continue in existence, UMB, as representative of *all* Unsecured Notes Creditors, should be the only Unsecured Notes Member on the Committee and Shenkman should be removed.[14]

> **B.**     **The Court Should, in any Case, Impose Case Protections.**

47.     If the Committee is permitted to continue in any form, it should not be permitted to disrupt the timing of these chapter 11 cases at this late stage, days before the Combined Hearing, and drain estate resources in doing so.  Accordingly, the Court should:  (a) hold any Committee action in abeyance until at least 75 days from the Petition Date, (b) prohibit the Committee from requesting to reschedule the Combined Hearing, and (c) cap any fees and expenses the Committee and its professionals may incur at $200,000 in the aggregate (collectively, the "Case Protections").  Each of these remedies is well within the Court's statutory and inherent authority and is appropriate under the circumstances.

> **i.**     **The Court Should Hold any Committee Action in Abeyance Until at Least 75 Days from the Petition Date.**

---

14    The Debtors note that a two-member Committee would fare only slightly better than a one-member Committee and would lack crucial democratic safeguards for voting on key decisions in these chapter 11 cases.

48.     As set forth in the Disclosure Statement Order, to the extent the Plan is confirmed and goes effective within 75 days of the Petition Date, the U.S. Trustee is not required to convene a meeting of creditors pursuant to section 341(e) of the Bankruptcy Code and the requirement that the Debtors file Schedules, SOFAs, and 2015.3 Reports (all as defined in the Disclosure Statement Order) will be waived.  *See* Disclosure Statement Order ¶¶ 21–22.  That same logic should apply to the involvement of the Committee—the Committee should not be operative if the Plan is confirmed during the first 75 days of these chapter 11 cases.  Appointing the Committee now and granting it the full panoply of powers under section 1102 of the Bankruptcy Code would effectively nullify the relief granted in the Disclosure Statement Order and permit the Committee to commence costly, duplicative, and unnecessary diligence for the benefit of the Unsecured Notes Members whose interests are already adequately represented.

49.     This is not a unique situation.  The U.S. Trustee routinely delays appointing an official committee of unsecured creditors in prepackaged chapter 11 cases on expedited timelines in this Circuit.  *See, e.g.*, *In re Pretium Packaging, L.L.C.*, No. 26-10896 (CMG) (Bankr. D.N.J. Jan. 28, 2026) (prepackaged chapter 11 case in which the United States Trustee refrained from forming an unsecured creditors committee and holding a meeting of creditors under section 341(a) of the Bankruptcy Code); *In re United Site Services, Inc.*, No. 25-23630 (MBK) (Bankr. D.N.J. Dec. 29, 2025) (same); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Aug. 23, 2022) (same); *In re OSG Group Holdings, Inc.*, No. 22-10718 (JTD) (Bankr. D. Del. May 15, 2023) (same); *In re Riverbed Technology, Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Nov. 16, 2021) (same); *In re Hospitality Investors Trust, Inc.*, No. 21-10831 (CTG) (Bankr. D. Del. May 19, 2021) (same); *In re Secure Home Holdings LLC*, No. 21-10745 (JKS) (Bankr. D. Del. Apr. 25, 2021) (same); *In re HighPoint Resources Corporation*, No. 21-10565 (CSS) (Bankr. D. Del. Mar.

