**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo
James N. Lawlor
Joseph F. Pacelli (admitted *pro hac vice*)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com
jlawlor@wmd-law.com
jpacelli@wmd-law.com

*Counsel for the Cross-Holder Ad Hoc Group*

**JONES DAY**
Bruce Bennett (admitted *pro hac vice*)
555 South Flower Street, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

-and-

Benjamin Rosenblum (admitted *pro hac vice*)
Genna L. Ghaul
Andrew Butler (admitted *pro hac vice*)
Benjamin C. Sandberg (admitted *pro hac vice*)
250 Vesey Street
New York, New York 10281
Telephone: (212) 326-8312
Facsimile: (212) 755-7306
brosenblum@jonesday.com
gghaul@jonesday.com
abutler@jonesday.com
bsandberg@jonesday.com

*Counsel for the Cross-Holder Ad Hoc Group*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>MULTI-COLOR CORPORATION, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No.: 26-10910 (MBK)<br><br>Judge: Michael B. Kaplan |

**CROSS-HOLDER AD HOC GROUP'S EMERGENCY**
**MOTION TO COMPEL CONTINUATION OF SALE PROCESS**

Movants, the Cross-Holder Ad Hoc Group, respectfully request that this Court enter an

order providing the relief set forth below, and in support thereof, represent as follows:

---

[1] The last four digits of Debtor Multi-Color Corporation's tax identification number are 5853. A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://veritaglobal.net/MCC. The location of the Debtors' service address for purposes of these chapter 11 cases is: 3284 Northside Parkway NW, Suite 400, Atlanta, Georgia 30327.

**PRELIMINARY STATEMENT**

1. The Movants bring this emergency motion to seek redress—again—with respect to the Debtors' deeply-flawed, unapproved "sale process."  As suspected from the outset and as now confirmed through the Debtors' conduct, this "sale process" was designed to fail from start.  This should not be tolerated.

2. As observed earlier, the Bankruptcy Code requires that the Court pass on whether "the entire process has been fair and transparent and that . . . alternative potential transactions have been fully vetted and that . . . any ultimate proposed transaction will be in the best interest of the estate."[2]  But the unapproved "sale process" has been neither fair nor transparent.  Nor are the transactions embodied in the Restructuring Support Agreement in the best interests of the estate.

3. By this Motion, the Movants respectfully request that the Court enter an order (i) directing the Debtors to provide to the Movants and Truelink Capital Management, Inc. ("Truelink") access to the Debtors' management for purposes of typical and necessary due diligence discussions, (ii) directing the Debtors to provide the typical high priority diligence materials previously requested and (iii) adjourning the confirmation hearing until a date that is no earlier than 30 days from the provision of such management access and due diligence materials.

4. Because the case is ongoing and delay will only compound the harm, the Movants respectfully request that this Motion be heard on an expedited basis.

**JURISDICTION**

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Movants maintain that venue is improper before this court for the reasons set forth in

---

[2] *In re Multi-Color Corp., et al.*, Case No. 26-10910-MBK (Bankr. D.N.J.) Feb. 20, 2026 Hr'g Tr., 19:2-8.

Movant's *Motion to Dismiss or, in the Alternative, Transfer the Chapter 11 Cases* (Docket No. 71) and reserves all rights to appeal this Court's decision (Docket No. 494) (the "Venue Order") denying the Venue Motion, as set forth in the Joint Notice of Appeal (Docket No. 674) and the Joint Motion for Leave to Appeal Order Denying Motion to Dismiss or, in the Alternative, Transfer attached thereto.  Notwithstanding the foregoing, and without waiving any of the Cross-Holder Group's rights to appeal the Venue Order, the Court has determined that venue is proper pursuant to the Venue Order.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

### I.    The Parties

6.    The Debtors are engaged in the business of manufacturing labels and packaging materials for consumer products companies.  The Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on January 29, 2026 (the "Petition Date").  The Debtors are represented by Evercore Group L.L.C. ("Evercore") as investment banker and Kirkland & Ellis LLP and Cole Schotz P.C. as counsel.