14, 2021) (same); *In re Ferrellgas Partners, L.P.*, No. 21-10021 (MFW) (Bankr. D. Del. Jan. 11, 2021) (same); *In re Northwest Hardwoods, Inc.*, No. 20-13005 (CSS) (Bankr. D. Del. Nov. 23, 2020) (same); *In re Pennsylvania Real Estate Investment Trust*, No. 20-12737 (KBO) (Bankr. D. Del. Nov. 1, 2020) (same); *In re Pyxus International, Inc.*, No. 20-11570 (LSS) (Bankr. D. Del. Sept. 11, 2020) (same); *In re TNT Crane & Rigging, Inc.*, No. 20-11982 (BLS) (Bankr. D. Del. Aug. 23, 2020) (same); *In re Chaparral Energy, Inc.*, No. 20-11947 (MFW) (Bankr. D. Del. Aug. 16, 2020) (same); *In re Skillsoft Corporation,* No. 20-11532 (MFW) (Bankr. D. Del. June 14, 2020) (same); *In re Prysm, Inc.*, No. 20-11924 (JTD) (Bankr. D. Del. Aug. 2, 2020) (same); *In re VIVUS, Inc.,* No. 20-11779 (LSS) (Bankr. D. Del. July 7, 2020) (same); *In re APC Automotive Technologies Intermediate Holdings, LLC*, No. 20-11466 (CSS) (Bankr. D. Del. June 3, 2020); *In re Templar Energy LLC*, No. 20-11441 (BLS) (Bankr. D. Del. June 1, 2020) (same); *In re Longview Power, LLC*, No. 20-10951 (BLS) (Bankr. D. Del. Apr. 14, 2020) (same); *In re Quorum Health Corporation*, No. 20-10766 (BLS) (Bankr. D. Del. Apr. 7, 2020) (same); *In re BroadVision, Inc.,* No. 20-10701 (CSS) (Bankr. D. Del. Mar. 30, 2020) (same); *In re VIPC Holdings Liquidating, Inc. (f/k/a VIP Cinema Holdings, Inc.)*, No. 20-10345 (MFW) (Bankr. D. Del. Feb. 18, 2020) (same); *In re REVA Medical, Inc.*, No. 20-10072 (JTD) (Bankr. D. Del. Jan. 14, 2020) (same); *In re Clover Technologies Group, LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Dec. 16, 2019) (same).[15]

50.     Because the U.S. Trustee has inexplicably departed from that standard approach in these prepackaged chapter 11 cases, the Debtors request the Court enter the proposed order applying that same approach here to the extent the Committee is permitted to remain in place.

---

[15]   Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

### ii.   The Committee Should Not Be Permitted to Seek to Reschedule the Combined Hearing.

51.   The Committee's appointment fewer than 2 weeks before the Combined Hearing is highly unusual and raises numerous questions regarding the "how" and "why" of the appointment. But the Committee's appointment does nothing to change the facts relevant to confirmation—the Plan has near-unanimous creditor support and, as will be shown at the Combined Hearing, easily satisfies the requirements for Confirmation.

52.   Nevertheless, on March 24, 2026, the Committee delivered correspondence to the Court requesting that the Court reschedule the Combined Hearing for *no earlier than April 30, 2026*. This request is frivolous and unsupportable.  As an initial matter, under the terms of the Restructuring Support Agreement, the Debtors are required to *emerge* by no later than April 29, 2026 (90 days after the Petition Date).[16]  Thus, the Committee's desired adjournment would place the Combined Hearing beyond the emergence milestone under the Restructuring Support Agreement and result in a breach of the Restructuring Support Agreement and the DIP Facility.[17] Moreover, the Debtors' DIP Facility was not sized to account for the Committee's preferred timeline and, accordingly, granting the Committee's adjournment request may require the Debtors to seek additional DIP financing.

53.   The sole reason offered by the Committee for seeking an adjournment is for the Committee and its advisors to familiarize themselves with the facts and circumstances of these chapter 11 cases.  This justification rings hollow based on the Committee's current membership. The Committee, through Shenkman, has access to voluminous discovery taken in these chapter 11

---

[16]   *See Declaration of Garrett Gabel, Chief Restructuring Officer of Multi-Color Corporation and Certain of its Debtor Affiliates, in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings*, Ex. A § 4(f).