7.    The Movants are members of the Cross-Holder Ad Hoc Group that collectively holds significant positions in the Debtors' debt instruments.  The Movants are advised by Guggenheim Securities, LLC ("Guggenheim") as financial advisor and Jones Day and Wollmuth Maher & Deutsch LLP as counsel.

### II.    The Flawed and Unapproved "Sale Process"

8.    On the Petition Date, the Debtors filed a proposed Disclosure Statement and Chapter 11 plan, pursuant to which Clayton, Dubilier & Rice ("CD&R"), the Debtors' prepetition private equity sponsor, would remain the majority owner of the reorganized Debtors. (Docket Nos. 17 and 18).  The proposed Disclosure Statement and Chapter 11 plan do not discuss any historical marketing process for a sale of the Debtors or their assets.

3

███████████████████████████████████████████████████████████

████████████████████████████████████████████[3] The proposed

Disclosure Statement and Chapter 11 plan are also silent on any contemplated postpetition sale process. This omission is more troubling because the Debtors almost certainly will point to their covert and truncated postpetition marketing process—a process intentionally designed to yield no actionable bids—as support for confirmation of their proposed Chapter 11 plan.

9. The sham postpetition marketing process was hindered before it even started. Attached as Exhibit B to the Disclosure Statement is a copy of a Restructuring Support Agreement (the "RSA"). The RSA obligates the Debtors to "support and take all steps reasonably necessary and desirable to implement and consummate the Restructuring Transactions," including the proposed Chapter 11 plan (the "RSA Plan"). RSA, § 7.01(a). It contains numerous provisions requiring the Debtors to prosecute the RSA Plan and related transactions. *Id.*; *see also id.* at §§ 7.01(b)-(e) and 7.03(b). Among other things, the RSA does not allow the Debtors to "seek or solicit" any alternative Chapter 11 plan other than "a sale or disposition of the assets" of the Debtors. *Id.* § 7.02(g). The Debtors are also obligated under the RSA to provide any "Alternative Restructuring Proposal[s]" promptly to CD&R and the group of certain prepetition secured lenders that are parties to the RSA (the "Secured Ad Hoc Group"). RSA, § 8.02. If the Debtors accept any Alternative Restructuring Proposal, it constitutes a termination event under the RSA. *Id.* § 12.01(g). Thus, the RSA—the blueprint of the Debtors' and CD&R's goals in these Chapter 11 cases—put specific and intentional

---

[3] *See* Exhibit 1, ███████████████████████████████████████████

███████████████████████████████████████████████████████████

Exhibit 2, ██████████████████████████████████████████████████

██████████████████

4

roadblocks in the way of any Alternative Restructuring Proposal that might offer more value to the Debtors and their creditors.

10. On February 4, 2026, █████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████

11. On February 8, 2026, ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████

12. On February 17, 2026, the Movants filed that *Emergency Motion For Relief From The Sale Process And For Modification Of Certain Related Materials* (Docket No. 263), which asked the Court to (a) modify the Debtors' sale process to ensure that it encouraged participation; (b) strike an anti-partnering provision in the Form NDA that prevented the Cross-Holder Ad Hoc Group from coordinating with other potential bidders; and (c) remove the confidentiality designations on the Form NDA and Process Letter so that the Cross-Holder

Ad Hoc Group could send the Form NDA and Process Letter to parties potentially interested in participating in the Debtors' otherwise secret and unadvertised marketing process.

13.    On March 5, 2026, the Court entered that certain *Order Resolving the Cross-Holder Ad Hoc Group's Emergency Motion for Relief from the Sale Process and for Modification of Certain Related Materials* (Docket No. 399) (the "Sale Process Order"), which, among other things, established the deadline for submission of indications of interest as March 18, 2026.