[17]   *See* Interim DIP Order [Docket No. 106], Ex. 1 § 7.17 (incorporating the milestones under the Restructuring Support Agreement into the DIP Credit Agreement).

cases to date.  Shenkman has, through the Minority Holdout Group Counsel, participated in numerous depositions of the Debtors' representatives, including in connection with Confirmation discovery.  There have been multiple public hearings at which the facts and circumstances of these chapter 11 cases have been addressed at length, including most recently the first day of the hearing on final approval of the DIP Facility.  Thus, there should be no "getting up to speed" period for this Committee.

54.     Nor is an extension of time necessary for the Committee to formulate an objection to Confirmation.  On March 24, 2026, the Minority Holdout Group filed a 77-page objection to confirmation.  Mr. Castillo neither requested an extension of his objection deadline nor filed an objection to Confirmation (rightfully so, his Claim is unimpaired under the Plan).  There is simply nothing left for the Committee to do in connection with confirmation—Unsecured Notes Creditors are adequately represented by the Minority Holdout Group Advisors and the only remaining member of the Committee is unimpaired under the Plan.  Requesting a one-month adjournment for additional, duplicative work *at the Debtors' expense* is unjustifiable.

### iii.     Fees and Expenses of the Committee's Professionals Should be Capped to the extent Payable by the Debtors' Estates.

55.     If the Court determines not to disband the Committee, the Debtors respectfully request that the Court impose a cap on the fees and expenses incurred by the Committee's professionals to the extent payable by the Debtors' estates.  The Committee has already retained counsel and a financial advisor, subject to the Court's approval.  The Court should decline to permit the Committee to recover its retained advisors' fees and expenses from the Debtors' estates to the extent such fees and expenses exceed $200,000.  Indeed, such relief is necessary here—the Debtors did not include fees and expenses for a Committee in the Initial DIP Budget (as defined in the

Interim DIP Order).[18]   Accordingly, significant fees and expenses incurred by the Committee would put the Debtors at risk of needing to seek additional DIP financing or, potentially, breaching the DIP Credit Agreement (as defined in the Interim DIP Order).  Requiring the Committee to pay its own fees and expenses in excess of $200,000 will also prevent duplicative and unnecessary costs of administering these chapter 11 cases.  Accordingly, to the extent to the Court determines not to disband the Committee, the Debtors respectfully request that the Court impose a reasonable fee cap of $200,000 to provide sufficient resources for the Committee to fulfill any narrow purpose it may serve in these chapter 11 cases.

## Conclusion

56.     The appointment of the Committee was arbitrary and capricious and, absent disbandment, or reconstitution and the imposition of Case Protections, appointing the Committee is near-certain to be detrimental of the Debtors' estates and the Committee's own constituents. Given the facts and circumstances of these chapter 11 cases, there is no rational basis for the U.S. Trustee to conclude that the appointment of the Committee is "necessary" to adequately represent the interests of unsecured creditors.  The Debtors' proposed unimpaired treatment of General Unsecured Claims under the Plan will adequately protect such creditors interests in these chapter 11 cases.  In contrast, the burdensome nature of any Committee-driven costs will not benefit any creditor.  Such destruction of value is at odds with the principles of the Bankruptcy Code and should not be allowed.  Accordingly, the Debtors submit the Committee should be disbanded, or in the alternative, reconstituted and subjected to appropriate Case Protections.

---

[18]     The Initial DIP Budget is attached to the Interim DIP Order as Schedule 1.

**No Prior Request**

57.     No prior request for the relief sought in this Motion has been made to this Court or any other court.

**Notice**

58.     The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) the members of the Committee; (c) co-counsel to the Sponsor and the Plan Sponsor; (d) each of the Agent/Trustees; (e) counsel to the ABL Agent; (f) counsel to the Secured Ad Hoc Group; (g) the office of the attorney general for each of the states in which the Debtors operate; (h) the United States Attorney's Office for the District of New Jersey; (i) the Internal Revenue Service; and (j)  any party that has requested notice pursuant to Bankruptcy Rule 2002.   The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank]*