### III.    The Debtors Receive a Superior Alternative Restructuring Transaction

14.    In accordance with the Sale Process Order, Truelink and certain members of the Cross-Holder Ad Hoc Group (together, the "Consortium") submitted a joint indication of interest to the Debtors' advisors  *See* Exhibit 6

*Id.* at                       . To the best of our knowledge,

[4]

15.    On March 18, 2026,

*See* Exhibit 7

*See id.*

16.    On March 28, 2026,

*See id.*

on March 30, 2026,

---

[4] *See* Exhibit 1,

*See id.*

17.     On March 30, 2026,

*Id.*

18.     On April 3, 2026,

*See* Exhibit 8

19.     Despite the Debtors' purported marketing efforts,

7

20. Notwithstanding the deficiencies in the process, ███████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████

21. ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████ █████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████

22. ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████ These refusals and deficiencies further demonstrate that the current process is not being conducted in good faith or with the objective of maximizing estate value.

**ARGUMENT**

**I.      The Court Has Authority to Supervise the Process to Ensure That It Is Fair and Open**

23.     This Court possesses authority under 11 U.S.C. § 363 to supervise sale processes to encourage competitive bidding in Chapter 11 proceedings.  The Debtors have taken the unusual approach of avoiding Court involvement for purposes of their postpetition "process" in this case.  But a sale of substantially all of the Debtors' assets is outside of the ordinary course of business, 11 U.S.C. § 363(b)(1), and as this Court has previously held, it has authority over these issues as it must ultimately pass on them as part of confirmation of any Chapter 11 plan in these cases.  *See In re Multi-Color Corp., et al.*, Case No. 26-10910-MBK (Bankr. D.N.J.) Feb. 20, 2026 Hr'g Tr., 17:4-15 and 19:2-8.  The Court also has the power to grant adjournments of hearings and to direct the Debtors to provide due diligence information and make management available pursuant to the Federal Rules of Bankruptcy Procedure.

24.     The Court, thus, has the power to supervise the supposed sale process, and courts have exercised this authority to enhance competition and maximize value for the estate. *See In re Dura Auto. Sys., Inc.*, 2007 WL 7728109, at *90 (Bankr. D. Del. Aug. 15, 2007) (noting that "courts recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales.") (citing *In re O'Brien Env't Energy, Inc.*, 181 F.3d 527, 537 (3d Cir. 1999)).  Rather than facilitating "an open and fair public sale designed to maximize value for the estate," *In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998), the Debtors have erected an opaque and unfair process with numerous barriers to participation—all with the goal of facilitating a sale of the Debtors to the Debtors' controlling insider.  The Court should exercise its authority to fix the Debtors' broken process.

9

## II.     The Debtors Should Be Directed To Provide Adequate Diligence and Access to Management

25.     A debtor-in-possession has "a fiduciary duty to protect and maximize the estate's assets." *In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 339 (3d Cir. 2004). "A debtor in possession is not fulfilling his obligations if he inhibits or delays the flow of information that should be available to the creditors, the United States trustee or the court." *In re Gordon Prop., LLC*, 514 B.R. 449, 460 (Bankr. E.D. Va. 2013); *see also Tenn-Fla Partners v. First Union Nat. Bank of Fla.*, 229 B.R. 720, 726 (W.D. Tenn. 1999) (debtor's omission of material facts regarding value and interest in debtor's assets and discouraging competitive bidding constituted fraud), *aff'd*, 226 F.3d 746 (6th Cir. 2000); *In re Dura Auto. Sys., Inc.*, No. 06-11202 KJC, 2007 WL 7728109, at *103 (Bankr. D. Del. Aug. 15, 2007) (allowing bidders due diligence on parity with the stalking horse bidder).

26.     ███████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
██████████████████

27.     ███████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████

28.