**WHEREFORE**, the Debtors request that the Court enter the Order, in substantially the form submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: March 25, 2026

/s/ *Michael D. Sirota*

| | |
|---|---|
| **COLE SCHOTZ P.C.** | **KIRKLAND & ELLIS LLP** |
| Michael D. Sirota, Esq. | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Warren A. Usatine, Esq. | Steven N. Serajeddini, P.C. (admitted *pro hac vice*) |
| Felice R. Yudkin, Esq. | 601 Lexington Avenue |
| Court Plaza North, 25 Main Street | New York, New York 10022 |
| Hackensack, New Jersey 07601 | Telephone:      (212) 446-4800 |
| Telephone: (201) 489-3000 | Facsimile:      (212) 446-4900 |
| Email:  msirota@coleschotz.com | Email:            steven.serajeddini@kirkland.com |
|          wusatine@coleschotz.com | |
|          fyudkin@coleschotz.com | -and- |

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Rachael M. Bentley (admitted *pro hac vice*)
Peter A. Candel (admitted *pro hac vice*)
Lindsey J. Blumenthal (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:            rachael.bentley@kirkland.com
                 peter.candel@kirkland.com
                 lindsey.blumenthalo@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
|---|---|
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| In re:<br><br>MULTI-COLOR CORPORATION, *et al*.,<br><br>     Debtors.[1] | Chapter 11<br><br>Case No. 26-10910 (MBK)<br><br>(Jointly Administered) |

### ORDER (I) DISBANDING THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND (II) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered three (3) through four (4), is

**ORDERED**.

---

[1]    The last four digits of Debtor Multi-Color Corporation's tax identification number are 5853.  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/MCC.  The location of the Debtors' service address for purposes of these chapter 11 cases is:  3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
steven.serajeddini@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Rachael M. Bentley (admitted *pro hac vice*)
Peter A. Candel (admitted *pro hac vice*)
Lindsey J. Blumenthal (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
rachael.bentley@kirkland.com
peter.candel@kirkland.com
lindsey.blumenthal@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

(Page | 3)

Debtors:            MULTI-COLOR CORPORATION, *et al*.

Case No.            26-10910 (MBK)

Caption of Order:   Order (I) Disbanding the Official Committee Of Unsecured Creditors, and
                    (II) Granting Related Relief

---

Upon the motion (the "Motion")[1] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an order (this "Order") (I)(a) disbanding the official

committee of unsecured creditors (the "Committee"), or, in the alternative, (II)(a) reconstituting

the Committee, (b) holding the actions of the Committee in abeyance for 75 days after the Petition

Date, and (c) imposing the Fee Cap, and (II) granting related relief, all as more fully set forth in

the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the

Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing*

*Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for

the District of New Jersey, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.); and

this Court having found that venue of this proceeding and the Motion in this district is proper

pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that it may enter a final order

consistent with Article III of the United States Constitution; and this Court having found that the

Debtors' notice of the Motion was appropriate under the circumstances and no other notice need

be provided; and this Court having reviewed the Motion and having heard the statements in support

of the relief requested therein at a hearing before this Court (the "Hearing"), if any; and this Court

having determined that the legal and factual bases set forth in the Motion and at the Hearing, if

any, establish just cause for the relief granted herein; and upon all of the proceedings had before

the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY**

**ORDERED THAT**:

---

[1]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

2

(Page | 4)

Debtors:           MULTI-COLOR CORPORATION, *et al.*
Case No.           26-10910 (MBK)
Caption of Order:  Order (I) Disbanding the Official Committee Of Unsecured Creditors, and
                   (II) Granting Related Relief

1.      The U.S. Trustee's *Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 493] is hereby vacated.

2.      The Committee is hereby disbanded and shall have no further standing in connection with these chapter 11 cases.

3.      The terms and conditions of this Order are immediately effective and enforceable upon its entry.

4.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

2