29.      The Debtors' conduct is inconsistent with any genuine effort to test the market.

A debtor conducting a bona fide marketing process ███████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Instead, the Debtors are attempting to shut down competition.  They have engineered a process

to deliberately fail and to insulate the CD&R transaction from competition.  The Court should

not countenance this approach.  *See In re Edwards*, 228 B.R. at 561 (requiring "an open and

fair public sale designed to maximize value for the estate").

**III.**     **Appropriate Diligence is a Prerequisite to Any Competitive Sale Process**

30.      The confirmation hearing should be adjourned to a date that is no earlier than

30 days following the completion of due diligence.  Adequate due diligence is a prerequisite

to the submission of meaningful final bids, and prospective purchasers cannot be expected to

commit capital or assume the risks inherent in an acquisition of this magnitude without a full

and fair opportunity to evaluate the Debtors' assets, liabilities and operations.  The Debtors

are a large, multi-national enterprise with complex operations spanning multiple jurisdictions.

The scope and complexity of this business demand a standard diligence process, one that

simply cannot be compressed into an artificially truncated timeline without prejudicing the

interests of competing bidders and, ultimately, the estate and its creditors.

31.      Moreover, there were no efforts to market the Debtors' business prior to the

commencement of these bankruptcy cases.  The absence of any pre-petition marketing process

means that the market has not been tested, which the Movants suggest is by express design. This concern is heightened by the fact that the proposed purchaser is an insider.

32. Where a sale to an insider is contemplated, fundamental principles of fairness and fiduciary duty demand that the business be subjected to a robust and transparent market test before any transaction is approved. Proceeding to confirmation without affording prospective third-party bidders a meaningful opportunity to conduct due diligence, formulate bids, and compete for the acquisition of the Debtors' business would effectively foreclose competition, entrench the insider bid, and risk the approval of a sale at a price that does not maximize value for the estate.

33. The Movants have consistently offered to support the Debtors with new money financing, and without a roll-up component, to meet their liquidity needs. Should the Debtors' estates require financing that the existing DIP lenders are unwilling to provide, the Movants stand ready to engage with the Debtors, as they have been throughout these cases.

34. The requested adjournment is reasonable and necessary to ensure the integrity of the sale process and to fulfill the Court's obligation to safeguard the interests of all stakeholders.

## **REQUESTED RELIEF**

WHEREFORE, the Movants respectfully request that this Court enter an order:

A.      Directing the Debtors to provide to the Movants and Truelink access to the Debtors' management for purposes of typical and necessary due diligence discussions;

B.      Directing the Debtors to provide the typical high priority diligence materials previously requested;

C.      Adjourning the confirmation hearing until a date that is no earlier than thirty days from the provision of such management access and due diligence materials;

D.      Scheduling a hearing on this motion on an expedited basis; and

E.      Granting such other and further relief as the Court deems just and proper.

Dated:  April 8, 2026                                **WOLLMUTH MAHER & DEUTSCH LLP**

/s/ *Paul R. DeFilippo*_____
Paul R. DeFilippo
James N. Lawlor
Joseph F. Pacelli (admitted *pro hac vice*)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Email: pdefilippo@wmd-law.com
        jlawlor@wmd-law.com
        jpacelli@wmd-law.com


**JONES DAY**
Bruce Bennett (admitted *pro hac vice*)
555 South Flower Street, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
Email: bbennett@jonesday.com

-and-

Benjamin Rosenblum (admitted *pro hac vice*
Genna L. Ghaul
Andrew Butler (admitted *pro hac vice*)
Benjamin C. Sandberg (admitted *pro hac vice*)
250 Vesey Street
New York, New York 10281
Telephone: (212) 326-8312
Facsimile: (212) 755-7306
Email: brosenblum@jonesday.com
        gghaul@jonesday.com
        abutler@jonesday.com
        bsandberg@jonesday.com

*Counsel for the Cross-Holder Ad Hoc Group*

14